**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

_____
                                                      )
SHIBUMI SHADE, INC.,                                  )
                                                      )
                        Plaintiff,                    )
                                                      )          Civil Action No. 5:24-CV-00588
            vs.                                       )
                                                      )          **JURY TRIAL DEMANDED**
GARDMA LLC d/b/a MILLION SHADES                       )
AMERICA,                                              )
                                                      )
                        Defendant.                    )
_____             )

## DEFENDANT GARDMA LLC d/b/a MILLION SHADESAMERICA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF SHIBUMI SHADE, INC.'S COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………...ii

I.    INTRODUCTION……………………………..…..………………………………… 1

II.   PROCEDURAL BACKGROUND…………………………………………………..4

III.  LEGAL STANDARDS…………………………………………………………7

      A.    Rule 12(b)(4): Insufficient Process………………………………………..7

      B.    Rule 12(b)(5): Insufficient Service of Process………………………………8

      C.    Rule 12(b)(6): Failure to State a Claim Upon Which Relief can be Granted……...9

      D.    Stating a Claim for Patent Infringement……………………………………10

      E.    Patent Infringement Standards………………………………………...12

IV.  ANALYSIS……………………………………………………………………14

      A.    Dismissal Under Rule 12(b)(4) and/or 12(b)(5) is Appropriate…………………14

      B.    Dismissal Under Rule 12(b)(6) is Appropriate………………………………14

            1.    Complaint Fails to Plausibly allege Coefficient of Friction Limitations…15

            2.    Complaint Fails to Plausibly Allege Container "Capable of" both Housing the Components and Acting as an Anchor without Significant Modification………………………………………………19

V.   CONCLUSION………………………………………………………………..24

i

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s):**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)……………………………………………………..12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………………………………………………………..9, 10, 15, 18

*Atlas IP, LLC v. Exelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016), *af'd sub nom.*
    *Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017)………..11, 12

*Ayres v. Jacobs & Crumplar, P.A.*,
    99 F.3d 565 (3d Cir. 1996)…………………………………………………………..7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………………...9, 10, 15, 18

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021)……………………………….......................*passim*

*Cellular Sales of Knoxville, Inc. v. Chapman*,
    No. 1:19-CV-768, 2020 WL 32992 (M.D.N.C. Jan. 2, 2020)…………………………….9

*Coleman v. Md. Ct. of Appeals*,
    626 F.3d 187 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)………………………………….9

*Day 'Le Lathon v. UNC-Fayetteville State U.*,
    No. 5:07-CV-105, 2008 WL 60396 (E.D.N.C. Jan. 2, 2008)…………………………1, 7, 14

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)……………………………………………13, 21, 22, 23

*Fantasy Sports Prop v. Sportsline.com*,
    287 F.3d 1108 (Fed. Cir. 2002)…………………………………………………..13

*FBA Operating Co. v. ETN Capital, LLC*,
    No. 5:23-CV-505-D, 2024 WL 2926187 (E.D.N.C. June 10, 2024)………………………..4, 15

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008)……………………………………………………..9, 10

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950)…………………………………………………………..13

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 2001)……………………………………………………..13, 23

*Intel Corp. v. ITC*,
    946 F.2d 821 (Fed. Cir. 1991)…………………………………………………………13

*INVT SPE LLC v. Intl. Trade Comm'n*,
    46 F.4th 1361 (Fed. Cir. 2022)…………………………………………………..*passim*

*Mississippi Publishing Corp. v. Murphree*,
    326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946)…………………………………7, 14

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999)………………………………………………………………………8

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)……………………………………………………10, 11

*O'Meara v. Waters*,
    464 F. Supp. 2d 474 (D. Md. 2006)……………………………………………………8

*Omni Capital Intern, Ltd. v. Rudolf Wolff & Co., Ltd.*,
    484 U.S. 97 (1987)………………………………………………………………..7

*ParkerVision, Inc. v. Qualcomm Inc.*,
    903 F.3d 1354 (Fed. Cir. 2018)……………………………………………………..4, 23

*Scott v. Md. State Dep't of Lab.*,
    673 F. App'x 299 (4th Cir. 2016)…………………………………………………...9, 14

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001)……………………………………………………13, 23

*Terracino v. Trimaco, Inc.*,
    No. 5:22-CV-015-FL, 2024 WL 1889222 (E.D.N.C. Apr. 29, 2024),
    *reconsideration denied*, 2024 WL 4293879 (E.D.N.C. Sept. 25, 2024)…………………3, 17

*Thompson v. Target Stores*,
    501 F. Supp. 2d 601 (D. Del. 2007)……………………………………………………7

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014)……………………………………………………..12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)………………………………………………………...12, 13

**Statutes and Regulations:**

18 U.S.C. §1725……………………………………………………………………………...2

26 U.S.C. § 7502(f)(2)……………………………………………………………………….9

35 U.S.C. § 112……………………………………………………………………………...13

35 U.S.C. 271(a)……………………………………………………………………………...12

N.C. Gen. Stat. § 1A-4……………………………………………………………………8, 9

**Rules:**

Fed. R. Civ. P. 4……………………………………………………………………1, 6, 7

Fed. R. Civ. P. 4(b)………………………………………………………………………...7

Fed. R. Civ. P. 4(c)…………………………………………………………………1, 7

Fed. R. Civ. P. 4(h)(1)(A)………………………………………………………………8

Fed. R. Civ. P. 4(h)(1)(B)………………………………………………………………8

Fed. R. Civ. P. 4(j)(6)(a)………………………………………………………………...8

Fed. R. Civ. P. 4(j)(6)(b)………………………………………………………………8

Fed. R. Civ. P. 4(j)(6)(c)………………………………………………………………...9

Fed. R. Civ. P. 4(j)(6)(d)………………………………………………………………9

Fed. R. Civ. P. 8……………………………………………………………………………4

Fed. R. Civ. P. 12(b)(4)…………………………………………………………...1, 7, 14

Fed. R. Civ. P. 12(b)(5)…………………………………………………………...2, 8, 14

Fed. R. Civ. P. 12(b)(6)…………………………………………………………...*passim*

## I.     INTRODUCTION

Defendant Gardma, LLC d/b/a Million Shades America (hereinafter "MSA") respectfully submits this Memorandum of Law in Support of his Motion to Dismiss the Complaint (DE 1) (hereinafter the "Complaint") filed by Plaintiff Shibumi Shade, Inc. (hereinafter "Shibumi"). Dismissal is appropriate for three reasons.

*First*, Shibumi failed to Comply with the requirements of Rule 4 (c) by providing MSA with an unsigned, unsealed summons together with a copy of the Complaint that was not file-stamped and appears to have been a pre-filing draft. <u>**Exhibit 1**</u> at ¶14 (citing Exhibit A thereto). This Court has dismissed cases where "the summonses were not signed by the clerk, nor did they bear the court's seal as required by Fed. R. Civ. P.4." *Day'Le Lathon v. UNC-Fayetteville State U.*, No. 5:07-CV-105, 2008 WL 60396, at *1 (E.D.N.C. Jan. 2, 2008). Dismissal pursuant to Rule 12(b)(4) for insufficient process is appropriate.

*Second*, Shibumi failed to comply with the requirements of Rule 4 (e) and its service agent, Dennis Abuda, apparently falsely declared to this Court that he:

> delivered the documents, SUMMONS; CIVIL COVER SHEET; COMPLAINT; APPEARANCE OF COUNSEL; NOTICE OF SPECIAL APPEARANCE; EXHIBITS, to Gomin Gardiyehewa who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired Middle Eastern female contact 45-55 years of age, 5'6"-5'8" tall and weighing 140-160 lbs with an accent.

(DE 10). In fact, Gomin Gardiyehewa is a man (not a woman) who neither encountered Mr. Abuda nor received any document from Mr. Abuda and no woman fitting the description provided by Mr. Abuda can be found at 102 Pacoval Pl, Cary, NC 27513. <u>**Exhibit 1**</u> at ¶¶4-9, 15-17. Rather, Mr. Gardiyehewa found the service documents stuffed, without stamp, envelope, or binding, in the

<div align="center">1</div>

United States Mailbox at his home, *id*. at ¶12, in an apparent violation of 18 U.S.C. §1725. Accordingly, dismissal pursuant to Rule 12(b)(5) is appropriate insufficient service of process.

**Third**, and more substantively, the Complaint (DE 1) fails to state a claim upon which relief can be granted. Specifically, each of the independent claims (Claims 1, 13, 17, and 21) in US Patent 11,634,924 ("the '924 Patent") includes an undefined term that makes it *impossible* for MSA, and indeed this Court or anyone else, to construe the claims and assess infringement:

> 1. …the at least one elastic strap having *a higher coefficient of friction with respect to a coefficient of friction of the plurality of sections of the frame*….

> 13. …wherein the at least one fastener has *a higher coefficient of friction with respect to a coefficient of friction of the plurality of sections of the frame*….

> 17. …the at least one fastener having *a higher coefficient of friction with respect to a coefficient of friction of the plurality of sections of the frame*….

> 21. …wherein the at least one fastener that secures the canopy in position relative to the frame has *a higher coefficient of friction with respect to a coefficient of friction of the frame*.

(DE 1-2 at col. 8, ln.14 – col. 11, ln.4). That is, each of the independent claims includes a limitation requiring that the "elastic strap" (claim 1) or the "fastener" (Claims 13, 17, and 21) has "a higher coefficient of friction with respect to a coefficient of friction of" "the plurality of sections of the frame" (claims 1, 13, 17) or "the frame" (claim 21).

The specification of the '924 Patent never describes a test or a process for measuring or determining a relative amount, *e.g*., "higher," of a coefficient of friction nor does it even describe or define what type of coefficient friction is to be measured—sliding or static. Indeed, the Detailed Description in the Specification does not even discuss "coefficient of friction" whatsoever but only briefly discusses another concept entirely, something referred to as "friction of coefficient". (DE 1-2 at col.5, ln. 4-18).

This Court has recently had cause to examine a very similar patent claim and concluded that the claim was "indefinite." In *Terracino v. Trimaco, Inc.*, this Court held the term including "coefficient of friction" was indefinite because:

> The test measures static coefficient of friction, or how much force it takes to get the drop cloth moving, (DE 40-3 at 1), while the term at issue instructs the reader to measure a sliding coefficient of friction, or how much force must be applied to a drop cloth that is already moving in order to keep it travelling at the same speed.

No. 5:22-CV-015-FL, 2024 WL 1889222, at *11 (E.D.N.C. Apr. 29, 2024) (Flanagan, J.), *reconsideration denied,* No. 5:22-CV-015-FL, 2024 WL 4293879 (E.D.N.C. Sept. 25, 2024).

Respectfully, the instant claims are even more indiscernible than the claims at issue *Terracino*. In *Terracino*, the claim applied the wrong test; here there is no test at all. Here, neither the specification nor the claims provide any method of determining which coefficient friction (static or sliding) is measured or how it is to be measured. Similarly, neither the claims nor the specification provide a reference surface from which to measure a coefficient of friction whether it be sliding or static, and be it a fastener or a frame. Thus, it is impossible for MSA, this Court, or literally anyone to determine if any structure infringes any of the independent claims.

**Fourth**, the Complaint (DE 1) fails to state a claim upon which relief can be granted because the sole independent claim discussed in the Claim Chart (DE 1-3) requires an element not present in the Accused Product. Specifically, Claim 21 requires:

> a container **capable of** housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration….

(DE 1-2 at col. 10, ln.63-67) (emphasis added). The Federal Circuit has recently reiterated the black letter law that "'[W]here claim language recites 'capability, as opposed to actual operation,' an apparatus that is 'reasonably capable' of performing the claimed functions 'without significant

alterations' can infringe those claims.'" *INVT SPE LLC v. Intl. Trade Comm'n*, 46 F.4th 1361, 1375–76 (Fed. Cir. 2022) (quoting *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1362 (Fed. Cir. 2018)). In the Claim Chart, Shibumi goes to great lengths to show how the bag which holds the canopy kit MUST be ***significantly modified*** to perform as an "anchor". (DE 1-3 at B-7 - B-8). This significant modification is in direct contravention of *INVT SPE* and Shibumi thus fails to state a claim as a matter of law.

This Court has not hesitated to dismiss a patent infringement complaint at the pleading stage where the complaint "fails to plausibly allege either direct literal infringement or direct infringement under the doctrine of equivalents." *FBA Operating Co. v. ETN Capital, LLC*, No. 5:23-CV-505-D, 2024 WL 2926187, at *7 (E.D.N.C. June 10, 2024) ("reject[ing patentee's] implausible allegation" of patent infringement and dismissing the complaint for failure to state a claim). Here, Shibumi has failed to plausibly allege infringement of a valid patent claim and, as such, failed to provide sufficient notice of its claims to MSA under Rule 8. As in *FBA Operating*, the Complaint should be dismissed.

## II.   PROCEDURAL BACKGROUND

Shibumi alleges that it sells a product marketed as the "Shibumi Shade" which may provide some level of protection from the sun. (Doc. 1 at ¶¶7-8). Shibumi further alleges that it "has obtained multiple patents to date, including U.S. Patent No. 11,634,924 ('924 Patent')." *Id.* at ¶9. Shibumi alleges that:

> Defendant Gardma LLC d/b/a Million Shades America is a limited liability company organized and existing under the laws of the State of North Carolina with its principal office at 102 Pacoval Place, Cary, NC 27513. Defendant may be served with process by serving its registered agent, Gomin Samantha Gardiyehewa, at 102 Pacoval Place, Cary, NC 27513, or as otherwise authorized under applicable law.

(DE 1 at ¶2). Shibumi alleges that MSA sells a product named the "Ultimate Flying Beach Shade"

which it identifies as the "Accused Product." *Id*. at ¶5. Shibumi further avers that "[t]he Accused

Product infringes one or more claims of the '924 Patent, including at least each and every element

of Claim 21 either literally or under the doctrine of equivalents, as set forth below and in the claim

chart attached as Exhibit B." *Id*. at ¶14 (citing (DE 1-3)).

The '924 Patent includes 4 independent claims and each require, *inter alia*, one claim

element with a "a higher coefficient of friction with respect to a coefficient of friction" of a second

claim element:

> 1. …the at least one elastic strap having ***a higher coefficient of friction with respect to a coefficient of friction of the plurality of sections of the frame***….
>
> 13. …wherein the at least one fastener has ***a higher coefficient of friction with respect to a coefficient of friction of the plurality of sections of the frame***….
>
> 17. …the at least one fastener having ***a higher coefficient of friction with respect to a coefficient of friction of the plurality of sections of the frame***….
>
> 21. …wherein the at least one fastener that secures the canopy in position relative to the frame has ***a higher coefficient of friction with respect to a coefficient of friction of the frame***.

(DE 1-2 at col. 8, ln.14 – col. 11, ln.4). Neither the patent specification nor the patent claims define

coefficient of friction, specify what type of coefficient of friction applies to any particular claim

limitation, or provide any discernable method or means of measuring, quantifying, or comparing

a "coefficient of friction." Indeed, the detailed description refers to something called "friction of

coefficient" rather than the claimed "coefficient of friction." *Id*. at col.5, ln. 4-18.

Further, Claim 21, the claim Shibumi proffers as its representative claim, requires:

> a container ***capable of*** housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration….

(DE 1-2 at col. 10, ln.63-67) (emphasis added).

The Complaint was filed in this Court on October 15, 2024. (DE 1). The Summons Issued on October 16, 2024. (DE 7). Shibumi filed a "Proof of Service" on October 23, 2024 which was in the form of a declaration "under penalty of perjury" signed by "Dennis Abuda", purportedly residing at "900 E six forks rd 147 Raleigh, NC 27604". *Id*. In the Proof of Summons form, Mr. Abuda declared that:

> I served the summons on Gomin Gardiyehewa, who is designated by law to accept service of process on behalf of Gardma LLC d/b/a Million Shades America at 102 Pacoval Pl, Cary, NC 27513 on 10/22/2024 at 4:06 PM; [and I]
>
> delivered the documents, SUMMONS; CIVIL COVER SHEET; COMPLAINT; APPEARANCE OF COUNSEL; NOTICE OF SPECIAL APPEARANCE; EXHIBITS, to Gomin Gardiyehewa who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired Middle Eastern female contact 45-55 years of age, 5'6"-5'8" tall and weighing 140-160 lbs with an accent.

*Id*.

However, the events described in Mr. Abuda's declaration never transpired. As stated in the Declaration of Gomin Gardiyehewa, Mr. Gardiyehewa first discovered some papers on his porch and in the bushes of his house. **Exhibit 1** at ¶10. Next, he found papers shoved into his US Postal Mail Box. *Id.* at ¶12. The papers included an unsigned, unsealed summons and copies of a complaint and two exhibits that do not include this Court's file stamp. *Id.* at ¶14; **Exhibit A** to the **Exhibit 1**. No one matching the description in the filed "Proof of Service" (DE 10) resides at Mr. Gardiyehewa's home. **Exhibit 1**. at ¶¶4-9. Mr. Gardiyehewa, a man, is a 57 year old man of South Asian dissent weighing 235. *Id*. His wife, a woman, is also of South Asian dissent weighing 105 pounds. *Id*. His children, likewise do not fit Abuda's description. *Id*. Mr. Gardiyehewa was never served pursuant to Rule 4 with any pleading filed in this Court. *Id*. at ¶¶16-17.

### III. LEGAL STANDARDS

#### A. <u>Rule 12(b)(4): Insufficient Process</u>

The Federal Rules of Civil Procedure allow a party to seek dismissal of a claim if there has been insufficient process. Fed. R. Civ. P. 12(b)(4). Rule 4(b) provides the procedure for having the clerk "sign, seal, and issue it to the plaintiff for service on the defendant." Rule 4(c) requires that "[a] summons must be served with a copy of the complaint." The importance of Process is not a mere formality. The Supreme Court has explained:

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons ***must be satisfied***. "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–445, 66 S.Ct. 242, 245–246, 90 L.Ed. 185 (1946). Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd*., 484 U.S. 97, 104 (1987) (emphasis added). This Court has dismissed cases pursuant to Rule 12(b)(4) where a plaintiff failed to serve the summons with the clerk's signature pursuant to Rule 4(b) and Rule 4(c). *Day'Le Lathon*, 2008 WL 60396, at *1 (dismissing case where "the summonses were not signed by the clerk, nor did they bear the court's seal as required by Fed.R.Civ.P.4."); *see also Ayres v. Jacobs & Crumplar, P.A*., 99 F.3d 565, 569 (3d Cir. 1996) ("the failure of the plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case"); *Thompson v. Target Stores,* 501 F.Supp.2d 601, 603 (D. Del. 2007) (dismissing suit and noting that "defendant's receipt of a summons … lacked the required signature and seal").

**B.    Rule 12(b)(5): Insufficient Service of Process**

The Federal Rules of Civil Procedure allow a party to seek dismissal of a claim if there has been insufficient service of process. Fed. R. Civ. P. 12(b)(5). Such a motion implicates the court's jurisdiction over the moving party because "[i]n the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Once a party claims they have been improperly served, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006).

Rule 4(h) of the Federal Rules of Civil Procedure governs service of process. That rule explicitly provides for service on a corporation

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h)(1)(B).

Rule 4(h)(1)(A) incorporates the methods of service of process under state law. Fed. R. Civ. P. 4(h)(1)(A). North Carolina law allows service on corporations in four ways. ***First***, "by delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office" of such a person or with the person in charge of the office. N.C. Gen. Stat. § 1A-4, Rule 4(j)(6)(a). ***Second***, "by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute." N.C. Gen. Stat. § 1A-4, Rule 4(j)(6)(b). ***Third***, one may "mail[ ] a copy of the summons and of the complaint, registered or certified mail, return receipt requested,

addressed to the officer, director or agent to be served as specified in paragraphs a and b." N.C. Gen. Stat. § 1A-4, Rule 4(j)(6)(c). And ***fourth***, "[b]y depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the officer, director, or agent to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt." N.C. Gen. Stat. § 1A-4, Rule 4(j)(6)(d).

Ultimately, the court has discretion whether to dismiss the action or allow plaintiff another chance to properly serve the defendant. *See Scott* v. *Md. State Dep't of Lab.*, 673 F. App'x 299, 304 (4th Cir. 2016); *Cellular Sales of Knoxville, Inc.* v. *Chapman*, No. 1:19-CV-768, 2020 WL 32992, at *3 (M.D.N.C. Jan. 2, 2020).

## C.     <u>Rule 12(b)(6): Failure to State a Claim Upon Which Relief can be Granted</u>

Under Rule 12 of the Federal Rules of Civil Procedure, the court may dismiss a complaint if it fails to state a claim. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 at 678 (citation omitted). Therefore, while a court must accept all factual allegations contained in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Further, a court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302 (quotation omitted); *see Iqbal*, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." *Iqbal*, 556 U.S. at 678–79.

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. *First*, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory or a mere formulaic recitation of the elements of a claim. *Id.* at 679. *Second*, taking the remaining factual allegations as true, the court must determine whether the complaint "plausibly suggest[s] an entitlement to relief." *Id.* If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief". *Id.* (citation and internal quotation marks omitted). Thus, if a party fails to show that it is entitled to relief, the court must dismiss its deficient claims.

### D. Stating a Claim for Patent Infringement

The Federal Circuit has clarified how the *Twombly* and *Iqbal* plausibility standard interacts with the traditional rule that courts do not engage in claim construction at the Rule 12(b)(6) stage for patent infringement claims. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021); *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). In *Bot M8*, the Federal Circuit held that "a plaintiff need not prove its case at the pleading stage" and that a plaintiff is "not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352 (cleaned up); *see also Nalco*, 883 F.3d at 1350. The Federal Circuit also noted, however, that a plaintiff cannot assert a plausible claim for infringement under *Twombly* and *Iqbal* by

"reciting the claim elements and merely concluding that the Accused Product has those elements." *Bot M8*, 4 F.4th at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the Accused Product infringes the patent claim." *Id*. The level of detail required to plausibly allege infringement will vary depending on "the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id*.

Notably, *Nalco* does not prohibit claim construction when considering a Rule 12(b)(6) motion to dismiss. Just three years after deciding *Nalco*, the Federal Circuit in *Bot M8* affirmed the dismissal of two patent infringement claims for failure to state a claim upon which relief can be granted. *See Bot M8*, 4 F.4th at 1354–55. For the first claim, the court construed the terms to "require[] that the game program and authentication program be stored together, separately from the motherboard," and held that the factual allegations in complaint failed to allege infringement of that claim. *Id*. at 1354. For another claim, the court interpreted a "mutual authentication" requirement to require storing "gaming information including a mutual authentication program" on the same memory. *Id*. The *Bot M8* court affirmed the district court's holding that the complaint failed to allege when or where the game program and mutual authentication program were stored together. *See id*. at 1354–55. Thus, for each claim, the court "interpreted" the claim elements and held that the factual allegations in the complaint did not plausibly allege those elements. *See id*.

*Bot M8* comports with Federal Circuit precedent. In *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) (unpublished), the Federal Circuit affirmed a district court's decision to dismiss a complaint under Rule 12(b)(6) because the plaintiff's theory of claim construction was "wrong as a matter of law." *Id*. at 778. In *Atlas IP*, the district court engaged in limited claim

11

construction regarding the scope of Claim 1. The district court determined that the plaintiff's claim for relief rested on several untenable claim constructions, the first of which was that "Claim 1 reach a MAC protocol incapable of controlling two or more remotes"; meaning the plaintiff's construction would cover a MAC protocol that could only control one remote. *Id*. at 776. The district court, however, interpreted Claim 1 to describe a MAC protocol that controlled access to a "plurality of 'remotes'" and as "providing the necessary cycle establishing information to 'each remote.'" *Id*. at 776–77 (cleaned up). Thus, the district court construed the claim language and specification to require the MAC protocol to cover "more than a single remote." *Id*. at 777. The district court also noted that the patent distinguished the patented MAC protocol from previous MAC techniques with its ability to handle multiple remotes, where prior art had a hub that assigned transmission opportunities to competing remotes. *See id*.

If the court finds a claim does not require in-depth claim construction to identify its meaning, then the court may conclude under Rule 12(b)(6) that a plaintiff has not plausibly alleged that an Accused Product meets those unambiguous claim limitations. *See, e.g.*, *Bot M8*, 4 F.4th at 1354–55.

### E.    **Patent Infringement Standards**

A party establishes direct infringement in one of two ways: literal infringement of the claim language or infringement under the doctrine of equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 35 (1997). Literal patent infringement under 35 U.S.C. § 271(a) occurs when an alleged patent infringer performs each and every step or element of a claimed method or product. *See* 35 U.S.C. § 271(a); *Warner-Jenkinson*, 520 U.S. at 29; *Akamai Techs., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (*per curiam*) (*en banc*); *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014). Infringement under

12

the doctrine of equivalents occurs where the allegedly infringing device "performs substantially the same function in substantially the same way to obtain the same result" as the patented product. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 608 (1950) (quotation omitted), superseded on other grounds by statute, 35 U.S.C. § 112. The essential objective inquiry under the doctrine of equivalents is: "[d]oes the Accused Product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40. In determining equivalency,

> [a]n analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.

*Id*.

Finally, "'where claim language recites 'capability, as opposed to actual operation,' an apparatus that is 'reasonably capable' of performing the claimed functions 'without significant alterations' can infringe those claims.'" *INVT SPE*, 46 F.4th at 1375–76 (quoting *ParkerVision, Inc.*, 903 F.3d at 1362). The Federal Circuit has "rejected finding infringement based on an Accused Product being 'merely *capable* of being *modified* in a manner that infringes.'" *INVT SPE LLC*, 46 F.4th at 1376 (quoting *Fantasy Sports Prop v. Sportsline.com*, 287 F.3d 1108, 1117–18 (Fed. Cir. 2002) (emphases added) (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555–56 (Fed. Cir. 1995); and then citing *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001); and discussing *Intel Corp. v. ITC*, 946 F.2d 821 (Fed. Cir. 1991)). And, the Federal Circuit has required "proof that it was in fact so used by some device users." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1216 (Fed. Cir. 2014).

13

## IV.    ANALYSIS

### A.    Dismissal Under Rule 12(b)(4) and/or 12(b)(5) is Appropriate

By any definition both process and service of process were woefully insufficient. The so-called "service" that transpired in this case was not just sloppy, it was non-existent. Papers were left blowing in the bushes and other papers were stuffed in GMA's US Postal Mail Box. Exhibit 1 at ¶¶10-14. The papers of **Exhibit A** to **Exhibit 1** did not include a signed and sealed Summons nor file-stamped copies of the Complaint and Exhibits. Rather, the papers appear to be pre-filing drafts. *Id*. at 14. Worse still, the process server, Abuda, apparently made severe misrepresentations in his Proof of Service declaration. *Compare* (DE 10) (describing who Abuda claims to have served) *with* **Exhibit 1** at ¶¶4-12, 15-17 (explaining that no one fits the Abuda's description, no one was served, and papers were shoved in the mailbox). To date, MSA still has not been served pursuant to Rule 4 by Shibumi.

Because "service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served" *Mississippi Publishing*, 326 U.S. at 444–445, it is not even clear that this Court has proper subject matter jurisdiction over this proceeding. Just as this Court did in *Day'Le Lathon*, 2008 WL 60396, at *1, this court should dismiss this action either under Rule 12(b)(4), and/or under Rule 12(b)(5). *Scott*, 673 Fed. Appx. at 302 (affirming dismissal pursuant to Rule 12(b)(5)).

### B.    Dismissal Under Rule 12(b)(6) is Appropriate

In addition to the dismissal under Rules 12(b)(4) and 12(b)(5) as discussed above, dismissal under Rule 12(b)(6) is appropriate since the Complaint (DE 1) fails to state a claim upon which relief may be granted. At its very core, in order to survive a motion to dismiss pursuant to Rule 12(b)(6), the Complaint must "plausibly alleged infringement of the ['924] Patent." *FBA*

14

*Operating*, 2024 WL 2926187, at *3 (dismissing patent complaint under Rule 12(b)(6)). A plaintiff cannot assert a plausible claim for infringement under *Twombly* and *Iqbal* by "reciting the claim elements and merely concluding that the Accused Product has those elements." *Bot M8*, 4 F.4th at 1353.

### 1. *Complaint Fails to Plausibly allege 'Coefficient of Friction' Limitations*

As discussed above, one fatal defect in the Complaint is with respect to the limitations in the independent claims relating to "coefficient of friction". As a threshold matter, the word "friction" appears only four times in the Complaint itself—twice in the quotation from Claim 21 (DE 1 at ¶15) (simply quoting claim 21) and twice in a single paragraph which simply formulaically restates the claim. (DE 1 at ¶20). For the benefit of the Court and to highlight the paucity of plausible allegations as to the "friction" limitations, the entirety of Shibumi's pleading in the Complaint is reproduced below:

> 15.    Claim 21 of the '924 Patent cites:
>
> A system for providing shade onto a surface, the system comprising:
>
> a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface;
>
> a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including a plurality of fasteners including at least one fastener that engages the canopy with the frame and at least one fastener that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and
>
> a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration;
>
> wherein the at least one fastener that secures the canopy in position relative to the frame has a higher coefficient of friction with respect to a coefficient of friction of the frame.

15

(DE 1 at ¶15).

> 20.    The system of the Accused Product either literally or equivalently comprises a
> system wherein the at least one fastener that secures the canopy in position relative to the frame
> has a higher coefficient of friction with respect to a coefficient of friction of the frame. *See id.* at
> B-9.

(DE 1 at ¶20).

Respectfully, the above "pleading" is **<u>exactly</u>** the type of threadbare pleading merely "reciting the claim elements and merely concluding that the Accused Product has those elements" which the Federal Circuit has said is insufficient to state a claim for patent infringement. *Bot M8*, 4 F.4th at 1353.

Nor does the "Claim Chart" (DE 1-3) appended to the Complaint salvage the Complaint into something which states a plausible claim. The "friction" limitation is discussed on page B-9 of the Claim Chart and is reproduced in relevant part below:



Shibumi relies on its claim chart exhibit to put MSA on notice of its claim.

In support of Shibumi's claim for infringement, the claim chart shows photographs purporting to show how Shibumi assembled the device. However, the photos reveal **_exactly_** **_nothing_** about "coefficient of friction"—an element of which the Court may take judicial notice cannot be determined via mere visual inspection. Indeed, as this Court observed with respect to the coefficient of static friction: "coefficient of static friction, represents the ratio of the frictional force resisting movement to normal force." *Terracino*, 2024 WL 1889222, at *10; *see also id*. at *11 ("static coefficient of friction [relates to] how much force it takes to get [an object] moving… while … a sliding coefficient of friction [relates to] much force must be applied to [an object] that is already moving in order to keep it travelling at the same speed").

As it must, the Claim Chart also includes the relevant portion of Claim 21:

> **21[i]** wherein the at least one fastener that secures the canopy in position relative to the frame has a higher coefficient of friction with respect to a coefficient of friction of the frame.

(DE 1-3 at B-9). Respectfully, this claim is indefinite.

**_First_**, there is no indication as to which coefficient of friction the claim refers—*static* coefficient of friction or *sliding* coefficient of friction, much less any standard for measuring or determining the coefficient or any relative amount. **_Second_**, there is no indication as to what surface applies for purposes of opposing the object. That is, if "static coefficient of friction [relates to] how much force it takes to get [an object] moving", on what surface is the object resting?

17

Likewise, if "a sliding coefficient of friction [relates to] much force must be applied to [an object] that is already moving in order to keep it travelling at the same speed", on what surface is the object "already moving"?

Here, the claim requires that "the at least one fastener… has a **_higher_** coefficient of friction with respect to a coefficient of friction of the frame." But the explanation in the claim chart provides that (1) "The black plastic collar includes a screw that can be tightened to squeeze the white silicone or rubber band to increase the friction between the collar and the frame, while the silicone or rubber band beneath the collar ensures there is sufficient friction relative to the frame to hold the canopy in position when placed on the hook as shown in the photos below." (DE 1-3 at B-9). And, (2) "The plastic collar can be tightened to squeeze the rubber/silicone band, thereby utilizing friction to prevent the canopy from sliding up the frame". *Id.*

This explanation in the Claim Chart, *id.*, seems to suggest that there is **<u>a single coefficient measurement</u>** (maybe sliding?, maybe static?) between the fastener and the frame, but never shows how there can be **<u>two separate coefficients of friction</u>** with one of the coefficients being "**_higher_**" than the other? What is the "coefficient of friction of the frame"? What is the "coefficient of friction" of "the at least one fastener"?

Shibumi does not articulate how this theoretical construction accounts for the claimed "wherein the at least one fastener … has a higher coefficient of friction with respect to a coefficient of friction of the frame." Shibumi cannot assert a plausible claim for infringement under *Twombly* and *Iqbal*. *Bot M8*, 4 F.4th at 1353. Moreover, the photos of the allegedly infringing product that Shibumi submits demonstrate there are **_no additional opposing surfaces_** sufficient to measure **_two different coefficients of friction_** with one being "higher"; rather the photos submitted demonstrate

the exact opposite—that the fastener and the frame only oppose each other. (DE 1-3 at B-9). At most, there is only one coefficient of friction.

### 2. Complaint Fails to Plausibly Allege Container "Capable of" both Housing the Components and Acting as an Anchor without Significant Modification

As discussed above, another fatal defect in the Complaint is with respect to the limitations in Claim 21 limitation relating to the container and what it is required to be "capable of" "without significant alterations can infringe those claims." *INVT SPE*, 46 F.4th at 1375–76 (citation omitted). The Federal Circuit has "rejected finding infringement based on an accused product being 'merely *capable* of being *modified* in a manner that infringes.'" *INVT SPE*, 46 F.4th at 1376 (citations omitted).

Here, rather than alleging that the Accused Product comports with the Federal Circuit's requirements against significant alterations, Shibumi actually affirmatively alleges that the bag in which the Accused Product is carried MUST be modified in order to support its strained infringement contention. Shibumi provides no less than four different modifications of the bag to render it "capable" of meeting the limitation.



(DE 1-3 at B-7).

     ***First***, Shibumi provides an "Example 1" which requires using a "generic cord" to tie the carry bag of the Accused Product to the frame. (DE 1-3 at B-8). Of course, the "generic cord" is not supplied with the Accused Product and Shibumi, of course, does not allege that it is. *Id*. So, under Example 1, Shibumi's infringement contention requires that a potential infringer go out and obtain an element that even Shibumi admits is not in the Accused Product. Because Shibumi expressly alleges that Example 1 requires substantial modification, even including materials not included in the Accused Product, the Federal Circuit's holding in *INVT SPE,* 46 F.4th at 1375–76 is dispositive and Example 1 fails to state a plausible claim for infringement of the '924 Patent.



(DE 1-3 at B-7).

     ***Second***, Example 2 requires "[w]rapping the carry bag that has been filled with sand around the base of the frame.[]" *Id*. Thus, by Shibumi's own admission, in order to concoct an infringement theory, Shibumi requires a potential user to, after assembling the Accused Product, take the housing bag, somehow find a way to wrap it around a leg of the frame, and fill it with

sand and assume the sand stays in the bag. This, of course, is another example of significant modifications that Shibumi alleges need to be made by a potential user in violation of *INVT SPE,* 46 F.4th at 1375–76. Further, Shibumi fails to allege proof that its theory of modification "was in fact so used by some device users" as required by the Federal Circuit. *Ericsson*, 773 F.3d at 1216.



(DE 1-3 at B-8).

 ***Third***, Example 3 requires "Inserting the frame through the straps of the carry bag that has been filled with sand[.]" *Id.* Thus, by Shibumi's own admission, in order to concoct an infringement theory, Shibumi requires a potential user to, after assembling the Accused Product, take the housing bag, discover how to pass a leg of the frame through the strap, and fill the bag with sand and assume the sand stays in the bag. This, of course, is another example of significant modifications that Shibumi alleges need to be made by a potential user in violation of *INVT SPE,* 46 F.4th at 1375–76. Further, Shibumi fails to allege proof that its theory of modification "was in fact so used by some device users" as required by the Federal Circuit. *Ericsson*, 773 F.3d at 1216.



Example 4: Tying the straps of the carry bag that has been filled with sand to the frame

Carry bag coupleable to one or both of the frame and the canopy

Carry bag acting as anchor and engaged with the surface

(DE 1-3 at B-8)

**Fourth**, Example 4 requires "Tying the straps of the carry bag that has been filled with sand to the frame[.]" *Id*. Thus, by Shibumi's own admission, in order to concoct an infringement theory, Shibumi requires a potential user to, after assembling the Accused Product, take the housing bag, somehow tie a looped strap of the bag to a leg of the frame, and fill the bag with sand and assume the sand stays in the bag. This, of course, is another example of significant modifications that Shibumi alleges need to be made by a potential user in violation of *INVT SPE,* 46 F.4th at 1375–76. Further, Shibumi fails to allege proof that its theory of modification "was in fact so used by some device users" as required by the Federal Circuit. *Ericsson*, 773 F.3d at 1216.

In short, each of Shibumi's "Examples" requires a beachcomber to be an engineer, discovering on her own how she might use the materials (or in the case of Example 1, obtain materials) included in the Accused Product to miraculously meet the claims of the '924 Patent. Shibumi does not allege that MSA provides instructions in how these Examples might be

22

assembled and, fatally, does not allege that anyone other than Shibumi's patent enforcement team has ever contorted and assembled the simple carrying bag in this way.

Shibumi's theories bring to mind the scene from the movie *Apollo 13*, where NASA engineers are tasked with making a square filter fit in a void of a round filter with only a handful of parts.



This type of on-the-fly engineering required by an end user of a beach shade, the Federal Circuit has repeatedly said, cannot supply the "capable of" claim language. For all of these reasons, Shibumi has not plausibly alleged that the accused product includes "a container ***capable of*** housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration" when viewed through the lens of Federal Circuit precedent. *INVT SPE*, 46 F.4th at 1375–76; *ParkerVision*, 903 F.3d at 1362; *High Tech Med. Instrumentation*, 49 F.3d at 1555–56; *Telemac Cellular*, 247 F.3d at 1330; *Ericsson*, 773 F.3d at 1216.

For this reason also, Shibumi has failed to plausibly state a claim for infringement.

## V. CONCLUSION

The Complaint (DE 1) should be dismissed *with prejudice*.

This the 12th day of December, 2024.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Samuel Alexander Long, Jr.
Samuel Alexander Long, Jr. (N.C. Bar No. 46588)
Tom BenGera (N.C. Bar No. 57019)
SHUMAKER, LOOP, & KENDRICK, LLP
101 S Tryon Street, Suite 2200
Charlotte, NC 28280
Tel: 704-375-0057
Fax: 704-332-1197
Email: along@shumaker.com
        tbengera@shumaker.com

*Attorneys for Defendant*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, the foregoing was electronically filed via the

Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Samuel Alexander Long, Jr.
Samuel Alexander Long, Jr. (N.C. Bar No. 46588)
SHUMAKER, LOOP, & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, NC 28280
Tel: 704-375-0057
Fax: 704-332-1197
Email: along@shumaker.com

25