# EXHIBIT 5

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

| Inventor | 1 | | | Remove |
|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Dane | Brooks | Barnes | ▾ |

Residence Information (Select One)  ● US Residency   Non US Residency   Active US Military Service

| City | Raleigh | State/Province | NC | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 921 Washington Street, #202 |
|---|---|
| Address 2 | |
| City | Raleigh | State/Province | NC |
| Postal Code | 27605 | Country i | US |

| Inventor | 2 | | | Remove |
|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Alexander | Griffith | Slater | ▾ |

Residence Information (Select One)  ◉ US Residency   Non US Residency   Active US Military Service

| City | Raleigh | State/Province | NC | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 614 Holden Street |
|---|---|
| Address 2 | |
| City | Raleigh | State/Province | NC |
| Postal Code | 27604 | Country i | US |

| Inventor | 3 | | | Remove |
|---|---|---|---|---|

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| ▾ | Scott | Christian | Barnes | ▾ |

Residence Information (Select One)  ◉ US Residency   Non US Residency   Active US Military Service

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

| **City** | Raleigh | **State/Province** | NC | **Country of Residence** i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 921 Washington Street, #202 |
|---|---|
| **Address 2** | |
| **City** | Raleigh | **State/Province** | NC |
| **Postal Code** | 27605 | **Country** i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    | Add |

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| **Customer Number** | 26158 | | |
|---|---|---|---|
| **Email Address** | IPDocketing@wbd-us.com | Add Email | Remove Email |

## Application Information:

| **Title of the Invention** | SHADING SYSTEM AND METHOD OF USE | | |
|---|---|---|---|
| **Attorney Docket Number** | S105508 1010US.C1 (0002.2 | **Small Entity Status Claimed** | ☒ |
| **Application Type** | Nonprovisional | | ▼ |
| **Subject Matter** | Utility | | ▼ |
| **Total Number of Drawing Sheets (if any)** | 7 | **Suggested Figure for Publication (if any)** | 1 |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| Customer Number | 26158 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
| --- | --- | --- | --- |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of | 15/675715 | 2017-08-12 |
| Prior Application Status | Expired | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| 15/675715 | Claims benefit of provisional | 62/409426 | 2016-10-18 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | Add |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

# Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant** | 1 | Remove |
|---|---|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| | ▼ |
|---|---|

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.  ☒

| Organization Name | Shibumi Shade, LLC |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | 614 Holden Street | | |
|---|---|---|---|
| Address 2 | | | |
| City | Raleigh | State/Province | NC |
| Country | US | Postal Code | 27604-1949 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 7 of 227

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

## Assignee 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

**Remove**

If the Assignee or Non-Applicant Assignee is an Organization check here. ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
|---|---|
| Address 2 | |

| **City** | | **State/Province** | |
|---|---|---|---|
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

**Add**

# Signature:

**Remove**

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /lauren f. anderson/ | | | Date (YYYY-MM-DD) | 2018-12-18 |
|---|---|---|---|---|---|
| First Name | Lauren | Last Name | Anderson | Registration Number | 69,344 |

Additional Signature may be generated within this form by selecting the Add button.

**Add**

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 9 of 227

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.2.13

**ABSTRACT**

A system for providing shade onto a surface is described herein. The system includes a canopy configured for engagement with, and aerial suspension by, a frame. The frame includes a plurality of sections configured for end-to-end alignment from a left end to a right end of the frame. Each section is configured to engage with any adjacent sections to form the frame. The ends of the frame are secured to the surface, thereby aerially suspending the canopy and providing shade to the surface.

## CLAIMS

The invention claimed is:

1. A system for providing shade onto a surface, comprising:

   a canopy configured for engagement with, and aerial suspension by, a frame;

   the frame consisting essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent sections,

   wherein the left end and the right end are configured to be secured to the surface for aerially suspending the frame and the canopy.

2. The system of claim 1, further comprising a cable extending through the plurality of sections of the frame from the left end to the right end.

3. The system of claim 1, further comprising a cord coupled to an anchor and engageable with, or coupled to, the canopy or frame, the anchor configured for housing weight.

4. The system of claim 1, wherein the canopy includes at least one loop on a suspension end, the loop configured for accepting a portion of the frame therethrough.

5. The system of claim 4, wherein the canopy further includes at least one hoop positioned at an apex of the suspension end engageable with, or coupled to, a cord, the cord engageable with, or couple to, an anchor for housing weight.

6. The system of claim 1, further comprising at least one strap engageable with the canopy and configured to wrap about the frame for securing the canopy into position relative to the frame.

- 12 -

7. The system of claim 6, wherein the at least one strap includes a strap fastener on one end configured for fastening to a canopy fastener on the other end for securing the canopy into the position relative to the frame.

8. The system of claim 6, wherein the at least one strap has a higher friction of coefficient with respect to the frame relative to the canopy with respect to the frame.

9. The system of claim 6, wherein the at least one strap is elastic.

10. The system of claim 1, wherein all but one of the sections includes a female end for accepting a male end of one of the adjacent sections therein.

11. The system of claim 1, further comprising a container for housing and transporting all of the other components of the system.

12. The system of claim 11, wherein the container is also an anchor for housing weight, the container engageable with, or coupled to, a cord, the cord engageable with, or coupled to, the canopy or frame.

13. The system of claim 12, wherein the cord is coupled to an interior of the container for inverting the container to serve as the anchor for housing weight.

14. The system of claim 11, wherein the container includes an interior compartment for housing the sections separate from the canopy.

15. A method of providing shade to a surface, comprising:
    coupling adjacent sections of a plurality of sections into end-to-end alignment to form a
        frame from a first end to a second end;
    sliding the frame through one or more loops of a canopy;
    securing the left end and the right end of the frame to the surface,

thereby aerially suspending the canopy and providing shade to the surface.

16. The method of claim 15, further comprising filling an anchor with weight, the anchor selectively engageable with, or secured to, the canopy or the frame via a cord.

17. The method of claim 15, wherein the coupling adjacent sections includes a receiving end of all but one of the sections accepting one of the adjacent sections therein.

18. The method of claim 15, further comprising unpacking the frame and the canopy from a container configured for transporting the frame and the canopy.

19. The method of claim 15, further comprising wrapping at least one strap engaged with the canopy about the frame for securing the canopy into position relative to the frame.

20. The method of claim 19, further comprising fastening the at least one strap for locking the strap into position.

- 14 -

# SHADING SYSTEM AND METHOD OF USE

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]     This application is a non-provisional of U.S. Provisional Patent Application 62/409,426 filed October 18, 2016, the contents of which are hereby incorporated by reference in its entirety.

## TECHNICAL FIELD

[0002]     The presently disclosed subject matter is directed towards a system and method for providing shade from the sun.  Specifically, a transportable system and method of use for providing shade from the sun is disclosed that includes a canopy supported by a singular frame and an engaged counterweight.

## BACKGROUND

[0003]     Avoiding direct sunlight when outdoors is a ubiquitous problem faced by anyone who spends significant time outdoors. Shading systems of the prior art are typically ineffective or impractical to use for a number of reasons. Some systems include rigid canopy susceptible to being shifted or unanchored by wind. Other systems are cumbersome to transport or assemble, due to the number of parts involved, steps required during setup and/or low shade to weight ratios.

[0004]     Accordingly, there remains a need for systems and methods including flexible canopy structures capable of being at least partially supported by wind and configured for easy of transport and assembly.

## SUMMARY

[0005]     This Summary is provided to introduce a selection of concepts in a simplified form that are further described below in the Detailed Description. This Summary is not intended to identify key features or essential features of the claimed subject matter, nor is it intended to be used to limit the scope of the claimed subject matter. Further, the claimed subject matter is not

- 1 -

limited to implementations that solve any or all disadvantages noted in any part of this disclosure.

[0006] According to at least one embodiment of the disclosed subject matter, a system for providing shade onto a surface is provided. The system includes a canopy configured for engagement with, and aerial suspension by, a frame; the frame consisting essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent sections, wherein the left end and the right end are configured to be secured to the surface for aerially suspending the frame and the canopy.

[0007] According to at least one embodiment of the disclosed subject matter, a method of providing shade to a surface is provided. The method includes coupling adjacent sections of a plurality of sections into end-to-end alignment to form a frame from a first end to a second end; sliding the frame through one or more loops of a canopy; securing the left end and the right end of the frame to the surface, thereby aerially suspending the canopy and providing shade to the surface.

[0008] According to at least one embodiment of the disclosed subject matter, the system further includes a cable extending through the plurality of sections of the frame from the left end to the right end.

[0009] According to at least one embodiment of the disclosed subject matter, the system further includes a cord coupled to an anchor and engageable with, or coupled to, the canopy or frame, the anchor configured for housing weight.

[0010] According to at least one embodiment of the disclosed subject matter, the system further includes at least one loop on a suspension end of the canopy, the loop configured for accepting a portion of the frame therethrough.

[0011] According to at least one embodiment of the disclosed subject matter, wherein the canopy further includes at least one hoop positioned at an apex of the suspension end engageable with, or coupled to, a cord, the cord engageable with, or couple to, an anchor for housing weight.

[0012] According to at least one embodiment of the disclosed subject matter, the system further includes at least one strap engageable with the canopy and configured to wrap about the frame for securing the canopy into position relative to the frame.

- 2 -

[0013]    According to at least one embodiment of the disclosed subject matter, wherein the at least one strap includes a strap fastener on one end configured for fastening to a canopy fastener on the other end for securing the canopy into the position relative to the frame.

[0014]    According to at least one embodiment of the disclosed subject matter, wherein the at least one strap has a higher friction of coefficient with respect to the frame relative to the canopy with respect to the frame.

[0015]    According to at least one embodiment of the disclosed subject matter, wherein the at least one strap is elastic.

[0016]    According to at least one embodiment of the disclosed subject matter, wherein all but one of the sections includes a female end for accepting a male end of one of the adjacent sections therein.

[0017]    According to at least one embodiment of the disclosed subject matter, the system further includes a container for housing and transporting all of the other components of the system.

[0018]    According to at least one embodiment of the disclosed subject matter, wherein the container is also an anchor for housing weight, the container coupled to a cord, the cord engageable with, or coupled to, the canopy or frame.

[0019]    According to at least one embodiment of the disclosed subject matter, wherein the cord is attached to an interior bottom of the container for inverting the container to serve as the anchor for housing weight.

[0020]    According to at least one embodiment of the disclosed subject matter, wherein the container includes an interior compartment for housing the sections separate from the canopy.

[0021]    According to at least one embodiment of the disclosed subject matter, the method further includes filling an anchor with weight, the anchor selectively engageable with, or secured to, the canopy or the frame via a cord.

[0022]    According to at least one embodiment of the disclosed subject matter, wherein coupling adjacent sections includes a receiving end of all but one of the sections accepting one of the adjacent sections therein.

- 3 -

[0023]       According to at least one embodiment of the disclosed subject matter, the method further includes unpacking the frame and the canopy from a container configured for transporting the frame and the canopy.

[0024]       According to at least one embodiment of the disclosed subject matter, the method further includes wrapping at least one strap engaged with the canopy about the frame for securing the canopy into position relative to the frame.

[0025]       According to at least one embodiment of the disclosed subject matter, the method further includes fastening the at least one strap for locking the strap into position.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0026]       The foregoing, as well as the following Detailed Description of preferred embodiments, is better understood when read in conjunction with the appended drawings. For the purposes of illustration, there is shown in the drawings exemplary embodiments; however, the presently disclosed subject matter is not limited to the specific methods and instrumentalities disclosed.

[0027]       FIG. 1 is a perspective view of a system for providing shade according to one or more embodiments of the presently disclosed subject matter.

[0028]       FIG. 2 is a front view of a frame in a transport configuration according to one or more embodiments of the presently disclosed subject matter.

[0029]       FIG. 3 is a perspective view of at least one strap engageable with a canopy according to one or more embodiments of the presently disclosed subject matter.

[0030]       FIG. 4 is a perspective view of a loop coupled to the canopy for engaging a cord according to one or more embodiments of the presently disclosed subject matter.

[0031]       FIG. 5 is a perspective view of a container serving as an anchor according to one or more embodiments of the presently disclosed subject matter.

[0032]       FIG. 6 is a perspective view of the container housing the system for shading according to one or more embodiments of the presently disclosed subject matter.

[0033]       FIG. 7 is a perspective view of the container having a compartment for housing sections of the frame according to one or more embodiments of the presently disclosed subject matter.

- 4 -

## DETAILED DESCRIPTION

[0034]     These descriptions are presented with sufficient details to provide an understanding of one or more particular embodiments of broader inventive subject matters. These descriptions expound upon and exemplify particular features of those particular embodiments without limiting the inventive subject matters to the explicitly described embodiments and features. Considerations in view of these descriptions will likely give rise to additional and similar embodiments and features without departing from the scope of the inventive subject matters. Although the term "step" may be expressly used or implied relating to features of processes or methods, no implication is made of any particular order or sequence among such expressed or implied steps unless an order or sequence is explicitly stated.

[0035]     Any dimensions expressed or implied in the drawings and these descriptions are provided for exemplary purposes. Thus, not all embodiments within the scope of the drawings and these descriptions are made according to such exemplary dimensions. The drawings are not made necessarily to scale. Thus, not all embodiments within the scope of the drawings and these descriptions are made according to the apparent scale of the drawings with regard to relative dimensions in the drawings. However, for each drawing, at least one embodiment is made according to the apparent relative scale of the drawing.

[0036]     FIG. 1 depicts one embodiment of a system 10 for providing shade 1 onto a surface 2. The system 10 may include a canopy 12 configured for engagement with, and aerial suspension by, a frame 14. The canopy 12 may include one or more lightweight materials, the material including one or more of the following properties: ripstop, polyester, blackout, light diffusion, light modification, and waterproof. The canopy 12 may be unitarily constructed or may include a plurality of coupled sections 44 and/or selectively engageable sections 44.

[0037]     According to some embodiments, the canopy 12 may define a suspension end 42 positioned proximal to the frame 14 when the canopy 12 is engaged with the frame 14. The suspension end 42 may include one or more suspension fasteners 46 for engaging the canopy 12 with the frame 14. Fasteners 46, 52, 54, as used herein, may include any fasteners of the prior art, including but not limited to hooks and loops, male and female buttons, hook and slit or aperture, and/or magnets. FIG. 1 depicts the canopy 12 defining at least one loop 40 on the suspension end

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 19 of 227

42 of the canopy, the loop 40 configured for accepting a portion 26 of the frame 14 therethrough. Although the loop 40 of FIG. 1 extends the entire length of the suspension end 42, the loop 40, or plurality of loops 40, may only extend a smaller distance of the suspension end 42. In some embodiments, one or more loops 40 may include tie strings for engaging the suspension end 42 with the frame 14.

[0038]    The canopy 12 may be configured to suspend or be stored in any number of shapes and sizes. In some embodiments, the canopy 12 may define one or more vent holes and/or wind socks for permitting wind to pass therethrough. In other embodiments, the canopy 12 may define tails extending from a side opposite the suspension end 42.

[0039]    While the suspension end 42, suspension fasteners 46 and loop(s) 40 engage the canopy 12 to the frame 14, in some embodiments, additional securing mechanisms may be desired to secure the canopy 12 into position relative to the frame 14. FIGS. 1 and 3 depict embodiments of the system 10 including at least one strap 50 engageable with, or coupled to, the canopy 12 for securing the canopy 12 into position relative to the frame 14. The at least one strap 50 may be elastic rubber, gear ties, bungee cord, rope or any other material capable of wrapping about the frame 14 or other component of the system 10. The at least one strap 50 may engage or couple to the canopy 12 on either or both ends of the suspension end 42 and/or to the loop 40 of the suspension end 42. Each of the straps 50 may be configured to wrap about the frame 14, or engage the frame 14 using a strap fastener 52 and/or a canopy or frame fastener 54. In some embodiments, a strap 50 may include a canopy fastener 54 for engaging the canopy 12 (e.g., a ball at one end of the strap 50 for engaging a grommeted aperture of the canopy 12), and the strap 50 may be manipulated about the frame 14. Alternatively, a strap 50 may include both a strap fastener 52 on one end and a canopy fastener 54 on the other end for wrapping the strap 50 about the frame 14 and fastening the fasteners 52, 54 together (see, e.g., FIG. 3). In yet another alternative, the strap 50 may include be coupled or engaged to the canopy 12 on one end and include a frame fastener 54 on the other end for engaging the canopy 12 to the frame 14.

[0040]    The at least one strap 50 may be comprised of any number of materials, including but not limited to one or more of the following: fabric, rubber, plastic, and metal. In some embodiments, the at least one strap 50 may have a higher friction of coefficient with respect to the frame 14 relative to the canopy 12 with respect to the frame 14. For example, if the canopy

- 6 -

12 includes polyester fabric and the at least one strap 50 includes rubber, then the friction of coefficient with a metal or plastic frame 14 would be higher for the strap than for the canopy 12. In some embodiments, the at least one strap 50 may be elastic. Being able to stretch the at least one strap 50 about the frame 14 when engaging the strap 50 thereto can greatly increase the friction between the strap 50 and the frame 14, particularly if the strap 50 is also fastened to itself after wrapping.

[0041]     According to some embodiments, the frame 14 of the system 10 may include, or consist essentially of, a plurality of sections 24 configured for end-to-end alignment from a left end 20 of the frame 14 to a right end 22 of the frame 14. Each of the sections 24 may be further configured to engage with any adjacent sections 24. When two or more or all of the sections 24 are aligned end-to-end and engaged with adjacent sections 24, the frame 14 may be positioned to receive and support the canopy 12. In some embodiments, the sections 24 are arranged telescopically, where each adjacent section 24 may be housed within, and extend from each adjacent section 24. In other embodiments, as depicted in FIG. 2, many of the sections include both a male end 62 and a female end 60 for engaging adjacent sections 24 to each other to construct the supporting frame 14. In some embodiments, all but one of the sections 24 includes a female end 60 for accepting a male end 62 of one of the adjacent sections 24 therein.

[0042]     During transport, the sections 24 may be compactly configured as depicted in FIG. 2. A first section 64 may define the left end 20 of the frame 14 and a last section 66 may define the right end 22 of the frame 14. The first section 64 may include a single male end 62 or female end 60, with the other end being the left end 20 and/or cap 68 (FIG. 2 depicts first section 64 having a male end 62 and cap 68). A last section 66 may similarly include a single male end 62 or female end 60, with the other end being the right end 22 and/or cap 68 (FIG. 2 depicts last section 66 having a female end 60 and cap 68). The cap may serve to close off an end of the first and/or last section 64, 66 for preventing sand from entering therein and for securing the cable 30, as described below.

[0043]     As depicted in FIG. 2, the system 10 may further include a cable 30 extending through the plurality of sections 24 of the frame 12 from the left end 20 to the right end 22. The cable 30 may be elastic so that the sections 24 may be maneuvered between a transport configuration (e.g., FIG. 2) and a supporting configuration (e.g., FIG. 1), yet still remain adjacent

and aligned end-to-end, the cable 30 providing supporting tension to the end-to-end alignment of the supporting configuration. The cable 30 may be affixed to an interior and/or cap 68 of the first section 64 and second section 66. The cable 30 may also be affixed to interiors of any of the other sections 24.

[0044]    When the frame 14 is in the transport configuration, and a cable 30 extends through the sections 24 of the frame 14, the male and female ends 60, 62, and/or the cable 30 itself, may be configured to prevent degradation or injury to the cable 30. Looking to FIG. 2, any pressure applied to the sections 24 from the top of the figure or the bottom of the figure may create injury to the cable 30 where it is exposed between the male and female ends 60, 62. Therefore, the female ends 60 and/or male ends 62 may define grooves for permitting passage of the cable therebetween such that any objects applying pressure from the top or bottom of the figure would apply that pressure directly to the ends 60, 62 and not onto the cable 30, effectively clipping the cable between the end 60, 62 and the object. The cable 30 may include reinforcements at the exposed sections between the ends 60, 62 when in the transport configuration. The reinforcements may include additional layers of fabric, metal-reinforced cylinders, and/or thicker elastic bands.

[0045]    In some embodiments of the system 10, the sections 24 of the frame 12 may form a curved shape when in the supporting configuration. In other embodiments, the sections 24 may form other shapes or designs when in the supporting configuration. A curved shape may be formed when the male and female ends 60, 62 are co-extensive with curved axis the remaining portions of the sections 24. To form other designs, the female ends 60 and/or male ends 62 may be shaped for creating non-co-extensive angles with respect to the axis of the remaining portions of the sections 24. For example, a female end 60 engaging two sections may be shaped in a right angle, thereby creating an 'L' shape when the two adjacent sections are engaged. Other female ends 60 may be shaped at other angles, thereby creating a design or pattern when all of the sections 24 are engaged and the frame is in the supporting configuration.

[0046]    Referencing FIGS. 4 and 5, the system 10 may further include a cord 32 engaged with, or coupled to, an anchor 34, the canopy 12, and/or the frame 14 for providing support to the frame 14 when in the supporting configuration. The anchor 34 may be configured for housing weight 36. The cord 32 may be engaged with or coupled to the canopy 12 and/or frame 14 at an

apex of the canopy 12 and/or frame 14. For example, if the ends 20, 22 of the frame 14 are secured within sand on a beach, the anchor 34 may be filled with sand acting as the weight 36. The system 10 may further include a hoop 33 or other fastener, such as the fasteners described herein, engaged with, or coupled to, the canopy 12 or frame 14 with which the cord 12 may be engaged or coupled (e.g., see FIG. 4 embodiment where the hoop 33 is coupled to the canopy 12).

[0047]　　　　FIG. 6 depicts an embodiment of the system 10 further including a container 70 for housing and transporting all of the other components of the system 10. The container 70 may include a band 76 for transporting the container 70 about the shoulder or in the palm of a user 3. The band 76 may be configured to be a handle and/or may be selectively engageable with the container 70 for storage therein. The container 70 may include a drawstring 78 or other closing mechanism for securing the contents of the system 10 therewithin.

[0048]　　　　The container 70 may also be the anchor 34 for housing weight 36 (see, e.g., FIG. 5). In some embodiments, the container 70 may be inverted for housing weight 36 for ensuring that minimal amounts of weight 36 remain in the container once re-inverted so that the contents of the system 10 are not disturbed by any weight 36 during transportation and/or storage of the system 10. The cord 32 may be engaged with or coupled to an interior 72 of the container 70 for inverting the container 70. The cord 32 may be engaged with or coupled to the bottom 74 of the container 70 for permitting full inversion, or at a mid-point 75 of the container 70 for permitting half inversion of the container 70 (see, e.g., FIG. 7). In other embodiments, the cord 32 may be selectively engaged or coupled with an exterior 73 of the container 70.

[0049]　　　　For example, when the contents of the system 10 are removed from the container 70, the cord 32 may be pulled away from the container 70 while the container 70 is held into position (or pushed away from the cord 32), thereby inverting the container 70 to serve as the anchor 34. When the cord 32 is engaged or coupled to an interior 72 and bottom 74, the pulling of the cord 32 may result in the full inversion of the container 70. When the cord is engaged or coupled to an interior 72 and mid-point 75, the pulling of the cord 32 may result in a half inversion of the container 70. If the container 70 includes a compartment 77 as described herein, then the inversion of the container 70 may result in the compartment 77 being exterior to the anchor 34 and any weight 36.

[0050]     FIG. 7 illustrates the container 70 including a compartment 77 positioned on the interior 72 for housing the sections 24 separate from the canopy 12. The compartment 77 may be engageable with or coupled to the interior 72 of the container 70. The compartment 77 may be sewn to the interior 72 of the container 70 along a single seam or multiple seams. A drawstring or other closing mechanism 78 may be included on the container 70 for cinching close an open side 79 of the container. Although FIG. 7 depicts the seam of the compartment 77 only connecting a portion of the compartment length to the container 70, other embodiments may include the entire length of the compartment 77 being sewn to the container 70.

[0051]     The left end 20 and the right end 22 of the frame 14 may be each be embedded in the surface 2. The ends 20, 22 may define a conical shape or a corkscrew shape for ease of penetration of the surface 2. Additional anchor(s) 35 may be engaged or coupled to the left end 20 and/or right end 22 for further securing the frame 14 into position. In embodiments where a tail is defined by the canopy 12, the tail may be engaged with or coupled to an additional anchor 34 for securing the canopy 12 into position for providing shade 1 to the surface 2. In yet additional embodiments, an additional suspension end 43 may be defined by the canopy 12. The additional suspension end 43 may include any of the features and characteristics described herein attributed to the suspension end 42. For example, the additional suspension end 43 may form an additional loop 41 for engaging or coupling an additional frame 15, thereby further suspending the canopy 12 from both the frame 14 and the additional frame 15.

[0052]     In addition to the methods of using the system 10 described herein, the following additional methods of using the system 10 are provided. A method of providing shade 1 to a surface 2 may include unpacking or removing the frame 14 and the canopy 12 from the container 70. Adjacent sections 24 of the plurality of sections 24 may be engaged or coupled into end-to-end alignment to configure the frame 14 from a left end 20 to a right end 22 into a supporting configuration. The frame 14 may slide through one or more loops 40 of the canopy 12 and/or may be engaged with the suspension end 42 of the canopy 12. The ends 20, 22 of the frame 14 may be secured to the surface 2, thereby aerially suspending the canopy 12 and providing shade 1 to the surface 2.

[0053]     The canopy 12 may be secured into position relative to the frame 14 by wrapping at least one strap 50 about the frame 14 and/or fastening the at least one strap 50 to or about the

- 10 -

frame 14. The cord may be engaged with the canopy 12, frame 14 and/or anchor 34. The anchor 34 may be filled with weight 36. Additional anchors 35 may be engaged with the ends 20, 22, additional frame 15 and/or tail of the canopy 12. The additional anchors 35 may be filled with weight 36.

[0054]      Particular embodiments and features have been described with reference to the drawings. It is to be understood that these descriptions are not limited to any single embodiment or any particular set of features, and that similar embodiments and features may arise or modifications and additions may be made without departing from the scope of these descriptions and the spirit of the appended claims.



FIG. 1



## FIG. 2



**FIG. 3**



FIG. 4



FIG. 5



**FIG. 6**



FIG. 7

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 32 of 227

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1                                    EPAS ID: PAT4547643
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

## CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| DANE BROOKS BARNES | 08/08/2017 |
| ALEXANDER GRIFFITH SLATER | 08/08/2017 |
| SCOTT CHRISTIAN BARNES | 08/08/2017 |

## RECEIVING PARTY DATA

| | |
|---|---|
| Name: | SHIBUMI SHADE, LLC |
| Street Address: | 614 HOLDEN ST |
| City: | RALEIGH |
| State/Country: | NORTH CAROLINA |
| Postal Code: | 27604-1949 |

## PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 15675715 |

## CORRESPONDENCE DATA

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 919-348-2194 |
| Email: | lgravatt@nkpatentlaw.com |
| Correspondent Name: | NK PATENT LAW |
| Address Line 1: | 4917 WATERS EDGE DRIVE |
| Address Line 2: | SUITE 275 |
| Address Line 4: | RALEIGH, NORTH CAROLINA 27606 |

| ATTORNEY DOCKET NUMBER: | 785/2 UTIL |
|---|---|
| NAME OF SUBMITTER: | WILLIAM LYLE GRAVATT |
| SIGNATURE: | /William Lyle Gravatt/ |
| DATE SIGNED: | 08/12/2017 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 3**
source=785-2UTIL-20170812-Dec-Asssign-signed#page1.tif
source=785-2UTIL-20170812-Dec-Asssign-signed#page2.tif

source=785-2UTIL-20170812-Dec-Asssign-signed#page3.tif

785/2 UTIL

# DECLARATION AND ASSIGNMENT OF RIGHTS

As a below named inventor (hereinafter designated as the undersigned or the Assignor, where appropriate), I hereby declare that:

The application is as identified by the attorney docket number, title, Filing Date, or Application Title as set forth in the following Table I.

The application in Table I was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the applications in Table I.

The undersigned hereby acknowledges that any willful false statement made in this declaration is punishable under 18 U.S.C. § 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, the undersigned, **Dane Brooks Barnes, Alexander Griffith Slater and Scott Christian Barnes**, (hereinafter "Assignor") has invented certain new and useful improvements described in the application(s) identified in Table I.

AND, WHEREAS, **SHIBUMI SHADE, LLC**, having a place of business at 614 Holden Street, Raleigh, NC 27604-1949 (hereinafter "Assignee"), has already acquired an interest in the application(s) identified in Table I by and through an employment or other agreement between Assignor and Assignee. I further authorize an agent of the Assignee to insert the filing date, application number, and any other identifying particulars as required for perfecting these assignment papers.

However, in the avoidance of doubt and as confirmation of the already acquired interest by Assignee, NOW, THEREFORE, To Whom It May Concern, be it known that for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor has assigned and by these presents does hereby sell, assign, transfer, and convey unto the Assignee, its successors and assigns, his entire right, title, and interest in and to the invention and application, including the right to sue for past infringements and any other prior occurring rights, provided any such rights exist, and in and to any and all domestic and foreign patent applications filed on the invention, and in and to any and all continuations, continuations-in-part, or divisions thereof, and in and to any and all Letters Patent of the United States of America, and all foreign countries or reissues thereof which may be granted therefor or thereon, for the full end of the term for which said Letters Patent may be granted, together with his right to claim the priority of said application in all foreign countries in accordance with the International

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 35 of 227

Convention, the same to be held and enjoyed by said Assignee, its successors and assigns, as fully and entirely as the same would have been held and enjoyed by Assignor if this assignment and sale had not been made. Assignor further assigns to Assignee the right to claim entitlement and/or priority to any applications that entitlement or priority may be claimed for this or any later filed application, including the assignment of any provisionals or other priority documents to which the inventions claim priority to. The assignment of the right to claim entitlement and/or priority is executed *nunc pro tunc* and is considered effective as of the filing date of the earliest application to which priority and/or entitlement is claimed.

Assignor hereby requests that said Letters Patent be issued in accordance with this assignment.

Assignor further covenants and agrees that, at the time of the execution and delivery of these presents, Assignor possesses full title to the invention and application above-mentioned, and that he has the unencumbered right and authority to make this assignment.

Assignor further covenants and agrees, and likewise binds his heirs, legal representatives and assigns, to promptly communicate to said Assignee or its representatives any facts known to him relating to said invention, to testify in any interference or legal proceedings involving said invention, to execute any additional papers which may be requested to confirm the right of the Assignee, its representatives, successors and assigns to secure patent or similar protection for the said invention in all countries and to vest in the Assignee complete title to the said invention and Letters Patent, without further compensation, but at the expense of said Assignee, its successors, assigns and other legal representatives.

<<<<<<<< TABLE I and Signature Page follows >>>>

## TABLE I

| Application No. | Attorney Docket No. | Filing Date | Title |
|---|---|---|---|
| 15/675,715 | 785/2 UTIL | 2017-08-12 | SHADING SYSTEM AND METHOD OF USE |

Executed this __8__ day of ____August____, 2017.

_Dane Barnes_

**Dane Brooks Barnes**

_Alex Slater_

**Alexander Griffith Slater**

_Scott Barnes_

**Scott Christian Barnes**

**(Assignors)**

Executed this __8__ day of ____August____, 2017.

**SHIBUMI SHADE, LLC**

_____

Name: _Dane Barnes_

Title: Officer, Shibumi Shade, LLC

**(Assignee)**

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 37 of 227

PTO/AIA/15 (10-17)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| *Attorney Docket No.* | **S105508 1010US.C1 (0002.2)** |
| *First Named Inventor* | **Dane Brooks Barnes** |
| *Title* | SHADING SYSTEM AND METHOD OF USE |
| *Priority Mail Express® Label No.* | |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:** **Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

1. [✔] **Fee Transmittal Form**
(PTO/SB/17 or equivalent)

2. [✔] **Applicant asserts small entity status.**
See 37 CFR 1.27

3. [ ] **Applicant certifies micro entity status.** See 37 CFR 1.29.
Applicant must attach form PTO/SB/15A or B or equivalent.

4. [✔] **Specification** [*Total Pages* 15]
Both the claims and abstract must start on a new page.
*(See MPEP § 608.01(a) for information on the preferred arrangement)*

5. [✔] **Drawing(s)** (35 U.S.C. 113) [*Total Sheets* 7]

6. **Inventor's Oath or Declaration** [*Total Pages* 5]
*(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*

  a. [ ] Newly executed (original or copy)

  b. [✔] A copy from a prior application (37 CFR 1.63(d))

7. [✔] **Application Data Sheet** * See note below.
See 37 CFR 1.76 (PTO/AIA/14 or equivalent)

8. **CD-ROM or CD-R**
in duplicate, large table, or Computer Program (*Appendix*)
[ ] Landscape Table on CD

9. **Nucleotide and/or Amino Acid Sequence Submission**
*(if applicable, items a. – c. are required)*

  a. [ ] Computer Readable Form (CRF)

  b. [ ] Specification Sequence Listing on:

    i. [ ] CD-ROM or CD-R (2 copies); or

    ii. [ ] Paper

  c. [ ] Statements verifying identity of above copies

## ACCOMPANYING APPLICATION PAPERS

10. [ ] **Assignment Papers**
(cover sheet & document(s))
Name of Assignee _____

11. [ ] **37 CFR 3.73(c) Statement**  [✔] **Power of Attorney**
(*when there is an assignee*)

12. [ ] **English Translation Document**
(*if applicable*)

13. [✔] **Information Disclosure Statement**
(PTO/SB/08 or PTO-1449)
[ ] Copies of citations attached

14. [✔] **Preliminary Amendment**

15. [ ] **Return Receipt Postcard**
(*MPEP § 503*) (*Should be specifically itemized*)

16. [ ] **Certified Copy of Priority Document(s)**
(*if foreign priority is claimed*)

17. [ ] **Nonpublication Request**
Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.

18. [ ] **Other:** _____
_____
_____
_____

***Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).*

### 19. CORRESPONDENCE ADDRESS

[✔] The address associated with Customer Number: 26158     **OR** [ ] Correspondence address below

| Name | |
|---|---|
| Address | |

| City | | State | | Zip Code | |
|---|---|---|---|---|---|
| Country | | Telephone | | Email | |

| Signature | /lauren f. anderson/ | Date | December 18, 2018 |
|---|---|---|---|
| Name (Print/Type) | Lauren F. Anderson | Registration No. (Attorney/Agent) | 69,344 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.,* GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/SB/17 (01-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# FEE TRANSMITTAL

| Complete if known | |
|---|---|
| Application Number | To Be Assigned |
| Filing Date | Concurrently Herewith |
| First Named Inventor | Dane Brooks Barnes |
| Examiner Name | To Be Assigned |
| Art Unit | To Be Assigned |

■ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

| TOTAL AMOUNT OF PAYMENT | ($) 785 | Practitioner Docket No. | S105508 1010US.C1 (0002.2) |
|---|---|---|---|

**METHOD OF PAYMENT** (check all that apply)

☐ Check ☐ Credit Card ☐ Money Order ☐ None ☐ Other (please identify): _____

■ Deposit Account  Deposit Account Number: 09-0528 _____ Deposit Account Name: _____

For the above-identified deposit account, the Director is hereby authorized to (check all that apply):

■ Charge fee(s) indicated below          ☐ Charge fee(s) indicated below, **except for the filing fee**

■ Charge any additional fee(s) or underpayment of fee(s)   ■ Credit any overpayment of fee(s)
under 37 CFR 1.16 and 1.17

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

**FEE CALCULATION**

**1. BASIC FILING, SEARCH, AND EXAMINATION FEES (U = undiscounted fee; S = small entity fee; M = micro entity fee)**

| | FILING FEES | | | SEARCH FEES | | | EXAMINATION FEES | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Application Type** | **U ($)** | **S ($)** | **M ($)** | **U ($)** | **S ($)** | **M ($)** | **U ($)** | **S ($)** | **M ($)** | **Fees Paid ($)** |
| Utility | 300 | 150* | 75 | 660 | 330 | 165 | 760 | 380 | 190 | 785 |
| Design | 200 | 100 | 50 | 160 | 80 | 40 | 600 | 300 | 150 | _____ |
| Plant | 200 | 100 | 50 | 420 | 210 | 105 | 620 | 310 | 155 | _____ |
| Reissue | 300 | 150 | 75 | 660 | 330 | 165 | 2,200 | 1,100 | 550 | _____ |
| Provisional | 280 | 140 | 70 | 0 | 0 | 0 | 0 | 0 | 0 | _____ |

* The $150 small entity status filing fee for a utility application is further reduced to $75 for a small entity status applicant who files the application via EFS-Web.

**2. EXCESS CLAIM FEES**

| **Fee Description** | **Undiscounted Fee ($)** | **Small Entity Fee ($)** | **Micro Entity Fee ($)** |
|---|---|---|---|
| Each claim over 20 (including Reissues) | 100 | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 460 | 230 | 115 |
| Multiple dependent claims | 820 | 410 | 205 |

| **Total Claims** | | **Extra Claims** | **Fee ($)** | **Fee Paid ($)** | |
|---|---|---|---|---|---|
| 14 | -20 or HP = | _____ x | _____ | = _____ | **Multiple Dependent Claims** |

HP = highest number of total claims paid for, if greater than 20.

| **Indep. Claims** | | **Extra Claims** | **Fee ($)** | **Fee Paid ($)** | **Fee ($)** | **Fee Paid ($)** |
|---|---|---|---|---|---|---|
| 1 | -3 or HP = | _____ x | _____ | = _____ | _____ | _____ |

HP = highest number of independent claims paid for, if greater than 3.

**3. APPLICATION SIZE FEE**

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| **Total Sheets** | **Extra Sheets** | **Number of each additional 50 or fraction thereof** | **Fee ($)** | **Fee Paid ($)** |
|---|---|---|---|---|
| 22 - 100 = | _____ / 50 = | _____ (round **up** to a whole number)  x | _____ | = _____ |

**4. OTHER FEE(S)**                                                                                               **Fees Paid ($)**

Non-English specification, $130 fee (no small or micro entity discount)                                            _____

**Non-electronic filing fee under 37 CFR 1.16(t) for a utility application, $400 fee ($200 small or micro entity)**  _____

Other (e.g., late filing surcharge): _____

**SUBMITTED BY**

| Signature | /lauren f. anderson/ | Registration No. (Attorney/Agent) 69,344 | Telephone (919) 755-2100 |
|---|---|---|---|
| Name (Print/Type) | Lauren F. Anderson | | Date December 18, 2018 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.,* GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Complete if Known | |
|---|---|---|
| | Application Number | *To Be Assigned* |
| | Filing Date | *Concurrently Herewith* |
| | First Named Inventor | Dane Brooks Barnes |
| | Art Unit | *To Be Assigned* |
| | Examiner Name | *To Be Assigned* |
| Sheet 1 of 2 | Attorney Docket Number | **S105508 1010US.C1 (0002.2)** |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number  Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-3,042,053 | 07-03-1962 | Gabriel | |
| | 2 | US-3,070,107 | 12-25-1962 | Beatty | |
| | 3 | US-3,075,536 | 01-29-1963 | Parker | |
| | 4 | US-3,394,720 | 07-30-1968 | Moss | |
| | 5 | US-4,590,956 | 05-27-1986 | Griesenbeck | |
| | 6 | US-5,080,123 | 01-14-1992 | Stein | |
| | 7 | US-5,950,649 | 09-14-1999 | Gerig | |
| | 8 | US-6,964,277 | 11-15-2005 | Naber | |
| | 9 | US-7,789,097 | 09-07-2010 | Sotirkys *et al.* | |
| | 10 | US-8,424,549 | 04-23-2013 | Goldsmith *et al.* | |
| | 11 | US-8,453,664 | 06-04-2013 | Parsons *et al.* | |
| | 12 | US-8,899,251 | 12-02-2014 | Leung *et al.* | |
| | 13 | US-9,051,755 | 06-09-2015 | Heining *et al.* | |
| | 14 | US-9,051,756 | 06-09-2015 | Jenkins | |
| | 15 | US-9,113,724 | 08-25-2015 | Heining *et al.* | |
| | 16 | US-2007/0079857 | 04-12-2007 | Tseng | |
| | 17 | US-2013/0074894 | 03-28-2013 | Cook | |
| | 18 | US-2014/0041703 | 02-13-2014 | Funston | |
| | 19 | US-2014/0209132 | 07-31-2014 | Landry | |
| | 20 | US-2015/0252585 | 09-10-2015 | Mallookis *et al.* | |

## OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON DECEMBER 18, 2018*

WBD (US) 45158530v1

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Complete if Known | |
|---|---|---|
| | Application Number | *To Be Assigned* |
| | Filing Date | *Concurrently Herewith* |
| | First Named Inventor | Dane Brooks Barnes |
| | Art Unit | *To Be Assigned* |
| | Examiner Name | *To Be Assigned* |

| Sheet | 2 | of | 2 | Attorney Docket Number | **S105508 1010US.C1 (0002.2)** |
|---|---|---|---|---|---|

## OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 21 | YouTube video by Robert Marazzita:  The Best Beach Cabana – Set Up and Tear Down, July 9, 2015, [site visited August 8, 2017], Available on the Internet URL: <https:www.youtube.com/watch?v=LfccH7yV6SE>. | |
| | 22 | YouTube video by Robb's Homemade Life: Make $15 Beach Shade tent Easy Quick DIY, October 6, 2015 [site visited August 8, 2017] Available on the internet URL: <www.youtube.com/watch?v+X20b4pLJx1c> | |
| | 23 | YouTube video by Beachspirit: Kitent (R) - the Floating beach tent for sun shade, October 8, 2016 [site visited August 8, 2017] Available on the internet URL: <https://m.youtube.com/watch?v=OUaDZeqdTkQ> | |
| | 24 | YouTube video by ZiggyShade Beach Sunshade: ZiggyShade – Beach Sunshade – Set up instructions, November 24, 2016 [site visited August 8, 2017] Available on the internet URL: <https://youtu.be/1krQ0rlumws> | |
| | 25 | YouTube video by bibitedog: How to set up a butterfly arch, May 26, 2012 [site visited December 18, 2018] Available on the internet URL: <https://www.youtube.com/watch?v=FOTYtjQAL4s> | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON DECEMBER 18, 2018*

WBD (US) 45158530v1

Appl. No.: *To Be Assigned*
Filed: *Concurrently Herewith*
Amdt. Dated December 18, 2018

## REMARKS

This Preliminary Amendment is submitted herewith to add new Claims 21-34 and cancel original Claims 1-20. No new matter is added by way of this amendment.

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

**ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT & TRADEMARK OFFICE ON DECEMBER 18, 2018.**

WBD (US) 45227776v1

Amendments to the Claims:

1. - 20.    (Canceled)

21.    (New)  A system for providing shade onto a surface, the system comprising:

a frame comprising a first end and an opposing second end, each of the first end and the second end being engageable with the surface such that when the first end and the second end are engaged with the surface, the frame lies within a plane substantially perpendicular to the surface; and

a canopy extending between a first longitudinally-extending edge and an opposing second longitudinally-extending edge, one of the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy being coupleable with the frame about a portion thereof, the portion being defined between the first end and the second end of the frame;

wherein the other of the second longitudinally-extending edge or the first longitudinally-extending edge of the canopy is spaced apart from the central portion of the frame such that when a force is applied to the canopy, the canopy extends at an angle relative to the first plane.

22.    (New)  The system of Claim 21, wherein the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween.

23.    (New)  The system of Claim 22, further comprising a cable extendable through the plurality of longitudinally-extending sections of the frame from the first end of the first

longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween.

24.     (New)  The system of Claim 21, further comprising:

a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the canopy or the frame; and

an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains within the plane when the force is applied to the canopy.

25.     (New)  The system of Claim 24, wherein the canopy further comprises at least one hoop positioned substantially at a center of at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy, the first or second end of the cord being coupleable to the at least one hoop.

26.     (New)  The system of Claim 24, further comprising a container arranged to receive at least the frame, the canopy, and the cord therein.

27.     (New)  The system of Claim 26, wherein the container is the anchor, the container being coupleable with the canopy or the frame about the first end or the second end of the cord and being in contact with the surface when each of the first end and the second end of the frame is engaged with the surface and one of the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy is coupled with the portion of the frame, such that the frame remains within the plane when the force is applied to the canopy.

28.     (New)  The system of Claim 27, wherein the first end or the second end of the cord is coupleable to an interior of the container, the container being invertible so that the interior of the container contacts the surface when the container is the anchor.

WBD (US) 45227776v1

29.     (New)  The system of Claim 26, wherein the container defines one or more interior compartments arranged to receive the frame separately from the canopy.

30.     (New)  The system of Claim 21, wherein at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy comprises at least one loop extending thereabout, the loop being arranged to receive the first or second end of the frame therethrough such that the portion of the frame is in contact with the at least one loop.

31.     (New)  The system of Claim 21, further comprising at least one strap arranged to couple the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy about the portion of the frame.

32.     (New)  The system of Claim 21, wherein the force is wind.

33.     (New)  The system of Claim 21, wherein when the force is applied to the canopy, the canopy extends at the angle relative to the first plane, the angle being non-coplanar with the first plane.

34.     (New)  The system of Claim 21, wherein the first end and the opposing second end of the frame are directly engageable with the surface, such that when the first end and the second end are directly engaged with the surface, the first end and the opposing second end are in direct contact with the surface.

WBD (US) 45227776v1

Amendments to the Specification:

On page 1, after the title of the invention, please amend the following paragraph:

CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]        This application is a Continuation of U.S. Application No. 15/675,715, filed August 12, 2017, which is a non-provisional of U.S. Provisional Patent Application 62/409,426 filed October 18, 2016, ~~the contents of which are hereby incorporated by reference in its entirety~~ which applications are hereby incorporated by reference in their entirety in this application.

WBD (US) 45227776v1

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | *To Be Assigned* |
| Appl. No.: | *To Be Assigned* | Group Art Unit: | *To Be Assigned* |
| Filed: | *Concurrently Herewith* | Examiner: | *To Be Assigned* |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:    S105508 1010US.C1 (0002.2)
Customer No.:   26158

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

# PRELIMINARY AMENDMENT
## 37 CFR § 1.115

Sir:

 Please enter this Preliminary Amendment before calculating the claim fee and amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims beginning on page 3 of this paper.

**Remarks** begin on page 6 of this paper.

# Electronic Patent Application Fee Transmittal

| Application Number: | |
|---|---|
| Filing Date: | |
| Title of Invention: | SHADING SYSTEM AND METHOD OF USE |
| First Named Inventor/Applicant Name: | Dane Brooks Barnes |
| Filer: | Lauren F Anderson/Shari Elofson |
| Attorney Docket Number: | S105508 1010US.C1(0002.2) |

Filed as Small Entity

**Filing Fees for Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY FILING FEE (ELECTRONIC FILING) | 4011 | 1 | 75 | 75 |
| UTILITY SEARCH FEE | 2111 | 1 | 330 | 330 |
| UTILITY EXAMINATION FEE | 2311 | 1 | 380 | 380 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 50 of 227

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | 785 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 34628185 |
| **Application Number:** | 16224465 |
| **International Application Number:** | |
| **Confirmation Number:** | 2289 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Customer Number:** | 26158 |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Filer Authorized By:** | Lauren F Anderson |
| **Attorney Docket Number:** | S105508 1010US.C1(0002.2) |
| **Receipt Date:** | 18-DEC-2018 |
| **Filing Date:** | |
| **Time Stamp:** | 18:07:12 |
| **Application Type:** | Utility under 35 USC 111(a) |

# Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $785 |
| RAM confirmation Number | 121918INTEFSW00019402090528 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | S105508_1010US_C1_0002_2_Transmittal.PDF | 309082<br><br>6759e450631bacd7691887c86b2511aed9c9dfe5 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | S105508_1010US_C1_0002_2_Fee_Transmittal.PDF | 254042<br><br>d9e86232b3746bf326752f15799351ad7dc33035 | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Application Data Sheet | S105508_1010US_C1_0002_2_ADS.PDF | 1324082<br><br>0904440a8baa1ae741a1fb1327d4160d6dbbe422 | no | 9 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | | S105508_1010US_C1_Application_From_Parent.PDF | 655061<br><br>44f87d4eeb087531d010e74afd73d4b937e9ee76 | yes | 15 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| Document Description | | Start | End |
| Abstract | | 15 | 15 |
| Claims | | 12 | 14 |
| Specification | | 1 | 11 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Drawings-only black and white line drawings | S105508_1010US_C1_Drawings_From_Parent.PDF | 237804<br><br>8eec9cfc641379639659f12527abb4884580b710 | no | 7 |

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 6 | Oath or Declaration filed | S105508_1010US_C1_Executed_Declaration_Assignment_From_Parent.PDF | 139209<br><br>1e467377b7f055cd08ad34d0bc8f49a8dc42eec2 | no | 5 |
|---|---|---|---|---|---|

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 7 | Power of Attorney | S105508_1010US_C1_0002_2_POA.PDF | 239649<br><br>e629d34b7b52496a96c28200c5313eeb126f92ad | no | 2 |
|---|---|---|---|---|---|

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 8 | Transmittal Letter | S105508_1010US_C1_0002_2_IDS_Cover.pdf | 8198<br><br>43b261f9ce24c576219ec168a4db11304a37ee82 | no | 1 |
|---|---|---|---|---|---|

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 9 | Information Disclosure Statement (IDS) Form (SB08) | S105508_1010US_C1_0002_2_IDS_1449.pdf | 30302<br><br>edfe4f92fc87677910d19736539ff9a4618d3292 | no | 2 |
|---|---|---|---|---|---|

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

This is not an USPTO supplied IDS fillable form

| 10 | | S105508_1010US_C1_0002_2_Preliminary_Amendment.pdf | 22592<br><br>62d368592fa9f78ea0795acaae0765a755066adc | yes | 6 |
|---|---|---|---|---|---|

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | | End |
| | Applicant Arguments/Remarks Made in an Amendment | | 6 | | 6 |
| | Claims | | 3 | | 5 |
| | Specification | | 2 | | 2 |
| | Preliminary Amendment | | 1 | | 1 |

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 11 | Fee Worksheet (SB06) | fee-info.pdf | 34815 | no | 2 |
| | | | 23dddf034367a838d7ecf580ce511b35c13d 60f8 | | |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 3254836 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 01/31/2018. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | To Be Assigned |
| Filing Date | Concurrently Herewith |
| First Named Inventor | Dane Brooks Barnes |
| Title | SHADING SYSTEM AND METHOD OF USE |
| Art Unit | To Be Assigned |
| Examiner Name | To Be Assigned |
| Attorney Docket Number | S105508 1010US.C1 (0002.2) |

## SIGNATURE of Applicant or Patent Practitioner

| Signature | /lauren f. anderson/ | Date (Optional) | |
|---|---|---|---|
| Name | Lauren F. Anderson | Registration Number | 69,344 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | Shibumi Shade, LLC | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 01/31/2018. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in <u>either</u> the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✔] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

26158

**OR**

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✔] The address associated with the above-mentioned Customer Number

**OR**

[ ] The address associated with Customer Number:

**OR**

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip | |
| Country | |
| Telephone | Email | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## Shibumi Shade, LLC

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✔] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | _(signature)_ | | Date (Optional) | 12/7/18 |
|---|---|---|---|---|
| Name | Scott Barnes | | | |
| Title | General Partner, Co-Founder | | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Attorney's Docket No. **S105508 1010US.C1 (0002.2)** PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | *To Be Assigned* |
| Appl. No.: | *To Be Assigned* | Group Art Unit: | *To Be Assigned* |
| Filed: | *Concurrently Herewith* | Examiner: | *To Be Assigned* |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### INFORMATION DISCLOSURE STATEMENT
### CITATION UNDER 37 C.F.R. § 1.97

Sir:

Attached is a list of documents on form PTO-1449.

It is requested that the Examiner consider these documents and officially make them of record in accordance with the provisions of 37 C.F.R. § 1.97 and Section 609 of the MPEP. By identifying the listed documents, Applicant in no way makes any admission as to the prior art status of the listed documents, but is instead identifying the listed documents for the sake of full disclosure.

Any foreign patents or non-patent literature documents items are attached, except those that were supplied in, or cited by the Office during prosecution of, parent Application No. 15/675,715, filed August 12, 2017. Since the benefit of this application was claimed under 35 U.S.C. 120, no copies need to be furnished in accordance with 37 C.F.R. 1.98(d); however, copies will be furnished on request.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON DECEMBER 18, 2018.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | 3636 | 785 | S105508 1010US.C1 (0002.2 | 14 | 1 |

**CONFIRMATION NO. 2289**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

**FILING RECEIPT**

OC000000105052261

Date Mailed: 01/16/2019

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**
> Dane Brooks Barnes, Raleigh, NC;
> Alexander Griffith Slater, Raleigh, NC;
> Scott Christian Barnes, Raleigh, NC;

**Applicant(s)**
> Shibumi Shade, LLC, Raleigh, NC;

**Power of Attorney:** The patent practitioners associated with Customer Number 26158

**Domestic Priority data as claimed by applicant**
> This application is a CON of 15/675,715 08/12/2017 PAT 10190330
> which claims benefit of 62/409,426 10/18/2016

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 01/11/2019

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 59 of 227

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/224,465**

**Projected Publication Date:** 04/25/2019

**Non-Publication Request:** No

**Early Publication Request:** No
** SMALL ENTITY **
**Title**

       SHADING SYSTEM AND METHOD OF USE

**Preliminary Class**

       135

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

# PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 16/224,465 |

## APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | 75 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | 330 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | 380 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 14 minus 20 = | * | | x 50 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 1 minus 3 = | * | | x 230 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | 0.00 | | | |

\* If the difference in column 1 is less than zero, enter "0" in column 2.

| | SMALL ENTITY TOTAL | OTHER THAN TOTAL |
|---|---|---|
| | 785 | |

## APPLICATION AS AMENDED - PART II

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 |

**CONFIRMATION NO. 2289**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

**PUBLICATION NOTICE**

*OC000000107680562*

**Title:** SHADING SYSTEM AND METHOD OF USE

**Publication No.** US-2019-0119942-A1
**Publication Date:** 04/25/2019

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 63 of 227



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

| | | |
|---|---|---|
| 26158 7590 09/10/2019 | | EXAMINER |
| WOMBLE BOND DICKINSON (US) LLP | | HAWK, NOAH CHANDLER |
| ATTN: IP DOCKETING | | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/10/2019 | ELECTRONIC |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonPatents@wbd-us.com
IPDocketing@wbd-us.com

| | | Application No. | Applicant(s) |
|---|---|---|---|
| ***Office Action Summary*** | | 16/224,465 | Barnes et al. |
| | | Examiner | Art Unit | AIA (FITF) Status |
| | | NOAH C HAWK | 3636 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____ .
     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2a) ☐ This action is **FINAL.**        2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s)   21-34   is/are pending in the application.
     5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 21-26 and 29-34 is/are rejected.

8) ☑ Claim(s) 27-28 is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
     Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
     Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
     **Certified copies:**
         a) ☐ All     b) ☐ Some**     c) ☐ None of the:
           1. ☐ Certified copies of the priority documents have been received.
           2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
           3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)          3) ☐ Interview Summary (PTO-413)
                                          Paper No(s)/Mail Date _____ .

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)    4) ☐ Other: _____ .
     Paper No(s)/Mail Date 12/18/18 .

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 65 of 227

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.
>
> (a)(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

3.      Claims 21, 22, and 30-34 are rejected under 35 U.S.C. 102(a)(1) as being

anticipated by "YouTube video by bibitedog: How to set up a butterfly arch" (Butterfly).

        a.      Regarding Claim 1, Butterfly teaches a system for providing shade onto a

surface, the system comprising: a frame (A/B, see below) comprising a first end

and an opposing second end (the free ends shown below), each of the first end

and the second end being engageable with the surface (the ground) such that

when the first end and the second end are engaged with the surface, the frame

lies within a plane substantially perpendicular to the surface; and a canopy (C)

extending between a first longitudinally-extending edge (at D) and an opposing

second longitudinally-extending edge (the free trailing edge), one (at D) of the

first longitudinally-extending edge or the second longitudinally-extending edge of

the canopy being coupleable with the frame about a portion thereof, the portion

being defined between the first end and the second end of the frame; wherein the

other of the second longitudinally-extending edge or the first longitudinally-

extending edge of the canopy is spaced apart from the central portion of the

frame such that when a force is applied to the canopy, the canopy extends at an

angle relative to the first plane (see the end of the video).



Butterfly Video screen capture 4:37

b.      Regarding Claim 22, Butterfly teaches that the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween.

c.      Regarding Claim 30, Butterfly teaches that at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy comprises at least one loop (sleeve D) extending thereabout, the loop being arranged to receive the first or second end of the frame therethrough such that the portion of the frame is in contact with the at least one loop.

d.      Regarding Claim 31, Butterfly teaches at least one strap (see video, 4:55-5:00) arranged to couple the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy about the portion of the frame.

e.      Regarding Claim 32, Butterfly teaches that the force is wind.

f.      Regarding Claim 33, Butterfly teaches that when the force is applied to the canopy, the canopy extends at the angle relative to the first plane, the angle being non-coplanar with the first plane.

g.      Regarding Claim 34, Butterfly teaches that the first end and the opposing second end (at B) of the frame are directly engageable with the surface, such that when the first end and the second end are directly engaged with the surface, the first end and the opposing second end are in direct contact with the surface.

## *Claim Rejections - 35 USC § 103*

4.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

5.      Claim 23 is rejected under 35 U.S.C. 103 as being unpatentable over Butterfly as

applied to Claim 22 above in view of Sotirkys et al. in US Patent 7789097. Butterfly is

silent on the use of a cable extending through the sections of the frame. Sotirkys

teaches a system including a frame (45) and further comprising a cable (47) extendable

through the plurality of longitudinally-extending sections (46) of the frame from the first

end of the first longitudinally-extending section to the first end of the second

longitudinally-extending section and any of the at least one intermediate longitudinally-

extending sections arranged therebetween. It would have been obvious to one of

ordinary skill in the art before the effective filing date of the claimed invention to modify

the device of Butterfly by using a frame with a pole including a cable extending

therethrough as taught by Sotirkys in order to allow the user to more compactly fold the

frame.

6.      Claims 24-26 are rejected under 35 U.S.C. 103 as being unpatentable over

Butterfly as applied to Claim 21 above in view of Shires in US Patent 7406977.

        h.      Regarding Claims 24 and 25, Butterfly is silent on the use of a cord.

        Shires teaches a system for providing shade including a canopy (16) and further

        comprising: a cord (42) having a first end (toward 44) and a second end (toward

42b), the first end or the second end of the cord being coupleable to the canopy or the frame (at 42b/32); and an anchor (44) coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains within the plane when the force is applied to the canopy. Shires further teaches that the canopy further comprises at least one hoop (42) positioned substantially at a center of at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy, the first or second end of the cord being coupleable to the at least one hoop. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Butterfly by adding a cord and a hoop as taught by Shires in order to better anchor the device in high wind conditions.

i.      Regarding Claim 26, Butterfly, as modified, teaches a container (see video 0:27-0:36) arranged to receive at least the frame, the canopy, and the cord therein.

7.      Claim 29 is rejected under 35 U.S.C. 103 as being unpatentable over Butterfly, as modified, as applied to Claim 26 above in view of Cook in US Publication 2013/0074894. Butterfly is silent on the details of the container. Cook teaches a container (40), wherein the container defines one or more interior compartments (45) arranged to receive a frame separately from a canopy. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the container of Butterfly, as modified, by using a container with compartments as taught by Cook in order to protect the canopy from tearing during transport.

### *Allowable Subject Matter*

8.      Claims 27 and 28 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.


### *Conclusion*

9.      The prior art made of record and not relied upon is considered pertinent to applicant's disclosure. Crimi, Zapater, and Deibert et al. teach canopies of interest.

10.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480.  The examiner can normally be reached on M-F 9am to 5:30pm.

        Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 72 of 227

<table>
<tr><td rowspan="4"><strong><em>Notice of References Cited</em></strong></td><td colspan="2">Application/Control No.<br>16/224,465</td><td colspan="2">Applicant(s)/Patent Under Reexamination<br>Barnes et al.</td></tr>
<tr><td colspan="2">Examiner<br>NOAH C HAWK</td><td>Art Unit<br>3636</td><td>Page 1 of 1</td></tr>
</table>

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20120291830-A1 | 11-2012 | Crimi; Charles | E04H15/58 | 135/117 |
| * | B | US-7708339-B2 | 05-2010 | Zapater; Raul Emilio | A47C7/66 | 135/161 |
| * | C | US-7406977-B1 | 08-2008 | Shires; Henry C. | E04H15/26 | 135/115 |
| * | D | US-5299590-A | 04-1994 | Deibert; Linden K. | E04H15/58 | 135/125 |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| *Index of Claims* | 16/224,465 | Barnes et al. |
| ‖‖‖‖‖ | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/04/2019 | | | | | | | | |
| | 1 | - | | | | | | | | |
| | 2 | - | | | | | | | | |
| | 3 | - | | | | | | | | |
| | 4 | - | | | | | | | | |
| | 5 | - | | | | | | | | |
| | 6 | - | | | | | | | | |
| | 7 | - | | | | | | | | |
| | 8 | - | | | | | | | | |
| | 9 | - | | | | | | | | |
| | 10 | - | | | | | | | | |
| | 11 | - | | | | | | | | |
| | 12 | - | | | | | | | | |
| | 13 | - | | | | | | | | |
| | 14 | - | | | | | | | | |
| | 15 | - | | | | | | | | |
| | 16 | - | | | | | | | | |
| | 17 | - | | | | | | | | |
| | 18 | - | | | | | | | | |
| | 19 | - | | | | | | | | |
| | 20 | - | | | | | | | | |
| | 21 | ✓ | | | | | | | | |
| | 22 | ✓ | | | | | | | | |
| | 23 | ✓ | | | | | | | | |
| | 24 | ✓ | | | | | | | | |
| | 25 | ✓ | | | | | | | | |
| | 26 | ✓ | | | | | | | | |
| | 27 | O | | | | | | | | |
| | 28 | O | | | | | | | | |
| | 29 | ✓ | | | | | | | | |
| | 30 | ✓ | | | | | | | | |
| | 31 | ✓ | | | | | | | | |
| | 32 | ✓ | | | | | | | | |
| | 33 | ✓ | | | | | | | | |
| | 34 | ✓ | | | | | | | | |

<table>
<tr><td rowspan="2"><em>Search Notes</em><br><br>[barcode]</td><td><strong>Application/Control No.</strong><br><br>16/224,465</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br><br>3636</td></tr>
</table>

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| E04H 15/003 | 09/03/2019 | NCH |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
|  |  |  |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 135 | 118, 119, 115, 120.1, 114, 127 | 09/04/2019 | NCH |
| 40 | 214, 606.11, 217, 412 | 09/03/2019 | NCH |
| 160 | 135, 350, 351, 352, 377 | 09/03/2019 | NCH |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Considered IDS filed 12/18/2018 | 09/03/2019 | NCH |
| Considered and updated search history for parent application 15/675715 | 09/03/2019 | NCH |
| Performed inventor name search | 09/04/2019 | NCH |
| Please see attached EAST search history | 09/04/2019 | NCH |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
|  |  |  |  |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 75 of 227



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 2289**

| SERIAL NUMBER 16/224,465 | FILING or 371(c) DATE 12/18/2018 RULE | CLASS 135 | GROUP ART UNIT 3636 | ATTORNEY DOCKET NO. S105508 1010US.C1 (0002.2 |
|---|---|---|---|---|

**APPLICANTS**
  Shibumi Shade, LLC, Raleigh, NC;

**INVENTORS**
  Dane Brooks Barnes, Raleigh, NC;
  Alexander Griffith Slater, Raleigh, NC;
  Scott Christian Barnes, Raleigh, NC;

\*\* **CONTINUING DATA** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
  This application is a CON of 15/675,715 08/12/2017 PAT 10190330
      which claims benefit of 62/409,426 10/18/2016

\*\* **FOREIGN APPLICATIONS** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\* **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** \*\* \*\* SMALL ENTITY \*\*
  01/11/2019

| Foreign Priority claimed ❏ Yes ☑ No <br> 35 USC 119(a-d) conditions met ❏ Yes ☑ No <br> Verified and /NOAH CHANDLER HAWK/ <br> Acknowledged Examiner's Signature | ❏ Met after Allowance <br> NCH <br> Initials | STATE OR COUNTRY NC | SHEETS DRAWINGS 7 | TOTAL CLAIMS 14 | INDEPENDENT CLAIMS 1 |
|---|---|---|---|---|---|

**ADDRESS**

  WOMBLE BOND DICKINSON (US) LLP
  ATTN: IP DOCKETING
  P.O. BOX 7037
  ATLANTA, GA 30357-0037
  UNITED STATES

**TITLE**

  SHADING SYSTEM AND METHOD OF USE

| FILING FEE RECEIVED 785 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ❏ All Fees |
|---|---|---|
| | | ❏ 1.16 Fees (Filing) |
| | | ❏ 1.17 Fees (Processing Ext. of time) |
| | | ❏ 1.18 Fees (Issue) |
| | | ❏ Other _____ |
| | | ❏ Credit |

BIB (Rev. 05/07).

| | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | *To Be Assigned* |
| | | | Filing Date | *Concurrently Herewith* |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | *To Be Assigned* |
| | | | Examiner Name | *To Be Assigned* |
| Sheet | 1 | of | 2 | Attorney Docket Number | **S105508 1010US.C1 (0002.2)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br><br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-3,042,053 | 07-03-1962 | Gabriel | |
| | 2 | US-3,070,107 | 12-25-1962 | Beatty | |
| | 3 | US-3,075,536 | 01-29-1963 | Parker | |
| | 4 | US-3,394,720 | 07-30-1968 | Moss | |
| | 5 | US-4,590,956 | 05-27-1986 | Griesenbeck | |
| | 6 | US-5,080,123 | 01-14-1992 | Stein | |
| | 7 | US-5,950,649 | 09-14-1999 | Gerig | |
| | 8 | US-6,964,277 | 11-15-2005 | Naber | |
| | 9 | US-7,789,097 | 09-07-2010 | Sotirkys *et al.* | |
| | 10 | US-8,424,549 | 04-23-2013 | Goldsmith *et al.* | |
| | 11 | US-8,453,664 | 06-04-2013 | Parsons *et al.* | |
| | 12 | US-8,899,251 | 12-02-2014 | Leung *et al.* | |
| | 13 | US-9,051,755 | 06-09-2015 | Heining *et al.* | |
| | 14 | US-9,051,756 | 06-09-2015 | Jenkins | |
| | 15 | US-9,113,724 | 08-25-2015 | Heining *et al.* | |
| | 16 | US-2007/0079857 | 04-12-2007 | Tseng | |
| | 17 | US-2013/0074894 | 03-28-2013 | Cook | |
| | 18 | US-2014/0041703 | 02-13-2014 | Funston | |
| | 19 | US-2014/0209132 | 07-31-2014 | Landry | |
| | 20 | US-2015/0252585 | 09-10-2015 | Mallookis *et al.* | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | | | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 09/03/2019 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON DECEMBER 18, 2018*

WBD (US) 45158530v1

Case 5:24-cv-00638-FL Document 28-5 Filed 03/23/26 Page 77 of 227

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | **Complete if Known** | |
|---|---|---|---|---|
| | | | Application Number | *To Be Assigned* |
| | | | Filing Date | *Concurrently Herewith* |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | *To Be Assigned* |
| | | | Examiner Name | *To Be Assigned* |
| Sheet | 2 | of 2 | Attorney Docket Number | **S105508 1010US.C1 (0002.2)** |

| | | **OTHER DOCUMENTS** | |
|---|---|---|---|
| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
| | 21 | YouTube video by Robert Marazzita:  The Best Beach Cabana – Set Up and Tear Down, July 9, 2015, [site visited August 8, 2017], Available on the Internet URL: <https:www.youtube.com/watch?v=LfccH7yV6SE>. | |
| | 22 | YouTube video by Robb's Homemade Life: Make $15 Beach Shade tent Easy Quick DIY, October 6, 2015 [site visited August 8, 2017] Available on the internet URL: <www.youtube.com/watch?v+X20b4pLJx1c> | |
| | 23 | YouTube video by Beachspirit: Kitent (R) - the Floating beach tent for sun shade, October 8, 2016 [site visited August 8, 2017] Available on the internet URL: <https://m.youtube.com/watch?v=OUaDZeqdTkQ> | |
| | 24 | YouTube video by ZiggyShade Beach Sunshade: ZiggyShade – Beach Sunshade – Set up instructions, November 24, 2016 [site visited August 8, 2017] Available on the internet URL: <https://youtu.be/1krQ0rlumws> | |
| | 25 | YouTube video by bibitedog: How to set up a butterfly arch, May 26, 2012 [site visited December 18, 2018] Available on the internet URL: <https://www.youtube.com/watch?v=FOTYtjQAL4s> | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 09/03/2019 |
|---|---|---|---|

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON DECEMBER 18, 2018*

WBD (US) 45158530v1

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L10 | 1 | (15/675715).APP. | USPAT; USOCR | OR | ON | 2019/09/04 14:02 |
| L22 | 1058 | 135/119.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L23 | 860 | 135/118.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L24 | 1187 | 135/115,120.1.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L25 | 1168 | e04H15/003.cpc. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L26 | 521 | 135/114.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L27 | 116 | 135/127.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L28 | 4225 | L22 L23 L24 L26 L27 L25 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; | OR | OFF | 2019/09/04 15:11 |

file:///C/Users/nhawk/Documents/e-Red%20Folder/16224465/EASTSearchHistory.16224465_AccessibleVersion.htm[9/4/2019 3:17:30 PM]

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | IBM_TDB | | | |
| L29 | 289 | 40/214,606.11,217.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | ON | 2019/09/04 15:11 |
| L30 | 237 | 40/412.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | ON | 2019/09/04 15:11 |
| L31 | 2205 | 160/135,350,351,352,377.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L32 | 6881 | L28 L29 L30 L31 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| L33 | 7 | L32 and @pd>"20180910" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/09/04 15:11 |
| S105 | 1058 | 135/119.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S106 | 860 | 135/118.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S107 | 1188 | 135/115,120.1.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S108 | 1169 | e04H15/003.cpc. | US-PGPUB; USPAT; USOCR; | OR | OFF | 2019/03/02 18:30 |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 80 of 227

| | | | FPRS; EPO; JPO; IBM_TDB | | | |
|---|---|---|---|---|---|---|
| S109 | 521 | 135/114.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S110 | 116 | 135/127.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S111 | 4227 | S105 S106 S107 S109 S110 S108 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S112 | 289 | 40/214,606.11,217.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | ON | 2019/03/02 18:30 |
| S113 | 237 | 40/412.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | ON | 2019/03/02 18:30 |
| S114 | 2205 | 160/135,350,351,352,377.ccls. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S115 | 6883 | S111 S112 S113 S114 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S116 | 3 | S115 and @pd>"20180910" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | OFF | 2019/03/02 18:30 |
| S117 | 20 | ("20070079857" \| "20130074894" \| "20140041703" \| "20140209132" \| | US-PGPUB; | OR | ON | 2019/09/03 14:51 |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 81 of 227

| | | "20150252585" \| "3042053" \| "3070107" \| "3075536" \| "3394720" \| "4590956" \| "5080123" \| "5950649" \| "6964277" \| "7789097" \| "8424549" \| "8453664" \| "8899251" \| "9051755" \| "9051756" \| "9113724").PN. | USPAT | | | |
|---|---|---|---|---|---|---|
| S118 | 24 | ("20070079857" \| "20130074894" \| "20140041703" \| "20140209132" \| "20150252585" \| "3042053" \| "3070107" \| "3075536" \| "3394720" \| "4590956" \| "5080123" \| "5950649" \| "6964277" \| "7789097" \| "8424549" \| "8453664" \| "8899251" \| "9051755" \| "9051756" \| "9113724").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2019/09/03 14:52 |
| S119 | 1 | "16224465" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB | OR | ON | 2019/09/03 15:20 |

9/4/2019 3:17:26 PM
C:\Users\nhawk\Documents\EAST\Workspaces\Open Apps\16224465 - Shading System and Method of Use.wsp

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 82 of 227

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| | |
|---|---|
| Application or Docket Number 16/224,465 | Filing Date 12/18/2018 | ☐ To be Mailed |

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $50 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $230 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| AMENDMENT 12/10/2019 | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 12 | Minus | ** 20 | = 0 | | x $50 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 1 | Minus | *** 3 | = 0 | | x $230 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /TRACEY M YOUNG/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 2289 |
| Appl. No.: | 16/224,465 | Group Art Unit: | 3636 |
| Filed: | December 18, 2018 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:      S105508 1010US.C1 (0002.2)

Customer No.:    26158

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R. § 1.111

Sir:

In response to the Office Action dated September 10, 2019, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks/Arguments** begin on page 5 of this paper.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 37983994 |
| **Application Number:** | 16224465 |
| **International Application Number:** | |
| **Confirmation Number:** | 2289 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Customer Number:** | 26158 |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Filer Authorized By:** | Lauren F Anderson |
| **Attorney Docket Number:** | S105508 1010US.C1 (0002.2 |
| **Receipt Date:** | 10-DEC-2019 |
| **Filing Date:** | 18-DEC-2018 |
| **Time Stamp:** | 16:35:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | S105508_1010US_C1_0002_2_Amendment_for_9-10-19_OA.pdf | 844086<br>2568e3dc651befe981ada6a38197a96bf3d48fba | yes | 10 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 10 |
| Claims | 2 | 4 |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 844086 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**REMARKS/ARGUMENTS**

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the remarks that follow. Claim 21 is are currently amended and Claims 22 and 23 are canceled, such that Claims 21-34 remain pending following this amendment. Applicant submits that no new matter is added by way of this Amendment.

Allowable Subject Matter

Applicant thanks the Examiner for indicating that Claims 27 and 28 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

Claim Rejections – 35 U.S.C. § 102

Claims 21, 22, and 30-34 are rejected under 35 U.S.C. § 102(a)(1) as allegedly being anticipated by "YouTube video by bibitedog: How to set up a butterfly arch" (Butterfly).

Independent Claim 21 is currently amended to recite, wherein the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween and a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface. Support for these amendments can be found in at least, for example, dependent Claims 22 and 23, which are now canceled. No new matter is added by way of this amendment.

WBD (US) 47637583v1

Applicant respectfully submits that Butterfly does not teach or suggest <u>a cable extending</u> <u>through the plurality of longitudinally-extending sections of the frame from the first end of the</u> <u>first longitudinally-extending section to the first end of the second longitudinally-extending</u> <u>section and any of the at least one intermediate longitudinally-extending sections arranged</u> <u>therebetween so that when the first end of the first longitudinally-extending section and the first</u> <u>end of the second-longitudinally extending section are engaged with the surface, the cable lies</u> <u>within the plane substantially perpendicular to the surface,</u> as required by amended independent Claim 21. This is acknowledged at page 5 of the Office Action, where the Examiner states that "Butterfly is silent on the use of a cable extending through the sections of the frame."

Accordingly, Applicant respectfully submits that independent Claim 21, and Claims 30-34 depending therefrom, are not anticipated by Butterfly because Butterfly does not teach or suggest each and every element of independent Claim 21. As a result, Applicant respectfully requests that the rejection of Claims 21 and 30-34 be withdrawn at this time.

Claim Rejections – 35 U.S.C. § 103

Claim 23 is rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Butterfly in view of U.S. Patent No. 7,789,097 to Sotirkys. Claim 29 is rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Butterfly in view of U.S. Patent Application Pub. No. 2013/0074894 to Cook.

Independent Claim 21, from which Claims 23 and 29 depend, is currently amended to incorporate the subject matter of dependent Claims 22 and 23. The Examiner acknowledges on page 5 of the Office Action that Butterfly is silent on the use of a cable extending through the sections of the frame. Sotirkys is cited as allegedly curing this deficiency in Butterfly. Applicant respectfully disagrees.

Sotirkys discloses a portable sunshade used in conjunction with and supported by a vehicle. The sunshade has a lightweight protective fabric cover engaged by up to five flexible poles. The protective cover rear is magnetically attached to the vehicle. The protective cover front terminates in two fabric legs, which are engaged by an elongated, flexible pole inserted through the legs and the front of the protective cover. The leg bottoms are engaged by a footing

or a stake driven into the ground. Removable sidings may also be attached to the protective cover for enclosing the area beneath the protective cover. *See, e.g.,* Abstract of Sotirkys.

Applicant respectfully submits that the alleged cable 47 in Sotirkys does not <u>extend through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface</u>. As currently amended, when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface. This is not the case in Sotirkys.

Indeed, and as illustrated in FIG. 1 of Sotirkys, the "frame" includes various sections 45, 50, and 55 through which cables 47, 52, and 57 respectively extend. FIG. 9A of Sotirkys illustrates that the sections 45, 50, and 55 are all interconnected to one another through their respective cables 47, 52, and 57. However, when sections 45 in Sotirkys are engaged with the surface, the other portions of the "frame" (sections 50 and 55 in Sotirkys) do not lie, with section 45, within a plane substantially perpendicular to the surface. Therefore, Sotirkys does not disclose a cable and frame arrangement as required by independent Claim 21, such that Sotirkys fails to cure the noted deficiency in Butterfly. As such, Butterfly separately or in combination with Sotirkys fails to teach, suggest, provide motivation for, or otherwise render predictable <u>a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface</u>, as required by amended independent Claim 21.

However, the Examiner contends that "it would have been obvious [...] to modify the

device of Butterfly by using a frame with a pole including a cable [...] in order to allow the user to more compactly fold the frame." *See, e.g.,* page 5 of the Office Action. Applicant respectfully submits that it would not have been obvious to modify the device of Butterfly by using a frame including a cable, as a cable extending through the frame A/B of Butterfly would prevent the ground stakes in Butterfly from being hammered into the ground.

More particularly, and as illustrated in a still frame from Butterfly, the ground stakes, which the Examiner considers part of the "frame" in Butterfly, are angled into the ground at the desired angle and then an entirety of the end surface of the ground stakes is hit with the flat side of a hammer in order to apply even pressure to the end surface of the ground stake and drive the ground stake into the ground at the desired angle. Since the ground stakes in Butterfly are driven into grass and compacted soil, Applicant submits that it is clear that Butterfly requires a *significant* application of pressure in order to pierce the grass / compacted soil layer and rigidly anchor the ground stakes into the ground.



still frame from Butterfly

If Butterfly was modified as the Examiner suggests, then the cable extending through the ground stake would prevent the flat side of a hammer from applying even pressure to an entirety the end surface of the ground stake and driving the ground stake into the ground at the desired angle. Indeed, the flat side of the hammer would come into contact with the cable, rather than the entirety of the end surface of the ground stake, and uneven pressure would be applied to the

WBD (US) 47637583v1

ground stake.

According to MPEP § 2143.01(VI), "[i]f the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims prima facie obvious. *In re Ratti*, 270 F.2d 810, 813, 123 USPQ 349, 352 (CCPA 1959)." Here, Applicant respectfully submits that the inclusion of a cable as recited in independent Claim 21, would change the principle of operation of the invention in Butterfly, as the ground stakes in Butterfly require application of even pressure on an entirety of their end surfaces in order to insert them into the ground at the desired angle. Were Butterfly modified to include a cable extending through the ground stakes, then another method of inserting the ground stakes in Butterfly would be required so as to rigidly anchor them into the ground. Therefore, Butterfly as modified by Sotirkys or any other reference to include a cable running through its frame would change the principle of operation in Butterfly, and would **not** render independent Claim 21 *prima facie* obvious.

Cook, which is merely cited with regard to dependent Claim 29, fails to cure the above-described failure of Butterfly in combination with Sotirkys. As a result, Applicant respectfully submits that independent Claim 21 is not rendered obvious by Butterfly separately or in combination with Sotirkys and/or Cook. Claim 29, which depends from independent Claim 21, is also not rendered obvious by Butterfly separately or in combination with Sotirkys and/or Cook for at least its dependency on independent Claim 21. Applicant respectfully requests that the rejection of this claim be withdrawn at this time.

WBD (US) 47637583v1

Appl. No.: 16/224,465
Amdt. Dated: December 10, 2019
Reply to Office Action dated September 10, 2019

## CONCLUSION

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

Respectfully submitted,

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON DECEMBER 10, 2019.*

WBD (US) 47637583v1

Amendments to the Claims

1 - 20.         (Canceled)

21.     (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame comprising a first end and an opposing second end, each of the first end and the second end being engageable with the surface such that when the first end and the second end are engaged with the surface, the frame lies within a plane substantially perpendicular to the surface, wherein the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween; [[and]]

a canopy extending between a first longitudinally-extending edge and an opposing second longitudinally-extending edge, one of the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy being coupleable with the frame about a portion thereof, the portion being defined between the first end and the second end of the frame; and

a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface;

wherein the other of the second longitudinally-extending edge or the first longitudinally-extending edge of the canopy is spaced apart from the central portion of the frame such that when a force is applied to the canopy, the canopy extends at an angle relative to the first plane.

WBD (US) 47637583v1

22.    (Canceled)

23.    (Canceled)

24.    (Previously Presented)  The system of Claim 21, further comprising:

a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the canopy or the frame; and

an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains within the plane when the force is applied to the canopy.

25.    (Previously Presented)  The system of Claim 24, wherein the canopy further comprises at least one hoop positioned substantially at a center of at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy, the first or second end of the cord being coupleable to the at least one hoop.

26.    (Previously Presented)  The system of Claim 24, further comprising a container arranged to receive at least the frame, the canopy, and the cord therein.

27.    (Previously Presented)  The system of Claim 26, wherein the container is the anchor, the container being coupleable with the canopy or the frame about the first end or the second end of the cord and being in contact with the surface when each of the first end and the second end of the frame is engaged with the surface and one of the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy is coupled with the portion of the frame, such that the frame remains within the plane when the force is applied to the canopy.

28.    (Previously Presented)  The system of Claim 27, wherein the first end or the second end of the cord is coupleable to an interior of the container, the container being invertible so that the interior of the container contacts the surface when the container is the anchor.

WBD (US) 47637583v1

29.    (Previously Presented)  The system of Claim 26, wherein the container defines one or more interior compartments arranged to receive the frame separately from the canopy.

30.    (Previously Presented)  The system of Claim 21, wherein at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy comprises at least one loop extending thereabout, the loop being arranged to receive the first or second end of the frame therethrough such that the portion of the frame is in contact with the at least one loop.

31.    (Previously Presented)  The system of Claim 21, further comprising at least one strap arranged to couple the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy about the portion of the frame.

32.    (Previously Presented)  The system of Claim 21, wherein the force is wind.

33.    (Previously Presented)  The system of Claim 21, wherein when the force is applied to the canopy, the canopy extends at the angle relative to the first plane, the angle being non-coplanar with the first plane.

34.    (Previously Presented)  The system of Claim 21, wherein the first end and the opposing second end of the frame are directly engageable with the surface, such that when the first end and the second end are directly engaged with the surface, the first end and the opposing second end are in direct contact with the surface.



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

26158        7590        01/13/2020
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/13/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonPatents@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

<table>
<tr><td rowspan="2"><strong><em>Office Action Summary</em></strong></td><td colspan="2"><strong>Application No.</strong><br>16/224,465</td><td colspan="2"><strong>Applicant(s)</strong><br>Barnes et al.</td></tr>
<tr><td colspan="2"><strong>Examiner</strong><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br>3636</td><td><strong>AIA (FITF) Status</strong><br>Yes</td></tr>
</table>

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>12/19/2019</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☑ This action is **FINAL.**  2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>21 and 24-34</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>21,24-26 and 29-34</u> is/are rejected.
8) ☑ Claim(s) <u>27-28</u> is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or  b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a)☐ All  b)☐ Some**  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)   3) ☐ Interview Summary (PTO-413)
                                               Paper No(s)/Mail Date _____.
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)   4) ☐ Other: _____.
   Paper No(s)/Mail Date _____.

PTOL-326 (Rev. 11-13)   Office Action Summary   Part of Paper No./Mail Date 20200107

Case 5:24-cv-00588-FL   Document 28-5   Filed 03/23/26   Page 97 of 227

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

3.      Claims 21 and 30-34 are rejected under 35 U.S.C. 103 as being unpatentable

over "YouTube video by bibitedog: How to set up a butterfly arch" (Butterfly) in view of

Seo in US Publication 2003/0089390.

        a.      Regarding Claim 21, Butterfly teaches a system for providing shade onto a

surface, the system comprising: a frame (A) comprising a first end (the free ends

of A on one side) and an opposing second end (the free end of A on the opposite

side), each of the first end and the second end being engageable with the

surface (see video, 4:45) such that when the first end and the second end are

engaged with the surface, the frame lies within a plane substantially

perpendicular to the surface, wherein the frame comprises a plurality of

longitudinally-extending sections arrangeable so that a first longitudinally-

extending section and a second longitudinally-extending section are each

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 98 of 227

engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween (there are at least a first section, see video at 1:13, a middle section, see video at 1:44, and a third section, see video at 2:07); a canopy (C) extending between a first longitudinally-extending edge (at D) and an opposing second longitudinally-extending edge (the free trailing edge), one (at D) of the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy being coupleable with the frame about a portion thereof, the portion being defined between the first end and the second end of the frame; wherein the other of the second longitudinally-extending edge or the first longitudinally- extending edge of the canopy is spaced apart from the central portion of the frame such that when a force is applied to the canopy, the canopy extends at an angle relative to the first plane (see the end of the video).



Butterfly Video screen capture 4:37

b.      Butterfly is silent on the use of a cable extending through the sections of

the frame. Seo teaches a frame comprising a plurality of longitudinally-extending

sections (1A, 1B) and a cable (s) extending through the plurality of longitudinally-

extending sections of the frame from a first end (e) of the first longitudinally-

extending section to a first end (e') of the second longitudinally-extending section

and any of the at least one intermediate longitudinally- extending sections

arranged therebetween. It would have been obvious to one of ordinary skill in the

art before the effective filing date of the claimed invention to modify the device of

Butterfly by adding a cable as taught by Seo in order to provide a means for

easily storing the frame sections together when not in use. Such a device, as modified will be arranged so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface (the cable will follow the frame and be in the same plane that is perpendicular to the surface.

c.     Regarding Claim 30, Butterfly teaches that at least one of the first longitudinally-extending edge and the second longitudinally-extending edge of the canopy comprises at least one loop (sleeve D) extending thereabout, the loop being arranged to receive the first or second end of the frame therethrough such that the portion of the frame is in contact with the at least one loop.

d.     Regarding Claim 31, Butterfly teaches at least one strap (see video, 4:55-5:00) arranged to couple the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy about the portion of the frame.

e.     Regarding Claim 32, Butterfly teaches that the force is wind.

f.     Regarding Claim 33, Butterfly teaches that when the force is applied to the canopy, the canopy extends at the angle relative to the first plane, the angle being non-coplanar with the first plane.

g.     Regarding Claim 34, Butterfly teaches that the first end and the opposing second end (at B) of the frame are directly engageable with the surface, such that when the first end and the second end are directly engaged with the surface, the first end and the opposing second end are in direct contact with the surface.

4.      Claims 24-26 are rejected under 35 U.S.C. 103 as being unpatentable over

Butterfly, as modified, as applied to Claim 21 above in view of Shires in US Patent

7406977.

      h.      Regarding Claims 24 and 25, Butterfly, as modified, is silent on the use of

a cord. Shires teaches a system for providing shade including a canopy (16) and

further comprising: a cord (42) having a first end (toward 44) and a second end

(toward 42b), the first end or the second end of the cord being coupleable to the

canopy or the frame (at 42b/32); and an anchor (44) coupleable to the other of

the second end or the first end of the cord and being in contact with the surface

so that the frame remains within the plane when the force is applied to the

canopy. Shires further teaches that the canopy further comprises at least one

hoop (42) positioned substantially at a center of at least one of the first

longitudinally-extending edge and the second longitudinally-extending edge of

the canopy, the first or second end of the cord being coupleable to the at least

one hoop. It would have been obvious to one of ordinary skill in the art before the

effective filing date of the claimed invention to modify the device of Butterfly, as

modified, by adding a cord and a hoop as taught by Shires in order to better

anchor the device in high wind conditions.

      i.      Regarding Claim 26, Butterfly, as modified, teaches a container (see video

0:27-0:36) arranged to receive at least the frame, the canopy, and the cord

therein.

5.      Claim 29 is rejected under 35 U.S.C. 103 as being unpatentable over Butterfly,

as modified, as applied to Claim 26 above in view of Cook in US Publication

2013/0074894. Butterfly is silent on the details of the container. Cook teaches a container (40), wherein the container defines one or more interior compartments (45) arranged to receive a frame separately from a canopy. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the container of Butterfly, as modified, by using a container with compartments as taught by Cook in order to protect the canopy from tearing during transport.

## *Allowable Subject Matter*

6.      Claims 27 and 28 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

## *Response to Arguments*

7.      Applicant's arguments filed 12/10/2019 have been fully considered but they are not persuasive.

8.      With respect to the applicant's arguments regarding the frame of the Butterfly reference: please see amended rejections set forth above. The Butterfly frame is consider only to encompass the pole elements denoted by "A" in the annotated screencapture. The applicant's arguments regarding the force needed to insert the stakes into the ground are therefore rendered moot.

9.      Applicant's arguments with respect to claims 21 and 22-23 have been considered but are moot because the arguments do not apply to any of the references being used in the current rejection.

*Conclusion*

10.     Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

11.     A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

12.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480.  The examiner can normally be reached on M-F 9am to 5:30pm.

        Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

If you would like assistance from a USPTO Customer Service Representative or access

to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-

272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

| | | Application/Control No. 16/224,465 | Applicant(s)/Patent Under Reexamination Barnes et al. | |
|---|---|---|---|---|
| **Notice of References Cited** | | Examiner NOAH C HAWK | Art Unit 3636 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20030089390-A1 | 05-2003 | Seo, Chun Sik | E04H15/60 | 135/127 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)    **Notice of References Cited**    Part of Paper No. 20200107

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/224,465 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

| ✓ | **Rejected** | − | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

**CLAIMS**

☐ Claims renumbered in the same order as presented by applicant     ☐ CPA     ☐ T.D.     ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/04/2019 | 01/07/2020 | | | | | | | |
| | 1 | − | − | | | | | | | |
| | 2 | − | − | | | | | | | |
| | 3 | − | − | | | | | | | |
| | 4 | − | − | | | | | | | |
| | 5 | − | − | | | | | | | |
| | 6 | − | − | | | | | | | |
| | 7 | − | − | | | | | | | |
| | 8 | − | − | | | | | | | |
| | 9 | − | − | | | | | | | |
| | 10 | − | − | | | | | | | |
| | 11 | − | − | | | | | | | |
| | 12 | − | − | | | | | | | |
| | 13 | − | − | | | | | | | |
| | 14 | − | − | | | | | | | |
| | 15 | − | − | | | | | | | |
| | 16 | − | − | | | | | | | |
| | 17 | − | − | | | | | | | |
| | 18 | − | − | | | | | | | |
| | 19 | − | − | | | | | | | |
| | 20 | − | − | | | | | | | |
| | 21 | ✓ | ✓ | | | | | | | |
| | 22 | ✓ | − | | | | | | | |
| | 23 | ✓ | − | | | | | | | |
| | 24 | ✓ | ✓ | | | | | | | |
| | 25 | ✓ | ✓ | | | | | | | |
| | 26 | ✓ | ✓ | | | | | | | |
| | 27 | O | O | | | | | | | |
| | 28 | O | O | | | | | | | |
| | 29 | ✓ | ✓ | | | | | | | |
| | 30 | ✓ | ✓ | | | | | | | |
| | 31 | ✓ | ✓ | | | | | | | |
| | 32 | ✓ | ✓ | | | | | | | |
| | 33 | ✓ | ✓ | | | | | | | |
| | 34 | ✓ | ✓ | | | | | | | |

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 107 of 227
Page 1 of 1

| *Search Notes* [barcode] | **Application/Control No.**  16/224,465 | **Applicant(s)/Patent Under Reexamination**  Barnes et al. |
|---|---|---|
| | **Examiner**  NOAH C HAWK | **Art Unit**  3636 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| E04H 15/003 | 09/03/2019 | NCH |
| E04H 2015/326, 12/22 | 01/07/2020 | NCH |
| updated above | 01/07/2020 | NCH |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 135 | 118, 119, 115, 120.1, 114, 127 | 09/04/2019 | NCH |
| 40 | 214, 606.11, 217, 412 | 09/03/2019 | NCH |
| 160 | 135, 350, 351, 352, 377 | 09/03/2019 | NCH |
| | updated above | 01/07/2020 | NCH |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Considered IDS filed 12/18/2018 | 09/03/2019 | NCH |
| Considered and updated search history for parent application 15/675715 | 09/03/2019 | NCH |
| Performed inventor name search | 09/04/2019 | NCH |
| Please see attached EAST search history | 09/04/2019 | NCH |

| | |
|---|---|
| | |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 108 of 227

|  **Search Notes** | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/224,465 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 109 of 227



**UNITED STATES PATENT AND TRADEMARK OFFICE**

# USPTO Automated Interview Request (AIR)

Mar 25 2020

This paper requesting to schedule and/or conduct an interview is appropriate because:

This submission is requested to be accepted as an authorization for this interview to communicate via the internet. Recognizing that Internet communications are not secure, I hereby authorize the USPTO to communicate with the undersigned concerning scheduling of the interview via video conference, instant messaging, or electronic mail, and to conduct the interview in accordance with office practice including video conferencing.

Name(s):
Lauren Anderson

S-signature:
/Lauren Anderson/

Registration Number:
69344

U.S. Application Number:
16224465

Confirmation Number:
2289

E-mail Address:
lauren.anderson@wbd-us.com

Phone Number:
+1 3018022782

Proposed Time of Interview:
4-2-2020 3:30 PM ET

Alternative Proposed Time(s) of Interview:
4-2-2020 1:00 PM ET

Prefered Interview Type:
Telephonic

I am the applicant or applicant's representative for this application.

Topic for Discussion:
Final Office Action



**UNITED STATES**
**PATENT AND TRADEMARK OFFICE**



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

| | | | |
|---|---|---|---|
| 26158 7590 04/08/2020 | | **EXAMINER** | |
| WOMBLE BOND DICKINSON (US) LLP | | HAWK, NOAH CHANDLER | |
| ATTN: IP DOCKETING | | | |
| P.O. BOX 7037 | | ART UNIT | PAPER NUMBER |
| ATLANTA, GA 30357-0037 | | 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/08/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonPatents@wbd-us.com
IPDocketing@wbd-us.com

| | **Application No.** 16/224,465 | **Applicant(s)** Barnes et al. | |
|---|---|---|---|
| ***Applicant-Initiated Interview Summary*** | **Examiner** NOAH C HAWK | **Art Unit** 3636 | **AIA (FITF) Status** Yes |

All participants (applicant, applicants representative, PTO personnel):

(1) <u>NOAH CHANDLER. HAWK.</u>

(3) _____ .

(2) <u>Lauren Anderson, attorney</u>.

(4) _____ .

Date of Interview: <u>02 April 2020</u>.

Type: ☑ Telephonic ☐ Video Conference
☐ Personal [copy given to: ☐ applicant ☐ applicant's representative]

Exhibit shown or demonstration conducted: ☐ Yes ☑ No.
If Yes, brief description: _____ .

Issues Discussed ☐101 ☐112 ☑102 ☐103 ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: <u>21</u>.

Identification of prior art discussed: <u>Butterfly</u>.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

<u>Proposed amendments to Claim 21 were discussed but not found patentable as the direct-embedding feature is well-known in the art.</u>

<u>Additional limitations including the anchor and cord were discussed but are also not considered novel features.</u>

<u>The applicant proposed using a cumulative approach to the drafting of a claim which appears to be the best approach; the features of Claims 32 and 33 should be included in such a claim.</u>

<u>Please see attached PTO-892 for examples of cord/anchor and direct-embedding features.</u>.

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☑ Attachment

| /Noah Chandler Hawk/ Primary Examiner, Art Unit 3636 | |
|---|---|

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

### 37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiners responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicants correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,-
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.
Examiners are expected to carefully review the applicants record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiners version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, Interview Record OK on the paper recording the substance of the interview along with the date and the examiners initials.

| | Notice of References Cited | Application/Control No. 16/224,465 | Applicant(s)/Patent Under Reexamination Barnes et al. | | |
|---|---|---|---|---|---|
| | | Examiner NOAH C HAWK | Art Unit 3636 | Page 1 of 1 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-3042053-A | 07-1962 | EFFIE GABRIEL | E04H15/003 | 135/130 |
| * | B | US-4930534-A | 06-1990 | Hill; Peter M. | E04H15/003 | 135/117 |
| * | C | US-5080123-A | 01-1992 | Stein; Peter | E04H15/003 | 135/114 |
| * | D | US-6964277-B2 | 11-2005 | Naber; Michael John | A45B25/00 | 135/117 |
| * | E | US-20140209132-A1 | 07-2014 | Landry; David | A45B25/22 | 135/27 |
| * | F | US-20150040957-A1 | 02-2015 | Mallookis; Steven E. | E04H15/32 | 135/96 |
| * | G | US-8720461-B2 | 05-2014 | Nichols; John Alexander | E04H15/64 | 135/117 |
| * | H | US-7406977-B1 | 08-2008 | Shires; Henry C. | E04H15/26 | 135/115 |
| * | I | US-5927311-A | 07-1999 | Jager; Bill | E04H15/48 | 135/124 |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | DE-102009020795-A1 | 11-2010 | DE | SCHMIDT MICHAEL | E04F10/04 |
| | O | FR-2884844-A1 | 10-2006 | FR | CAHOURS DE VIRGILE RICHARD | E04H15/58 |
| | P | WO-0204768-A1 | 01-2002 | WO | SELBY DARRERN | E04H15/003 |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)        **Notice of References Cited**        Part of Paper No. 20200402

⑲ RÉPUBLIQUE FRANÇAISE

INSTITUT NATIONAL
DE LA PROPRIÉTÉ INDUSTRIELLE

PARIS

⑪ N° de publication : **2 884 844**
(à n'utiliser que pour les commandes de reproduction)

㉑ N° d'enregistrement national : **05 04181**

㊿ Int Cl⁸ : **E 04 F 15/00** (2006.01)

⑫ **DEMANDE DE BREVET D'INVENTION** **A1**

㉒ **Date de dépôt :** 26.04.05.

㉚ **Priorité :**

㊸ **Date de mise à la disposition du public de la demande :** 27.10.06 Bulletin 06/43.

㊽ **Liste des documents cités dans le rapport de recherche préliminaire :** *Se reporter à la fin du présent fascicule*

㉖ **Références à d'autres documents nationaux apparentés :**

㉛ **Demandeur(s) :** *CAHOURS DE VIRGILE RICHARD —* FR.

㉒ **Inventeur(s) :** CAHOURS DE VIRGILE RICHARD.

㉝ **Titulaire(s) :**

㉞ **Mandataire(s) :**

㊺ **DISPOSITIF POUR PROTEGER DES RAYONS DU SOLEIL.**

㊼ Dispositif pour protéger des rayons du soleil une surface au sol

L'invention concerne un dispositif permettant de créer et déplacer l'hombre du soleil a l'aide seul d'une corde fixé en divers points au sol afin de protéger toutes personnes objets ou éléments de ce dit soleil

Dans son mode préfère il est constitué de deux mats souples (1 et 2) fixés au sol, évasés dans leurs parties supérieurs grâce a un autre plus petit mat rigide (3)

La surface centrale (4) et remplie par une matière occultante ou filtrante générant l'hombre, les deux points de liaisons entre les mats (1 et 2) et la barre (3) son relier au sol grâce a un system de drisse permettant a l'utilisateur d'exercer sur les deux mats une force antagoniste a celle de leurs effets ressort utilisant par ce fait leur souplesse, permettant ainsi un positionnement plus ou moins horizontale de la surface (4).



Case 5:24-cv-00583-FL    Document 28-5    Filed 03/23/26    Page 115 of 227

**FR 2 884 844 - A1**

La présente invention concerne un dispositif pour se protéger du soleil et de l'humidité en extérieur ou en intérieur.

La protection du soleil sur surfaces libre est généralement effectue a l'aide de parasols ou de tentes fixes, basé sur le principe du parapluie dans son ouverture et fermeture. La rigidité du parasol, qu'il soit ouvert ou fermé, lui confère une prise au vent dangereuse pour lui-même et ses utilisateurs, ainsi qu'une manipulation fastueuse dans les phases d'ouverture fermeture et déplacement du dit parasol.

Le dispositif, selon l'invention, permet de remédier à ces inconvénients, il comporte en effet au moins un mat conique (1,2) solidarisé au sol sur une de ses extremitées '9) supportant une matière occultante ou filtrante (4) l'autre extremitée étant relier au sol par l'utilisateur en divers points (10) par un lien souple (6) permettant d'exercer une courbure antagoniste a la rigidité du ou des mats créant l'hombre portée de la surface sur le sol (11).

Tous les divers points d'ancrage du lien sont disposés tout autour du dispositif (10) de façon a permettre de créer la rotation du dispositif contre carrant la rotation du soleil sur la terre (figure3)

Selon un mode de réalisation préféré (figure1) on utilisera deux mats coniques (1,2) positionnées cote a cote,solidarisés au sol (9) évasé en leurs parties supérieures maintenues en position par un autre mat (3) (figure 1et 2).

D'autres modes de réalisations sont possibles, caractérisé en ce que les mats peuvent êtres séparés sur leurs parties solidaires du sol, pour êtres fixés ensembles dans leurs parties supérieurs (figure 5).

Autre mode de réalisation caractérisé en ce que les mats (1,2) peuvent êtres séparés sur leurs parties solidaires du sol (9) restants parallèle rigidifier pour cela par une barre (C) les reliant (figure 4).

Pour contrecarrer l'effet nocif du vent sur l'invention, la surface occultante ou filtrante (4) est fendue (A) dans sa surface, réduisant l'efficacité du vent sur le dispositif.

Pour éviter que le lien (6) devienne dangereux, un réceptacle (B) et adjoint au mat, ou un a un des mats, permettant d'y recevoir l'extremitée (7) du lien (6) dans les périodes de non flexibilité du dispositif.

L'extremitée (7) du lien (6), de forme conique, vient se solidarisé du sol en étant introduit dans un moule de forme conjuguée (10), scellé, de façon incliné, dans le sol.

Les dessins annexés illustrent l'invention:

La figure 1 représente en coupe le dispositif de l'invention en mode de non flexibilité du dispositif.

La figure 2 représente en coupe le dispositif de l'invention en mode utilisé pour créer de l'hombre.

La figure 3 représente en vue de dessus le dispositif de l'invention en modes utilisés pour créer de l'hombre.

Les figures 4 et 5 représente en coupe, d'autres variantes de fabrications du dispositif.

REVENDICATIONS

1) Dispositif pour protéger des rayons du soleil une surface au sol caractérisé en ce qu'il comporte au moins un mât conique (1,2) solidarisé au sol sur une de ses extremités (9) supportant une matière occultante ou filtrante (4), l'autre extrémité étant reliée au sol par l'utilisateur en divers points (10) par un lien souple (5,6) permettant d'exercer une courbure antagoniste à la rigidité du ou des mats créant l'ombre portée de la surface (4) sur le sol.

2) Dispositif selon la revendication 1 caractérisé en ce que tous les divers points d'ancrage (10) du lien (6) sont disposés tout autour du dispositif de façon â permettre de créer la rotation du dispositif contre carrant la rotation du soleil sur la terre.

3) Dispositif selon la revendication 1 ou la revendication 2 caractérisé en ce que l'on utilise deux mâts coniques (1,2) positionnés côte à côte a leurs solidarisations au sol (9),et évasés en leurs parties supérieures maintenues en position par un autre mât(3).

4) Dispositif selon la revendication 1 ou la revendication 2 caractérisé en ce que les mâts (1,2) peuvent êtres séparés sur leurs parties solidaires du sol (9) pour êtres fixés ensemble dans leurs parties supérieures.

5) Dispositif selon la revendication 1 ou la revendication 2 caractérisé en ce que les mâts (1,2) peuvent êtres séparés sur leurs parties solidaires du sol (9) restant parallèles,rigidifiés pour cela par une barre (C) les reliant.

6) Dispositif selon l'une quelconque des revendications précédentes caractérisé en ce que la surface occultante ou filtrante (4) est fendue (A) dans sa surface réduisant l'efficacité du vent sur le dispositif.

7) Dispositif selon l'une quelconque des revendications précédentes caractérisé en ce que un réceptacle (B) est adjoint au mât ou à un des mats permettant d'y recevoir l'extrèmité (7) du lien (6) dans les périodes de non flexibité du dispositif.

8) Dispositif selon l'une quelconque des revendications précédentes caractériser en ce que l'extèmité (7) du lien (6) de forme conique vient se solidariser du sol en étant introduit dans un moule de forme conjuguée (10) scellé de façon inclinée dans le sol.



FIG.1

FIG.2



FIG.3

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 119 of 227



FIG.4



FIG.5



**INSTITUT NATIONAL DE LA PROPRIETE INDUSTRIELLE**

## RAPPORT DE RECHERCHE PRÉLIMINAIRE

établi sur la base des dernières revendications
déposées avant le commencement de la recherche

N° d'enregistrement
national

FA 668459
FR 0504181

| Catégorie | DOCUMENTS CONSIDÉRÉS COMME PERTINENTS Citation du document avec indication, en cas de besoin, des parties pertinentes | Revendication(s) concernée(s) | Classement attribué à l'invention par l'INPI |
|---|---|---|---|
| X | WO 97/43508 A (BENDIT, JONATHAN) 20 novembre 1997 (1997-11-20) * page 3, ligne 24 - page 4, ligne 1; revendication 1; figure 2 * | 1 | E04F15/00 |
| Y | | 4 | |
| X | US 3 394 720 A (MOSS CHARLES W) 30 juillet 1968 (1968-07-30) * colonne 3, ligne 60 - colonne 4, ligne 25; figure 10 * | 1 | |
| Y | | 5 | |
| Y | US 4 506 688 A (BETHOON ET AL) 26 mars 1985 (1985-03-26) * figure 1 * | 4 | |
| Y | US 5 080 123 A (STEIN ET AL) 14 janvier 1992 (1992-01-14) * figure 1 * | 5 | |
| A | DE 22 42 065 A1 (BOGON, HANS J., 8756 KAHL) 28 février 1974 (1974-02-28) * page 4, alinéa 1 - page 5, alinéa 2; figures * | 2,8 | **DOMAINES TECHNIQUES RECHERCHÉS (IPC)** E04H |
| E | AT 412 891 B (HODI-SZABO SILVIA; AICHINGER MICHAEL) 25 août 2005 (2005-08-25) * figure 2 * | 3 | |

| Date d'achèvement de la recherche | Examinateur |
|---|---|
| 16 décembre 2005 | Kriekoukis, S |

CATÉGORIE DES DOCUMENTS CITÉS

X : particulièrement pertinent à lui seul
Y : particulièrement pertinent en combinaison avec un autre document de la même catégorie
A : arrière-plan technologique
O : divulgation non-écrite
P : document intercalaire

T : théorie ou principe à la base de l'invention
E : document de brevet bénéficiant d'une date antérieure à la date de dépôt et qui n'a été publié qu'à cette date de dépôt ou qu'à une date postérieure.
D : cité dans la demande
L : cité pour d'autres raisons
......................................................
& : membre de la même famille, document correspondant

EPO FORM 1503 12.99 (P04C14)

**ANNEXE AU RAPPORT DE RECHERCHE PRÉLIMINAIRE
RELATIF A LA DEMANDE DE BREVET FRANÇAIS NO.**  FR 0504181  FA 668459

La présente annexe indique les membres de la famille de brevets relatifs aux documents brevets cités dans le rapport de recherche préliminaire visé ci-dessus.
Les dits membres sont contenus au fichier informatique de l'Office européen des brevets à la date du 16-12-2005
Les renseignements fournis sont donnés à titre indicatif et n'engagent pas la responsabilité de l'Office européen des brevets, ni de l'Administration française

| Document brevet cité au rapport de recherche | | Date de publication | Membre(s) de la famille de brevet(s) | | Date de publication |
|---|---|---|---|---|---|
| WO 9743508 | A | 20-11-1997 | AU | 2904497 A | 05-12-1997 |
| | | | CA | 2254909 A1 | 20-11-1997 |
| | | | CN | 1219990 A | 16-06-1999 |
| | | | EP | 0898632 A1 | 03-03-1999 |
| | | | JP | 2000510206 T | 08-08-2000 |
| | | | NO | 985302 A | 13-11-1998 |
| | | | ZA | 9704285 A | 14-01-1998 |
| US 3394720 | A | 30-07-1968 | AUCUN | | |
| US 4506688 | A | 26-03-1985 | AUCUN | | |
| US 5080123 | A | 14-01-1992 | AUCUN | | |
| DE 2242065 | A1 | 28-02-1974 | AUCUN | | |
| AT 412891 | B | 25-08-2005 | AT | 13622003 A | 15-01-2005 |

EPO FORM P0465

Pour tout renseignement concernant cette annexe : voir Journal Officiel de l'Office européen des brevets, No.12/82

**PUB-NO:** FR002884844A1

**DOCUMENT-IDENTIFIER:** FR 2884844 A1

**TITLE:** Floor space protecting device, has flexible conical poles connected on ground at one end supporting surface split occulting/filtering material, and links to connect widened ends of poles on ground at various anchoring points to create shade

**PUBN-DATE:** October 27, 2006

**PATENT-FAMILY-ID:** 35355014

**INVENTOR-INFORMATION:**

| NAME | COUNTRY |
|---|---|
| CAHOURS DE VIRGILE RICHARD | |

**APPLICANT:**

| NAME | COUNTRY |
|---|---|
| CAHOURS DE VIRGILE RICHARD | FR |

**APPL-NO:** FR 0504181 A

**APPL-DATE:** April 26, 2005

**PRIORITY-DATA:**

| PRIORITY-NO | PRIORITY-APPL-DATE |
|---|---|
| FR 0504181 A | 20050426 |

**CPC-CURRENT:**

| TYPE | CPC/DATE |
|---|---|
| CPCI | E04H15/58 20130101 |
| CPCI | E04H15/003 20130101 |

**INT-CL-CURRENT:**

| TYPE | IPC/DATE |
|---|---|
| IPCP | E04F15/00 20060101 |

**REF-CITED:**

**PHASE-COUNTRY/NUMBER/KIND/DATE-NPL-INFO**

SER AT 412891 B 20050825

SER DE 2242065 A1 19740228

SER US 5080123 A 19920114

SER US 4506688 A 19850326

SER US 3394720 A 19680730

SER WO 9743508 A1 19971120

**ABSTRACT:**

   The device has flexible conical poles (1, 2), placed side by side, integrated on the ground (9) on one end supporting an occulting or filtering material (4) that is split in its surface. The widened ends of the poles are connected on the ground by a user at various anchoring points (10) using flexible links (5, 6) permitting to exert a bend opposing the rigidity of the poles creating a shade for a floor area. The points of the link (6) are placed around the device. The widened ends of the poles are maintained in position by a pole (3).

file:///C/Users/nhawk/Documents/e-Red%20Folder/16224465/16224465_2020-04-02_FR_2884844_A1_M_AccessibleVersion.htm[4/2/2020 4:09:44 PM]

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
17 January 2002 (17.01.2002)

PCT

(10) International Publication Number
WO 02/04768 A1

(51) International Patent Classification⁷: E04H 15/62

(21) International Application Number: PCT/AU01/00820

(22) International Filing Date: 6 July 2001 (06.07.2001)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
PQ 8578          6 July 2000 (06.07.2000)     AU

(71) Applicants and
(72) Inventors: SCHEPIS, Marc [AU/AU]; 119 Framara Drive, Kelso, Queensland 4814 (AU). SELBY, Darrern [AU/AU]; 10 Spencer Place, Richmond, Victoria 3121 (AU).

(74) Agents: COWLE, Anthony, John et al.; DAVIES COLLISON CAVE, Level 10, 10 Barrack Street, Sydney, New South Wales 2000 (AU).

(81) Designated States (national): AE, AG, AL, AM, AT, AU, AZ, BA, BB, BG, BR, BY, BZ, CA, CH, CN, CO, CR, CU, CZ, DE, DK, DM, DZ, EC, EE, ES, FI, GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MA, MD, MG, MK, MN, MW, MX, MZ, NO, NZ, PL, PT, RO, RU, SD, SE, SG, SI, SK, SL, TJ, TM, TR, TT, TZ, UA, UG, US, UZ, VN, YU, ZA, ZW.

(84) Designated States (regional): ARIPO patent (GH, GM, KE, LS, MW, MZ, SD, SL, SZ, TZ, UG, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, CH, CY, DE, DK, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE, TR), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, GW, ML, MR, NE, SN, TD, TG).

Published:
— with international search report

For two-letter codes and other abbreviations, refer to the "Guidance Notes on Codes and Abbreviations" appearing at the beginning of each regular issue of the PCT Gazette.

(54) Title: PORTABLE SHELTER APPARATUS



(57) Abstract: A portable shelter apparatus (1) for protection against sand and wind in various outdoor environments, including a cover (2) of substantially flexible material, support means (3) adapted to support and elevate at least part of the periphery of the cover in a manner such as to form an opening, and ballast means (4) including a plurality of elongate ballast arms, each arm being spaced about the periphery of the cover (2), being of length sufficient to contact a substrate surface, and having a pouch on the remote end thereof adapted to receive sand or other ballast material therein. The portable shelter (1) may also be used as a privacy barrier or a temporary personal effect storage site.

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 125 of 227

# PORTABLE SHELTER APPARATUS

## BACKGROUND OF THE INVENTION

The field of the present invention relates generally to improvements in portable shelters, and more particularly to a portable shelter that can be easily carried and erected by a user and anchored securely in various outdoor environments.

The use of portable screen apparatuses in various environments is known in the prior art. In an outdoor environment, the use of environmental screens is desirable for providing protection from the sun, wind and from wind-blown sand, dirt and other debris being deposited on or near the user. Additionally, environmental screens may desirably provide a degree of privacy to a user or group of users, may be a security for valuables and a temporary storage site for equipment and personal effects. When used as a sun and wind shelter, these devices are especially useful in beach environments. However, while prior art screen shelters may be effective in providing protection from the environment, they can be difficult to carry, assemble and anchor securely. Many prior art screen shelters, eg, beach umbrellas, contain no effective anchoring means and thus become unstable and potentially hazardous fixtures in windy conditions. Some prior art screen shelters comprise anchoring means which can be difficult or even impossible to employ on ground surfaces of limited penetrability, eg, tents and cabanas comprising ground pegs or stakes, often resulting in damage to the anchoring means and screen shelter. Furthermore, as separate articles such anchoring means can be readily lost and require an additional carry bag.

## SUMMARY OF THE INVENTION

In one broad form the present invention provides a portable shelter apparatus comprising: a flexible shelter member, or two or more flexible shelter members being attached to at least one other of said flexible shelter members; one or more support members in engagement with one or more of said flexible shelter members supporting said flexible shelter members in an elevated deployed configuration; and one or more ballast members comprising a

- 2 -

weighted material permanently extending from one or more of said flexible shelter members to contact with the ground.

In a further broad form the present invention provides a portable shelter, including: a cover formed of substantially flexible material; support means adapted to support and elevate at least part of the periphery of said cover in a manner such as to form an opening; ballast means including a plurality of elongate ballast arms, each arm being spaced about the periphery of the cover, being of length sufficient to contact a substrate surface, and, having a pouch on the remote end thereof adapted to receive sand or other ballast material therein.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a side perspective view of a deployed portable shelter apparatus according to the present invention.

FIG. 2 is a front perspective view of the deployed portable shelter apparatus shown in FIG. 1.

FIG. 3 is a plan view of the portable shelter apparatus of FIG. 1 together with typical dimensions (cm).

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention is a portable shelter for outdoor use which can be stowed and user-carried within a flexible bag. The shelter of the present invention may be easily carried by a user when packaged in a non-functional configuration within the carry bag, and deployed in a functional configuration to adequately protect the user from the environment, eg, sun, wind, blowing sand, grass, dirt and other debris. A banner or other indicia may be associated with the shelter of the present invention. Advantageously, the shelter of the present invention can be easily and quickly erected for use in a wide variety of outdoor

- 3 -

settings with various ground surfaces, eg, beaches, sporting events, picnic areas, camping sites etc and is stable in above average winds.

The portable shelter of the present invention comprises a flexible shelter member, or two or more flexible shelter members being attached to at least one other flexible shelter member. The flexible shelter members, or portable screens, may be any size and shape such that when deployed in an elevated configuration they provide a desirable degree of protection for the user or group of users from the environment, eg, sun, wind, wind-blown sand etc. Preferably, the flexible shelter members are substantially square, rectangular, trapezial, triangular or half-domed in shape. Furthermore, the flexible shelter members may be constructed from one or more materials which are flexible. Preferably, the flexible shelter members may be constructed from materials which are also lightweight and tear proof. More preferably, the flexible shelter members may be constructed from materials which also inhibit or prevent the passage of ultraviolet (UV) light. Suitable materials include 190T nylon taffeta with silver coating, nylon 50+ UV protection, shadecloth 70-90% UFP 50+ UV protection, parachute material, polyester 25-50+ UV protection taffeta, polyethylene HDPE 70-90% UFP 50+ UV protection, oxford polyester, rip-stop polyester and lycra. A netted material may preferably be used for side portable screens providing cool ventilation. In embodiments of the present invention comprising two or more portable screens, the portable screens may be attached to at least one other portable screen by sewing, by being constructed from a single sheet of the same material or by some other permanent fastening structure as readily appreciated by those skilled in the art. In a preferred embodiment of the present invention, one or more portable screens may be removably attached to at least one other portable screen, eg, by zippers, buttons, press studs, hook and loop type fastening systems or by other temporary fastening structures as readily appreciated by those skilled in the art.

In the present invention, one or more support members engage with one or more flexible shelter members to support the flexible shelter members in an elevated deployed configuration. The support members may be any article capable of interfacing with one or more flexible shelter members to uphold or maintain the flexible shelter members in an

- 4 -

elevated deployed configuration. Preferably, the support members are poles constructed from various materials, eg, aluminium telescopic, iron, stainless steel, wooden or fibreglass poles. More preferably, the poles are collapsible multi-part poles which may be deployed from a collapsed storage orientation, eg, two or three section aluminium poles with shock-corded elastic. Furthermore, a variety of pole configurations may be selected, eg, a two-pole pin and ring frame system with shock-corded fibreglass poles may be used for self-erecting half-dome shape configurations.

In the portable shelters of the present invention it is appreciated that the support members may engage with one or more flexible shelter members through a variety of manners. For example, in the case where the support members are poles, the poles may engage with one or more flexible shelter members through sleeves, eg, stainless steel or brass eyelets sewn into the material of one or more flexible shelter members. Furthermore, the support members may engage with one or more flexible shelter members via loops through which the poles are threaded, hook and loop fastener loops or tabs or other securing structures for temporarily maintaining contact between the support structures and one or more flexible shelter members. As a result, a variety of support member/flexible shelter member support interface techniques are appreciated by those skilled in the art.

Characteristically, the portable shelters of the present invention are stabilised by one or more ballast members which may be any receptacle, eg, pouch, pocket, bag, sack etc capable of receiving and holding a weighted material. The ballast members permanently extend from one or more flexible shelter members to contact with the ground. Furthermore, the ballast members may permanently extend from one or more flexible shelter members to contact with the ground in a region which is external and/or internal to the internal region defined by the flexible shelter members in elevated deployed configuration. Preferably, the ballast members permanently extend from one or more flexible shelter members to contact with the ground in a region which is external to said internal region in order to maximise user shelter space. For some environmental shelter configurations, however, permanent extension in an internal direction may provide the most effective stabilisation.

- 5 -

In the present invention, the size, configuration, number and positioning of the ballast members may be that which provides the most effective stabilisation for a given portable shelter configuration. The ballast members may permanently extend from any point off the flexible shelter members to contact with the ground. Preferably, the ballast members permanently extend from the peripheries of the flexible shelter members. Furthermore, the ballast members may be any configuration which is capable of receiving and holding a weighted material. Preferably, the ballast members are substantially spherical, square, rectangular, oblong, trapezial or triangular in shape.

In the portable shelters of the present invention the ballast members permanently extend from one or more flexible shelter members by being sewn together or joined by any other permanent fastening means as appreciated by those skilled in the art. The ballast members may be constructed from the same materials as the flexible support members or from one or more different materials. Preferably, the ballast members and flexible shelter members permanently extend from one another as a result of their being constructed from a single sheet of the same flexible material.

The ballast members of the present invention may be filled with any material of sufficient weight to effectively anchor the environmental shelter. Preferably, the weighted materials are those convenient to the outdoor setting of use, eg, one or more of sand, soil, rocks, pebbles, water etc. After filling with a weighted material, the ballast members may optionally be sealed, eg, by a flap of flexible material, by zippers, buttons, press studs, hook and loop type fastening systems or by any other temporary sealing structure as readily appreciated by those skilled in the art.

The carry bag which allows transport of the shelter has a shape and size corresponding to the folded, minimised geometrical figure of the shelter. The carry bag may be constructed from any flexible material and is preferably constructed from the same material as the flexible shelter members. The carry bag may be used for individual use once the portable shelter has been assembled.

- 6 -

In operation, the user may transport the portable shelter in the non-functional configuration in the carry bag to an outdoor location. When desired, the user removes the portable shelter from the carry bag and unfolds or otherwise unaccumulates the flexible shelter members and ballast members upon the ground. The user then fills the ballast members with a weighted material which is preferably convenient to the outdoor location. The user then engages the support structures with one or more of the flexible shelter members to maintain the flexible shelter members in an elevated deployed configuration.

One embodiment of the invention will now be described below, by way of a non-limiting example, making reference to the above mentioned drawings.

Referring to the drawings in detail, the numeral 1 designates the portable shelter apparatus as a whole. The stabilised portable environmental shelter apparatus 1 is illustrated in deployed orientation in FIGS. 1 and 2. The flexible shelter members 2 are supported in an elevated deployed configuration by support members 3, shown here as three piece collapsible poles 3. In the embodiment illustrated in FIGS. 1 and 2 there are three flexible shelter members 2; the main portable screen which is substantially trapezial in shape and two portable side screens which are substantially triangular in shape and attached to the main portable screen by sewing. The portable side screens 2 may be rolled up when less privacy or more ventilation is desired. Furthermore, the interior walls of the flexible shelter members 2 may have a plurality of pockets or enclosures sewn into them for storing valuables and personal effects. The collapsible poles 3, disposed in a substantially upright manner, engage with the main portable screen 2 through sleeves 6, shown here as eyelets 6, sewn into the material of the main portable screen 2. The material surrounding the eyelets 6 may be reinforced with one or more patches of material. The head of each pole 3 is bent to form an angle of 45° to prevent the poles 3 from disengaging from the main portable screen 2. The opposite ends of the poles 3 may be rounded. The ballast members 4, shown here as substantially spherical pouches 4, are filled with a weighted material and permanently extend from the four corners of the main portable screen 2 to rest upon the ground in a region which is external to the interior region 5 defined by the flexible shelter members 2 in elevated deployed configuration. The two pouches 4 which permanently

- 7 -

extend from the back two corners closest to the ground of the portable main screen 2 are larger in size than the two pouches 4 which extend from the front two corners of the main portable screen 2 highest from the ground. The four pouches 4 and the flexible shelter members 2 are constructed from a single piece of the same flexible material.

In operation, the user may transport the environmental shelter apparatus 1 in the non-functional orientation within a carry bag adapted to carry same to an outdoor location. When desired, the user removes the environmental shelter apparatus 1 from the carry bag and unfolds or otherwise unaccumulates the flexible support members 2 and the pouches 4 out flat upon the ground. The pouches 4 are then filled with a weighted material. Next, the poles 3 are then extended or otherwise manipulated to length and individually inserted into the eyelets 6 of the flexible shelter members 2 in a substantially upright manner. The carry bag may be used separately for storage, transport or another use. Upon departure from the outdoor location, the user may collapse the environmental shelter apparatus 1 by removing the poles 3 from the eyelets 6, emptying the weighted material from the pouches 4 through their respective openings and folding or otherwise accumulating the portable screens 2 and pouches 4 and placing same into the carry bag 7 together with the collapsed poles 3.

The preferred embodiment illustrated in FIGS 1, 2 and 3 depending upon the materials used may block out 80-90% of UV rays and may provide 70-97% shade to users. It can be stably located on various ground surfaces including impenetrable grounds and is stable in winds of up to 15 knots. It can be easily stowed and user-carried and expeditiously assembled. Furthermore, its assembly is sufficiently uncomplicated such that it can be easily grasped and its construction entails minimal bulk, weight, complexity and cost. No small separate parts which can be readily lost are required. Moreover, it provides a desirable degree of privacy to a user or group of users and is a security for valuables and a temporary storage site for equipment and personal effects. A banner of other indicia may also be associated with it.

It is understood that the exemplary portable stabilised environmental apparatus 1 described herein and shown in the drawings represents only a preferred embodiment of the present

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 132 of 227

- 8 -

invention. Indeed, various modifications and additions may be made to such embodiment without departing from the spirit and scope of the invention. Thus, these and other modifications and additions may be obvious to those skilled in the art and may be implemented to adapt the present invention for use in a variety of different applications.

- 9 -

The claims defining the invention are as follows:

1.      A portable shelter apparatus comprising:

a flexible shelter member, or two or more flexible shelter members being attached to at least one other of said flexible shelter members;

one or more support members in engagement with one or more of said flexible shelter members supporting said flexible shelter members in an elevated deployed configuration; and

one or more ballast members comprising a weighted material permanently extending from one or more of said flexible shelter members to contact with the ground.

2.      The apparatus according to claim 1, comprising a flexible shelter member which is substantially square, rectangular or trapezial in shape and is the main portable screen.

3.      The apparatus according to claim 2, comprising two flexible shelter members substantially triangular in shape optionally removably attached to either side of said main portable screen.

4.      The apparatus according to either claim 2 or claim 3, comprising two ballast members permanently extending from the back two corners of said main portable screen, and two ballast members permanently extending from the front two corners of said main portable screen.

5.      The apparatus according to anyone of claims 1 to 4, wherein said ballast members contact with the ground in a region which is external to the internal region defined by said flexible shelter members in elevated deployed configuration.

6.      The apparatus according to anyone of claims 1 to 5, wherein one or more of said support members engage with one or more of said flexible support members through sleeves in the material of said flexible shelter members.

- 10 -

7.      The apparatus according to anyone of claims 1 to 6, wherein said support members are two poles disposed in a substantially upright manner between the ground and the front two corners of said main portable screen.

8.      The apparatus according to anyone of claims 1 to 7, wherein said flexible shelter members and said ballast members are constructed from the same material.

9.      The apparatus according to anyone of claims 1 to 8, wherein said flexible shelter members and said ballast members are constructed from a single sheet of the same material.

10.      The apparatus according to anyone of claims 1 to 9, wherein said flexible shelter members are constructed from a material which is lightweight and which inhibits or prevents the passage of ultraviolet light.

11.      The apparatus according to anyone of claims 1 to 10, wherein said ballast members are substantially spherical pouches.

12.      The apparatus according to anyone of claims 1 to 11, wherein said weighted material is one or more of sand, rocks, pebbles, soil or water.

13.      The apparatus according to anyone of claims 1-12, further comprising a carry bag defining an interior region sized to receive said flexible shelter members, said support members and said ballast members.

14.      A portable shelter, including:

        a cover formed of substantially flexible material;

        support means adapted to support and elevate at least part of the periphery of said cover in a manner such as to form an opening; and

- 11 -

ballast means including a plurality of elongate ballast arms, each arm being spaced about the periphery of the cover, being of length sufficient to contact a substrate surface, and having a pouch on the remote end thereof adapted to receive sand or other ballast material therein.

15. A portable shelter as claimed in claim 14, wherein said ballast arms are formed integrally with said cover.

16. A portable shelter as claimed in claim 14 or claim 15, wherein said cover is substantially quadrilateral in shape, said support means being formed by a pair of support posts adapted to elevate a first edge of said cover to form an opening between said support posts, and said ballast means includes four ballast arms, two of said ballast arms adjacent said first edge being substantially more elongate than the other two of said ballast arms.

17. A portable shelter as claimed in anyone of claims 14 to 16, further including side walls attached to at least one part of the periphery of said cover, in a removable or permanent manner.

18. A portable shelter as claimed in anyone of claims 14 to 17, wherein said cover is formed of material which substantially inhibits the passage of ultraviolet light.

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 136 of 227



FIG.1

Case 5:24-cv-00588-FL      Document 28-5      Filed 03/23/26      Page 137 of 227



FIG.2

SUBSTITUTE SHEET (RULE 26) RO/AU



FIG.3

SUBSTITUTE SHEET (RULE 26) RO/AU

| A. | CLASSIFICATION OF SUBJECT MATTER |
|---|---|

Int. Cl. [7]:     E04H 15/62

According to International Patent Classification (IPC) or to both national classification and IPC

| B. | FIELDS SEARCHED |
|---|---|

Minimum documentation searched (classification system followed by classification symbols)
Refer electronic database consulted below.

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)
DWPI and keywords: tent and ballast and similar terms.

| C. | DOCUMENTS CONSIDERED TO BE RELEVANT |
|---|---|

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | JP 9-125748 A (USER KK) 13 May 1997<br>Figures 1 and 6 | 1-18 |
| X | AU 426/26 A (BYNE) 25 January 1927<br>Column 3 lines 41 to 57 | 1-18 |
| X | CA 2156683 A1 (ADLER et al.) 23 February 1997<br>Page 7 line 1 to page 8 line 11 | 1-18 |

[X] Further documents are listed in the continuation of Box C     [X]  See patent family annex

| * | Special categories of cited documents: | "T" | later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
|---|---|---|---|
| "A" | document defining the general state of the art which is not considered to be of particular relevance | | |
| "E" | earlier application or patent but published on or after the international filing date | "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "O" | document referring to an oral disclosure, use, exhibition or other means | | |
| "P" | document published prior to the international filing date but later than the priority date claimed | "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 22 August 2001 | 29 August 2001 |
| Name and mailing address of the ISA/AU | Authorized officer |
| AUSTRALIAN PATENT OFFICE<br>PO BOX 200, WODEN ACT 2606, AUSTRALIA<br>E-mail address: pct@ipaustralia.gov.au<br>Facsimile No. (02) 6285 3929 | D. Melhuish<br>**DAVID MELHUISH**<br>Telephone No : (02) 6283 2426 |

Form PCT/ISA/210 (second sheet) (July 1998)

| C (Continuation). | DOCUMENTS CONSIDERED TO BE RELEVANT | |
|---|---|---|
| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| X | US 4499133 A (PRINCE) 12 February 1985<br>Column 1 lines 30 to 34<br>Column 5 lines 3 to 9 | 1-18 |
| X | AU 41460/93 A (SKELLS) 23 December 1993<br>Page 5 lines 17 to 28 | 1,2,4,5,7,10-16,18 |

Form PCT/ISA/210 (continuation of Box C) (July 1998)

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 141 of 227

This Annex lists the known "A" publication level patent family members relating to the patent documents cited in the above-mentioned international search report. The Australian Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

| Patent Document Cited in Search Report | | | Patent Family Member |
|---|---|---|---|
| JP | 9125748 | NONE | |
| CA | 2156683 | NONE | |
| US | 4499133 | NONE | |
| AU | 41460/93 | NONE | |
| AU | 426/26 | NONE | |

END OF ANNEX

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 142 of 227

**PUB-NO:** WO000204768A1

**DOCUMENT-IDENTIFIER:** WO 0204768 A1

**TITLE:** PORTABLE SHELTER APPARATUS

**PUBN-DATE:** January 17, 2002

**PATENT-FAMILY-ID:** 3822644

**INVENTOR-INFORMATION:**

| NAME | COUNTRY |
|------|---------|
| SELBY DARRERN | AU |
| SCHEPIS MARC | AU |

**APPLICANT:**

| NAME | COUNTRY |
|------|---------|
| SELBY DARRERN | AU |
| SCHEPIS MARC | AU |

**APPL-NO:** AU 0100820 W

**APPL-DATE:** July 6, 2001

**PRIORITY-DATA:**

| PRIORITY-NO | PRIORITY-APPL-DATE |
|-------------|--------------------|
| AU PQ857800 A | 20000706 |

**CPC-CURRENT:**

| TYPE | CPC/DATE |
|------|----------|
| CPCI | E04H15/003 20130101 |
| CPCA | E04H2015/328 20130101 |

**INT-CL-CURRENT:**

| TYPE | IPC/DATE |
|------|----------|
| IPCP | E04H15/00 20060101 |
| IPCN | E04H15/32 20060101 |

**REF-CITED:**

file:///C/Users/nhawk/Documents/e-Red%20Folder/16224465/16224465_2020-04-02_WO_0204768_A1_M_AccessibleVersion.htm[4/2/2020 4:09:58 PM]

**PHASE-COUNTRY/NUMBER/KIND/DATE-NPL-INFO**
AU 4146093 A 19931223
US 4499133 A 19850212
CA 2156683 A1 19970223
AU 42626 A
JP H09125748 A 19970513

**ABSTRACT:**

A portable shelter apparatus (1) for protection against sand and wind in various outdoor environments, including a cover (2) of substantially flexible material, support means (3) adapted to support and elevate at least part of the periphery of the cover in a manner such as to form an opening, and ballast means (4) including a plurality of elongate ballast arms, each arm being spaced about the periphery of the cover (2), being of length sufficient to contact a substrate surface, and having a pouch on the remote end thereof adapted to receive sand or other ballast material therein. The portable shelter (1) may also be used as a privacy barrier or a temporary personal effect storage site.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 2289 |
| Appl. No.: | 16/224,465 | Group Art Unit: | 3636 |
| Filed: | December 18, 2018 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Attorney Docket No.: S105508 1010US.C1 (0002.2)
Customer No.: 26158

### Proposed Agenda for Telephonic Examiner Interview

Interview Date: April 2, 2020
Interview Time: 3:30 PM
Contact Method: Attorney of Record to Call Examiner at 571-272-1480

Tentative Participants:

| **Applicant** | **Office** |
|---|---|
| Lauren Anderson (Attorney of Record) | Examiner Noah Chandler Hawk |

### Issues to be Discussed:

- Proposed claim amendment to independent Claim 21:

21. A system for providing shade onto a surface, the system comprising:
a frame comprising a first end and an opposing second end, each of the first end and the second end being <u>directly embedded in</u> ~~engageable with~~ the surface such that when the first end and the second end are <u>embedded in</u> ~~engaged with~~ the surface, the frame lies within a plane substantially perpendicular to the surface, wherein the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each <u>directly embedded in</u>~~engaged with~~ the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween; <u>and</u>
a canopy extending between a first longitudinally-extending edge and an opposing second longitudinally-extending edge, one of the first longitudinally-extending edge or the second longitudinally-extending edge of the canopy being coupleable with the frame

about a portion thereof, the portion being defined between the first end and the second end of the frame; ~~and~~

~~a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface;~~

wherein the other of the second longitudinally-extending edge or the first longitudinally-extending edge of the canopy is spaced apart from the central portion of the frame such that when a force is applied to the canopy, the canopy extends at an angle relative to the first plane.

- Distinctions between the proposed amended claim and the cited references:
  - <u>Butterfly</u> –
    - In Section 8 of the Office Action, it is stated that the frame in Butterfly is considered only to encompass the pole elements denoted by "A" in the annotated screen capture
    - However, the pole elements "A" in Butterfly are not directly embedded in the surface. Instead, it is the ground stakes "B" in Butterfly that are driven into the surface at the desired angle.
    - Therefore, the alleged frame in Butterfly, pole elements "A" is not analogous to the claimed frame.
    - There would be no suggestion or motivation from Butterfly for the pole elements "A" to be directly embedded in the ground, because the ground stakes B are driven into the ground at a desired angle using a hammer, thus indicating that it requires a significant amount of pressure in order to pierce the grass / compacted soil layer. The pole elements "A" could not be similarly hammer-driven into the ground because there is no end surface of the pole element A to hit with a hammer.
  - <u>Seo</u> –
    - The arched poles A and B are assembled and then the four corners of the tent cloth are secured to the ground using supporting pins p. Paragraph [0040].

WBD (US) 48938869v2

- Shires –
  - Doesn't have a frame comprising a first end and an opposing second end, each of the first end and the second end being <u>directly embedded in</u> the surface such that when the first end and the second end are <u>embedded in</u> the surface, the frame lies within a plane substantially perpendicular to the surface
    - Just has pole 28 with anchors 40

- Cook –
  - Doesn't have a frame comprising a first end and an opposing second end, each of the first end and the second end being <u>directly embedded in</u> the surface such that when the first end and the second end are <u>embedded in</u> the surface, the frame lies within a plane substantially perpendicular to the surface

Applicant thanks the examiner for agreeing to participate in this interview.

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344
Attorney for Applicant

**Via email to Examiner Noah Chandler Hawk at Noah.Hawk@uspto.gov on April 1, 2020**

WBD (US) 48938869v2

(19) **Deutsches Patent- und Markenamt**



(10) **DE 10 2009 020 795 A1** 2010.11.04

(12)
# Offenlegungsschrift

(21) Aktenzeichen: **10 2009 020 795.3**
(22) Anmeldetag: **30.04.2009**
(43) Offenlegungstag: **04.11.2010**

(51) Int Cl.[8]: **E04H 15/58** (2006.01)
**E04H 15/28** (2006.01)
**E04F 10/04** (2006.01)
**A45B 23/00** (2006.01)

| | |
|---|---|
| (71) Anmelder:<br>**Schmidt, Michael, Dipl.-Ing. Designer, 70180 Stuttgart, DE** | (74) Vertreter:<br>**PFENNING MEINIG & PARTNER GbR, 01067 Dresden**<br><br>(72) Erfinder:<br>**gleich Anmelder** |

**Die folgenden Angaben sind den vom Anmelder eingereichten Unterlagen entnommen**

(54) Bezeichnung: **Sonnenschutz**

(57) Zusammenfassung: Sonnenschutz, bei dem ein radial außen von einem flexiblen Rahmen aufspannbar gehaltenes Sonnensegel als Verschattungselement mit einem Fußteil verbunden ist. Aufgabe der Erfindung ist es, einen Sonnenschutz zur Verfügung zu stellen, mit dem eine Anpassung an wechselnden Sonnenstand einfach und flexibel vorgenommen werden kann. Bei einem erfindungsgemäßen Sonnenschutz ist ein Spannelement in einem Abstand zum Fußteil mit dem Rahmen gelenkig verbunden oder es kann am Rahmen befestigt werden. Am anderen Ende des Spannelements ist ein Anker mit dem Spannelement gelenkig verbunden. Der Anker kann am Erdboden befestigt werden oder einfach auf den Erdboden aufgesetzt werden. Über das Spannelement wird eine Zugkraft auf den Rahmen ausgeübt, um den Rahmen oder dessen tragende Elemente zu biegen, dadurch beschreibt der Rahmen ausgehend vom Fußteil einen Bogen, der teilweise dann in eine zumindest annähernd horizontale Ausrichtung übergehen kann.



Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 148 of 227

**Beschreibung**

[0001] Sonnenschutz, bei dem ein radial außen von einem flexiblen Rahmen aufspannbar gehaltenes Sonnensegel als Verschattungselement mit einem Fußteil verbunden ist.

[0002] Für einen Schutz vor Sonnenstrahlung sind die unterschiedlichsten Ausführungen an Sonnenschirmen, Sonnensegeln oder Markisen im Einsatz. Es gibt auch unterschiedlichste Möglichkeiten, mit denen der Wechsel des Sonnenstandes in Bezug zum Nutzungsort berücksichtigt werden kann. So können für den Sonnenschutz eingesetzte Schirme oder Segel gedreht oder abgewinkelt werden. Hierfür sind unterschiedliche mechanische Systeme und Elemente im Einsatz, deren Handhabung aber Defizite aufweist und auch bei deren Betätigung häufig eine Verletzungsgefahr besteht.

[0003] Es ist daher Aufgabe der Erfindung einen Sonnenschutz zur Verfügung zu stellen, mit dem eine Anpassung an wechselnden Sonnenstand einfach und flexibel vorgenommen werden kann.

[0004] Erfindungsgemäß wird diese Aufgabe mit einem Sonnenschutz, der die Merkmale des Anspruchs 1 aufweist, gelöst. Vorteilhafte Ausgestaltungen und Weiterbildungen der Erfindung können mit in untergeordneten Ansprüchen bezeichneten Merkmalen realisiert werden.

[0005] Bei einem erfindungsgemäßen Sonnenschutz ist ein radial außen von einem flexiblen Rahmen aufspannbar gehaltenes Sonnensegel als Verschattungselement mit einem Fußteil verbunden. Ein Spannelement ist in einem Abstand zum Fußteil mit dem Rahmen gelenkig verbunden oder es kann am Rahmen befestigt werden. Am anderen Ende des Spannelements ist ein Anker mit dem Spannelement gelenkig verbunden. Der Anker kann am Erdboden befestigt werden oder einfach auf den Erdboden aufgesetzt werden. Wird ein Anker einfach auf den Erdboden aufgesetzt muss er eine ausreichend große Eigenmasse aufweisen, die eine ausreichend große Kraftwirkung ermöglicht, so dass über das Spannelement eine Zugkraft auf den Rahmen ausgeübt wird, um den Rahmen oder dessen tragende Elemente zu biegen, wobei der Abstand des Kraftangriffspunktes des Spannelementes am Rahmen zum Fußteil berücksichtigt ist.

[0006] Dadurch beschreibt der Rahmen ausgehend vom Fußteil einen Bogen, der teilweise dann in eine zumindest annähernd horizontale Ausrichtung übergehen kann.

[0007] Ein Anker kann aber auch am bzw. im Erdboden befestigt werden. Hierfür kann er als oder mit geeigneten Befestigungselementen versehen oder so

ausgebildet sein. So kann er keilförmig ausgebildet und zumindest ähnlich, wie ein bei der Aufstellung von Zelten eingesetzter Hering ausgebildet sein.

[0008] Mit der Erfindung kann der Rahmen mit dem Sonnensegel in Bezug zum jeweiligen Sonnenstand ausgerichtet und der zu verschattende Bereich angepasst werden.

[0009] Der das Sonnensegel aufspannende und tragende Rahmen kann mit mindestens einem flexibel biegbaren stab- oder rohrförmigen Element gebildet sein, das mit dem Sonnensegel in an sich bekannter Form an dessen radial äußerem Rand verbunden ist. Stab- oder rohrförmige Elemente können dabei bevorzugt als Glas- oder Kohlefaserverstärkte Stäbe oder Rohre ausgebildet sein.

[0010] Für eine bessere Handhabbarkeit bei Nutzung und Aufbau kann ein Rahmen aber auch mit mehreren stab- oder rohrförmigen Elementen gebildet sein. Diese können miteinander verbunden werden, was im einfachsten Fall durch Steckverbindung möglich ist. Vorteilhaft können für die Verbindung aber auch Gelenke eingesetzt werden. Besonders vorteilhaft sind hierfür Knickgelenke, die bei der Aufstellung fixiert werden können, so dass eine stabile Rahmenkonstruktion gebildet werden kann.

[0011] Dabei kann durch rohrförmige Elemente ein Zugseil und das Zugseil auch durch ein Knickgelenk geführt werden. Das andere Ende des Zugseils kann dabei mit einem Spannhebelmechanismus verbunden sein, der bevorzugt am Fußteil oder in seiner Nähe angeordnet und dort auch befestigt ist. Über das Zugseil kann eine Zugkraft zum Aufspannen des Rahmens mit Sonnensegel an einem rohrförmigen Element ausgeübt werden, das hinter dem Knickgelenk angeordnet ist, durch das das Zugseil geführt ist. Wird durch Betätigung des Spannmechanismus die Zugspannung gelöst und die wirksame Länge des Zugseils zwischen der Befestigung am Spannmechanismus und dem entsprechenden Befestigungspunkt am stab- oder rohrförmigen Element dabei verlängert, kann das Knickgelenk abknicken und der Rahmen dadurch zusammengeklappt werden. Über Knickgelenke können Schraubenfedern oder flexible hülsenförmige Elemente (z. B. Kunststoffschläuche) geschoben werden, so dass diese von einer solchen Feder oder einem hülsenförmigen Element umgriffen sind. Dadurch kann die Stabilität erhöht werden.

[0012] Ein Spannmechanismus kann eine rotierende Achse aufweisen, um die oder eine daran vorhandene Rolle das Zugseil zum Spannen gewickelt wird. Die Drehung zum Spannen des Zugseils kann mittels eines Hebels oder einer nach außen geführten arretierbaren Kurbel erfolgen.

[0013] Es besteht aber auch die Möglichkeit, einen

auch als selbttragenden Rahmen bezeichnenbaren, bei der Erfindung einzusetzen. In diesem Fall ist am äußeren Rand eines Sonnensegels zumindest in einem Bereich davon mindestens ein Hohlraum vorhanden. Dieser Hohlraum kann mit einer Flüssigkeit oder einem Gas gefüllt sein. Diese(s) sollte unter einem erhöhten Druck stehend enthalten sein, der oberhalb des Umgebungsdruckes liegt. Der/die Hohlraum/Hohlräume können mit dem Material des Sonnensegels gebildet sein. Sie können aber auch mit dem äußeren Rand verbunden sein. Hohlräume, bevorzugt schlauchförmig ausgebildete, ermöglichen beim Befüllen ein Aufrichten und Aufspannen des Sonnensegels und wegen der Elastizität der Hülle der Hohlräume oder des eingesetzten Materials kann die gewünschte Verformung des Sonnenschutzes mit Hilfe des Spannelements und Anker erreicht werden. Die Befüllung mit der Druckerhöhung kann mit mindestens einem Ventil erfolgen. Über das eine oder mehrere Ventile kann das enthaltene Gas oder die Flüssigkeit wieder abgelassen, zumindest der Druck soweit reduziert werden, dass ein so ausgebildeter Sonnenschutz einfach zusammengefaltet werden kann, wenn er nicht benötigt wird und bei Bedarf zum Aufspannen dann wieder der/die Hohlraum/-räume gefüllt werden. Lediglich das Fußteil und ggf. ein daran angrenzender Bereich können als starre Teile ausgebildet sein.

[0014] Das Spannelement mit dem die Biegung des Rahmens mit Sonnensegel erreicht werden kann, kann bevorzugt ein Zugseil sein. Ein Zugseil ist leicht und kann einfach gehandhabt werden. Bei Lagerung und Transport ist nur ein geringer Raum erforderlich.

[0015] Ein Zugseil oder ein anders ausgebildetes Spannelement, wie z. B. eine Kette oder Spannstab, sollten in ihrer Länge veränderbar sein. Dadurch können unterschiedliche Biegungen des Sonnenschutzes und eine Ausrichtung des Sonnensegels unter Berücksichtigung des Sonnenstandes und dem zu beschattenden Bereich einfach vorgenommen werden. Hierfür kann auch allein oder zusätzlich ein Versetzen des Ankers, mit dem das Spannelement verbunden ist, erfolgen. Durch eine Positionsveränderung des Ankers kann die Richtung und/oder der Biegeradius von Rahmen mit Sonnensegel verändert werden. Dabei kann der Anker seitlich versetzt und/oder in einem größeren Abstand zum Fußteil angeordnet werden.

[0016] Die Ausrichtung von Rahmen mit Sonnensegel kann auch dadurch verändert werden, indem die Position des Kraftangriffspunkts eines Spannelements am Rahmen verändert wird. Dafür können am Rahmen in Abständen zueinander Befestigungselemente, beispielsweise Haken oder Ösen vorhanden sein, in die ein Spannelement je nach Bedarf und Ausrichtung zur Sonne eingehängt werden kann. Dadurch kann eine Verkippung/Verdrehung des Son-

nensegels in Bezug zur Horizontalen erreicht und der Schutz in einer seitlichen Richtung verbessert werden.

[0017] Dies kann aber auch mit einer am äußeren Rand des Rahmens vorhandenen Führung erreicht werden, an der das Spannelement angreift und darin verschoben werden kann. Eine Führung kann in Form einer Schiene aber auch als gebogenes Rohr bzw. gebogener Stab ausgebildet sein, mit dem ein Ring mit dem das Spannelement verbunden ist, mit dem Rahmen verbunden ist. Der Ring kann dann entlang der Führung und damit auch die Position des Kraftangriffspunktes des Spannelements verschoben werden. Wird eine geeignete Passung für den Ring und eine solche Führung gewählt, kann eine Selbsthemmung in einer gewünschten Position des Kraftangriffs des Spannelements am Rahmen ausgenutzt und auf eine zusätzliche Fixierung verzichtet werden. Hierzu können Innen- und Außendurchmesser sowie die Breite eines Ringes in geeigneter Form und ggf. unter Berücksichtung des erreichbaren Haftreibwertes gewählt werden.

[0018] Die Flexibilität der Ausrichtung des Sonnensegels in Bezug zur Sonne kann weiter erhöht werden wenn zwei Spannelemente in einem Abstand zueinander mit dem Rahmen verbunden sind bzw. verbunden werden können. Diese können eine unterschiedliche Länge zwischen den Kraftangriffspunkten am Rahmen und dem Anker aufweisen, wodurch eine gezielte Verdrehung und Verkippung von Rahmen mit Sonnensegel erreicht werden kann. Bei gleicher wirksamer Länge von zwei Spannelementen kann dies allein oder zusätzlich auch durch geeignete Positionierung der beiden Anker erreicht werden.

[0019] Ein Fußteil kann fest mit dem Boden verbunden sein. In diesem Fall sollte jedoch zumindest der Rahmen mit dem Sonnensegel um eine vertikal ausgerichtete Achse drehbar sein. Ansonsten kann es günstig sein ein Fußteil so zu gestalten, dass es um eine vertikale Achse gedreht werden kann.

[0020] Das Sonnensegel kann aus üblicherweise für diese Zwecke eingesetztem Material hergestellt sein.

[0021] Nachfolgend soll die Erfindung beispielhaft näher erläutert werden.

[0022] Dabei zeigen:

[0023] Fig. 1 und Fig. 2 zwei Ansichten eines Beispiels eines erfindungsgemäßen Sonnenschutzes;

[0024] Fig. 3 und Fig. 4 zwei Montagezustände eines an einem erfindungsgemäßen Sonneschutz einsetzbaren Rahmens;

**[0025]** Fig. 5 das in Fig. 4 gezeigte Beispiel, ohne ein Basisteil am Fußteil und

**[0026]** Fig. 6 und Fig. 7 zwei Zustände eines Knickgelenkes, das an einem Rahmen eines Sonnenschutzes einsetzbar ist, jeweils in einer Seitenansicht und einer Schnittdarstellung.

**[0027]** In den Fig. 1 und Fig. 2 ist ein Beispiel eines erfindungsgemäßen Sonnenschutzes in zwei unterschiedlichen perspektivischen Ansichten gezeigt. Das Sonnensegel **1** ist mit einem außen an ihm befestigten Rahmen **3** aufgespannt, so dass es in diesem Fall in eine von einem Fußteil **4** weg weisende Richtung eine annähernd elliptische Form einnehmen kann.

**[0028]** In Richtung Erdboden geht der Rahmen **3** in das Fußteil **4** über. Das Fußteil **4** kann über eine ausreichend große Eigenmasse verfügen, mit der ein sicherer Stand des Sonnenschutzes, auch bei angreifendem Wind, gesichert werden kann. In nicht dargestellter Form kann das Fußteil **4** auch mit dem Erdboden verankert sein. Zumindest in diesem Fall sollte eine drehbare Lagerung vorhanden sein, mit der eine Drehung des Rahmens **3** mit Sonnensegel **1** bevorzugt um 360° zumindest jedoch um 90°, um eine vertikale Achse möglich ist.

**[0029]** Günstig ist die Verbindung von Rahmen **3** und Fußteil ebenfalls gelenkig, dadurch kann eine Verschwenkung von Rahmen **3** mit Sonnensegel **1** im Bereich des Fußteils **4** um eine horizontale Achse erfolgen. Hier sollte jedoch eine Sperre oder eine hohe Selbsthemmung vorgesehen werden, mit deren Hilfe eine ausreichend hohe Gegenkraft zu einer Zugkraft bzw. dem von einem Zugseil **2**, als Spannelement, ausgeübten Drehmoment aufgebracht werden können.

**[0030]** Das Zugseil **2** ist hier am Rahmen **3** und mit seinem anderen Ende an einem Anker **5** befestigt. Der Anker **5** stellt hier eine Gegenmasse zur Kraft dar, die mit dem gebogenen Rahmen **3** auftritt. Die Länge des Zugseils **2** bestimmt den Biegeradius des Rahmens **3** mit dem Sonnensegel **1**. Durch eine Verkürzung der Länge können Rahmen **3** und Sonnensegel **1** mehr gebogen werden, so dass der Teil des Rahmens **3** an dem das Zugseil **2** angreift weiter nach unten gezogen wird. Dies kann aber auch durch eine Veränderung der Position des Ankers **5** in Bezug zum Fußteil **4** erreicht werden, indem der Anker **5** weiter entfernt oder näher zum Fußteil **4** positioniert werden kann. Das Zugseil **2** ist dann nicht wie hier gezeigt vertikal ausgerichtet.

**[0031]** In den Fig. 1 und Fig. 2 ist eine nahezu symmetrische Anordnung von Fußteil, Kraftangriffspunkt des Zugseils **2** am Rahmen **3** und Anker **5** entlang einer Achse dargestellt. Durch seitliche Verschiebung

der Position von Kraftangriffspunkt des Zugseils **2** kann eine Verkippung/Neigung des Sonnensegels **1** mit Rahmen **3** erreicht werden. Dies kann durch seitliche Verschiebung der Position des Ankers **5** noch unterstützt werden. In diesem Fall weist eine Seite des Sonnenschutzes in einem größeren Abstand zum Erdboden, als die gegenüberliegende Seite auf. Dadurch ist ein großer Teil des Sonnensegels **1** in einem Winkel schräg in Bezug zur Horizontalen geneigt. Dadurch kann eine Abschattung von seitlich einfallender Sonnenstrahlung erreicht werden.

**[0032]** Dies kann aber auch in nicht dargestellter Form, wie im allgemeinen Teil der Beschreibung bereits erläutert, mit zwei Zugseilen **2** oder anders ausgebildeten Spannelementen **2** erreicht werden, die an in einem Abstand zueinander angeordneten Positionen am Rahmen **3** befestigt sind.

**[0033]** In einer weiteren nicht dargestellten Ausgestaltung des erfindungsgemäßen Sonnenschutzes können zusätzliche Massen an einer Seite des Rahmens befestigt wer den, die zu einer Verkippung/Neigung von Sonnensegel **1** mit Rahmen **3** führen können. Diese können beispielsweise einfach am Rahmen **3** oder ggf. daran vorhandene Befestigungselemente angehängt werden. Dabei können solche Massen entsprechend gestaltet sein, um den optisch erfassbaren ästhetischen Eindruck zu verbessern. Sie können aber auch funktional sein, um beispielsweise als Beleuchtungselement, Musikabspielgerät oder Radio genutzt werden zu können.

**[0034]** Bei den Darstellungen der Fig. 3 und Fig. 4 ist auf die Erkennbarkeit des Sonnensegels **1** verzichtet worden. Hier sind vier rohrförmige Elemente **3.1**, **3.2** und **3.3** untereinander und die stabförmigen Elemente **3.1** und **3.2** mit dem Fußteil **4** verbunden. Mit Fig. 3 ist somit ein vollständig gespannter Rahmen **3** gezeigt.

**[0035]** Die rohrförmigen Elemente **3.3** sind dabei mit einer einfachen Steckverbindung untereinander verbunden, wohingegen die Verbindung der rohrförmigen Elemente **3.1**, **3.2** mit jeweils einem rohrförmigen Element **3.3** mit einem Knickgelenk **3.4** realisiert ist.

**[0036]** Dadurch kann der Rahmen **3** zumindest so zusammengeklappt werden, wie dies in Fig. 4 erkennbar ist.

**[0037]** Die Fig. 5 und Fig. 6 zeigen als Detail ein Knickgelenk **3.4**, das von einer Schraubenfeder **3.7** umgeben ist. In Fig. 5 ist eine gespannte Stellung gezeigt, bei der der Rahmen **3** aufgerichtet ist. Dazu ist durch die rohrförmigen Elemente **3.1** und **3.2** jeweils ein Zugseil **3.5** geführt. Dieses ist an einem Ende mit dem rohrförmigen Element **3.3** und dem anderen Ende mit einem Spannhebelmechanismus **3.6** verbunden. Wird der Spannhebelmechanismus **3.6** ge-

löst und dabei die freie Länge der Zugseile **3.5** vergrößert, können jeweils das rohrförmige Element **3.1** mit einem rohrförmigen Element **3.3** und das rohrförmige Element **3.2** mit dem anderen rohrförmigen Element **3.3** abknicken und so der ganze Sonnenschutz zusammengeklappt werden.

[0038]   Der Spannhebelmechanismus **3.6** ist hier am unteren Teil des Rahmens **3** zwischen Teilen der rohrförmigen Elemente **3.1** und **3.2** angeordnet und dient gleichzeitig als stabilisierende Verbindung am Rahmen **3**.

[0039]   Wird der Spannhebelmechanismus **3.6** anders betätigt und dabei beispielsweise die beiden Zugseile **3.5** auf eine Welle oder Rolle aufgerollt, kann der Rahmen **3** durch die Verkürzung der wirksamen Länge der beiden Zugseile **3.5** wieder aufgerichtet und das Sonnensegel **1** mit Rahmen **3** wieder aufgespannt werden.

[0040]   Noch weiter unten als der Spannhebelmechanismus **3.6** ist ein Beleuchtungselement **8** angebracht, das bevorzugt über Solarzellen ggf. mit einem Elektroenergiespeicher mit Energie versorgt werden kann. So kann das Sonnensegel **1** von unten angestrahlt und eine indirekte Beleuchtung durch teilweise Rückreflexion an der Unterseite des Sonnensegels **1** erreicht werden.

[0041]   Die **Fig. 5** zeigt eine Rahmenkonstruktion **4.1** eines Fußteils **4**, die einen teilkreisförmigen Bereich aufweist, der auf dem Erdboden aufliegt und einen Träger für ein Basiselement **4.2** bildet, wie es in den **Fig. 3** und **Fig. 4** erkennbar ist. Ein Basiselement **4** hat eine ausreichend große Eigenmasse, um ein Gegengewicht zu den anderen Elementen des Rahmens **3**, dem Sonnensegel **1** und für die Zugkraft des einen oder mehrerer Spannelemente **2** zu bilden.

[0042]   Weiter ist erkennbar, dass die biegesteife Rahmenkonstruktion **4.1** in einem schräg geneigten Winkel in Bezug zur vertikalen Achse ausgerichtet ist. An der Rahmenkonstruktion **4.1** sind der Spannhebelmechanismus **3.6** sowie die rohrförmigen Elemente **3.1** und **3.2** befestigt. Durch die schräge Ausrichtung der Rahmenkonstruktion in die entgegen gesetzte Richtung in Bezug zum Kraftangriffspunkt des Zugseils **2** am Rahmen **3**, kann der Rahmen **3** mit Sonnensegel **1** in Folge der Kraftwirkung von einem oder mehreren Spannelementen **2** in eine für die Verschattung günstige Lage durch eine Biegung gebracht werden.

[0043]   Die **Fig. 6** und **Fig. 7** zeigen an einem erfindungsgemäßen Sonnenschutz einsetzbare Knickgelenke **3.4** jeweils in einer Seitenansicht und einer Schnittdarstellung. Dabei ist ein Zugseil **3.5** durch ein rohrförmiges Element **3.1** oder **3.2** und durch das Knickgelenk **3.4** geführt. Es ist mit einem Fixierele-

ment **3.8** des Knickgelenks **3.4** mit einem rohrförmigen Element **3.3** fest verbunden, so dass beim Spannen des Zugseils **3.5** mit Hilfe des Spannhebelmechanismus **3.6** ein Zustand, wie er in **Fig. 6** und nach dem Entspannen durch Freigabe der Zugseile **3.5** ein Abknicken der Knickgelenke **3.4** zum Zusammenklappen des Rahmens **3**, wie in den **Fig. 4** und **Fig. 5** gezeigt, erreichbar ist.

[0044]   Beim in den **Fig. 6** und **Fig. 7** gezeigten Beispiel, sind über die Knickgelenke **3.4** Schraubenfedern **3.7** geschoben, die die Funktion der Knickgelenke **3.4** unterstützen.

### Patentansprüche

1.   Sonnenschutz, bei dem ein radial außen von einem flexiblen Rahmen aufspannbar gehaltenes Sonnensegel als Verschattungselement mit einem Fußteil verbunden ist, **dadurch gekennzeichnet**, dass in einem Abstand zum Fußteil (**4**) ein Spannelement (**2**) mit dem Rahmen (**3**) gelenkig verbunden oder daran befestigbar ist und am anderen Ende des Spannelements (**2**) ein am Erdboden befestigbarer oder auf den Erdboden aufsetzbarer Anker (**5**) mit dem Spannelement (**2**) gelenkig verbunden ist.

2.   Sonnenschutz nach Anspruch 1, dadurch gekennzeichnet, dass der Rahmen (**3**) mit mindestens einem flexibel verbiegbaren stab- oder rohrförmigen Element gebildet ist.

3.   Sonnenschutz nach Anspruch 1 oder 2, dadurch gekennzeichnet, dass der Rahmen (**3**) aus mindestens zwei stab- oder rohrförmigen Elementen (**3.1**, **3.2**, **3.3**) gebildet ist, die miteinander verbunden oder verbindbar sind.

4.   Sonnenschutz nach Anspruch 3, dadurch gekennzeichnet, dass stab- oder rohrförmigen, Elemente (**3.1**, **3.2**, **3.3**) mittels Gelenken (**3.4**) miteinander verbunden sind.

5.   Sonnenschutz nach Anspruch 3 oder 4, dadurch gekennzeichnet, dass stab- oder rohrförmigen Elemente (**3.1**, **3.2**, **3.3**) mittels Knickgelenken (**3.4**) miteinander verbunden sind.

6.   Sonnenschutz nach Anspruch 5, dadurch gekennzeichnet, dass durch rohrförmige Elemente (**3.1**, **3.2**) ein Zugseil (**3.5**) durch ein Knickgelenk (**3.4**) geführt ist, das am anderen Ende mit einem Spannhebelmechanismus (**3.6**) verbunden ist, mit dem eine Zugkraft zum Aufspannen des Rahmens (**3**) mit Sonnensegel (**1**) über das Zugseil (**3.5**) zu einem rohrförmigen Element (**3.3**) ausübbar ist.

7.   Sonnenschutz nach einem der Ansprüche 4 bis 5, dass stab- oder rohrförmigen Elemente (**3.1**, **3.2**, **3.3**) an den Gelenken (**3.4**) von Schraubenfedern

(3.7) oder flexiblen hülsenförmigen Elementen umgriffen sind.

8. Sonnenschutz nach Anspruch 1, dadurch gekennzeichnet, dass der Rahmen (3) zumindest teilweise mit einem ein unter gegenüber der Umgebung erhöhtem Druck stehenden Gas oder einer Flüssigkeit befüllbaren Hohlraum gebildet ist.

9. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass das Spannelement (2) ein Zugseil ist.

10. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass das Spannelement (2) mit dem Rahmen (3) so verbunden ist, dass sich die Position des Kraftangriffspunktes verändern lässt.

11. Sonnenschutz nach Anspruch 10, dadurch gekennzeichnet, dass am Rahmen (3) in Abständen zueinander Befestigungselemente für die Befestigung des Spannelements (2) vorhanden sind.

12. Sonnenschutz nach Anspruch 10, dadurch gekennzeichnet, dass am Rahmen (3) eine Führung für ein Befestigungselement des Spannelements (2) vorhanden ist.

13. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass die Länge des Spannelements (2) veränderbar ist.

14. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass zwei Spannelemente (2) in einem Abstand zueinander mit dem Rahmen (3) verbunden oder daran befestigbar sind.

15. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass der Anker (5) eine Eigenmasse aufweist, mit der eine Zugkraft über das Spannelement (2) auf den Rahmen (3) zu dessen Biegung ausübbar ist.

16. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass das Fußteil (4) einen Träger für ein Basiselement (4.2) bildet.

17. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass das Fußteil (4) in eine Rahmenkonstruktion (4.1) übergeht, an dem der Rahmen (3) befestigbar ist und die Rahmenkonstruktion in einem schrägen Winkel in Bezug zur Vertikalen abgewinkelt ist.

18. Sonnenschutz nach einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, dass der Spannhebelmechanismus (3.6) an der Rahmenkons-

truktion (4.1) befestigt ist.

Es folgen 6 Blatt Zeichnungen



Fig. 2



Fig. 1

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 154 of 227



Fig. 3



Fig. 4



Fig. 5



Fig. 6



Fig. 7

**PUB-NO:** DE102009020795A1

**DOCUMENT-IDENTIFIER:** DE 102009020795 A1

**TITLE:** Anti-glare shield/sunscreen causes a sun awning held and clamped radially outwards by a flexible frame as a shadow element to link to a foot part

**PUBN-DATE:** November 4, 2010

**PATENT-FAMILY-ID:** 42813776

**INVENTOR-INFORMATION:**

| NAME | COUNTRY |
|------|---------|
| SCHMIDT MICHAEL | DE |

**APPLICANT:**

| NAME | COUNTRY |
|------|---------|
| SCHMIDT MICHAEL | DE |

**APPL-NO:** DE 102009020795 A

**APPL-DATE:** April 30, 2009

**PRIORITY-DATA:**

| PRIORITY-NO | PRIORITY-APPL-DATE |
|-------------|--------------------|
| DE 102009020795 A | 20090430 |

**CPC-CURRENT:**

| TYPE | CPC/DATE |
|------|----------|
| CPCI | E04F10/04 20130101 |
| CPCI | A45B23/00 20130101 |
| CPCI | E04H15/003 20130101 |
| CPCI | E04H15/40 20130101 |
| CPCI | E04H15/58 20130101 |
| CPCA | E04F10/0681 20130101 |
| CPCA | A45B2023/0006 20130101 |

**INT-CL-CURRENT:**

| TYPE | IPC/DATE |
|------|----------|
| IPCP | E04H15/58 20060101 |
| IPCS | E04H15/28 20060101 |
| IPCS | E04F10/04 20060101 |

file:///C/Users/nhawk/Documents/e-Red%20Folder/16224465/16224465_2020-04-02_DE_102009020795_A1_M_AccessibleVersion.htm[4/2/2020 4:09:38 PM]

IPCS          A45B23/00 20060101

**ABSTRACT:**

#CMT# #/CMT# With a clearance from a foot part (4), a clamping element (2) forms an articulated link with a frame (3) or fastens on it. On another end of the clamping element, and fastened to the ground or set up on the ground, an anchor (5) forms an articulated link with the clamping element. Designed with a rod- or tubular element able to bend flexibly, the frame has two or more interlinked rod- or tubular elements (3.1,3.2). #CMT#USE : #/CMT# Anti-glare shield/sunscreen/sun awning. #CMT#ADVANTAGE : #/CMT# The rod- or tubular elements interlink via joints to allow for flexible alteration to suit the changing condition of the sun. #CMT#DESCRIPTION OF DRAWINGS : #/CMT# The drawings show two views of an anti-glare shield/sunscreen/sun awning. 2 : Clamping element 3 : Frame 3.1,3.2 : Rod- or tubular elements 4 : Foot part 5 : Anchor.

file:///C/Users/nhawk/Documents/e-Red%20Folder/16224465/16224465_2020-04-02_DE_102009020795_A1_M_AccessibleVersion.htm[4/2/2020 4:09:38 PM]

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 16/224,465 | Filing Date 12/18/2018 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE ☑ SMALL ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $50 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $230 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 04/13/2020 | | | | | | | |
| | Total (37 CFR 1.16(i)) | * 8 | Minus | ** 20 | = 0 | | x $50 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 1 | Minus | *** 3 | = 0 | | x $230 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| | |
|---|---|
| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SHARAIN E MORELAND/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 16/224,465 | Filing Date | 2018-12-18 | Docket Number (if applicable) | S105508 1010US.C1 (0002.2 | Art Unit | 3636 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Dane Brooks Barnes | | | Examiner Name | Noah Chandler Hawk | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    ☐ Other _____

☒ Enclosed

    ☒ Amendment/Reply

    ☐ Information Disclosure Statement (IDS)

    ☐ Affidavit(s)/ Declaration(s)

    ☐ Other _____

## MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months _____ (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

☐ Other _____

## FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
☒ The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No  090528

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

☒ Patent Practitioner Signature

  Applicant Signature

EFS - Web 2.1.16

Doc code: RCEX

Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (02-18)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /lauren f. anderson/ | Date (YYYY-MM-DD) | 2020-04-13 |
| Name | Lauren F. Anderson | Registration Number | 69344 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 164 of 227

EFS - Web 2.1.16

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 165 of 227

Attorney's Docket No. **S105508 1010US.C1 (0002.2)**

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 2289 |
| Appl. No.: | 16/224,465 | Group Art Unit: | 3636 |
| Filed: | December 18, 2018 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR CORRECTED FILING RECEIPT

Sir:

Applicant requests that the Applicant name be updated from Shibumi Shade, LLC to

**SHIBUMI SHADE, INC.**

A Statement Under 37 CR 3.73(c) is being simultaneously filed herewith to show the correct chain of title.

A marked-up updated Application Data Sheet is being simultaneously filed to update the Applicant's name along with this request for a corrected filing receipt.

Applicant requests that a corrected Filing Receipt be issued.

It is not believed that any fees are due at this time, however, if applicable, the Commissioner is authorized to charge any additional fee, or credit any refund, to our Deposit Account No. 09-0528.

Respectfully submitted,

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn:  Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON APRIL 13, 2020.*

WBD (US) 49077500v1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | 3636 | 785 | S105508 1010US.C1 (0002.2 | 14 | 1 |

**CONFIRMATION NO. 2289**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

**FILING RECEIPT**

OC000000105052226

Date Mailed: 01/16/2019

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Dane Brooks Barnes, Raleigh, NC;
Alexander Griffith Slater, Raleigh, NC;
Scott Christian Barnes, Raleigh, NC;

**Applicant(s)**

~~Shibumi Shade, LLC~~, Raleigh, NC;   Shibumi Shade, Inc.

**Power of Attorney:** The patent practitioners associated with Customer Number 26158

**Domestic Priority data as claimed by applicant**

This application is a CON of 15/675,715 08/12/2017 PAT 10190330
which claims benefit of 62/409,426 10/18/2016

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 01/11/2019

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/224,465**

**Projected Publication Date:** 04/25/2019

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

        SHADING SYSTEM AND METHOD OF USE

**Preliminary Class**

        135

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER
## Title 35, United States Code, Section 184
## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor** 1     Remove
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Dane | Brooks | Barnes | |

**Residence Information (Select One)** ● US Residency    Non US Residency    Active US Military Service

| City | Raleigh | State/Province | NC | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 921 Washington Street, #202 |
|---|---|
| Address 2 | |
| City | Raleigh | State/Province | NC |
| Postal Code | 27605 | Country i | US |

**Inventor** 2     Remove
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Alexander | Griffith | Slater | |

**Residence Information (Select One)** ● US Residency    Non US Residency    Active US Military Service

| City | Raleigh | State/Province | NC | Country of Residence | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 614 Holden Street |
|---|---|
| Address 2 | |
| City | Raleigh | State/Province | NC |
| Postal Code | 27604 | Country i | US |

**Inventor** 3     Remove
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Scott | Christian | Barnes | |

**Residence Information (Select One)** ● US Residency    Non US Residency    Active US Military Service

Case 5:24-cv-00588-FL   Document 28-5   Filed 03/23/26   Page 170 of 227

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

| **City** | Raleigh | **State/Province** | NC | **Country of Residence** | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 921 Washington Street, #202 | | |
|---|---|---|---|
| **Address 2** | | | |
| **City** | Raleigh | **State/Province** | NC |
| **Postal Code** | 27605 | **Country** i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.     | Add |

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| **Customer Number** | 26158 | | |
|---|---|---|---|
| **Email Address** | IPDocketing@wbd-us.com | Add Email | Remove Email |

## Application Information:

| **Title of the Invention** | SHADING SYSTEM AND METHOD OF USE | | |
|---|---|---|---|
| **Attorney Docket Number** | S105508 1010US.C1 (0002.2 | **Small Entity Status Claimed** | ☒ |
| **Application Type** | Nonprovisional | | ▾ |
| **Subject Matter** | Utility | | ▾ |
| **Total Number of Drawing Sheets (if any)** | 7 | **Suggested Figure for Publication (if any)** | 1 |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| Customer Number | 26158 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | ▾ | | Remove |
| --- | --- | --- | --- | --- |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) | |
| | Continuation of ▾ | 15/675715 | 2017-08-12 | |
| Prior Application Status | Expired | ▾ | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) | |
| 15/675715 | Claims benefit of provisional ▾ | 62/409426 | 2016-10-18 | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.      Add

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application.  Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55.  When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2).  Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

Remove

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

# Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.

NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 173 of 227

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant** | 1 | Remove |

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
| Person to whom the inventor is obligated to assign. | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here. ☒

| Organization Name | S̶h̶i̶b̶u̶m̶i̶ ̶S̶h̶a̶d̶e̶,̶ ̶L̶L̶C̶ Shibumi Shade, Inc. |

**Mailing Address Information For Applicant:**

| **Address 1** | 614 Holden Street | | |
| Address 2 | | | |
| **City** | Raleigh | **State/Province** | NC |
| **Country** | US | Postal Code | 27604-1949 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.     Add

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

---

**Assignee**  1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here.  ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| ▼ | | | | ▼ |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| **City** | | **State/Province** | |
|---|---|---|---|
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    Add

---

# Signature:    Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /lauren f. anderson/ | | | Date  (YYYY-MM-DD) | 2018-12-18 |
|---|---|---|---|---|---|
| First Name | Lauren | Last Name | Anderson | Registration Number | 69,344 |

Additional Signature may be generated within this form by selecting the Add button.    Add

EFS Web 2.2.13

PTO/AIA/14 (02-18)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C1 (0002.2 |
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

Case 5:24-cv-00588-FL     Document 28-5     Filed 03/23/26     Page 177 of 227

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.2.13

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: **Shibumi Shade, Inc.**

Application No./Patent No.: **16/224,465**          Filed/Issue Date: **December 18, 2018**

Titled: **SHADING SYSTEM AND METHOD OF USE**

**Shibumi Shade, Inc.**                         , a **Corporation**

(Name of Assignee)                         (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✔] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

   [ ] The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

   [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

B. [✔] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: Dane Brooks Barnes; Alexander Griffith Slater; Scott Christian Barnes   To: **Shibumi Shade, LLC**

   The document was recorded in the United States Patent and Trademark Office at
   Reel **043276**, Frame **0936**, or for which a copy thereof is attached.

   2. From: **Shibumi Shade, LLC**                         To: **Shibumi Shade, Inc.**

   The document was recorded in the United States Patent and Trademark Office at
   Reel **052350**, Frame **0912**, or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____ To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____ To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____ To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____ To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

☐    Additional documents in the chain of title are listed on a supplemental sheet(s).

☐    As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

        [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| /lauren f. anderson/ | April 13, 2020 |
|---|---|
| Signature | Date |
| Lauren F. Anderson | 69344 |
| Printed or Typed Name | Title or Registration Number |

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16224465 |
| **Filing Date:** | 18-Dec-2018 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Attorney Docket Number:** | S105508 1010US.C1 (0002.2 |

Filed as Small Entity

**Filing Fees for Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| RCE- 1ST REQUEST | 2801 | 1 | 650 | 650 |
| **Total in USD ($)** | | | | **650** |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 39143918 |
| **Application Number:** | 16224465 |
| **International Application Number:** | |
| **Confirmation Number:** | 2289 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Customer Number:** | 26158 |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Filer Authorized By:** | Lauren F Anderson |
| **Attorney Docket Number:** | S105508 1010US.C1 (0002.2 |
| **Receipt Date:** | 13-APR-2020 |
| **Filing Date:** | 18-DEC-2018 |
| **Time Stamp:** | 17:47:20 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $650 |
| RAM confirmation Number | E20204CH47378288 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | S105508_1010US_1_0002_2_Amendment_after_1-13-20_FOA.pdf | 150048<br><br>412b46baacda5f94a9d6a2ea754023605aa4a739 | yes | 9 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | Document Description | Start | | End |
| | Amendment Submitted/Entered with Filing of CPA/RCE | 1 | | 1 |
| | Claims | 2 | | 4 |
| | Applicant Arguments/Remarks Made in an Amendment | 5 | | 9 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Request for Continued Examination (RCE) | S105508_1010US_1_0002_2_RCE.pdf | 1349961<br><br>258b882404ad485cd31d666deee35934a02f282e | no | 3 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Request for Corrected Filing Receipt | S105508_1010US_1_0002_2_Request_Corrected_Filing_Receipt.pdf | 950763<br><br>27d3024e1879ccc7f782be3fb1adf630c35862e5 | no | 4 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Application Data Sheet | S105508_1010US_1_0002_2_Corrected_ADS.pdf | 2366813<br><br>61f8f2fcc0bef08bb999a46c97ef64e054a77bf0 | no | 9 |

**Warnings:**

**Information:**

This is not an USPTO supplied ADS fillable form

| 5 | Assignee showing of ownership per 37 CFR 3.73 | S105508_1010US_1_0002_2_Stmt_373.pdf | 119581<br><br>da52c3ebeff5bc0f725cddfb5b16d5af1a976314 | no | 3 |

**Warnings:**

**Information:**

| 6 | Fee Worksheet (SB06) | fee-info.pdf | 30296<br><br>748607016f49f5a7eb0dca522f9ee27e5a3ce88c | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 4967462 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In re: | Barnes *et al.* | Confirmation No.: | 2289 |
| Appl. No.: | 16/224,465 | Group Art Unit: | 3636 |
| Filed: | December 18, 2018 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:      S105508 1010US.C1 (0002.2)
Customer No.:    26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**AMENDMENT AFTER FINAL UNDER 37 CFR § 1.114**

Sir:

In response to the Final Office Action dated January 13, 2020, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

Amendments to the Claims

1 - 20. (Canceled)

21.     (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame ~~comprising a first end and an opposing second end, each of the first end and the second end~~ being directly engageable with the surface such that when the frame is directly~~first end and the second end are~~ engaged with the surface, the frame is configured to lie [[lies]] within a plane substantially perpendicular to the surface, wherein the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each directly engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween;

a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are directly engaged with the surface, the cable is configured to lie within the plane substantially perpendicular to the surface;

a canopy extending between a suspension end~~first longitudinally-extending~~ edge and an opposing trailing end~~second longitudinally-extending edge~~, the suspension end~~one of the first longitudinally-extending edge or the second longitudinally-extending edge~~ of the canopy being coupleable with the frame about a portion of the frame~~thereof, the portion being~~ defined between the first end and the second end of the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame such that when a wind force is applied to the canopy, the canopy extends at an angle relative to the plane, the angle being non-coplanar with the plane and

WBD (US) 48526152v1

varying with the wind force; ~~and~~

~~a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally-extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface;~~

a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame; and

an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface at an angle relative to the plane so that the frame remains substantially within the plane when the wind force is applied to the canopy

~~wherein the other of the second longitudinally-extending edge or the first longitudinally-extending edge of the canopy is spaced apart from the central portion of the frame such that when a force is applied to the canopy, the canopy extends at an angle relative to the first plane~~.

22. (Canceled)

23. (Canceled)

24. (Canceled)

25. (Currently Amended)  The system of Claim [[24]]21, wherein the canopy further comprises at least one hoop positioned substantially at a center of the suspension end~~at least one of the first longitudinally-extending edge and the second longitudinally-extending edge~~ of the canopy, the first or second end of the cord being coupleable to the at least one hoop.

26. (Currently Amended)  The system of Claim [[24]]21, further comprising a container arranged to receive at least the frame, the canopy, and the cord therein.

27. (Currently Amended) The system of Claim 26, wherein the container is the anchor, the container being coupleable with the canopy or the frame about the first end or the second end of the cord and being in contact with the surface when each of the first ends ~~and the second end~~ of the <u>first and second longitudinally-extending sections of the</u> frame is engaged with the surface and <u>the suspension end</u>~~one of the first longitudinally-extending edge or the second longitudinally-extending edge~~ of the canopy is coupled with the portion of the frame, such that the frame remains within the plane when the <u>wind</u> force is applied to the canopy.

28. (Previously Presented) The system of Claim 27, wherein the first end or the second end of the cord is coupleable to an interior of the container, the container being invertible so that the interior of the container contacts the surface when the container is the anchor.

29. (Previously Presented) The system of Claim 26, wherein the container defines one or more interior compartments arranged to receive the frame separately from the canopy.

30. (Currently Amended) The system of Claim 21, wherein <u>the suspension end</u>~~at least one of the first longitudinally-extending edge and the second longitudinally-extending edge~~ of the canopy comprises at least one loop extending thereabout, the loop being arranged to receive the first or second end of the frame therethrough such that the portion of the frame is in contact with the at least one loop.

31. (Currently Amended) The system of Claim 21, further comprising at least one strap arranged to couple the <u>suspension end</u>~~first longitudinally-extending edge or the second longitudinally-extending edge~~ of the canopy about the portion of the frame.

32-34. (Canceled)

WBD (US) 48526152v1

**REMARKS**

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the remarks that follow.  Claims 21, 25-27, 30 and 31 are now amended, and Claims 24 and 32-34 are now canceled. As such, Claims 21 and 25-31 remain pending following this Amendment. Applicant submits that no new matter is added by way of this Amendment.

Allowable Subject Matter

Applicant thanks the Examiner for the indication that Claims 27 and 28 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

Examiner Interview Summary

Applicant thanks the Examiner for taking the time to participate in an Examiner Interview with Applicant's representative on April 2, 2020. During the call, proposed amendments to Claim 21 were discussed, but no agreement was reached.

Claim Rejections – 35 U.S.C. § 103

Claims 21 and 30-34 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over "YouTube video by bibitedog: How to set up a butterfly arch" (Butterfly) in view of U.S. Patent Application Pub. No. 2003/0089390 to Seo. Claims 24-26 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Butterfly in view of U.S. Patent No. 7,406,977 to Shires. Claim 29 is rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Butterfly in view of U.S. Patent Application Pub. No. 2013/0074894 to Cook.

Independent Claim 21, from which the remaining dependent claims depend, is currently amended to incorporate the subject matter of dependent Claims 24 and 32-34, which are now canceled. Independent Claim 21 is currently amended as follows:

21.    A system for providing shade onto a surface, the system comprising:
a frame ~~comprising a first end and an opposing second end, each of the first end and the second end~~ being <u>directly</u> engageable with the surface such that when the <u>frame</u>

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 191 of 227

is directly~~first end and the second end are~~ engaged with the surface, the frame is configured to lie [[lies]] within a plane substantially perpendicular to the surface, wherein the frame comprises a plurality of longitudinally-extending sections arrangeable so that a first longitudinally-extending section and a second longitudinally-extending section are each <u>directly</u> engaged with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween;

<u>a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are directly engaged with the surface, the cable is configured to lie within the plane substantially perpendicular to the surface;</u>

a canopy extending between a <u>suspension end</u>~~first longitudinally-extending edge~~ and an opposing <u>trailing end</u>~~second longitudinally-extending edge~~, the <u>suspension end</u>~~one of the first longitudinally-extending edge or the second longitudinally-extending edge~~ of the canopy being coupleable with the frame about a portion <u>of the frame</u>~~thereof, the portion being~~ defined between the first end and the second end of the frame<u>, wherein the trailing end of the canopy is spaced apart from the portion of the frame such that when a wind force is applied to the canopy, the canopy extends at an angle relative to the plane, the angle being non-coplanar with the plane and varying with the wind force</u>; ~~and~~

~~a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween so that when the first end of the first longitudinally-extending section and the first end of the second-longitudinally extending section are engaged with the surface, the cable lies within the plane substantially perpendicular to the surface;~~

<u>a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame; and</u>

<u>an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface at an angle relative to the plane so that the frame remains substantially within the plane when the wind force is applied to the canopy</u> ~~wherein the other of the second longitudinally-extending edge or the first longitudinally-extending edge of the canopy is spaced apart from the central portion of the frame such that when a force is applied to the canopy, the canopy extends at an angle relative to the first plane~~.

Support for this amendment is found in at least, for example, canceled Claims 24 and 32-34, and FIG. 1 and the corresponding description thereof. Thus, no new matter has been added.

WBD (US) 48526152v1

Applicant respectfully submits that Butterfly separately or in any combination with Seo, Shires, and Cook fails to teach, suggest, provide motivation for, or otherwise render predictable each and every element of independent Claim 21, as now amended. For example, Butterfly fails to disclose a frame directly engageable with the surface. In Section 8 of the Office Action, it is stated that the frame in Butterfly is considered only to encompass the pole elements denoted by "A" in the annotated screen capture. However, the pole elements "A" in Butterfly are not directly engageable with the surface. Instead, it is the ground stakes "B" in Butterfly that are driven into the surface at the desired angle. Therefore, the alleged frame in Butterfly, pole elements "A" does not meet the claimed limitation of frame.

Applicant further respectfully submits that there would be no suggestion or motivation from Butterfly for the pole elements "A" to be directly engageable with the ground, because the ground stakes B in Butterfly are driven into the ground at a desired angle using a hammer, thus indicating that it requires a significant amount of pressure in order to pierce the grass / compacted soil layer. The pole elements "A" in Butterfly could not be similarly hammer-driven into the ground because there is no end surface of the pole element A to hit with a hammer.

Moreover, Applicant respectfully submits that Butterfly is silent as to cables, as claimed. This is acknowledged at page 4 of the Office Action. Seo is cited as curing this deficiency, but Applicant respectfully submits that there is no teaching, suggestion, or motivation to modify Butterfly by adding a cable in order to provide a means for easily storing the frame sections together when not in use. More particularly, Butterfly uses telescoping poles that are nested within one another. This results in only having to store two poles (each having multiple sections nested within) in the storage bag, along with the two ground stakes. If cables were added to Butterfly, as the Examiner suggests, then the sections of the poles in Butterfly could not be nested within one another as there would be cables running down the central portion of each of the sections, and thus would prevent nesting. This would render Butterfly inoperable for its intended purpose, contrary to MPEP § 2143.01(v), such that there is no suggestion or motivation to make the proposed modification. Therefore, Applicant respectfully submits that Seo (or any other reference) in combination with Butterfly cannot be used to modify Butterfly to include cables, as claimed in independent Claim 21.

WBD (US) 48526152v1

In addition, Applicant respectfully submits that Butterfly is silent as to the use of a cord and an anchor as now claimed. This is acknowledged at page 6 of the Office Action. Shires is cited as allegedly curing this deficiency. Applicant respectfully disagrees. In Shires, the central guyline 42 is alleged to meet the claimed limitation of the cord. However, the central guyline 42 in Shires is not coupleable to a frame within the meaning of independent Claim 21. Rather, the central guyline 42 in Shires is coupled to strut 30, which does not meet the claimed limitation of the frame, whatsoever. Since neither Butterfly nor Shires discloses the frame, as claimed, it follows that Shires in combination with Butterfly, does not disclose an anchor and cord arrangement that is coupleable to a frame as claimed.

Likewise, Cook is silent as to each and every element of independent Claim 21 as amended. Cook is cited merely with regard to the container and does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of amended independent Claim 21. As a result, Butterfly separately or in any combination with Seo, Shires, and Cook fails to teach, suggest, provide motivation for, or otherwise render predictable the subject matter of amended independent Claim 21. Therefore, independent Claim 21, as well as the claims depending therefrom, is patentable in view of the cited references and immediate allowance is requested at this time.

WBD (US) 48526152v1

Case 5:24-cv-00588-FL      Document 28-5      Filed 03/23/26      Page 194 of 227

Appl. No.: 16/224,465
Amdt. Dated: April 13, 2020
Reply to Office Action dated January 13, 2020

## <u>CONCLUSION</u>

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

Respectfully submitted,

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 7037
Atlanta, GA 30357-0037
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON APRIL 13, 2020.*

WBD (US) 48526152v1

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | 16/224,465 |
| Filing Date | December 18, 2018 |
| First Named Inventor | Dane Brooks Barnes |
| Title | SHADING SYSTEM AND METHOD OF USE |
| Art Unit | 3636 |
| Examiner Name | Noah Chandler Hawk |
| Attorney Docket Number | S105508 1010US.C1 (0002.2) |

**SIGNATURE of Applicant or Patent Practitioner**

| Signature | /lauren f. anderson/ | Date (Optional) | |
|---|---|---|---|
| Name | Lauren F. Anderson | Registration Number | 69,344 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | SHIBUMI SHADE, INC. | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in <u>either</u> the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✔] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

26158

**OR**

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✔] The address associated with the above-mentioned Customer Number

**OR**

[ ] The address associated with Customer Number: _____

**OR**

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip | |
| Country | |
| Telephone | Email | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## SHIBUMI SHADE, INC.

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✔] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | _[signature]_ | Date (Optional) | 4/14/2020 |
|---|---|---|---|
| Name | Dane Barnes | | |
| Title | President | | |

<u>NOTE:</u> Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 39169350 |
| **Application Number:** | 16224465 |
| **International Application Number:** | |
| **Confirmation Number:** | 2289 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Customer Number:** | 26158 |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Filer Authorized By:** | Lauren F Anderson |
| **Attorney Docket Number:** | S105508 1010US.C1 (0002.2 |
| **Receipt Date:** | 15-APR-2020 |
| **Filing Date:** | 18-DEC-2018 |
| **Time Stamp:** | 17:02:11 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | S105508_1010US_C1_0002_2_POA.pdf | 310718<br>51b4c449a8956089d492b21743c37b3b8a22fe29 | no | 2 |

**Warnings:** Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 198 of 227

| Information: | |
|---|---|
| **Total Files Size (in bytes):** | 310718 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | 3636 | 785 | S105508 1010US.C1 (0002.2 | 14 | 1 |

**CONFIRMATION NO. 2289**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

**CORRECTED FILING RECEIPT**


OC000000118231621

Date Mailed: 04/16/2020

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

> Dane Brooks Barnes, Raleigh, NC;
> Alexander Griffith Slater, Raleigh, NC;
> Scott Christian Barnes, Raleigh, NC;

**Applicant(s)**

> SHIBUMI SHADE, INC., Raleigh, NC;

**Power of Attorney:** The patent practitioners associated with Customer Number 26158

**Domestic Priority data as claimed by applicant**

> This application is a CON of 15/675,715 08/12/2017 PAT 10190330
> which claims benefit of 62/409,426 10/18/2016

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 200 of 227

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 01/11/2019

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/224,465**

**Projected Publication Date:** Not Applicable

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

      SHADING SYSTEM AND METHOD OF USE

**Preliminary Class**

      135

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific

countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 202 of 227

technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 |

**CONFIRMATION NO. 2289**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

**POA ACCEPTANCE LETTER**


*OC000000116332342*

Date Mailed: 04/22/2020

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 04/15/2020.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/dgela/

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 204 of 227



Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

26158     7590     04/23/2020
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
| --- |
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3636 | |

DATE MAILED: 04/23/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

TITLE OF INVENTION: SHADING SYSTEM AND METHOD OF USE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 07/23/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980.**
**It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to:     Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to:    (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26158       7590       04/23/2020
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

TITLE OF INVENTION: SHADING SYSTEM AND METHOD OF USE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 07/23/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HAWK, NOAH CHANDLER | 3636 | 135-128000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE             (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❏ Individual ❏ Corporation or other private group entity ❏ Government

4a. Fees submitted:    ❏ Issue Fee    ❏ Publication Fee (if required)    ❏ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❏ Electronic Payment via EFS-Web     ❏ Enclosed check     ❏ Non-electronic payment by credit card (Attach form PTO-2038)

❏ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

Page 2 of 5

PTOL-85 Part B (08-18) Approved for use through 01/31/2020     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

| 26158 | 7590 | 04/23/2020 |
|---|---|---|

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

DATE MAILED: 04/23/2020

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 02/11)

# OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:
1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 208 of 227

| | Application No. | Applicant(s) |
|---|---|---|
| ***Notice of Allowability*** | 16/224,465 | Barnes et al. |
| | Examiner | Art Unit | AIA (FITF) Status |
| | NOAH C HAWK | 3636 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 4/13/2020.

 ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 21 and 25-31 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

 **Certified copies:**

 a) ☐All   b) ☐ Some   *c) ☐ None of the:

 1. ☐ Certified copies of the priority documents have been received.

 2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

 3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

 * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

 ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

 **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____.
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____.
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____.

5. ☑ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### *Continued Examination Under 37 CFR 1.114*

2.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on

4/13/2020 has been entered.

### EXAMINER'S AMENDMENT

3.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.


        Authorization for this examiner's amendment was given in an interview with

attorney Lauren Anderson on 4/16/2020.


        The application has been amended as follows:

In Claim 21, line 23, the phrase" the first end and the second end of the frame" is deleted and replaced by the phrase --the first ends of the first and second longitudinally-extending sections--.

### *Reasons for Allowance*

4.      The following is an examiner's statement of reasons for allowance: the prior art made of record has failed to teach a novel system for providing shade, including a frame with first and second sections inserted into the ground so that the frame lies in a plane perpendicular to the ground, a cable extending through the sections, a canopy extending between a suspension end attached to the frame, and a trailing end, wherein the trailing end is spaced apart from the frame and the ground when acted upon by a wind force, and a cord and anchor attached to the frame such that the cord extends away from the canopy to secure the frame against the wind force.

5.      The prior art considered nearest to the applicant's invention is as follows: the YouTube video referred to as "Butterfly" teaches a frame with stakes used to secure the frame in the ground and a canopy similar to the claimed device, but fails to teach the cable in the frame or the cord and anchor used to secure the frame and there is no clear motivation to add such features. Other "flying" canopies such as Parker, Beatty, Jenkins and Shires, fail to teach unsupported trailing ends for the canopies and there is no motivation to remove the anchors there.

        Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to NOAH CHANDLER HAWK whose telephone number is

(571)272-1480.  The examiner can normally be reached on M-F 9am to 5:30pm.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, David Dunn can be reached on 5712726670.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see https://ppair-

my.uspto.gov/pair/PrivatePair. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

If you would like assistance from a USPTO Customer Service Representative or access

to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-

272-1000.


                                              NOAH CHANDLER HAWK
                                              Primary Examiner
                                              Art Unit 3636



/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

<table>
<tr><td rowspan="3"><strong><em>Search Notes</em></strong><br><br>[barcode]</td><td><strong>Application/Control No.</strong><br><br>16/224,465</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br><br>3636</td></tr>
</table>

**CPC - Searched\***

| Symbol | Date | Examiner |
|---|---|---|
| E04H 15/003 | 09/03/2019 | NCH |
| E04H 2015/326, 12/22 | 01/07/2020 | NCH |
| updated above | 01/07/2020 | NCH |

**CPC Combination Sets - Searched\***

| Symbol | Date | Examiner |
|---|---|---|
|  |  |  |

**US Classification - Searched\***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 135 | 118, 119, 115, 120.1, 114, 127 | 09/04/2019 | NCH |
| 40 | 214, 606.11, 217, 412 | 09/03/2019 | NCH |
| 160 | 135, 350, 351, 352, 377 | 09/03/2019 | NCH |
|  | updated above | 01/07/2020 | NCH |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Considered IDS filed 12/18/2018 | 09/03/2019 | NCH |
| Considered and updated search history for parent application 15/675715 | 09/03/2019 | NCH |
| Performed inventor name search | 09/04/2019 | NCH |
| Please see attached EAST search history | 09/04/2019 | NCH |

<table>
<tr><td></td><td></td></tr>
</table>

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 214 of 227

| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/224,465 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| E04H | 15/003, 2015/326, 12/22 | 04/16/2020 | NCH |
| 135 | 118, 119, 115, 120.1, 114, 127 | 04/16/2020 | NCH |
| 40 | 214, 606.11, 217, 412 | 04/16/2020 | NCH |
| 160 | 135, 350, 351, 352, 377 | 04/16/2020 | NCH |

Case 5:24-cv-00588-FL    Document 28-5    Filed 03/23/26    Page 215 of 227

<table>
<tr><td rowspan="3"><b><i>Issue Classification</i></b><br><br>||||||| (barcode)</td><td colspan="2"><b>Application/Control No.</b><br><br>16/224,465</td><td><b>Applicant(s)/Patent Under Reexamination</b><br><br>Barnes et al.</td></tr>
</table>

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **Issue Classification** | **Application/Control No.**<br>16/224,465 | **Applicant(s)/Patent Under Reexamination**<br>Barnes et al. |
| ‖‖‖‖‖ (barcode) | **Examiner**<br>NOAH C HAWK | **Art Unit**<br>3636 |

**CPC**

| Symbol | | | | | | Type | Version |
|---|---|---|---|---|---|---|---|
| E04H | / | 15 | / | 003 | | F | 2013-01-01 |
| E04H | / | 15 | / | 44 | | I | 2013-01-01 |
| E04H | / | 15 | / | 36 | | I | 2013-01-01 |
| E04H | / | 15 | / | 30 | | I | 2013-01-01 |
| E04H | / | 15 | / | 32 | | I | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | / | | / | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 8 | |
| /Noah Chandler Hawk/<br>Primary Examiner, Art Unit 3636 | 16 April 2020 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200416a

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/224,465 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

| E04H | / | 15 | / | 00 |
|---|---|---|---|---|
| E04H | / | 15 | / | 36 |

**NON-CLAIMED**

| | / | | / | |
|---|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| | |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 8 | |
| /Noah Chandler Hawk/ Primary Examiner, Art Unit 3636 | 16 April 2020 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200416a

<table>
<tr><td rowspan="2" colspan="2"><strong><em>Issue Classification</em></strong><br><br>||||||||||||||||||||||||||||||||</td><td><strong>Application/Control No.</strong><br><br>16/224,465</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br><br>3636</td></tr>
</table>

| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 21 | | | | | | | | | | | | | | |
| 2 | 25 | | | | | | | | | | | | | | |
| 3 | 26 | | | | | | | | | | | | | | |
| 4 | 27 | | | | | | | | | | | | | | |
| 5 | 28 | | | | | | | | | | | | | | |
| 6 | 29 | | | | | | | | | | | | | | |
| 7 | 30 | | | | | | | | | | | | | | |
| 8 | 31 | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

<table>
<tr><td>NONE<br><br>(Assistant Examiner)</td><td>(Date)</td><td colspan="2"><strong>Total Claims Allowed:</strong><br><br>8</td></tr>
<tr><td>/Noah Chandler Hawk/<br>Primary Examiner, Art Unit 3636<br><br>(Primary Examiner)</td><td>16 April 2020<br><br>(Date)</td><td>O.G. Print Claim(s)<br><br>1</td><td>O.G. Print Figure<br><br>1</td></tr>
</table>

U.S. Patent and Trademark Office

Part of Paper No.: 20200416a

| | | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|---|

## Index of Claims

| Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|
| 16/224,465 | Barnes et al. |
| **Examiner** | **Art Unit** |
| NOAH C HAWK | 3636 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☑ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 09/04/2019 | 01/07/2020 | 04/16/2020 | | | | | | |
| | 1 | - | - | ✓ | | | | | | |
| | 2 | - | - | ✓ | | | | | | |
| | 3 | - | - | ✓ | | | | | | |
| | 4 | - | - | ✓ | | | | | | |
| | 5 | - | - | ✓ | | | | | | |
| | 6 | - | - | ✓ | | | | | | |
| | 7 | - | - | ✓ | | | | | | |
| | 8 | - | - | ✓ | | | | | | |
| | 9 | - | - | ✓ | | | | | | |
| | 10 | - | - | ✓ | | | | | | |
| | 11 | - | - | ✓ | | | | | | |
| | 12 | - | - | ✓ | | | | | | |
| | 13 | - | - | ✓ | | | | | | |
| | 14 | - | - | ✓ | | | | | | |
| | 15 | - | - | ✓ | | | | | | |
| | 16 | - | - | ✓ | | | | | | |
| | 17 | - | - | ✓ | | | | | | |
| | 18 | - | - | ✓ | | | | | | |
| | 19 | - | - | ✓ | | | | | | |
| | 20 | - | - | ✓ | | | | | | |
| 1 | 21 | ✓ | ✓ | = | | | | | | |
| | 22 | ✓ | - | - | | | | | | |
| | 23 | ✓ | - | - | | | | | | |
| | 24 | ✓ | ✓ | - | | | | | | |
| 2 | 25 | ✓ | ✓ | = | | | | | | |
| 3 | 26 | ✓ | ✓ | = | | | | | | |
| 4 | 27 | O | O | = | | | | | | |
| 5 | 28 | O | O | = | | | | | | |
| 6 | 29 | ✓ | ✓ | = | | | | | | |
| 7 | 30 | ✓ | ✓ | = | | | | | | |
| 8 | 31 | ✓ | ✓ | = | | | | | | |
| | 32 | ✓ | ✓ | - | | | | | | |
| | 33 | ✓ | ✓ | - | | | | | | |
| | 34 | ✓ | ✓ | - | | | | | | |

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

By mail, send to: Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to: (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26158        7590        04/23/2020
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| Shari Elofson | (Typed or printed name) |
| /shari elofson/ | (Signature) |
| Filed Via EFS-Web July 21, 2020 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 2289 |

TITLE OF INVENTION: SHADING SYSTEM AND METHOD OF USE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 07/23/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HAWK, NOAH CHANDLER | 3636 | 135-128000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

Womble Bond Dickinson (US) LLP
1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

SHIBUMI SHADE, INC.

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Raleigh, North Carolina

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☒ Issue Fee    ☐ Publication Fee (if required)    ☐ Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via EFS-Web    ☐ Enclosed check    ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. 09-0528

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ___/lauren f. anderson/___        Date ___July 21, 2020___

Typed or printed name ___Lauren F. Anderson___        Registration No. ___69,344___

Case 5:24-cv-00588-FL   Document 28-5   Filed 03/23/26   Page 220 of 227

PTOL-85 Part B (08-18) Approved for use through 01/31/2020        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16224465 |
| **Filing Date:** | 18-Dec-2018 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Attorney Docket Number:** | S105508 1010US.C1 (0002.2 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 500 | 500 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | 500 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 40066731 |
| **Application Number:** | 16224465 |
| **International Application Number:** | |
| **Confirmation Number:** | 2289 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Customer Number:** | 26158 |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Filer Authorized By:** | Lauren F Anderson |
| **Attorney Docket Number:** | S105508 1010US.C1 (0002.2 |
| **Receipt Date:** | 21-JUL-2020 |
| **Filing Date:** | 18-DEC-2018 |
| **Time Stamp:** | 18:57:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $500 |
| RAM confirmation Number | E20207KI58131116 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | S105508_1010US_C1_0002_2_Issue_Fee.pdf | 1404105<br>bb4b8c92273b8852570c657eb5d8c22f3c265438 | no | 1 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30076<br>c3eeff3eb12d3f5f1dd607fcf3f8874fbd9f4789 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1434181 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/224,465 | 08/25/2020 | 10753117 | S105508 1010US.C1 (0002.2 | 2289 |

26158        7590        08/05/2020
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. BOX 7037
ATLANTA, GA 30357-0037

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s)  (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Dane Brooks Barnes, Raleigh, NC;
SHIBUMI SHADE, INC., Raleigh, NC;
Alexander Griffith Slater, Raleigh, NC;
Scott Christian Barnes, Raleigh, NC;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court _____Eastern District of North Carolina_____ on the following

☐ Trademarks or   ☑ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>5:21-cv-256-FL | DATE FILED<br>6/11/2021 | U.S. DISTRICT COURT<br>Eastern District of North Carolina |
|---|---|---|
| PLAINTIFF<br><br>SHIBUMI SHADE, INC. | | DEFENDANT<br><br>BEACH SHADE, LLC and MATTHEW FINNERAN |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 10,753,117 B2 | 12/18/2018 | Shibumi Shade, Inc. |
| 2 | 10,190,330 B2 | 8/12/17 | Shibumi Shade, Inc. |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading |
|---|---|

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>Peter A. Moore, Jr. | (BY) DEPUTY CLERK<br>_Ardict Collins_ | DATE<br>6/21/21 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy





**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY.DOCKET NO./TITLE | REQUEST ID |
|---|---|---|---|---|
| 16/224,465 | 12/18/2018 | Dane Brooks Barnes | S105508 1010US.C1 (0002.2 | 172079 |

## Acknowledgement of Loss of Entitlement to Entity Status Discount

The entity status change request below filed through Private PAIR on 08/15/2022 has been accepted.

## CERTIFICATIONS:

**Change of Entity Status:**

✕ Applicant changing to regular undiscounted fee status.
NOTE: Checking this box will be taken to be notification of loss of entitlement to small or micro entity status, as applicable.

**This portion must be completed by the signatory or signatories making the entity status change in accordance with 37 CFR 1.4(d)(4).**

| Signature: | /lauren f. anderson/ |
|---|---|
| Name: | Lauren F. Anderson |
| Registration Number: | 69344 |