# EXHIBIT 11

PTO/AIA/15 (10-17)
Approved for use through 11/30/2020. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# UTILITY PATENT APPLICATION TRANSMITTAL

*(Only for new nonprovisional applications under 37 CFR 1.53(b))*

| | |
|---|---|
| *Attorney Docket No.* | **S105508 1010US.C8 (0040.5)** |
| *First Named Inventor* | **Dane Brooks Barnes** |
| *Title* | SHADING SYSTEM AND METHOD OF USE |
| *Priority Mail Express® Label No.* | |

## APPLICATION ELEMENTS

*See MPEP chapter 600 concerning utility patent application contents.*

**ADDRESS TO:**

**Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450**

1. [✔] **Fee Transmittal Form** (PTO/SB/17 or equivalent)

2. [ ] **Applicant asserts small entity status.** See 37 CFR 1.27

3. [ ] **Applicant certifies micro entity status.** See 37 CFR 1.29. Applicant must attach form PTO/SB/15A or B or equivalent.

4. [✔] **Specification** [*Total Pages* 15] Both the claims and abstract must start on a new page. *(See MPEP § 608.01(a) for information on the preferred arrangement)*

5. [✔] **Drawing(s)** (35 U.S.C. 113) [*Total Sheets* 7]

6. **Inventor's Oath or Declaration** [*Total Pages* 5] *(including substitute statements under 37 CFR 1.64 and assignments serving as an oath or declaration under 37 CFR 1.63(e))*

  a. [ ] Newly executed (original or copy)

  b. [✔] A copy from a prior application (37 CFR 1.63(d))

7. [✔] **Application Data Sheet** *\* See note below.* See 37 CFR 1.76 (PTO/AIA/14 or equivalent)

8. **CD-ROM or CD-R** in duplicate, large table, or Computer Program (*Appendix*)

  [ ] Landscape Table on CD

9. **Nucleotide and/or Amino Acid Sequence Submission** *(if applicable, items a. – c. are required)*

  a. [ ] Computer Readable Form (CRF)

  b. [ ] Specification Sequence Listing on:

    i. [ ] CD-ROM or CD-R (2 copies); or

    ii. [ ] Paper

  c. [ ] Statements verifying identity of above copies

### ACCOMPANYING APPLICATION PAPERS

10. [ ] **Assignment Papers** (cover sheet & document(s)) Name of Assignee _____

11. [✔] **37 CFR 3.73(c) Statement** (when there is an assignee)    [✔] **Power of Attorney**

12. [ ] **English Translation Document** (if applicable)

13. [✔] **Information Disclosure Statement** (PTO/SB/08 or PTO-1449)

  [✔] Copies of citations attached

14. [✔] **Preliminary Amendment**

15. [ ] **Return Receipt Postcard** (*MPEP § 503*) (*Should be specifically itemized*)

16. [ ] **Certified Copy of Priority Document(s)** (if foreign priority is claimed)

17. [ ] **Nonpublication Request** Under 35 U.S.C. 122(b)(2)(B)(i). Applicant must attach form PTO/SB/35 or equivalent.

18. [ ] **Other:** _____

**\*Note:** (1) Benefit claims under 37 CFR 1.78 and foreign priority claims under 1.55 **must** be included in an Application Data Sheet (ADS).
(2) For applications filed under 35 U.S.C. 111, the application must contain an ADS specifying the applicant if the applicant is an assignee, person to whom the inventor is under an obligation to assign, or person who otherwise shows sufficient proprietary interest in the matter. See 37 CFR 1.46(b).

### 19. CORRESPONDENCE ADDRESS

[✔] The address associated with Customer Number: 26158    **OR** [ ] Correspondence address below

| Name | |
|---|---|
| Address | |

| City | | State | | Zip Code | |
|---|---|---|---|---|---|
| Country | | Telephone | | Email | |

| Signature | /lauren f. anderson/ | Date | November 30, 2022 |
|---|---|---|---|
| Name (Print/Type) | Lauren F. Anderson | Registration No. (Attorney/Agent) | 69,344 |

This collection of information is required by 37 CFR 1.53(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.,* GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/SB/17 (10-20)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# FEE TRANSMITTAL

| Complete if known | |
|---|---|
| Application Number | To Be Assigned |
| Filing Date | Concurrently Herewith |
| First Named Inventor | Dane Brooks Barnes |
| Examiner Name | To Be Assigned |
| Art Unit | To Be Assigned |
| Practitioner Docket No. | S105508 1010US.C8 (0040.5) |

☐ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Form PTO/SB/15A or B or equivalent must either be enclosed or have been submitted previously.

**TOTAL AMOUNT OF PAYMENT** ($) **1820**

**METHOD OF PAYMENT** (check all that apply)

☐ Check ☐ Credit Card ☐ Money Order ☐ None ☐ Other (please identify): _____

☑ Deposit Account  Deposit Account Number: 09-0528 _____  Deposit Account Name: _____

For the above-identified deposit account, the Director is hereby authorized to (check all that apply):

☑ Charge fee(s) indicated below      ☐ Charge fee(s) indicated below, **except for the filing fee**

☑ Charge any additional fee(s) or underpayment of fee(s)   ☑ Credit any overpayment of fee(s)
under 37 CFR 1.16 and 1.17

**WARNING**: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

**FEE CALCULATION**

**1. BASIC FILING, SEARCH, AND EXAMINATION FEES** (U = undiscounted fee; S = small entity fee; M = micro entity fee)

| | FILING FEES | | | SEARCH FEES | | | EXAMINATION FEES | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Application Type** | **U ($)** | **S ($)** | **M ($)** | **U ($)** | **S ($)** | **M ($)** | **U ($)** | **S ($)** | **M ($)** | **Fees Paid ($)** |
| Utility | 320 | 160* | 80 | 700 | 350 | 175 | 800 | 400 | 200 | 1820 |
| Design | 220 | 110 | 55 | 160 | 80 | 40 | 640 | 320 | 160 | |
| Plant | 220 | 110 | 55 | 440 | 220 | 110 | 660 | 330 | 165 | |
| Reissue | 320 | 160 | 80 | 700 | 350 | 175 | 2,320 | 1,160 | 580 | |
| Provisional | 300 | 150 | 75 | 0 | 0 | 0 | 0 | 0 | 0 | |

* The $160 small entity status filing fee for a utility application is further reduced to $80 for a small entity status applicant who files the application via EFS-Web.

**2. EXCESS CLAIM FEES**

| Fee Description | Undiscounted Fee ($) | Small Entity Fee ($) | Micro Entity Fee ($) |
|---|---|---|---|
| Each claim over 20 (including Reissues) | 100 | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 480 | 240 | 120 |
| Multiple dependent claims | 860 | 430 | 215 |

| Total Claims | | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| 20 | -20 or HP = | _____ x | _____ = | _____ |

HP = highest number of total claims paid for, if greater than 20.

**Multiple Dependent Claims**

| Indep. Claims | | Extra Claims | Fee ($) | Fee Paid ($) | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|---|---|
| 1 | -3 or HP = | _____ x | _____ = | _____ | _____ | _____ |

HP = highest number of independent claims paid for, if greater than 3.

**3. APPLICATION SIZE FEE**

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $420 ($210 for small entity) ($105 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| 22 - 100 = | _____ / 50 = | _____ (round **up** to a whole number)    x | _____ = | _____ |

**4. OTHER FEE(S)**                    Fees Paid ($)

Non-English specification, $140 fee ($70 for small entity) ($35 for micro entity)    _____

**Non-electronic filing fee under 37 CFR 1.16(t) for a utility application, $400 fee ($200 small or micro entity)**    _____

Other (e.g., late filing surcharge): _____    _____

**SUBMITTED BY**

| Signature | /lauren f. anderson/ | Registration No. (Attorney/Agent) 69,344 | Telephone (919) 755-8127 |
|---|---|---|---|
| Name (Print/Type) | Lauren F. Anderson | | Date November 30, 2022 |

**A** Federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with an information collection subject to the requirements of the Paperwork Reduction Act of 1995, unless the information collection has a currently valid OMB Control Number. The OMB Control Number for this information collection is 0651-0032. Public burden for this form is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information collection. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden to the Chief Administrative Officer, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 or email InformationCollection@uspto.gov. **DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. If filing this completed form by mail, send to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013). https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to: 1) law enforcement, in the event that the system of records indicates a violation or potential violation of law; 2) a Federal, state, local, or international agency, in response to its request; 3) a contractor of the USPTO having need for the information in order to perform a contract; 4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record; 5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record; 6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations; 7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals; 8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)); 9) the Office of Personnel Management (OPM) for personnel research purposes; and 9) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

# Additional Uses

Additional USPTO uses of the information in this record may include disclosure to: 1) the International Bureau of the World Intellectual Property Organization, if the record is related to an international application filed under the Patent Cooperation Treaty;  2) the public i) after publication of the application pursuant to 35 U.S.C. 122(b), ii) after issuance of a patent pursuant to 35 U.S.C. 151, iii) if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections, or an issued patent, or iv) without publication of the application or patent under the specific circumstances provided for by 37 CFR 1.14(a)(1)(v)-(vii); and/or 3) the National Archives and Records Administration, for inspection of records.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
| --- | --- | --- |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
| --- | --- |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

# Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

# Inventor Information:

**Inventor** 1 [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| --- | --- | --- | --- | --- |
| ▾ | Dane | Brooks | Barnes | ▾ |

**Residence Information (Select One)** ● US Residency  Non US Residency  Active US Military Service

| City | Raleigh | State/Province | NC | Country of Residence | US |
| --- | --- | --- | --- | --- | --- |

**Mailing Address of Inventor:**

| Address 1 | 314 E Cabarrus Street | | |
| --- | --- | --- | --- |
| Address 2 | | | |
| City | Raleigh | State/Province | NC |
| Postal Code | 27601 | Country i | US |

**Inventor** 2 [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| --- | --- | --- | --- | --- |
| ▾ | Alexander | Griffith | Slater | ▾ |

**Residence Information (Select One)** ◉ US Residency  Non US Residency  Active US Military Service

| City | Raleigh | State/Province | NC | Country of Residence | US |
| --- | --- | --- | --- | --- | --- |

**Mailing Address of Inventor:**

| Address 1 | 601 N Bloodworth Street | | |
| --- | --- | --- | --- |
| Address 2 | | | |
| City | Raleigh | State/Province | NC |
| Postal Code | 27604 | Country i | US |

**Inventor** 3 [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
| --- | --- | --- | --- | --- |
| ▾ | Scott | Christian | Barnes | ▾ |

**Residence Information (Select One)** ◉ US Residency  Non US Residency  Active US Military Service

Case 5:24-cv-00588-FL Document 28-11 Filed 03/23/26 Page 6 of 551

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | S105508 1010US.C8 (0040.5 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

| **City** | Raleigh | **State/Province** | NC | **Country of Residence** i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 123 E Martin Street |
|---|---|
| **Address 2** | |
| **City** | Raleigh | **State/Province** | NC |
| **Postal Code** | 27601 | **Country** i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.

Add

## Correspondence Information:

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| **Customer Number** | 26158 |
|---|---|
| **Email Address** | IPDocketing@wbd-us.com | Add Email | Remove Email |

## Application Information:

| **Title of the Invention** | SHADING SYSTEM AND METHOD OF USE | |
|---|---|---|
| **Attorney Docket Number** | S105508 1010US.C8 (0040.5 | **Small Entity Status Claimed** ☐ |
| **Application Type** | Nonprovisional | ▼ |
| **Subject Matter** | Utility | ▼ |
| **Total Number of Drawing Sheets (if any)** | 7 | **Suggested Figure for Publication (if any)** | 1 |

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

EFS Web 2.2.13

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ● Customer Number | US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| Customer Number | 26158 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
| --- | --- | --- | --- |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of | 17/471658 | 2021-09-10 |
| Prior Application Status | Pending | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| 17/471658 | Continuation of | 17/232799 | 2021-04-16 |
| Prior Application Status | Pending | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Continuation of | 17/343114 | 2021-06-09 |
| Prior Application Status | Pending | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| 17/343114 | Continuation of | 17/232799 | 2021-04-16 |
| Prior Application Status | Patented | | Remove |

| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| --- | --- | --- | --- | --- | --- |
| 17/232799 | Continuation of | 16/987886 | 2020-08-07 | 11111690 | 2021-09-07 |

EFS Web 2.2.13

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
|---|---|---|
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |
|---|---|

| Prior Application Status | Patented | | | | Remove |
|---|---|---|---|---|---|

| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
|---|---|---|---|---|---|
| 16/987886 | Continuation of | 16/224465 | 2018-12-18 | 10753117 | 2020-08-25 |

| Prior Application Status | Patented | | | | Remove |
|---|---|---|---|---|---|

| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
|---|---|---|---|---|---|
| 16/224465 | Continuation of | 15/675715 | 2017-08-12 | 10190330 | 2019-01-29 |

| Prior Application Status | Expired | | | Remove |
|---|---|---|---|---|

| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
|---|---|---|---|
| 15/675715 | Claims benefit of provisional | 62/409426 | 2016-10-18 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.    | Add |

# Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX)[i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.    | Add |

# Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

EFS Web 2.2.13

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

# Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE**: This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

EFS Web 2.2.13

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
|---|---|---|
| | Application Number | |
| Title of Invention | SHADING SYSTEM AND METHOD OF USE | |

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| **Applicant** | 1 | Remove |
|---|---|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ● Assignee | Legal Representative under 35 U.S.C. 117 | Joint Inventor |
|---|---|---|
| Person to whom the inventor is obligated to assign. | | Person who shows sufficient proprietary interest |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

| ▼ |
|---|

| Name of the Deceased or Legally Incapacitated Inventor: | |
|---|---|

| If the Applicant is an Organization check here. | ☒ |
|---|---|

| Organization Name | Shibumi Shade, Inc. |
|---|---|

**Mailing Address Information For Applicant:**

| Address 1 | 4039 Atlantic Avenue | | |
|---|---|---|---|
| Address 2 | | | |
| City | Raleigh | State/Province | NC |
| Country | US | Postal Code | 27604 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button.    Add

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 11 of 551

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

---

**Assignee** 1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here. ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
| Address 2 | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.　　Add

---

## Signature:

Remove

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the INITIAL filing of the application and either box A or B is not checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **must** be signed by a patent practitioner if one or more of the applicants is a **juristic entity** (e.g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **all** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **all** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| **Signature** | /lauren f. anderson/ | | | Date (YYYY-MM-DD) | 2022-11-30 |
| **First Name** | Lauren | Last Name | Anderson | Registration Number | 69,344 |

Additional Signature may be generated within this form by selecting the Add button.　　Add

EFS Web 2.2.13

PTO/AIA/14 (01-22)
Approved for use through 05/31/2024. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | S105508 1010US.C8 (0040.5 |
| | Application Number | |

| Title of Invention | SHADING SYSTEM AND METHOD OF USE |

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.2.13

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent CooperationTreaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# SHADING SYSTEM AND METHOD OF USE

## CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]     This application is a non-provisional of U.S. Provisional Patent Application 62/409,426 filed October 18, 2016, the contents of which are hereby incorporated by reference in its entirety.

## TECHNICAL FIELD

[0002]     The presently disclosed subject matter is directed towards a system and method for providing shade from the sun.  Specifically, a transportable system and method of use for providing shade from the sun is disclosed that includes a canopy supported by a singular frame and an engaged counterweight.

## BACKGROUND

[0003]     Avoiding direct sunlight when outdoors is a ubiquitous problem faced by anyone who spends significant time outdoors. Shading systems of the prior art are typically ineffective or impractical to use for a number of reasons. Some systems include rigid canopy susceptible to being shifted or unanchored by wind. Other systems are cumbersome to transport or assemble, due to the number of parts involved, steps required during setup and/or low shade to weight ratios.

[0004]     Accordingly, there remains a need for systems and methods including flexible canopy structures capable of being at least partially supported by wind and configured for easy of transport and assembly.

## SUMMARY

[0005]     This Summary is provided to introduce a selection of concepts in a simplified form that are further described below in the Detailed Description. This Summary is not intended to identify key features or essential features of the claimed subject matter, nor is it intended to be used to limit the scope of the claimed subject matter. Further, the claimed subject matter is not

- 1 -

limited to implementations that solve any or all disadvantages noted in any part of this disclosure.

[0006]　　　According to at least one embodiment of the disclosed subject matter, a system for providing shade onto a surface is provided. The system includes a canopy configured for engagement with, and aerial suspension by, a frame; the frame consisting essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent sections, wherein the left end and the right end are configured to be secured to the surface for aerially suspending the frame and the canopy.

[0007]　　　According to at least one embodiment of the disclosed subject matter, a method of providing shade to a surface is provided. The method includes coupling adjacent sections of a plurality of sections into end-to-end alignment to form a frame from a first end to a second end; sliding the frame through one or more loops of a canopy; securing the left end and the right end of the frame to the surface, thereby aerially suspending the canopy and providing shade to the surface.

[0008]　　　According to at least one embodiment of the disclosed subject matter, the system further includes a cable extending through the plurality of sections of the frame from the left end to the right end.

[0009]　　　According to at least one embodiment of the disclosed subject matter, the system further includes a cord coupled to an anchor and engageable with, or coupled to, the canopy or frame, the anchor configured for housing weight.

[0010]　　　According to at least one embodiment of the disclosed subject matter, the system further includes at least one loop on a suspension end of the canopy, the loop configured for accepting a portion of the frame therethrough.

[0011]　　　According to at least one embodiment of the disclosed subject matter, wherein the canopy further includes at least one hoop positioned at an apex of the suspension end engageable with, or coupled to, a cord, the cord engageable with, or couple to, an anchor for housing weight.

[0012]　　　According to at least one embodiment of the disclosed subject matter, the system further includes at least one strap engageable with the canopy and configured to wrap about the frame for securing the canopy into position relative to the frame.

- 2 -

[0013]     According to at least one embodiment of the disclosed subject matter, wherein the at least one strap includes a strap fastener on one end configured for fastening to a canopy fastener on the other end for securing the canopy into the position relative to the frame.

[0014]     According to at least one embodiment of the disclosed subject matter, wherein the at least one strap has a higher friction of coefficient with respect to the frame relative to the canopy with respect to the frame.

[0015]     According to at least one embodiment of the disclosed subject matter, wherein the at least one strap is elastic.

[0016]     According to at least one embodiment of the disclosed subject matter, wherein all but one of the sections includes a female end for accepting a male end of one of the adjacent sections therein.

[0017]     According to at least one embodiment of the disclosed subject matter, the system further includes a container for housing and transporting all of the other components of the system.

[0018]     According to at least one embodiment of the disclosed subject matter, wherein the container is also an anchor for housing weight, the container coupled to a cord, the cord engageable with, or coupled to, the canopy or frame.

[0019]     According to at least one embodiment of the disclosed subject matter, wherein the cord is attached to an interior bottom of the container for inverting the container to serve as the anchor for housing weight.

[0020]     According to at least one embodiment of the disclosed subject matter, wherein the container includes an interior compartment for housing the sections separate from the canopy.

[0021]     According to at least one embodiment of the disclosed subject matter, the method further includes filling an anchor with weight, the anchor selectively engageable with, or secured to, the canopy or the frame via a cord.

[0022]     According to at least one embodiment of the disclosed subject matter, wherein coupling adjacent sections includes a receiving end of all but one of the sections accepting one of the adjacent sections therein.

- 3 -

[0023]     According to at least one embodiment of the disclosed subject matter, the method further includes unpacking the frame and the canopy from a container configured for transporting the frame and the canopy.

[0024]     According to at least one embodiment of the disclosed subject matter, the method further includes wrapping at least one strap engaged with the canopy about the frame for securing the canopy into position relative to the frame.

[0025]     According to at least one embodiment of the disclosed subject matter, the method further includes fastening the at least one strap for locking the strap into position.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0026]     The foregoing, as well as the following Detailed Description of preferred embodiments, is better understood when read in conjunction with the appended drawings. For the purposes of illustration, there is shown in the drawings exemplary embodiments; however, the presently disclosed subject matter is not limited to the specific methods and instrumentalities disclosed.

[0027]     FIG. 1 is a perspective view of a system for providing shade according to one or more embodiments of the presently disclosed subject matter.

[0028]     FIG. 2 is a front view of a frame in a transport configuration according to one or more embodiments of the presently disclosed subject matter.

[0029]     FIG. 3 is a perspective view of at least one strap engageable with a canopy according to one or more embodiments of the presently disclosed subject matter.

[0030]     FIG. 4 is a perspective view of a loop coupled to the canopy for engaging a cord according to one or more embodiments of the presently disclosed subject matter.

[0031]     FIG. 5 is a perspective view of a container serving as an anchor according to one or more embodiments of the presently disclosed subject matter.

[0032]     FIG. 6 is a perspective view of the container housing the system for shading according to one or more embodiments of the presently disclosed subject matter.

[0033]     FIG. 7 is a perspective view of the container having a compartment for housing sections of the frame according to one or more embodiments of the presently disclosed subject matter.

- 4 -

## DETAILED DESCRIPTION

[0034]     These descriptions are presented with sufficient details to provide an understanding of one or more particular embodiments of broader inventive subject matters. These descriptions expound upon and exemplify particular features of those particular embodiments without limiting the inventive subject matters to the explicitly described embodiments and features. Considerations in view of these descriptions will likely give rise to additional and similar embodiments and features without departing from the scope of the inventive subject matters. Although the term "step" may be expressly used or implied relating to features of processes or methods, no implication is made of any particular order or sequence among such expressed or implied steps unless an order or sequence is explicitly stated.

[0035]     Any dimensions expressed or implied in the drawings and these descriptions are provided for exemplary purposes. Thus, not all embodiments within the scope of the drawings and these descriptions are made according to such exemplary dimensions. The drawings are not made necessarily to scale. Thus, not all embodiments within the scope of the drawings and these descriptions are made according to the apparent scale of the drawings with regard to relative dimensions in the drawings. However, for each drawing, at least one embodiment is made according to the apparent relative scale of the drawing.

[0036]     FIG. 1 depicts one embodiment of a system 10 for providing shade 1 onto a surface 2. The system 10 may include a canopy 12 configured for engagement with, and aerial suspension by, a frame 14. The canopy 12 may include one or more lightweight materials, the material including one or more of the following properties: ripstop, polyester, blackout, light diffusion, light modification, and waterproof. The canopy 12 may be unitarily constructed or may include a plurality of coupled sections 44 and/or selectively engageable sections 44.

[0037]     According to some embodiments, the canopy 12 may define a suspension end 42 positioned proximal to the frame 14 when the canopy 12 is engaged with the frame 14. The suspension end 42 may include one or more suspension fasteners 46 for engaging the canopy 12 with the frame 14. Fasteners 46, 52, 54, as used herein, may include any fasteners of the prior art, including but not limited to hooks and loops, male and female buttons, hook and slit or aperture, and/or magnets. FIG. 1 depicts the canopy 12 defining at least one loop 40 on the suspension end

- 5 -

42 of the canopy, the loop 40 configured for accepting a portion 26 of the frame 14 therethrough. Although the loop 40 of FIG. 1 extends the entire length of the suspension end 42, the loop 40, or plurality of loops 40, may only extend a smaller distance of the suspension end 42. In some embodiments, one or more loops 40 may include tie strings for engaging the suspension end 42 with the frame 14.

[0038] The canopy 12 may be configured to suspend or be stored in any number of shapes and sizes. In some embodiments, the canopy 12 may define one or more vent holes and/or wind socks for permitting wind to pass therethrough. In other embodiments, the canopy 12 may define tails extending from a side opposite the suspension end 42.

[0039] While the suspension end 42, suspension fasteners 46 and loop(s) 40 engage the canopy 12 to the frame 14, in some embodiments, additional securing mechanisms may be desired to secure the canopy 12 into position relative to the frame 14. FIGS. 1 and 3 depict embodiments of the system 10 including at least one strap 50 engageable with, or coupled to, the canopy 12 for securing the canopy 12 into position relative to the frame 14. The at least one strap 50 may be elastic rubber, gear ties, bungee cord, rope or any other material capable of wrapping about the frame 14 or other component of the system 10. The at least one strap 50 may engage or couple to the canopy 12 on either or both ends of the suspension end 42 and/or to the loop 40 of the suspension end 42. Each of the straps 50 may be configured to wrap about the frame 14, or engage the frame 14 using a strap fastener 52 and/or a canopy or frame fastener 54. In some embodiments, a strap 50 may include a canopy fastener 54 for engaging the canopy 12 (e.g., a ball at one end of the strap 50 for engaging a grommeted aperture of the canopy 12), and the strap 50 may be manipulated about the frame 14. Alternatively, a strap 50 may include both a strap fastener 52 on one end and a canopy fastener 54 on the other end for wrapping the strap 50 about the frame 14 and fastening the fasteners 52, 54 together (see, e.g., FIG. 3). In yet another alternative, the strap 50 may include be coupled or engaged to the canopy 12 on one end and include a frame fastener 54 on the other end for engaging the canopy 12 to the frame 14.

[0040] The at least one strap 50 may be comprised of any number of materials, including but not limited to one or more of the following: fabric, rubber, plastic, and metal. In some embodiments, the at least one strap 50 may have a higher friction of coefficient with respect to the frame 14 relative to the canopy 12 with respect to the frame 14. For example, if the canopy

- 6 -

12 includes polyester fabric and the at least one strap 50 includes rubber, then the friction of coefficient with a metal or plastic frame 14 would be higher for the strap than for the canopy 12. In some embodiments, the at least one strap 50 may be elastic. Being able to stretch the at least one strap 50 about the frame 14 when engaging the strap 50 thereto can greatly increase the friction between the strap 50 and the frame 14, particularly if the strap 50 is also fastened to itself after wrapping.

[0041]     According to some embodiments, the frame 14 of the system 10 may include, or consist essentially of, a plurality of sections 24 configured for end-to-end alignment from a left end 20 of the frame 14 to a right end 22 of the frame 14. Each of the sections 24 may be further configured to engage with any adjacent sections 24. When two or more or all of the sections 24 are aligned end-to-end and engaged with adjacent sections 24, the frame 14 may be positioned to receive and support the canopy 12. In some embodiments, the sections 24 are arranged telescopically, where each adjacent section 24 may be housed within, and extend from each adjacent section 24. In other embodiments, as depicted in FIG. 2, many of the sections include both a male end 62 and a female end 60 for engaging adjacent sections 24 to each other to construct the supporting frame 14. In some embodiments, all but one of the sections 24 includes a female end 60 for accepting a male end 62 of one of the adjacent sections 24 therein.

[0042]     During transport, the sections 24 may be compactly configured as depicted in FIG. 2. A first section 64 may define the left end 20 of the frame 14 and a last section 66 may define the right end 22 of the frame 14. The first section 64 may include a single male end 62 or female end 60, with the other end being the left end 20 and/or cap 68 (FIG. 2 depicts first section 64 having a male end 62 and cap 68). A last section 66 may similarly include a single male end 62 or female end 60, with the other end being the right end 22 and/or cap 68 (FIG. 2 depicts last section 66 having a female end 60 and cap 68). The cap may serve to close off an end of the first and/or last section 64, 66 for preventing sand from entering therein and for securing the cable 30, as described below.

[0043]     As depicted in FIG. 2, the system 10 may further include a cable 30 extending through the plurality of sections 24 of the frame 12 from the left end 20 to the right end 22. The cable 30 may be elastic so that the sections 24 may be maneuvered between a transport configuration (e.g., FIG. 2) and a supporting configuration (e.g., FIG. 1), yet still remain adjacent

- 7 -

and aligned end-to-end, the cable 30 providing supporting tension to the end-to-end alignment of the supporting configuration. The cable 30 may be affixed to an interior and/or cap 68 of the first section 64 and second section 66. The cable 30 may also be affixed to interiors of any of the other sections 24.

[0044]     When the frame 14 is in the transport configuration, and a cable 30 extends through the sections 24 of the frame 14, the male and female ends 60, 62, and/or the cable 30 itself, may be configured to prevent degradation or injury to the cable 30. Looking to FIG. 2, any pressure applied to the sections 24 from the top of the figure or the bottom of the figure may create injury to the cable 30 where it is exposed between the male and female ends 60, 62. Therefore, the female ends 60 and/or male ends 62 may define grooves for permitting passage of the cable therebetween such that any objects applying pressure from the top or bottom of the figure would apply that pressure directly to the ends 60, 62 and not onto the cable 30, effectively clipping the cable between the end 60, 62 and the object. The cable 30 may include reinforcements at the exposed sections between the ends 60, 62 when in the transport configuration. The reinforcements may include additional layers of fabric, metal-reinforced cylinders, and/or thicker elastic bands.

[0045]     In some embodiments of the system 10, the sections 24 of the frame 12 may form a curved shape when in the supporting configuration. In other embodiments, the sections 24 may form other shapes or designs when in the supporting configuration. A curved shape may be formed when the male and female ends 60, 62 are co-extensive with curved axis the remaining portions of the sections 24. To form other designs, the female ends 60 and/or male ends 62 may be shaped for creating non-co-extensive angles with respect to the axis of the remaining portions of the sections 24. For example, a female end 60 engaging two sections may be shaped in a right angle, thereby creating an 'L' shape when the two adjacent sections are engaged. Other female ends 60 may be shaped at other angles, thereby creating a design or pattern when all of the sections 24 are engaged and the frame is in the supporting configuration.

[0046]     Referencing FIGS. 4 and 5, the system 10 may further include a cord 32 engaged with, or coupled to, an anchor 34, the canopy 12, and/or the frame 14 for providing support to the frame 14 when in the supporting configuration. The anchor 34 may be configured for housing weight 36. The cord 32 may be engaged with or coupled to the canopy 12 and/or frame 14 at an

apex of the canopy 12 and/or frame 14. For example, if the ends 20, 22 of the frame 14 are secured within sand on a beach, the anchor 34 may be filled with sand acting as the weight 36. The system 10 may further include a hoop 33 or other fastener, such as the fasteners described herein, engaged with, or coupled to, the canopy 12 or frame 14 with which the cord 12 may be engaged or coupled (e.g., see FIG. 4 embodiment where the hoop 33 is coupled to the canopy 12).

[0047]    FIG. 6 depicts an embodiment of the system 10 further including a container 70 for housing and transporting all of the other components of the system 10. The container 70 may include a band 76 for transporting the container 70 about the shoulder or in the palm of a user 3. The band 76 may be configured to be a handle and/or may be selectively engageable with the container 70 for storage therein. The container 70 may include a drawstring 78 or other closing mechanism for securing the contents of the system 10 therewithin.

[0048]    The container 70 may also be the anchor 34 for housing weight 36 (see, e.g., FIG. 5). In some embodiments, the container 70 may be inverted for housing weight 36 for ensuring that minimal amounts of weight 36 remain in the container once re-inverted so that the contents of the system 10 are not disturbed by any weight 36 during transportation and/or storage of the system 10. The cord 32 may be engaged with or coupled to an interior 72 of the container 70 for inverting the container 70. The cord 32 may be engaged with or coupled to the bottom 74 of the container 70 for permitting full inversion, or at a mid-point 75 of the container 70 for permitting half inversion of the container 70 (see, e.g., FIG. 7). In other embodiments, the cord 32 may be selectively engaged or coupled with an exterior 73 of the container 70.

[0049]    For example, when the contents of the system 10 are removed from the container 70, the cord 32 may be pulled away from the container 70 while the container 70 is held into position (or pushed away from the cord 32), thereby inverting the container 70 to serve as the anchor 34. When the cord 32 is engaged or coupled to an interior 72 and bottom 74, the pulling of the cord 32 may result in the full inversion of the container 70. When the cord is engaged or coupled to an interior 72 and mid-point 75, the pulling of the cord 32 may result in a half inversion of the container 70. If the container 70 includes a compartment 77 as described herein, then the inversion of the container 70 may result in the compartment 77 being exterior to the anchor 34 and any weight 36.

- 9 -

[0050]    FIG. 7 illustrates the container 70 including a compartment 77 positioned on the interior 72 for housing the sections 24 separate from the canopy 12. The compartment 77 may be engageable with or coupled to the interior 72 of the container 70. The compartment 77 may be sewn to the interior 72 of the container 70 along a single seam or multiple seams. A drawstring or other closing mechanism 78 may be included on the container 70 for cinching close an open side 79 of the container. Although FIG. 7 depicts the seam of the compartment 77 only connecting a portion of the compartment length to the container 70, other embodiments may include the entire length of the compartment 77 being sewn to the container 70.

[0051]    The left end 20 and the right end 22 of the frame 14 may be each be embedded in the surface 2. The ends 20, 22 may define a conical shape or a corkscrew shape for ease of penetration of the surface 2. Additional anchor(s) 35 may be engaged or coupled to the left end 20 and/or right end 22 for further securing the frame 14 into position. In embodiments where a tail is defined by the canopy 12, the tail may be engaged with or coupled to an additional anchor 34 for securing the canopy 12 into position for providing shade 1 to the surface 2. In yet additional embodiments, an additional suspension end 43 may be defined by the canopy 12. The additional suspension end 43 may include any of the features and characteristics described herein attributed to the suspension end 42. For example, the additional suspension end 43 may form an additional loop 41 for engaging or coupling an additional frame 15, thereby further suspending the canopy 12 from both the frame 14 and the additional frame 15.

[0052]    In addition to the methods of using the system 10 described herein, the following additional methods of using the system 10 are provided. A method of providing shade 1 to a surface 2 may include unpacking or removing the frame 14 and the canopy 12 from the container 70. Adjacent sections 24 of the plurality of sections 24 may be engaged or coupled into end-to-end alignment to configure the frame 14 from a left end 20 to a right end 22 into a supporting configuration. The frame 14 may slide through one or more loops 40 of the canopy 12 and/or may be engaged with the suspension end 42 of the canopy 12. The ends 20, 22 of the frame 14 may be secured to the surface 2, thereby aerially suspending the canopy 12 and providing shade 1 to the surface 2.

[0053]    The canopy 12 may be secured into position relative to the frame 14 by wrapping at least one strap 50 about the frame 14 and/or fastening the at least one strap 50 to or about the

frame 14. The cord may be engaged with the canopy 12, frame 14 and/or anchor 34. The anchor 34 may be filled with weight 36. Additional anchors 35 may be engaged with the ends 20, 22, additional frame 15 and/or tail of the canopy 12. The additional anchors 35 may be filled with weight 36.

[0054]    Particular embodiments and features have been described with reference to the drawings. It is to be understood that these descriptions are not limited to any single embodiment or any particular set of features, and that similar embodiments and features may arise or modifications and additions may be made without departing from the scope of these descriptions and the spirit of the appended claims.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 25 of 551

# CLAIMS

The invention claimed is:

1. A system for providing shade onto a surface, comprising:

   a canopy configured for engagement with, and aerial suspension by, a frame;

   the frame consisting essentially of a plurality of sections configured for end-to-end alignment from a left end to a right end, wherein each section is configured to engage with any adjacent sections,

   wherein the left end and the right end are configured to be secured to the surface for aerially suspending the frame and the canopy.

2. The system of claim 1, further comprising a cable extending through the plurality of sections of the frame from the left end to the right end.

3. The system of claim 1, further comprising a cord coupled to an anchor and engageable with, or coupled to, the canopy or frame, the anchor configured for housing weight.

4. The system of claim 1, wherein the canopy includes at least one loop on a suspension end, the loop configured for accepting a portion of the frame therethrough.

5. The system of claim 4, wherein the canopy further includes at least one hoop positioned at an apex of the suspension end engageable with, or coupled to, a cord, the cord engageable with, or couple to, an anchor for housing weight.

6. The system of claim 1, further comprising at least one strap engageable with the canopy and configured to wrap about the frame for securing the canopy into position relative to the frame.

- 12 -

7. The system of claim 6, wherein the at least one strap includes a strap fastener on one end configured for fastening to a canopy fastener on the other end for securing the canopy into the position relative to the frame.

8. The system of claim 6, wherein the at least one strap has a higher friction of coefficient with respect to the frame relative to the canopy with respect to the frame.

9. The system of claim 6, wherein the at least one strap is elastic.

10. The system of claim 1, wherein all but one of the sections includes a female end for accepting a male end of one of the adjacent sections therein.

11. The system of claim 1, further comprising a container for housing and transporting all of the other components of the system.

12. The system of claim 11, wherein the container is also an anchor for housing weight, the container engageable with, or coupled to, a cord, the cord engageable with, or coupled to, the canopy or frame.

13. The system of claim 12, wherein the cord is coupled to an interior of the container for inverting the container to serve as the anchor for housing weight.

14. The system of claim 11, wherein the container includes an interior compartment for housing the sections separate from the canopy.

15. A method of providing shade to a surface, comprising:
    coupling adjacent sections of a plurality of sections into end-to-end alignment to form a
        frame from a first end to a second end;
    sliding the frame through one or more loops of a canopy;
    securing the left end and the right end of the frame to the surface,

- 13 -

thereby aerially suspending the canopy and providing shade to the surface.

16. The method of claim 15, further comprising filling an anchor with weight, the anchor selectively engageable with, or secured to, the canopy or the frame via a cord.

17. The method of claim 15, wherein the coupling adjacent sections includes a receiving end of all but one of the sections accepting one of the adjacent sections therein.

18. The method of claim 15, further comprising unpacking the frame and the canopy from a container configured for transporting the frame and the canopy.

19. The method of claim 15, further comprising wrapping at least one strap engaged with the canopy about the frame for securing the canopy into position relative to the frame.

20. The method of claim 19, further comprising fastening the at least one strap for locking the strap into position.

- 14 -

**ABSTRACT**

A system for providing shade onto a surface is described herein. The system includes a canopy configured for engagement with, and aerial suspension by, a frame. The frame includes a plurality of sections configured for end-to-end alignment from a left end to a right end of the frame. Each section is configured to engage with any adjacent sections to form the frame. The ends of the frame are secured to the surface, thereby aerially suspending the canopy and providing shade to the surface.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 29 of 551



FIG. 1



FIG. 2

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 31 of 551



**FIG. 3**



FIG. 4



FIG. 5



**FIG. 6**



FIG. 7

# PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

EPAS ID: PAT4547643

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| DANE BROOKS BARNES | 08/08/2017 |
| ALEXANDER GRIFFITH SLATER | 08/08/2017 |
| SCOTT CHRISTIAN BARNES | 08/08/2017 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | SHIBUMI SHADE, LLC |
| Street Address: | 614 HOLDEN ST |
| City: | RALEIGH |
| State/Country: | NORTH CAROLINA |
| Postal Code: | 27604-1949 |

**PROPERTY NUMBERS Total: 1**

| Property Type | Number |
|---|---|
| Application Number: | 15675715 |

**CORRESPONDENCE DATA**

**Fax Number:**

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

| | |
|---|---|
| Phone: | 919-348-2194 |
| Email: | lgravatt@nkpatentlaw.com |
| Correspondent Name: | NK PATENT LAW |
| Address Line 1: | 4917 WATERS EDGE DRIVE |
| Address Line 2: | SUITE 275 |
| Address Line 4: | RALEIGH, NORTH CAROLINA 27606 |

| ATTORNEY DOCKET NUMBER: | 785/2 UTIL |
|---|---|
| NAME OF SUBMITTER: | WILLIAM LYLE GRAVATT |
| SIGNATURE: | /William Lyle Gravatt/ |
| DATE SIGNED: | 08/12/2017 |
| | This document serves as an Oath/Declaration (37 CFR 1.63). |

**Total Attachments: 3**
source=785-2UTIL-20170812-Dec-Asssign-signed#page1.tif
source=785-2UTIL-20170812-Dec-Asssign-signed#page2.tif

source=785-2UTIL-20170812-Dec-Asssign-signed#page3.tif

785/2 UTIL

# DECLARATION AND ASSIGNMENT OF RIGHTS

As a below named inventor (hereinafter designated as the undersigned or the Assignor, where appropriate), I hereby declare that:

The application is as identified by the attorney docket number, title, Filing Date, or Application Title as set forth in the following Table I.

The application in Table I was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the applications in Table I.

The undersigned hereby acknowledges that any willful false statement made in this declaration is punishable under 18 U.S.C. § 1001 by fine or imprisonment of not more than five (5) years, or both.

WHEREAS, the undersigned, **Dane Brooks Barnes, Alexander Griffith Slater and Scott Christian Barnes**, (hereinafter "Assignor") has invented certain new and useful improvements described in the application(s) identified in Table I.

AND, WHEREAS, **SHIBUMI SHADE, LLC**, having a place of business at 614 Holden Street, Raleigh, NC 27604-1949 (hereinafter "Assignee"), has already acquired an interest in the application(s) identified in Table I by and through an employment or other agreement between Assignor and Assignee. I further authorize an agent of the Assignee to insert the filing date, application number, and any other identifying particulars as required for perfecting these assignment papers.

However, in the avoidance of doubt and as confirmation of the already acquired interest by Assignee, NOW, THEREFORE, To Whom It May Concern, be it known that for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor has assigned and by these presents does hereby sell, assign, transfer, and convey unto the Assignee, its successors and assigns, his entire right, title, and interest in and to the invention and application, including the right to sue for past infringements and any other prior occurring rights, provided any such rights exist, and in and to any and all domestic and foreign patent applications filed on the invention, and in and to any and all continuations, continuations-in-part, or divisions thereof, and in and to any and all Letters Patent of the United States of America, and all foreign countries or reissues thereof which may be granted therefor or thereon, for the full end of the term for which said Letters Patent may be granted, together with his right to claim the priority of said application in all foreign countries in accordance with the International

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 39 of 551

Convention, the same to be held and enjoyed by said Assignee, its successors and assigns, as fully and entirely as the same would have been held and enjoyed by Assignor if this assignment and sale had not been made. Assignor further assigns to Assignee the right to claim entitlement and/or priority to any applications that entitlement or priority may be claimed for this or any later filed application, including the assignment of any provisionals or other priority documents to which the inventions claim priority to. The assignment of the right to claim entitlement and/or priority is executed *nunc pro tunc* and is considered effective as of the filing date of the earliest application to which priority and/or entitlement is claimed.

Assignor hereby requests that said Letters Patent be issued in accordance with this assignment.

Assignor further covenants and agrees that, at the time of the execution and delivery of these presents, Assignor possesses full title to the invention and application above-mentioned, and that he has the unencumbered right and authority to make this assignment.

Assignor further covenants and agrees, and likewise binds his heirs, legal representatives and assigns, to promptly communicate to said Assignee or its representatives any facts known to him relating to said invention, to testify in any interference or legal proceedings involving said invention, to execute any additional papers which may be requested to confirm the right of the Assignee, its representatives, successors and assigns to secure patent or similar protection for the said invention in all countries and to vest in the Assignee complete title to the said invention and Letters Patent, without further compensation, but at the expense of said Assignee, its successors, assigns and other legal representatives.

<<<<<<<< TABLE I and Signature Page follows >>>>

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 40 of 551

785/2 UTIL

## TABLE I

| Application No. | Attorney Docket No. | Filing Date | Title |
|---|---|---|---|
| 15/675,715 | 785/2 UTIL | 2017-08-12 | SHADING SYSTEM AND METHOD OF USE |

Executed this __8__ day of _____August_____, 2017.

*Dane Barnes*
_____
**Dane Brooks Barnes**

*Alex Slater*
_____
**Alexander Griffith Slater**

*Scott Barnes*
_____
**Scott Christian Barnes**

**(Assignors)**

Executed this __8__ day of _____August_____, 2017.

**SHIBUMI SHADE, LLC**

_____

Name: *Dane Barnes*_____
Title: Officer, Shibumi Shade, LLC
**(Assignee)**

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 41 of 551

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | To Be Assigned |
| Filing Date | Concurrently Herewith |
| First Named Inventor | Dane Brooks Barnes |
| Title | SHADING SYSTEM AND METHOD OF USE |
| Art Unit | To Be Assigned |
| Examiner Name | To Be Assigned |
| Attorney Docket Number | S105508 1010US.C8 (0040.5) |

## SIGNATURE of Applicant or Patent Practitioner

| Signature | /lauren f. anderson/ | Date (Optional) | |
|---|---|---|---|
| Name | Lauren F. Anderson | Registration Number | 69,344 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | Shibumi Shade, Inc. | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 03/31/2021. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✔] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

26158

**OR**

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✔] The address associated with the above-mentioned Customer Number

**OR**

[ ] The address associated with Customer Number:

**OR**

| [ ] Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

# SHIBUMI SHADE, INC.

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✔] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | | Date (Optional) | 4/14/2020 |
|---|---|---|---|
| Name | Dane Barnes | | |
| Title | President | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/96 (08-12)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: Shibumi Shade, Inc.

Application No./Patent No.: To Be Assigned          Filed/Issue Date: Concurrently Herewith

Titled: SHADING SYSTEM AND METHOD OF USE

Shibumi Shade, Inc.                    , a Corporation

(Name of Assignee)                         (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [✔] The assignee of the entire right, title, and interest.

2. [ ] An assignee of less than the entire right, title, and interest (check applicable box):

   [ ] The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

   [ ] There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

   |  |
   |--|
   |  |

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ] The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

   |  |
   |--|
   |  |

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ] The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

B. [✔] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: Barnes; Slater; Barnes          To: Shibumi Shade, LLC

      The document was recorded in the United States Patent and Trademark Office at
      Reel 043276, Frame 0936, or for which a copy thereof is attached.

   2. From: Shibumi Shade, LLC          To: Shibumi Shade, Inc.

      The document was recorded in the United States Patent and Trademark Office at
      Reel 052350, Frame 0912, or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 44 of 551

PTO/AIA/96 (08-12)
Approved for use through 11/30/2020. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____ To: _____

       The document was recorded in the United States Patent and Trademark Office at

       Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____ To: _____

       The document was recorded in the United States Patent and Trademark Office at

       Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____ To: _____

       The document was recorded in the United States Patent and Trademark Office at

       Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____ To: _____

       The document was recorded in the United States Patent and Trademark Office at

       Reel _____, Frame _____, or for which a copy thereof is attached.

☐   Additional documents in the chain of title are listed on a supplemental sheet(s).

☐   As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

    [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| | |
|---|---|
| /lauren f. anderson/ | November 30, 2022 |
| Signature | Date |
| Lauren F. Anderson | 69,344 |
| Printed or Typed Name | Title or Registration Number |

[Page 2 of 2]

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | *To Be Assigned* |
| Appl. No.: | *To Be Assigned* | Group Art Unit: | *To Be Assigned* |
| Filed: | *Concurrently Herewith* | Examiner: | *To Be Assigned* |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### INFORMATION DISCLOSURE STATEMENT
### CITATION UNDER 37 C.F.R. § 1.97

Sir:

Attached is a list of documents on form PTO-1449.

It is requested that the Examiner consider these documents and officially make them of record in accordance with the provisions of 37 C.F.R. § 1.97 and Section 609 of the MPEP. By identifying the listed documents, Applicant in no way makes any admission as to the prior art status of the listed documents, but is instead identifying the listed documents for the sake of full disclosure.

Any foreign patents or non-patent literature documents items are attached, except those that were supplied in, or cited by the Office during prosecution of, parent Application Nos. 17/343,114, filed June 9, 2021, and 17/471,658, filed September 10, 2021. Since the benefit of this application was claimed under 35 U.S.C. 120, no copies need to be furnished in accordance with 37 C.F.R. 1.98(d); however, copies will be furnished on request.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022.*

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | | Complete if Known | |
|---|---|---|---|---|---|
| | | | | Application Number | *To Be Assigned* |
| | | | | Filing Date | *Concurrently Herewith* |
| | | | | First Named Inventor | Dane Brooks Barnes |
| | | | | Art Unit | *To Be Assigned* |
| | | | | Examiner Name | *To Be Assigned* |
| Sheet | 1 | of | 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-1,129,194 | 02-23-1915 | Hanley | |
| | 2 | US-1,571,295 | 02-02-1926 | Newman | |
| | 3 | US-2,186,510 | 01-09-1940 | Walter *et al.* | |
| | 4 | US-2,190,566 | 02-13-1940 | Julian | |
| | 5 | US-2,554,688 | 05-29-1951 | Vollweiler | |
| | 6 | US-2,963,031 | 12-06-1960 | Carroll | |
| | 7 | US-3,042,053 | 07-03-1962 | Gabriel | |
| | 8 | US-3,051,185 | 08-28-1962 | Reynolds | |
| | 9 | US-3,052,249 | 09-04-1962 | Seaman *et al.* | |
| | 10 | US-3,070,107 | 12-25-1962 | Beatty | |
| | 11 | US-3,075,536 | 01-29-1963 | Parker | |
| | 12 | US-3,190,300 | 06-22-1965 | Wear'n | |
| | 13 | US-3,286,962 | 11-22-1966 | Warth | |
| | 14 | US-3,388,711 | 06-18-1968 | Huddle | |
| | 15 | US-3,394,720 | 07-30-1968 | Moss | |
| | 16 | US-4,590,956 | 05-27-1986 | Griesenbeck | |
| | 17 | US-4,646,770 | 03-03-1987 | Lobato | |
| | 18 | US-4,739,784 | 04-26-1988 | Fast | |
| | 19 | US-4,750,508 | 06-14-1988 | Tatoian | |
| | 20 | US-4,915,120 | 04-10-1990 | Ziolkowski | |
| | 21 | US-4,924,893 | 05-15-1990 | Furey | |
| | 22 | US-4,930,534 | 06-05-1990 | Hill | |
| | 23 | US-5,046,699 | 09-10-1991 | Perreault *et al.* | |
| | 24 | US-5,080,123 | 01-14-1992 | Stein | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

WBD (US) 59557970v1

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | *To Be Assigned* |
| | | | Filing Date | *Concurrently Herewith* |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | *To Be Assigned* |
| | | | Examiner Name | *To Be Assigned* |
| Sheet | 2 | of 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

| | | **U. S. PATENT DOCUMENTS** | | | |
|---|---|---|---|---|---|
| | 25 | US-5,215,109 | 06-01-1993 | Kent, Jr. | |
| | 26 | US-5,291,640 | 03-08-1994 | Rise | |
| | 27 | US-5,299,590 | 08-05-1994 | Deibert *et al.* | |
| | 28 | US-5,358,209 | 10-25-1994 | Ward | |
| | 29 | US-5,546,971 | 08-20-1996 | Leonhardt | |
| | 30 | US-5,678,704 | 10-21-1997 | Deeds | |
| | 31 | US-5,771,912 | 06-30-1998 | Swetish | |
| | 32 | US-5,823,217 | 10-20-1998 | Rice | |
| | 33 | US-5,927,311 | 07-27-1999 | Jager | |
| | 34 | US-5,950,649 | 09-14-1999 | Gerig | |
| | 35 | US-6,321,861 | 11-27-2001 | Leichter | |
| | 36 | US-6,964,277 | 11-15-2005 | Naber | |
| | 37 | US-7,021,866 | 04-04-2006 | Keefe | |
| | 38 | US-7,191,996 | 03-20-2007 | Patsalaridis | |
| | 39 | US-7,316,239 | 01-08-2008 | Yang | |
| | 40 | US-7,406,977 | 08-05-2008 | Shires | |
| | 41 | US-7,708,339 | 05-04-2010 | Zapater | |
| | 42 | US-7,789,097 | 09-07-2010 | Sotirkys *et al.* | |
| | 43 | US-8,424,549 | 04-23-2013 | Goldsmith *et al.* | |
| | 44 | US-8,453,664 | 06-04-2013 | Parsons *et al.* | |
| | 45 | US-8,720,461 | 05-13-2014 | Nichols | |
| | 46 | US-8,899,251 | 12-02-2014 | Leung *et al.* | |
| | 47 | US-9,051,755 | 06-09-2015 | Heining *et al.* | |
| | 48 | US-9,051,756 | 06-09-2015 | Jenkins | |
| | 49 | US-9,113,724 | 08-25-2015 | Heining *et al.* | |
| | 50 | US-9,447,599 | 09-20-2016 | Parent | |
| | 51 | US-9,903,134 | 02-27-2018 | Munnerlyn | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

<table>
<tr><td rowspan="2"></td><td colspan="5" align="center"><b>Complete if Known</b></td></tr>
</table>

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Complete if Known | |
|---|---|---|
| | Application Number | *To Be Assigned* |
| | Filing Date | *Concurrently Herewith* |
| | First Named Inventor | Dane Brooks Barnes |
| | Art Unit | *To Be Assigned* |
| | Examiner Name | *To Be Assigned* |
| Sheet 3 of 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

**U. S. PATENT DOCUMENTS**

| | | | | |
|---|---|---|---|---|
| | 52 | US-10,066,417 | 09-04-2018 | Linyard *et al.* |
| | 53 | US-10,252,778 | 04-09-2019 | Greer |
| | 54 | US-10,602,817 | 03-31-2020 | Price |
| | 55 | US-11,156,012 | 10-26-2021 | Graham |
| | 56 | US-11,219,286 | 01-11-2022 | Cox |
| | 57 | US-D263,984 | 04-20-1982 | Moss |
| | 58 | US-D363,755 | 10-31-1995 | Diederich |
| | 59 | US-D397,401 | 08-25-1998 | Diederich |
| | 60 | US-D398,363 | 09-15-1998 | LoBue |
| | 61 | US-D421,532 | 03-14-2000 | Koroncai |
| | 62 | US-D438,929 | 03-13-2001 | Middleton *et al.* |
| | 63 | US-D544,062 | 06-05-2007 | Baker |
| | 64 | US-D555,748 | 11-20-2007 | Gyr *et al.* |
| | 65 | US-D577,092 | 09-16-2008 | West |
| | 66 | US-D593,315 | 06-02-2009 | Zemel |
| | 67 | US-D630,834 | 01-18-2011 | Cohen |
| | 68 | US-D739,555 | 09-22-2015 | McAlister |
| | 69 | US-D741,437 | 10-20-2015 | Zimmer *et al.* |
| | 70 | US-D843,200 | 03-19-2019 | Tjerrild |
| | 71 | US-D859,808 | 09-17-2019 | Goldszer |
| | 72 | US-D877,486 | 03-10-2020 | Chen |
| | 73 | US-D928,899 | 08-24-2021 | Zhu |
| | 74 | US-D947,975 | 04-05-2022 | Lah |
| | 75 | US-D948,653 | 04-12-2022 | Lah |
| | 76 | US-D960,277 | 08-09-2022 | Lah |
| | 77 | US-2003/0066550 | 04-10-2003 | Al-Ghamdi |
| | 78 | US-2003/0089390 | 05-15-2003 | Seo |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

|  | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | *To Be Assigned* | |
| | | | Filing Date | *Concurrently Herewith* | |
| | | | First Named Inventor | Dane Brooks Barnes | |
| | | | Art Unit | *To Be Assigned* | |
| | | | Examiner Name | *To Be Assigned* | |
| Sheet | 4 | of | 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| | 79 | US-2007/0079857 | 04-12-2007 | Tseng | |
| | 80 | US-2012/0291830 | 11-22-2012 | Crimi | |
| | 81 | US-2013/0074894 | 03-28-2013 | Cook | |
| | 82 | US-2014/0041703 | 02-13-2014 | Funston | |
| | 83 | US-2014/0209132 | 07-31-2014 | Landry | |
| | 84 | US-2015/0040957 | 02-12-2015 | Mallookis *et al.* | |
| | 85 | US-2015/0252585 | 09-10-2015 | Mallookis *et al.* | |
| | 86 | US-2015/0354244 | 12-10-2015 | Fernandez Gonzalez | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | 87 | AU 200511300 | 09-01-2005 | Gyr | | |
| | 88 | BR 302019005581 | 12-10-2019 | Vinicius Rolim Tamassia | | |
| | 89 | CA 2524310 | 04-25-2006 | Aqua-Leisure Industries, Inc | | |
| | 90 | CH 130505 | 05-14-2004 | Fischer | | |
| | 91 | CH 132260 | 12-15-2005 | Fischer | | |
| | 92 | DE 10 2009 020 795 | 11-04-2010 | Schmidt | | |
| | 93 | FR 2 884 844 | 04-26-2005 | Cahours De Virgile | | |
| | 94 | KR 10-1315166 | 10-07-2013 | Kang | | Machine Translation |
| | 95 | WO 02/04768 | 01-17-2002 | Selby | | |
| | 96 | WO 2011/012969 A2 | 02-03-2011 | De Pasquale | | |
| | 97 | WO 2020/089599 | 05-07-2020 | Osborne | | |
| | 98 | WO 2022/174316 | 08-25-2022 | Ribeiro Lucchese Gualdi | | Machine Translation |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

| | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Application Number | *To Be Assigned* |
| | | Filing Date | *Concurrently Herewith* |
| | | First Named Inventor | Dane Brooks Barnes |
| | | Art Unit | *To Be Assigned* |
| | | Examiner Name | *To Be Assigned* |
| Sheet | 5 | of | 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

## OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 99 | YouTube video by Robert Marazzita: The Best Beach Cabana – Set Up and Tear Down, July 9, 2015, [site visited August 8, 2017], Available on the Internet URL: <https:www.youtube.com/watch?v=LfccH7yV6SE>. | |
| | 100 | YouTube video by Robb's Homemade Life: Make $15 Beach Shade tent Easy Quick DIY, October 6, 2015 [site visited August 8, 2017] Available on the internet URL: <www.youtube.com/watch?v+X20b4pLJx1c> | |
| | 101 | YouTube video by Beachspirit: Kitent (R) - the Floating beach tent for sun shade, October 8, 2016 [site visited August 8, 2017] Available on the internet URL: <https://m.youtube.com/watch?v=OUaDZeqdTkQ> | |
| | 102 | YouTube video by ZiggyShade Beach Sunshade: ZiggyShade – Beach Sunshade – Set up instructions, November 24, 2016 [site visited August 8, 2017] Available on the internet URL: <https://youtu.be/1krQ0rlumws> | |
| | 103 | YouTube video by bibitedog: How to set up a butterfly arch, May 26, 2012 [site visited December 18, 2018] Available on the internet URL: <https://www.youtube.com/watch?v=FOTYtjQAL4s> | |
| | 104 | Suniela Beach Portable Shade Cabanas, [site visited October 21, 2021], Available on the internet URL: <https://suniela.com> | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

**DESIGN** view

Design number:
200511300

Exported:
**03/11/2022**

1/6



# Solar tent

| | |
|---|---|
| Locarno classification | 03.03;21.04;25.03 |
| Domestic classification | 03-03;21-04;25-03 |
| Design number | 200511300 |
| Application number | 200511300 |
| Registration office code | AU |
| Application language code | en |
| Application date | 31/03/2005 |
| Registration date | 01/09/2005 |
| Publication date | |
| Design description | Newness and distinctiveness is claimed in the features of shape and/or configuration of a solar tent as illustrated in the accompanying representations. |
| Expiry date | |
| Effective date | |
| Design current status code | Design lapsed |
| Design current status date | 23/04/2015 |
| Comment | |

Australia Last office data update 03/11/2022

**DESIGN**view

Design number:
200511300

Exported:
**03/11/2022**

2/6

## Owner

Applicant Identifier

Applicant name                    Christophe Gyr

Applicant legal entity

Applicant nationality code

Applicant Identifier

Applicant name                    Roland Fischer

Applicant legal entity

Applicant nationality code

## Representative

Representative identifier

Representative's name             Spruson & Ferguson

Applicant legal entity

Representative nationality code

Address                           -

City                              -

Postcode                          -

Country code                      -

## Correspondence address

No entry for the design no

## Exhibition Priority

No entry for the design no

## Priority

No entry for the design no

## Publication

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 54 of 551

**DESIGN**view

Design number:
200511300

Exported:
**03/11/2022**

3/6

No entry for the design no

# DESIGNER

Designer identifier

Designer Address

Christophe Gyr

Designer identifier

Designer Address

Roland Fischer

## Renewals

No entry for the design no

## Recordals

No entry for the design no

## Representation (views of design)



Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 55 of 551

**DESIGN**view

Design number:
200511300

Exported:
**03/11/2022**

4/6







Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 56 of 551

Australia Last office data update 03/11/2022

DESIGNview

Design number:
200811300

Exported:
**03/11/2022**

5/6





Australia Last office data update 03/11/2022

DESIGNview

Design number:
20081300

Exported:
**03/11/2022**

6/6



Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 58 of 551

**DESIGN** view

Design number:
302019005581

Exported:
**03/11/2022**

1/3



FIG. 1.1

| | |
|---|---|
| Locarno classification | 21.04 |
| Domestic classification | |
| Design number | 302019005581 |
| Application number | 302019005581 |
| Registration office code | BR |
| Application language code | pt |
| Application date | 13/11/2019 |
| Registration date | 10/12/2019 |
| Publication date | |
| Design description | |
| Expiry date | 13/11/2029 |
| Effective date | |
| Design current status code | Registered and fully published |
| Design current status date | 10/12/2019 |
| Comment | |

Brazil Last office data update 03/11/2022



# Owner

| | |
|---|---|
| Applicant Identifier | |
| Applicant name | VINICIUS ROLIM TAMASSIA |
| Applicant legal entity | |
| Applicant nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | BR |

# Representative

| | |
|---|---|
| Representative identifier | |
| Representative's name | Interação Marcas e Patentes Ltda |
| Applicant legal entity | |
| Representative nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | BR |

# Correspondence address

No entry for the design no

# Exhibition Priority

No entry for the design no

# Priority

No entry for the design no

# Publication

| Publication identifier | Publication section | Date | Page |
|---|---|---|---|
| 2553 | Concessão do Registro | 10/12/2019 | |
| 2551 | Notificação de Depósito | 26/11/2019 | |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 60 of 551

Brazil Last office data update 03/11/2022

**DESIGN**view

Design number:

30201600551

Exported:
**03/11/2022**

3/3

## DESIGNER

Designer identifier

Designer Address                    VINICIUS ROLIM TAMASSIA

## Renewals

No entry for the design no

## Recordals

No entry for the design no

## Representation (views of design)



**FIG. 1.1**

Brazil Last office data update 03/11/2022

DESIGNview

Design number:

130505/1

Exported:
**03/11/2022**

1/4



# Sonnenzelt

| | |
|---|---|
| Locarno classification | 21.04 |
| Domestic classification | |
| Design number | 130505/1 |
| Application number | 2004-00119/1 |
| Registration office code | CH |
| Application language code | de |
| Application date | 10/02/2004 |
| Registration date | 22/04/2004 |
| Publication date | 14/05/2004 |
| Design description | |
| Expiry date | 10/02/2024 |
| Effective date | 10/02/2004 |
| Design current status code | Design lapsed |
| Design current status date | |
| Comment | |

DESIGNview

Design number:
130505/1

Exported:
**03/11/2022**

2/4

# Owner

| | |
|---|---|
| Applicant Identifier | CH700000000130505-0001-1 |
| Applicant name | Fischer Roland |
| Applicant legal entity | |
| Applicant nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | CH |


| | |
|---|---|
| Applicant Identifier | CH700000000130505-0001-2 |
| Applicant name | Gyr Christophe |
| Applicant legal entity | |
| Applicant nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | CH |

# Representative

| | |
|---|---|
| Representative identifier | CH700000000130505-0001-1 |
| Representative's name | Dr. A. Rosenkranz |
| Applicant legal entity | |
| Representative nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | CH |

# Correspondence address

No entry for the design no

Switzerland Last office data update 03/11/2022

# Exhibition Priority

No entry for the design no

# Priority

No entry for the design no

# Publication

No entry for the design no

# DESIGNER

No entry for the design no

# Renewals

## Record identifier  -

### General Information

| | |
|---|---|
| Kind of record | Renewal |
| Record reference | |
| Publication date | |
| registration status | |
| Registration Status Date | |

# Recordals

## Record identifier  :

| | |
|---|---|
| Kind of record | Deletion due to non-renewal |
| Record identifier | |
| Record reference | |
| Publication date | |
| registration status | |
| Registration Status Date | |

## Record identifier  :

Switzerland Last office data update 03/11/2022

DESIGNview

Design number:
130505/1

Exported:
**03/11/2022**

4/4

| | |
|---|---|
| Kind of record | Registration |
| Record identifier | |
| Record reference | |
| Publication date | |
| registration status | |
| Registration Status Date | |

# Representation (views of design)





Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 65 of 551

**DESIGN**view

Design number:
132260/1

Exported:
**03/11/2022**

1/5



| | |
|---|---|
| Locarno classification | 21.04 |
| Domestic classification | |
| Design number | 132260/1 |
| Application number | 2005-00840/1 |
| Registration office code | CH |
| Application language code | de |
| Application date | 26/09/2005 |
| Registration date | 25/11/2005 |
| Publication date | 15/12/2005 |
| Design description | |
| Expiry date | 26/09/2020 |
| Effective date | 26/09/2005 |
| Design current status code | Design lapsed |
| Design current status date | |
| Comment | |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 66 of 551

Switzerland Last office data update 03/11/2022

DESIGNview

Design number:
132260/1

Exported:
**03/11/2022**

2/5

# Owner

| | |
|---|---|
| Applicant Identifier | CH700000000132260-0001-1 |
| Applicant name | Fischer Roland |
| Applicant legal entity | |
| Applicant nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | CH |

| | |
|---|---|
| Applicant Identifier | CH700000000132260-0001-2 |
| Applicant name | Gyr Christophe |
| Applicant legal entity | |
| Applicant nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | CH |

# Representative

| | |
|---|---|
| Representative identifier | CH700000000132260-0001-1 |
| Representative's name | Dr. A. Rosenkranz |
| Applicant legal entity | |
| Representative nationality code | |
| Address | - |
| City | - |
| Postcode | - |
| Country code | CH |

# Correspondence address

No entry for the design no

Switzerland Last office data update 03/11/2022


# Exhibition Priority

No entry for the design no

# Priority

No entry for the design no

# Publication

No entry for the design no

# DESIGNER

No entry for the design no

# Renewals
## Record identifier  -
### General Information
| | |
|---|---|
| Kind of record | Renewal |
| Record reference | |
| Publication date | |
| registration status | |
| Registration Status Date | |

# Recordals
## Record identifier  :
| | |
|---|---|
| Kind of record | Deletion due to non-renewal |
| Record identifier | |
| Record reference | |
| Publication date | |
| registration status | |
| Registration Status Date | |

## Record identifier  :

Switzerland Last office data update 03/11/2022

**DESIGN**view

Design number:

132280/1

Exported:
**03/11/2022**

4/5

| | |
|---|---|
| Kind of record | Registration |
| Record identifier | |
| Record reference | |
| Publication date | |
| registration status | |
| Registration Status Date | |

# Representation (views of design)





Switzerland Last office data update 03/11/2022

**DESIGN**view

Design number:

132260/1

Exported:

**03/11/2022**

5/5





Switzerland Last office data update 03/11/2022

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
3 February 2011 (03.02.2011)

PCT



(10) International Publication Number
**WO 2011/012969 A2**

(51) **International Patent Classification:**
*E04H 15/00* (2006.01)

(21) **International Application Number:**
PCT/IB2010/001824

(22) **International Filing Date:**
26 July 2010 (26.07.2010)

(25) **Filing Language:** Italian

(26) **Publication Language:** English

(30) **Priority Data:**
TA2009A000003    27 July 2009 (27.07.2009)    IT

(72) **Inventor; and**
(71) **Applicant** : **DE PASQUALE, Giancarlo** [IT/IT]; Via Bobe, 12, I-74122 San Vito Frazione di Taranto (IT).

(74) **Agents**: **JORIO, Paolo** et al.; c/o Studio Torta S.r.l., Via Viotti, 9, I-10121 Torino (IT).

(81) **Designated States** *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IS, JP, KE, KG, KM, KN, KP, KR, KZ, LA, LC, LK, LR, LS, LT, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PE, PG, PH, PL, PT, RO, RS, RU, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) **Designated States** *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, SD, SL, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Published:**

— *without international search report and to be republished upon receipt of that report (Rule 48.2(g))*

(54) Title: A SHADE STRUCTURE FOR BEACH, GARDEN AND OPEN-SPACE USE IN GENERAL



Fig. 1

(57) **Abstract**: A shade structure for beach, garden and open- space use in general, and particularly suitable for individual use in a reclining position. The present invention serves as a "sunshade", a category of articles substantially marketed in the form of umbrellas. Known articles of this sort have a wood or metal structure and a fabric canopy, and are both bulky and awkward to handle. The present invention differs substantially from the former in terms of both structure and strictly individual use. As shown in Figure 1 of the drawings, the invention is characterized by a low-mounted, arc-shaped canopy for use in a reclining position, and can be set up quickly and easily. When dismantled, the component parts of the structure are compact enough to fit into a bag.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 71 of 551

A SHADE STRUCTURE FOR BEACH, GARDEN AND OPEN-SPACE USE IN GENERAL

BACKGROUND ART

As is known, articles, which are technically "sunshades", are marketed for providing shade from the sun in open spaces, such as beaches, gardens, terraces, etc., and normally comprise small or large umbrellas with a more or less circular canopy.

Known articles of this sort comprise a wood or metal structure and a fabric canopy, and are invariably bulky and awkward to handle, i.e. to carry from one place to another, for beach use, for example.

For use in open residential spaces, ballast is also required to stabilize the supporting pole.

When used on beaches, more often with the user in a reclining than a sitting position, and so requiring a larger shade area, the high-fitted canopy and movement of the sun produce a rapid change in shade, thus continually exposing parts of the user's body to the sun.

Though a sunshade for leisure use, in the same way as conventional umbrellas, the present invention differs substantially in terms of both structure and strictly individual use.

DISCLOSURE OF INVENTION

It is an object of the present invention to provide a shade structure, particularly for beach, garden and

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 72 of 551

open-space use in general, which is lightweight, can be assembled quickly, and is easy to handle and carry.

The structure according to the invention is designed so it can be set up quickly and easily, and, when dismantled, is compact enough to fit into a bag.

The shade structure according to the invention is highly reliable and safe, and is easy to produce using readily available parts and materials.

As such, the present invention is also competitive economically.

The above and other aims explained below are achieved by a shade structure, for beach, garden, and open-space use in general, in accordance with the present invention, and which comprises a canopy supported by a lightweight structure.

The canopy or sunshade may substantially comprise a rectangular cane mat, which is characteristically rigid lengthwise of, and fully flexible crosswise to the interlaced canes, so it can be rolled up tightly. Alternatively, the canopy may comprise a mat of synthetic strips or any fabric that can be stiffened perpendicular to the supporting structure.

Such stiffening is necessary to achieve lateral stability of the structure as a whole.

The canopy, hereinafter referred to simply as a "mat", is provided, along the two longitudinal edges of one of its two faces, with two tubular pockets, in which to insert the supporting structure, and which comprise

strips of fabric or similar synthetic material, stitched to the mat.

The supporting structure comprises two thin flexible rods, in turn comprising a number of thin hollow tubes made of fibreglass or other flexible material, connected end to end by short connecting sleeves, and strung on a thin elastic cord.

The elastic cord serves to hold the tubes of each rod together, for faster, easier assembly and disassembly.

Each rod, which is preferably longer than the mat, may comprise a varying number of individual tubes, depending on the size required.

The first and last tube of each rod are fitted on their free ends with preferably metal tips, similar to the connecting sleeves.

Once inserted inside the tubular pockets on the mat, the two rods are connected at both ends by two rigid tubes - hereinafter referred to as "end tubes" - made of fibreglass, aluminium or other lightweight material.

The end tubes are bent 90° at both ends, i.e. are fitted with curved fittings into which the tips of the two rods are inserted.

To set up the structure according to the present invention, the two end tubes are brought closer together by means of two thin tensioning straps, shorter than the rods, so that the rods flex to form the structure into

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 74 of 551

an arc shape.

For easy connection, the two end tubes are fitted with click-on fasteners that attach to similar fasteners on the ends of the tensioning straps.

The radius of the arc can be adjusted by adjusting the length of the tensioning straps by means of an adjusting device, to achieve a higher, shorter or lower, longer structure.

When assembled, as described above, and placed on the ground, the structure according to the invention provides shade from the sun by means of the mat, and allows the user to lie underneath.

Because the mat is closer to the ground than ordinary marketed canopies, the shade travels less in relation to the movement of the sun, and so lasts longer.

If a mat much shorter than the supporting rods is preferred to improve ventilation, the structure according to the invention, when assembled, allows the mat to slide along the supporting rods to adjust the shade area.

For beach or garden use, the structure according to the invention can be secured quickly to the ground using (preferably four) plastic stakes with grooves on the top end, which click onto the end tubes. This is advisable in windy conditions, in which case, the tensioning straps may be removed.

Being made of flat strips of nylon laid on the

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 75 of 551

ground, the tensioning straps, even if not removed, in no way affect performance of the structure according to the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

A preferred, non-limiting embodiment of the invention will now be described by way of example with reference to the accompanying drawings, in which :

Figure 1 shows a view in perspective of the shade structure as a whole;

Figure 2 shows a spread-out view in perspective of the underside of the canopy, i.e. mat, complete with the two tubular supporting rod pockets;

Figure 3 shows the component parts of one of the two supporting rods prior to assembly;

Figure 4 shows how the supporting rod is assembled;

Figure 5 shows an assembled supporting rod;

Figure 6 shows a spread-out view in perspective of the mat, with the two supporting rods inserted inside the tubular pockets;

Figure 7 shows a view in perspective of one of the two end tubes, for connecting the two supporting rods, fitted with two short nylon straps with click-on end fasteners;

Figure 8 shows a detail in perspective of the tip of one of the two supporting rods connected to a curved fitting on an end tube;

Figures 9 and 10 show one of the two nylon tensioning straps rolled up and unrolled respectively,

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 76 of 551

and fitted with click-on fasteners at the ends, and an intermediate length-adjusting device;

Figure 11 shows a detail of the tensioning strap fastened to the nylon strap on the end tube;

Figures 12 and 13 show views in perspective of the invention assembled, and how the mat slides along the supporting rods; Figure 12 shows the mat positioned centrally, and Figure 13 the mat positioned at one end;

Figure 14 shows one of the stakes designed to fit to the end tubes to secure the structure to the ground in strong wind conditions;

Figure 15 shows a detail of one of the stakes attached to the end tube;

Figure 16 shows the structure as a whole, fitted with the stakes.

BEST MODE FOR CARRYING OUT THE INVENTION

Number 1 in the accompanying drawings indicates as a whole a shade structure for beach, garden and open-space use in general, and which comprises a canopy 2, hereinafter referred to as a mat, with parallel tubular pockets 3 along the edges 4 of the mat.

Mat 2 is characterized by being fairly rigid crosswise, i.e. perpendicular to the tubular pockets, and fully flexible lengthwise, so as to adapt to the arc shape of the assembled structure and roll up when not in use. In other words, mat 2 has different degrees of rigidity in two perpendicular directions, and the greater rigidity perpendicular to the tubular pockets

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 77 of 551

braces the flexible rods 5 to prevent collapse of the rods and ensure stability of the shade structure even in the event of transverse stress.

Flexible rods 5 are formed by connecting individual tubes 6 end to end by means of short sleeves 7. The individual tubes of each rod are strung on an elastic cord 8.

The ends of the rods are fitted with tips 9, which fit inside cylindrical seats 10 of end tubes 11 fitted with curved fittings 12.

Each end tube has two appendixes 13 defined by short nylon straps, each with a click-on fastener 14.

The structure tensioning straps 15 are fitted on the ends with click-on fasteners 14 for connection to similar fasteners on the end tubes.

To adjust the arc of the structure, the tensioning straps are fitted with length adjusters 16.

The non-limiting embodiment shown of the shade structure for beach, garden and open-space use in general according to the invention is assembled as follows :

mat 2 is first laid out with its underside face, fitted with tubular pockets 3, facing upwards;

rods 5 are inserted inside pockets 3, aligning and connecting tubes 6 as the rods are inserted;

when the rods come out at the other end, tips 9 are inserted inside cylindrical seats 10 on end tubes 11;

tensioning straps 15 are then connected by click-on

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 78 of 551

fasteners 14 to appendixes 13 of a first of the two end tubes;

holding down the second end tube, the tensioning straps are pulled to arc the structure, and therefore the mat;

the free ends of the tensioning straps are fastened to the second end tube;

and the lightweight structure so assembled is turned over and ready for use.

Particularly in windy conditions, the structure can be secured to the ground using stakes 17 with grooves 18 which click onto the end tubes.

The structure is dismantled even more easily.

Once dismantled, the component parts of the structure can be rolled up inside the mat and bagged.

The aims of the present invention are thus clearly achieved.

Changes may obviously be made to the structure as described herein without, however, departing from the scope of the invention.

Moreover, all the component parts may be replaced with technical equivalents.

In other words, any changes may be made in terms of materials, size, and shape, providing they are compatible with the specific use proposed.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 79 of 551

CLAIMS

1) A shade structure (1) for beach, garden and open-space use in general, comprising a supporting structure (5, 11, 15) with two rods (5) flexible into an arc shape; and a canopy (2) fitted to the two rods (5); the canopy (2) having two different degrees of rigidity in two perpendicular directions; the greater rigidity being crosswise to the rods (5) to brace the rods (5) when arced; and the lesser rigidity being tangent to each point along the arc shape of the rods (5).

2) A shade structure as claimed in the foregoing Claims, characterized in that the canopy (2) comprises, along the edges of its two long sides, two tubular pockets (3) into which the rods (5) are inserted.

3) A shade structure as claimed in one or more of the foregoing Claims, characterized in that the rods (5) comprise a number of connectable members (6).

4) A shade structure as claimed in one or more of the foregoing Claims, characterized in that the supporting structure comprises two end tubes (11); and respective fittings (12) for connecting the ends of the rods (5) rigidly to the ends of the end tubes (11).

5) A shade structure as claimed in one or more of the foregoing Claims, characterized by comprising at least one strap (15) shorter than and connectable to the rods (5) to form the rods into the arc shape.

6) A shade structure as claimed in Claims 4 and 5,

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 80 of 551

wherein the strap (15) is connected between the two end tubes (11).

7) A shade structure as claimed in Claims 5 and 6, characterized in that the length of the strap (15) is adjustable to adjust the radius of the arc shape.

8) A shade structure as claimed in one or more of the foregoing Claims, characterized in that the canopy (2) is slidable along the rods (5) to adjust the position of the shade area.

9) A shade structure as claimed in one or more of the foregoing Claims, when dependent on Claim 4, characterized by comprising a number of stakes (17) connectable to the end tubes (11) to secure the supporting structure (5, 11, 15) to the ground.



Fig. 1

Fig. 2

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 82 of 551



Fig. 3

Fig. 4

Fig. 5

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 83 of 551



Fig. 6

Fig. 7

Fig. 8

Fig. 9

Fig. 10

Fig. 11

Case 5:24-cv-00588-FL      Document 28-11      Filed 03/23/26      Page 84 of 551



Fig. 12



Fig. 13

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 85 of 551



Fig. 14

Fig. 15



Fig. 16

Case 5:24-cv-00588-FL　　　Document 28-11　　　Filed 03/23/26　　　Page 86 of 551

 Espacenet

# Bibliographic data: WO2022174316 (A1) — 2022-08-25

STRUCTURE FOR SUN PROTECTION

| | |
|---|---|
| **Inventor(s):** | RIBEIRO LUCCHESE GUALDI DAIANE [BR] ± (RIBEIRO LUCCHESE GUALDI, Daiane) |
| **Applicant(s):** | RIBEIRO LUCCHESE GUALDI DAIANE [BR] ± (RIBEIRO LUCCHESE GUALDI, Daiane) |
| **Classification:** | - international: *E04H15/00; E04H15/32; E04H15/34; E04H15/36; E04H15/40*<br>- cooperative: E04H15/00 (EP); E04H15/32 (EP); E04H15/34 (EP); E04H15/36 (EP); E04H15/40 (EP) |
| **Application number:** | WO2022BR50045 20220210     Global Dossier |
| **Priority number(s):** | BR20211003186 20210219 |
| **Also published as:** | BR102021003186 (A2) |

Abstract of WO2022174316 (A1)

The invention relates to a collapsible portable structure suitable for sun protection, including a pole (20) moulded in a curved shape or able to adopt a curved shape by means of bending, which is fastened to a flexible cover (10), providing a simple, light structure that is quick to assemble, with a minimum of structural elements, forming a structure made up of a single arch assembled positioned facing into the wind, so that the rest of the flexible cover stays loose, floating on the wind, providing a large area of shade.



# Patent Translate
Powered by EPO and Google

## Notice

This translation is machine-generated. It cannot be guaranteed that it is intelligible, accurate, complete, reliable or fit for specific purposes. Critical decisions, such as commercially relevant or financial decisions, should not be based on machine-translation output.

## DESCRIPTION WO2022174316A1

[0001]

STRUCTURE FOR SUN PROTECTION FIELD OF THE INVENTION

[0002]

[01] The present invention patent describes a collapsible portable structure suitable for solar protection, which includes a molded rod in a curved shape or that can assume a curved shape through flexion that is fixed to a flexible cover, providing a simplified structure, of quick assembly and light, with a minimum of constructive elements, forming a structure formed by only one mounted arch positioned in the direction of the wind, in order to keep the rest of the flexible cover loose, floating under the action of the wind, providing a large area of shade and /or event protection.

[0003]

BACKGROUND OF THE INVENTION

[0004]

[02]

The interaction between the skin and sunlight is inevitable.

The potential for harm depends on the type and duration of exposure.

Sunlight has profound effects on the skin and is associated with a variety of diseases.

[0005]

[03]

Brazil is a country located in a region that receives high intensity of solar radiation. The extensive coastal area is conducive to leisure and sports activities in open spaces, subjecting individuals to cumulative exposure throughout their lives.

[0006]

[04]

The Brazilian Consensus on Photoprotection, prepared by the Brazilian Society of Dermatology, describes the basic recommendations, which are equivalent to those internationally accepted: restricted exposure to the sun, use of clothing and

accessories (gloves, cap, hat, umbrella, glasses) and topical photoprotection through of sunscreen [SCHALKA, Sérgio, et al. Brazilian Consensus on Photoprotection. 2013. Available at: https://issuu.com/sbd.br/docs/consensob.fotoprote _ oleigoweb?e=0/6449812. Accessed February 04, 2021.].

[0007]

[05]

On the beaches, the use of umbrellas, tents and gazebos is essential to ensure protection from solar radiation. These collapsible structures, usually covered with UVA and/or UVB protection, are easily assembled and carried by the user, however moderate or strong winds usually impact these structures, damaging the frame or detaching the structure from the ground, which is obviously a concern in terms of concerns the safety of users in the surroundings.

[0008]

[06] Document AR056925 describes a tent provided with two arches arranged parallel and where the opposite side faces of a flexible cover are fixed, with rods that project from the arches to be attached to a chair, favoring the stabilization of the tent.

[0009]

[07] Document FR2614351 describes a tent consisting of a waterproof cover with three interconnecting rings, the whole set being articulated by a sliding internal fastening system.

[0010]

[08] Document GB2530291 describes a tent comprising a groundsheet, a cover extending over the groundsheet and attached to the groundsheet at its edges to form an at least partially enclosed internal space between the groundsheet and the canopy; at least a pair of pocket elements located on the ground sheet, where each pocket element receives one end of a pole to configure the tent's support structure.

[0011]

[09]

Document MU8802870 describes a collapsible beach tent made up of cylindrical rods, tensioning cables of

steel, a flexible cover and stakes to fix the tent to the ground, and the frame is formed by the union of several rods through joints to form long rods and the cover has three sheaths, one on each side and a central one where they will be inserted tensioners for structuring the tent.

[0012]

[010] Document US2003066550 describes an arched-shaped portable foldable shelter with an open face.

[0013]

[011]

Document US10066417 describes a collapsible canopy and method of erecting a collapsible canopy composed of ground anchors, flexible members and a canopy cover.

The collapsible canopy consists of four ground anchors, flexible members and a canopy cover.

[0014]

[012]

Document MX2013001004 describes a shadow generating device intended to provide solar protection, said device using the kinetic energy of the wind in order to be sustained in the air and project a shadow.

The device is formed by a panel or group of panels and one or more beams, which together define a bow edge, a stern edge and sides.

The device is composed of tabs that provide stability and serve to anchor them to the ground. The device works as follows: the panel or panels together with the wings and beams surround a moving air mass; the aerodynamic forces generated are strong enough to support the device in the air; the device is kept anchored to the ground by some means; with the device anchored to the ground, it can be held at a predetermined height and cast a shadow on a surface below.

[0015]

[013]

Document US2017362849 describes a tent that includes a flexible cover and a pole that attaches to a surface, said mast positioned substantially equally distant from opposite edges of the roof, having attached tethers extending from the roof. The canopy is positioned above the surface to use the natural force of the wind to inflate the panel and keep it aloft to provide shade for the user.

[0016]

[014] Despite the state of the art describing various configurations of temporary portable structures with the purpose of providing a shelter to prevent or reduce solar radiation on a user, a major difficulty concerns the area of shade generated and the maintenance of the structure under the action moderate to strong winds, mainly in oceanic regions.

[0017]

[015]

In the case of parasols, they are structures that are easy to transport and assemble.

However, they generate a small area of shade and their structure cannot withstand moderate to strong winds, causing them to detach from the ground, with the risk of hitting a user.

[0018]

[016] More robust structures, such as tents or gazebos, are more difficult to be loaded and assembled and, in order to remain intact under the action of the wind, they need additional means to retain the structure in the ground and avoid disarming, such as tension cables or stakes. , where the tensile load is imposed on the roofing structure by means of stretchers attached to the support surface through eyelets, for example, making assembly difficult and increasing the number of constructive elements to be loaded.

[0019]

[017]

However, the wind loads that act on these flexible structures can be used to structure and shape the tent, taking advantage of the low-impact wind flow present at the edge of the beach, in order to provide simplified structures with a minimum of construction elements. .

[018] In this way, the object of the present invention is a structure for sun protection with a curved shape, which includes a rod molded in a curved shape or that can assume a curved shape through flexion that is fixed to a flexible cover, providing a simplified structure, quick to assemble and light, with a minimum of constructive elements, forming a structure formed by only one mounted arch positioned in the direction of the wind and with ends buried in the ground, keeping the flexible cover attached to the rod in its front portion and the rest of the cover flexible loose, floating under the action of the wind, providing a large area of shade. SUMMARY

[0020]

[019] A feature of the invention is a structure for solar protection that is portable, light and easy to assemble.

[0021]

[020] A feature of the invention is a structure for sun protection whose generated shade is equivalent to the shade of a gazebo, with half the weight of an umbrella, when dismantled for transport.

[0022]

[021] A feature of the invention is a structure for solar protection that forms an arch-shaped structure, whose front face is mounted facing the wind, providing cross ventilation, not stopping the wind, which prevents the disassembly or detachment of the structure.

[0023]

[022] A feature of the invention is a solar protection structure that allows the comfortable accommodation of 4 to 5 people standing, positioned only in the front opening of the structure, providing a large area of shade.

[0024]

[023]

A feature of the invention is a solar protection structure suitable for installation at events, forming an arch that can reach a height of between 4 to 5 meters and a wide coverage.

variable.

[0025]

BRIEF DESCRIPTION OF THE FIGURES

[0026]

[024] Figure 1A shows the perspective view showing the mounted sun protection structure and figure 1B shows the mounted sun protection structure with a tensioning cable tensioning the front opening of the structure.

[0027]

[025] Figure 2A shows a representation of the rod being fitted into the cover sheath, Figure 2B shows the rod coupled to the cover sheath, Figure 2C shows the rod positioned on the cover in a suitable position to be installed on the support surface.

[0028]

[026] Figure 3 shows the alternative way of holding the rod in the cover.

[0029]

[027] Figure 4A shows the front view of the solar protection structure and Figure 4B shows the side view, showing the wind flow.

[0030]

DETAILED DESCRIPTION OF THE INVENTION

[0031]

[028] The structure for sun protection, object of the present invention patent, comprises a covering of flexible material of preferably rectangular shape (10) that presents the entirety of a first longitudinal side (11) provided with a gripping means (111),

such as a sheath or interspersed strips, where a rod with a curved profile (20) is inserted, whose ends (21) are kept free for attachment to the support surface.

[0032]

[029]

With this configuration, the curved profile rod (20) shapes the front opening (101) of the structure for solar protection, with the transverse sides (12) of the cover (10) aligned with the ends (21) of the curved profile rod ( 20) close to the surface of

support and the side (13) of the cover (10), opposite the longitudinal side (11) where the curved profile (20) is associated, being kept free to float with the wind flow that enters through the front opening (101) and leaves through the rear opening (102) through cross ventilation.

[0033]

[030] The flexible cover (10) comprises any film that presents wind resistance and prevents or reduces solar radiation on a user.

[0034]

[031] The curved profile rod (20) comprises a single structure molded into a curved shape or which can assume a curved shape through bending.

[0035]

[032] The curved profile rod (20) can be segmented, so that said segments are joined together by known connection means, such as interference fit, threading, locking, among others, allowing the association of the segments.

[0036]

[033] On the edge of the first longitudinal side (11) is fixed the end of a tensioned rod (30) whose opposite end is anchored on the support surface, said tensioned rod (30) which provides a counterweight against the wind, as shown in figure 1 B.

[0037]

[034]

For the assembly of the solar protection structure, the rod (20) is inserted into the sheath (111) arranged on one of the longitudinal sides (11) of the cover (10), and then the ends (21) of said rod (20) are fixed to the support surface preferably by driving into the ground, forming the front opening (101) structure for solar protection whose height can be adjusted if the rod (20) allows adjustment of the bending curvature.

On the edge of the longitudinal side (11) that forms the front opening, a tensioned rod is fixed

(30) whose opposite end is anchored to the supporting surface.

For the integrity of the structure, the front opening (101) must be positioned aligned with the wind flow, allowing cross ventilation, so that the rear side (13) of the cover (10) opposite the fixed side (11) is maintained floating by the action of the wind, providing the rear opening (102), with the cover (10) generating a shadow area.



# Patent Translate
Powered by EPO and Google

## Notice

This translation is machine-generated. It cannot be guaranteed that it is intelligible, accurate, complete, reliable or fit for specific purposes. Critical decisions, such as commercially relevant or financial decisions, should not be based on machine-translation output.

## CLAIMS WO2022174316A1

1.

CLAIMS:

1.

STRUCTURE FOR SUN PROTECTION characterized in that it comprises a cover made of flexible material (10) that has the entirety of a first longitudinal side (11) provided with a gripping means (111) where a rod (20) is inserted, whose ends (21) are fixed to the support surface, forming the front opening (101) of the structure, keeping the transverse sides (12) of the cover (10) aligned with the ends (21) of the rod (20) fixed to the support surface and the side ( 13) of the cover (10) opposite the longitudinal side (11), which configures the rear opening (102) of the structure kept free to float with the wind flow that enters through the front opening (101).

2.

STRUCTURE FOR SUN PROTECTION, according to claim 1, characterized in that the gripping means (11) comprises a sheath or interspersed strips.

3.

STRUCTURE FOR SUN PROTECTION, according to claim 1, characterized in that the flexible cover (10) comprises any film that presents wind resistance and prevents or reduces solar radiation.

4.

STRUCTURE FOR SUN PROTECTION, according to claim 1, characterized in that the curved profile rod (20) comprises a single structure molded in a curved shape or that can assume a curved shape through bending.

5.

STRUCTURE FOR SUN PROTECTION, according to claim 1, characterized in that the curved profile rod (20) is segmented, said segments being joined together by means of known connection.

6.

STRUCTURE FOR SUN PROTECTION, according to claim 1, characterized by the fact that it has a tensioned rod (30) fixed on the longitudinal side (11) and on the support surface.

**(12) PEDIDO INTERNACIONAL PUBLICADO SOB O TRATADO DE COOPERAÇÃO EM MATÉRIA DE PATENTES (PCT)**

**(19) Organização Mundial da Propriedade Intelectual**
Secretaria Internacional

**(43) Data de Publicação Internacional**
25 de Agosto de 2022 (25.08.2022)

 WIPO | PCT

**(10) Número de Publicação Internacional**
**WO 2022/174316 A1**



**(51) Classificação Internacional de Patentes:**
*E04H 15/00* (2006.01)  *E04H 15/36* (2006.01)
*E04H 15/32* (2006.01)  *E04H 15/40* (2006.01)
*E04H 15/34* (2006.01)

**(21) Número do Pedido Internacional:**
PCT/BR2022/050045

**(22) Data do Depósito Internacional:**
10 de Fevereiro de 2022 (10.02.2022)

**(25) Língua de Depósito Internacional:** Português

**(26) Língua de Publicação:** Português

**(30) Dados Relativos à Prioridade:**
102021003186-7
19 de Fevereiro de 2021 (19.02.2021)  BR

**(72) Inventor; e**
**(71) Requerente: RIBEIRO LUCCHESE GUALDI, Daiane**
[BR/BR]; Est. João de Oliveira Remião, 3025, Agronomia / Lomba do Pinheiro, CEP 91550-000 Porto Alegre - RS (BR).

**(74) Mandatário: CÉSAR KLEIN, Júlio**; Rua Tupi, 73, Bairro Rio Branco, CEP 93336-010 Novo Hamburgo - RS (BR).

**(81) Estados Designados** *(sem indicação contrária, para todos os tipos de proteção nacional existentes)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, IT, JM, JO, JP, KE, KG, KH, KN, KP, KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, WS, ZA, ZM, ZW.

**(84) Estados Designados** *(sem indicação contrária, para todos os tipos de proteção regional existentes)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasiático (AM, AZ, BY, KG, KZ, RU, TJ, TM), Europeu (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

**Publicado:**
— *com relatório de pesquisa internacional (Art. 21(3))*
— *com reivindicações modificadas e declaração (Art. 19(1))*
— *em preto e branco; o pedido internacional tal como depositado contém cores ou níveis de cinza e pode ser baixado do PATENTSCOPE*

**(54) Title:** STRUCTURE FOR SUN PROTECTION

**(54) Título:** ESTRUTURA PARA PROTEÇÃO SOLAR

**(57) Abstract:** The invention relates to a collapsible portable structure suitable for sun protection, including a pole (20) moulded in a curved shape or able to adopt a curved shape by means of bending, which is fastened to a flexible cover (10), providing a simple, light structure that is quick to assemble, with a minimum of structural elements, forming a structure made up of a single arch assembled positioned facing into the wind, so that the rest of the flexible cover stays loose, floating on the wind, providing a large area of shade.

**(57) Resumo:** É descrita uma estrutura portátil desmontável adequada para proteção solar, que inclui uma haste (20) moldada em formato curvo ou que pode assumir o formato curvo por meio de flexão que é fixada a uma cobertura flexível (10), provendo uma estrutura simplificada, de rápida montagem e leve, com o mínimo de elementos construtivos, conformando uma estrutura formada por apenas um arco montado posicionado na direção do vento, de forma a manter o restante da cobertura flexível solta, flutuando sob a ação do vento, provendo uma grande área de sombra.

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 94 of 551

## ESTRUTURA PARA PROTEÇÃO SOLAR

CAMPO DA INVENÇÃO

[01]  A presente patente de invenção descreve uma estrutura portátil desmontável adequada para proteção solar, que inclui uma haste moldada em formato curvo ou que pode assumir o formato curvo por meio de flexão que é fixada a uma cobertura flexível, provendo uma estrutura simplificada, de rápida montagem e leve, com o mínimo de elementos construtivos, conformando uma estrutura formada por apenas um arco montado posicionado na direção do vento, de forma a manter o restante da cobertura flexível solta, flutuando sob a ação do vento, provendo uma grande área de sombra e/ou de proteção em eventos.

ANTECEDENTES DA INVENÇÃO

[02]  A interação entre a pele e a luz solar é inevitável. O potencial de dano depende do tipo e da duração da exposição. A luz solar tem efeitos profundos sobre a pele, e está associada a uma variedade de doenças.

[03]  O Brasil é um país que está localizado em uma região que recebe grande intensidade de radiação solar. A extensa área litorânea é propícia para atividades de lazer e esportivas em espaços abertos, sujeitando os indivíduos à exposição cumulativa ao longo de suas vidas.

[04] O Consenso Brasileiro de Fotoproteção, elaborado pela Sociedade Brasileira de Dermatologia, descreve as recomendações básicas, que equivalem às internacionalmente aceitas: exposição restrita ao sol, uso de vestimentas e acessórios (luva, boné, chapéu, guarda sol, óculos) e fotoproteção tópica através de protetor solar [SCHALKA, Sérgio, et al. Consenso Brasileiro de Fotoproteção. 2013.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 95 of 551

Disponível em: https://issuu.com/sbd.br/docs/consensob.fotoprote____oleigoweb? e=0/6449812. Acessado em 04 de fevereiro de 2021.].

[05] Nas praias, o uso de guarda-sol, tendas e gazebos é fundamental para garantir a proteção à radiação solar. Estas estruturas desmontáveis, geralmente com cobertura com proteção UVA e/ou UVB, são facilmente montadas e portadas pelo usuário, porém ventos moderados ou fortes geralmente impactam nestas estruturas, danificando a armação ou desprendendo a estrutura do solo, o que obviamente é preocupante no que diz respeito à segurança dos usuários no entorno.

[06] O documento AR056925 descreve uma tenda provida de dois arcos dispostos paralelos e onde são fixadas as faces laterais opostas de uma cobertura flexível, apresentando tirantes que se projetam a partir dos arcos para ser acoplada a uma cadeira, favorecendo a estabilização da tenda.

[07] O documento FR2614351 descreve uma tenda constituída por uma cobertura impermeável com três aros de interligação, sendo todo o conjunto articulado por um sistema de fixação interno deslizante.

[08] O documento GB2530291 descreve uma tenda que compreende uma folha de solo, uma cobertura se estendendo sobre a folha do solo e fixada à folha do solo em suas bordas para formar um espaço interno pelo menos parcialmente fechado entre a folha do solo e o dossel; pelo menos um par de elementos de bolso localizados na folha de solo, onde cada elemento de bolso recebe uma extremidade de um poste para configurar estrutura de suporte da tenda.

[09] O documento MU8802870 descreve uma barraca de praia desmontável constituída por varetas cilíndricas, cabos tensores de

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 96 of 551

aço, uma cobertura flexível e estacas para fixar a barraca ao solo, sendo que a armação é formada pela união de diversas varetas através de junções para formar varas compridas e a cobertura apresenta três bainhas, sendo uma em cada lateral e uma central onde serão inseridos os tensores para a estruturação da barraca.

[010] O documento US2003066550 descreve um abrigo dobrável e portátil de forma arqueada com uma face aberta.

[011] O documento US10066417 descreve um dossel dobrável e método de erguer um dossel dobrável composto de âncoras de terra, membros flexíveis e uma cobertura do dossel. O dossel dobrável é composto por quatro âncoras de terra, membros flexíveis e uma cobertura do dossel.

[012] O documento MX2013001004 descreve um dispositivo gerador de sombras destinado a fornecer proteção solar, dito dispositivo usando a energia cinética do vento a fim de ser sustentado no ar e projetar uma sombra. O dispositivo é formado por um painel ou grupo de painéis e uma ou mais vigas, que juntas definem uma borda de proa, uma borda de popa e laterais. O dispositivo é composto por abas que proporcionam estabilidade e servem para ancorá-las ao solo. O dispositivo funciona da seguinte forma: o painel ou painéis juntamente com as abas e as vigas circundam uma massa de ar em movimento; as forças aerodinâmicas geradas são suficientemente fortes para suportar o dispositivo no ar; o dispositivo é mantido ancorado ao solo por alguns meios; com o dispositivo ancorado ao solo, ele pode ser mantido em uma altura pré-determinada e projetar uma sombra em uma superfície abaixo.

[013] O documento US2017362849 descreve uma tenda que inclui uma cobertura flexível e um mastro que se acopla a uma superfície,

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 97 of 551

dito mastro posicionado de forma substancialmente igual distante das bordas opostas da cobertura, tendo amarras acoplada que se estendem a partir da cobertura. A cobertura é posicionada acima da superfície para usar a força natural do vento para inflar o painel e mantê-lo no alto para fornecer sombra ao usuário.

[014] Em que pese o estado da técnica descrever diversas configurações de estruturas provisórias portáteis com a finalidade de prover um abrigo para impedir ou diminuir a irradiação solar sobre um usuário, uma grande dificuldade diz respeito a área de sombra gerada e a manutenção da estrutura sob a ação de ventos moderados a fortes, principalmente em regiões oceânicas.

[015] No caso dos guarda-sóis, são estruturas de fácil transporte e montagem. No entanto, geram uma pequena área de sombra e sua estrutura não suporta ventos moderados a fortes, causando seu desacoplamento do solo, com o risco de atingir um usuário.

[016] Estruturas mais robustas, tal como as tendas ou gazebos, são mais difíceis de serem carregadas e montadas e para se manterem íntegras sob a ação do vento necessitam de meios adicionais para reter a estrutura no solo e evitar o desarme, tal como cabos tensores ou estacas, onde a carga de tração é imposta à estrutura de cobertura por meio de esticadores presos à superfície de apoio através de olhais, por exemplo, dificultado a montagem e aumentando o número de elementos construtivos a serem carregados.

[017] No entanto, as cargas de vento que atuam sobre essas estruturas flexíveis podem ser utilizadas para estruturar e modelar a tenda, aproveitando o fluxo de vento de baixo impacto presente na beira da praia, de forma a prover estruturas simplificadas e com um mínimo de elementos construtivos.

[018] Dessa forma é objeto da presente patente de invenção uma estrutura para proteção solar de formato curvo, que inclui uma haste moldada em formato curvo ou que pode assumir o formato curvo por meio de flexão que é fixada a uma cobertura flexível, provendo uma estrutura simplificada, de rápida montagem e leve, com o mínimo de elementos construtivos, conformando uma estrutura formada por apenas um arco montado posicionado na direção do vento e com extremidades enterradas no solo, mantendo a cobertura flexível fixada à haste em sua porção frontal e o restante da cobertura flexível solta, flutuando sob a ação do vento, provendo uma grande área de sombra.

SUMÁRIO

[019] É característica da invenção uma estrutura para proteção solar portátil, leve e de fácil montagem.

[020] É característica da invenção uma estrutura para proteção solar cuja sombra gerada equivale à sombra de um gazebo, com a metade do peso de um guarda-sol, quando desmontado para transporte.

[021] É característica da invenção uma estrutura para proteção solar que conforma uma estrutura em formato de arco, cuja face frontal é montada voltada para o vento, provendo ventilação cruzada, não detendo o vento o que impede o desarme ou o desprendimento da estrutura.

[022] É característica da invenção uma estrutura para proteção solar que permite a acomodação confortável de 4 a 5 pessoas em pé, posicionados somente na abertura frontal da estrutura, proporcionando uma grande área de sombra.

[023] É característica da invenção uma estrutura para proteção solar adequada para a instalação em eventos, conformando um arco que pode alcançar altura entre 4 a 5 metros e cobertura de largura

variável.

BREVE DESCRIÇÃO DAS FIGURAS

[024] A figura 1A apresenta a vista em perspectiva evidenciando a estrutura para proteção solar montada e a figura 1B apresenta a estrutura para proteção solar montada com um cabo tensor tensionando a abertura frontal da estrutura.

[025] A figura 2A apresenta representação da haste sendo encaixada na bainha da cobertura, a figura 2B apresenta a haste acoplada na bainha da cobertura, a figura 2C apresenta a haste posicionada na cobertura em posição adequada para ser instalada na superfície de apoio.

[026] A figura 3 apresenta a forma alternativa de preensão da haste na cobertura.

[027] A figura 4A apresenta a vista frontal da estrutura para proteção solar e a figura 4B apresenta a vista lateral, evidenciando o fluxo de vento.

DESCRIÇÃO DETALHADA DA INVENÇÃO

[028] A estrutura para proteção solar, objeto da presente patente de invenção, compreende uma cobertura de material flexível de formato preferentemente retangular (10) que apresenta a totalidade de uma primeira lateral longitudinal (11) dotada de um meio de preensão (111), tal como uma bainha ou tiras intercaladas, onde é inserida uma haste de perfil curvo (20) cujas extremidades (21) são mantidas livres para a fixação na superfície de apoio.

[029] Com esta configuração, a haste de perfil curvo (20) molda a abertura frontal (101) da estrutura para proteção solar, ficando as laterais transversais (12) da cobertura (10) alinhadas com as extremidades (21) da haste de perfil curvo (20) junto à superfície de

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 100 of 551

apoio e a lateral (13) da cobertura (10), oposta à lateral longitudinal (11) onde é associado o perfil curvo (20), sendo mantida livre para flutuar com o fluxo de vento que ingressa pela abertura frontal (101) e sai pela abertura posterior (102), através de ventilação cruzada.

[030] A cobertura flexível (10) compreende qualquer película que apresente resistência ao vento e impeça ou diminua a radiação solar sobre um usuário.

[031] A haste de perfil curvo (20) compreende uma estrutura única moldada em formato curvo ou que pode assumir o formato curvo por meio de flexão.

[032] A haste de perfil curvo (20) pode ser segmentada, de forma que ditos segmentos sejam unidos entre si mediante meios de conexão conhecidos, tal como encaixe por interferência, rosqueamento, travamento, entre outros, permitindo que a associação dos segmentos.

[033] Na borda da primeira lateral longitudinal (11) é fixada a extremidade de um tirante tensionado (30) cuja extremidade oposta é ancorada na superfície de apoio, dito tirante tensionado (30) que fornece um contrapeso em oposição ao vento, conforme apresentado na figura 1B.

[034] Para a montagem da estrutura para proteção solar, a haste (20) é inserida na bainha (111) disposta em uma das laterais longitudinais (11) da cobertura (10), sendo a seguir as extremidades (21) da dita haste (20) fixadas na superfície de apoio preferentemente mediante cravamento no solo, conformando a abertura frontal (101) estrutura para proteção solar cuja altura pode ser ajustada caso a haste (20) permita ajuste da curvatura por flexão. Na borda da lateral longitudinal (11) que conforma a abertura frontal é fixado um tirante tensionado

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 101 of 551

(30) cuja extremidade oposta é ancorada na superfície de apoio. Para a integridade da estrutura, a abertura frontal (101) deve ser posicionada alinhada com o fluxo de vento, permitindo a ventilação cruzada, de forma que a lateral posterior (13) da cobertura (10) oposta à lateral fixa (11) seja mantida flutuante por ação do vento, provendo a abertura posterior (102), com a cobertura (10) gerando uma área de sombra.

REIVINDICAÇÕES:

1. ESTRUTURA PARA PROTEÇÃO SOLAR caracterizado por compreender uma cobertura de material flexível (10) que apresenta a totalidade de uma primeira lateral longitudinal (11) dotada de um meio de preensão (111) onde é inserida uma haste (20) cujas extremidades (21) são fixadas na superfície de apoio, conformando a abertura frontal (101) da estrutura, sendo mantidas as laterais transversais (12) da cobertura (10) alinhadas com as extremidades (21) da haste (20) fixadas na superfície de apoio e a lateral (13) da cobertura (10) oposta à lateral longitudinal (11), que configura a abertura posterior (102) da estrutura mantida livre para flutuar com o fluxo de vento que ingressa pela abertura frontal (101).

2. ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato do meio de preensão (11) compreender uma bainha ou tiras intercaladas.

3. ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato da cobertura flexível (10) compreender qualquer película que apresente resistência ao vento e impeça ou diminua a radiação solar.

4. ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato da haste de perfil curvo (20) compreender uma estrutura única moldada em formato curvo ou que pode assumir o formato curvo por meio de flexão.

5. ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato da haste de perfil curvo (20) ser segmentada, sendo ditos segmentos unidos entre si mediante meios de conexão conhecidos.

6.  ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato de apresentar um tirante tensionado (30) fixado na lateral longitudinal (11) e na superfície de apoio.

**REIVINDICAÇÕES MODIFICADAS**
**Recebidas pela Secretaria Internacional no dia 12 de Julho de 2022**
**(12.07.2022)**

1.  ESTRUTURA PARA PROTEÇÃO SOLAR que compreende uma cobertura de material flexível (10) que apresenta a totalidade de uma primeira lateral longitudinal (11) dotada de um meio de preensão (111) onde é inserida uma haste (20) cujas extremidades (21) são fixadas na superfície de apoio, conformando a abertura frontal (101) da estrutura e a lateral (13) da cobertura (10) oposta à lateral longitudinal (11) ser estrutura mantida livre para flutuar com o fluxo de vento que ingressa pela abertura frontal (101), <u>caracterizado pelo fato</u> da cobertura (10) apresentar formato preferentemente retangular (10) e as laterais transversais (12) da dita cobertura (10) estarem alinhadas com as extremidades (21) da haste (20) fixadas na superfície de apoio.

FOLHA MODIFICADA (ARTIGO 19)

## DECLARAÇÃO SEGUNDO O ARTIGO 19(1)

O Relatório de pesquisa internacional aponta quatro anterioridades de particular relevância. Sendo assim, a opinião escrita da autoridade de pesquisa internacional indica que o pedido não apresenta o requisito de atividade inventiva.

A anterioridade US10190330 (D1) descreve um sistema de sombreamento que inclui um dossel configurado para acoplamento e suspensão aérea por um quadro que inclui uma pluralidade de seções configuradas para alinhamento de ponta a ponta de uma extremidade esquerda para uma extremidade direita, onde cada seção é configurada para se envolver com quaisquer seções adjacentes para formar o quadro. As extremidades da estrutura são fixadas à superfície, suspendendo assim o dossel e fornecendo sombra à superfície. Podem ser previstas correias para a fixação do dossel e do quadro à superfície de apoio. Nesta anterioridade não é descrito nem sugerido qualquer meio para manter o dossel conformado sob a forma de um túnel, sendo descrito que o dossel é suspenso no quadro.

A anterioridade US7789097 (D2) descreve um guarda-sol portátil usado em conjunto com um veículo ou outro meio de suporte dotado de uma cobertura de tecido engatada em uma pluralidade de hastes flexíveis, sendo a porção frontal da cobertura com extremidades conformadas sob duas pernas de tecido que são engatadas por um poste alongado e flexível inserido através das pernas e da frente da capa protetora. Esta anterioridade não descreve nem sugere que a cobertura seja mantida livre para flutuar com o fluxo de vento que ingressa pela abertura frontal e sai pela abertura posterior (pelo contrário, na abertura inferior é previsto o acoplamento a um veículo ou a um meio de suporte) e também é previsto que a cobertura seja mantida alinhada com as extremidades das hastes flexíveis que conformam a abertura frontal.

A anterioridade GB2573353 (D3) descreve uma estrutura para proteção solar que inclui um poste arqueado e um dossel, sendo previstas ancoras que estruturam o dossel em forma de uma tenda, incluindo colunas que seguram o dossel em posição elevada mesmo em situações de vento baixo.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 106 of 551

A anterioridade KR20120049032 (D4) descreve um toldo portátil que fornece sombra onde a cobertura forma um túnel, com as extremidades da cobertura sendo fixada na porção inferior do arco arqueado frontal por meio de um furo na costura 212 através do qual o poste 100 pode entrar e sair em ambas as extremidades, sendo previsto adicionalmente uma peça de tecido 220 com um anel de encaixe 3 para fixar a saliência 110 de encaixe.

Nenhuma das anterioridades descreve a totalidade dos elementos reivindicados no pedido de patente de invenção em pauta. Ainda que D1 cite a formação de um arco em "U" invertido com um dossel que flutua com o vento, a problemática das extremidades soltas se mantém. A cobertura descrita em D1, ainda que flutue com o vento, não tem suas extremidades fixadas no arco frontal, de forma que não é conformado um túnel que se mantém à mercê das cargas de vento. A intensidade do vento tende a movimentar a cobertura ao longo do arco e não gerar uma área de sombreamento adequada e confortável para o usuário.

A anterioridade D4, por sua vez, revela uma configuração para associar as extremidades da cobertura na extremidade inferior do arco em U invertido, impedindo os inconvenientes observados em relação a D1. A solução técnica implica em um apêndice de tecido que deriva da borda da cobertura, dito apêndice dotado de um anel de encaixe que é transpassado pela extremidade do arco, de forma a manter a extremidade frontal da cobertura imobilizada no arco frontal. Ainda, a cobertura apresenta uma porção de malha 240 de um certo tamanho ao longo dos cantos das duas bordas restantes, exceto para a parte de costura frontal 210.

No pedido de patente em pauta, a cobertura apresenta formato preferentemente retangular (10) com a totalidade de uma primeira lateral longitudinal (11) dotada de um meio de preensão (111), tal como uma bainha ou tiras intercaladas, onde é inserida uma haste de perfil curvo (20) (tal como a "parte de costura frontal 210 de D4). **As laterais transversais (12) da cobertura (10) são mantidas alinhadas com as extremidades (21) da haste de perfil curvo (20) junto à superfície de apoio, não sendo descrito ou sugerido** uma peça de tecido 220 com um anel de encaixe 3 para fixar a saliência 110 de encaixe, tal como necessário em D4.

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 107 of 551

# ALTERAÇÃO DAS REIVINDICAÇÕES

A fim de restringir o escopo de proteção, sem qualquer acréscimo de matéria, o Requerente encaminha novo quadro reivindicatório, estando totalmente suportado no relatório inicialmente depositado, conforme apresentado no Quadro a seguir.

As reivindicações 1 a 6 inicialmente depositadas foram canceladas. Adicionadas as novas reivindicações 7 e 8.

A reivindicação 7 está suportada nos parágrafos 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, sendo substituídos os componentes qualitativos genéricos pela indicação precisa do componente, acompanhados da expressão "isolados ou em associação" apresentada nos parágrafos acima indicados.

A reivindicação 8 está suportada no parágrafo 27.

| REIVINDICAÇÃO INICIALMENTE DEPOSITADA | REIVINDICAÇÕES ALTERADAS | BASE PARA AS ALTERAÇÕES |
|---|---|---|
| ESTRUTURA PARA PROTEÇÃO SOLAR caracterizado por compreender uma cobertura de material flexível (10) que apresenta a totalidade de uma primeira lateral longitudinal (11) dotada de um meio de preensão (111) onde é inserida uma haste (20) cujas extremidades (21) são fixadas na superfície de apoio, conformando a abertura frontal (101) da estrutura, sendo mantidas as laterais transversais (12) da cobertura (10) alinhadas com as extremidades (21) da haste (20) fixadas na superfície de apoio e a lateral (13) da cobertura (10) oposta à lateral longitudinal (11), que configura a abertura posterior (102) da estrutura mantida livre para flutuar com o fluxo de vento que ingressa pela abertura frontal (101). | Alterada ESTRUTURA PARA PROTEÇÃO SOLAR ~~caracterizado por~~ que compreende~~r~~ uma cobertura de material flexível (10) que apresenta a totalidade de uma primeira lateral longitudinal (11) dotada de um meio de preensão (111) onde é inserida uma haste (20) cujas extremidades (21) são fixadas na superfície de apoio, conformando a abertura frontal (101) da estrutura e a lateral (13) da cobertura (10) oposta à lateral longitudinal (11) ser estrutura mantida livre para flutuar com o fluxo de vento que ingressa pela abertura frontal (101), <u>caracterizado pelo fato da cobertura (10) apresentar formato preferentemente retangular (10) e as</u> laterais transversais (12) da dita cobertura (10) estarem alinhadas com as extremidades (21) da haste (20) fixadas na superfície de apoio. | Parágrafos 28 e 29 |

| | | |
|---|---|---|
| ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato do meio de preensão (11) compreender uma bainha ou tiras intercaladas. | cancelada | --- |
| ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato da cobertura flexível (10) compreender qualquer película que apresente resistência ao vento e impeça ou diminua a radiação solar. | cancelada | --- |
| ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato da haste de perfil curvo (20) compreender uma estrutura única moldada em formato curvo ou que pode assumir o formato curvo por meio de flexão. | cancelada | ---- |
| ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato da haste de perfil curvo (20) ser segmentada, sendo ditos segmentos unidos entre si mediante meios de conexão conhecidos. | cancelada | --- |
| ESTRUTURA PARA PROTEÇÃO SOLAR, de acordo com a reivindicação 1, caracterizado pelo fato de apresentar um tirante tensionado (30) fixado na lateral longitudinal (11) e na superfície de apoio. | cancelada | --- |



Fig. 1A



Fig. 1B

2/4



Fig. 2A

Fig. 2B

Fig. 2C

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 111 of 551



Fig. 3

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 112 of 551



Fig. 4A



Fig. 4B

# INTERNATIONAL SEARCH REPORT

International application No.

PCT/BR2022/050045

## A. CLASSIFICATION OF SUBJECT MATTER

IPC: E04H 15/00 (2006.01), E04H 15/32 (2006.01), E04H 15/34 (2006.01), E04H 15/36 (2006.01), E04H 15/40 (2006.01)

CPC: E04H 15/00, E04H 15/32, E04H 15/34, E04H 15/36, E04H 15/40

According to International Patent Classification (IPC) or to both national classification and IPC

## B. FIELDS SEARCHED

Minimum documentation searched (classification system followed by classification symbols)

**E04H**

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

**Base de dados do INPI-BR**

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

**DERWENT, ESPACENET**

## C. DOCUMENTS CONSIDERED TO BE RELEVANT

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | US 10190330 B2 (SHIBUMI SHADE LLC [US]) 29 January 2019 (2019-01-29) Description (columns 3 to 7), Figures 1-7 | 2, 3, 4, 5, 6 |
| Y | ------------------------------------------- | 1 |
| X | US 7789097 B1 07 September 2010 (2010-09-07) Description (columns 2 to 5) Figures 1-9 | 3, 4, 5 |
| A | ------------------------------------------- | 1, 2, 6 |
| X | GB 2573353 B (MARK OSBORNE [DE]) 25 November 2020 (2020-11-25) Description (pages 12 to 17), Figures 1-38 | 3, 4, 6 |
| A | ------------------------------------------- | 1, 2, 5 |
| X | KR 20120049032 A (KANG SEOG MYEONG [KR]) 16 May 2012 (2012-05-16) Description (paragraphs 17 to 35), Figures 1-5 | 3, 4, 6 |
| Y | | 1 |
| A | ------------------------------------------- | 2, 5 |

☐ Further documents are listed in the continuation of Box C.      ☒ See patent family annex.

| | |
|---|---|
| * Special categories of cited documents: | "T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
| "A" document defining the general state of the art which is not considered to be of particular relevance | |
| "E" earlier application or patent but published on or after the international filing date | "X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "O" document referring to an oral disclosure, use, exhibition or other means | |
| "P" document published prior to the international filing date but later than the priority date claimed | "&" document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| **02 May 2022** | **12/05/2022** |

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| **INPI** INSTITUTO NACIONAL DA PROPRIEDADE INDUSTRIAL Rua Mayrink Veiga nº 9, 6º andar cep: 20090-910, Centro - Rio de Janeiro/RJ Facsimile No. 55-21-30372643 | Telephone No. |

Case 5:24-cv-00568-L    Document 28-11    Filed 03/23/26    Page 114 of 551

Form PCT/ISA/210 (second sheet) (January 2015)

| US 10190330 B2 | 2019-01-29 | US 2018106064 A1 | 2018-04-19 |
| | | US 2019119942 A1 | 2019-04-25 |
| | | US 10753117 B2 | 2020-08-25 |
| | | US 2021002918 A1 | 2021-01-07 |
| | | US 11111690 B2 | 2021-09-07 |
| | | US 2021293044 A1 | 2021-09-23 |
| | | US 11255103 B2 | 2022-02-22 |
| | | US 2021293046 A1 | 2021-09-23 |
| | | US 11299904 B2 | 2022-04-12 |
| | | US 2021230899 A1 | 2021-07-29 |
| | | US 2021293045 A1 | 2021-09-23 |
| | | US 2021404208 A1 | 2021-12-30 |
| US 7789097 B1 | 2010-09-07 | US 2010212709 A1 | 2010-08-26 |
| GB 2573353 B | 2020-11-25 | GB 201817615 D0 | 2018-12-12 |
| | | GB 2573353 A | 2019-11-06 |
| | | WO 2020089599 A1 | 2020-05-07 |
| KR 20120049032 A | 2012-05-16 | KR 101315166 B1 | 2013-10-07 |

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 115 of 551

RELATÓRIO DE PESQUISA INTERNACIONAL

Depósito internacional Nº

PCT/BR2022/050045

A. CLASSIFICAÇÃO DO OBJETO

**IPC: E04H 15/00 (2006.01), E04H 15/32 (2006.01), E04H 15/34 (2006.01), E04H 15/36 (2006.01), E04H 15/40 (2006.01)**
**CPC: E04H 15/00, E04H 15/32, E04H 15/34, E04H 15/36, E04H 15/40**

De acordo com a Classificação Internacional de Patentes (IPC) ou conforme a classificação nacional e IPC

B. DOMÍNIOS ABRANGIDOS PELA PESQUISA

Documentação mínima pesquisada (sistema de classificação seguido pelo símbolo da classificação)

**E04H**

Documentação adicional pesquisada, além da mínima, na medida em que tais documentos estão incluídos nos domínios pesquisados

**Base de dados do INPI-BR**

Base de dados eletrônica consultada durante a pesquisa internacional (nome da base de dados e, se necessário, termos usados na pesquisa)

**DERWENT, ESPACENET**

C. DOCUMENTOS CONSIDERADOS RELEVANTES

| Categoria* | Documentos citados, com indicação de partes relevantes, se apropriado | Relevante para as reivindicações Nº |
|---|---|---|
| X | US 10190330 B2 (SHIBUMI SHADE LLC [US]) 29 janeiro 2019 (2019-01-29) | 2, 3, 4, 5, 6 |
| Y | Relatório Descritivo (colunas 3 a 7), Figuras 1-7 | 1 |
| | -------------------------------------------- | |
| X | US 7789097 B1 07 setembro 2010 (2010-09-07) | 3, 4, 5 |
| A | Relatório Descritivo (colunas 2 a 5), Figuras 1-9 | 1, 2, 6 |
| | -------------------------------------------- | |
| X | GB 2573353 B (MARK OSBORNE [DE]) 25 novembro 2020 (2020-11-25) | 3, 4, 6 |
| A | Relatório Descritivo (páginas 12 a 17), Figuras 1-38 | 1, 2, 5 |
| | -------------------------------------------- | |
| X | KR 20120049032 A (KANG SEOG MYEONG [KR]) | 3, 4, 6 |
| Y | 16 maio 2012 (2012-05-16) | 1 |
| A | Relatório Descritivo (parágrafos 17 ao 35), Figuras 1-5 | 2, 5 |
| | -------------------------------------------- | |

☐ Documentos adicionais estão listados na continuação do quadro C   ☒ Ver o anexo de famílias das patentes

* Categorias especiais dos documentos citados:

"A" documento que define o estado geral da técnica, mas não é considerado de particular relevância.

"E" pedido ou patente anterior, mas publicada após ou na data do depósito internacional

"L" documento que pode lançar dúvida na(s) reivindicação(ões) de prioridade ou na qual é citado para determinar a data de outra citação ou por outra razão especial

"O" documento referente a uma divulgação oral, uso, exibição ou por outros meios.

"P" documento publicado antes do depósito internacional, porém posterior a data de prioridade reivindicada.

"T" documento publicado depois da data de depósito internacional, ou de prioridade e que não conflita como depósito, porém citado para entender o princípio ou teoria na qual se baseia a invenção.

"X" documento de particular relevância; a invenção reivindicada não pode ser considerada nova e não pode ser considerada envolver uma atividade inventiva quando o documento é considerado isoladamente.

"Y" documento de particular relevância; a invenção reivindicada não pode ser considerada envolver atividade inventiva quando o documento é combinado com outro documento ou mais de um, tal combinação sendo óbvia para um técnico no assunto.

"&" documento membro da mesma família de patentes.

| Data da conclusão da pesquisa internacional | Data do envio do relatório de pesquisa internacional: |
|---|---|
| **02 Maio 2022** | 12/05/2022 |

| Nome e endereço postal da ISA/**BR** | Funcionário autorizado |
|---|---|
| INSTITUTO NACIONAL DA PROPRIEDADE INDUSTRIAL Rua Mayrink Veiga nº 9, 6º andar cep: 20090-910, Centro - Rio de Janeiro/RJ | **Luiz Claudio Marini Silva** |
| Nº de fax: +55 21 3037-3663 | Nº de telefone: +55 21 3037-3493/3742 |

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 116 of 551

Depósito internacional N°

PCT/BR2022/050045

| Documentos de patente citados no relatório de pesquisa | Data de publicação | Membro(s) da família de patentes | Data de publicação |
|---|---|---|---|
| US 10190330 B2 | 2019-01-29 | US 2018106064 A1 | 2018-04-19 |
| | | US 2019119942 A1 | 2019-04-25 |
| | | US 10753117 B2 | 2020-08-25 |
| | | US 2021002918 A1 | 2021-01-07 |
| | | US 11111690 B2 | 2021-09-07 |
| | | US 2021293044 A1 | 2021-09-23 |
| | | US 11255103 B2 | 2022-02-22 |
| | | US 2021293046 A1 | 2021-09-23 |
| | | US 11299904 B2 | 2022-04-12 |
| | | US 2021230899 A1 | 2021-07-29 |
| | | US 2021293045 A1 | 2021-09-23 |
| | | US 2021404208 A1 | 2021-12-30 |
| ------------------------------- | --------------- | ------------------------------- | --------------- |
| US 7789097 B1 | 2010-09-07 | US 2010212709 A1 | 2010-08-26 |
| ------------------------------- | --------------- | ------------------------------- | --------------- |
| GB 2573353 B | 2020-11-25 | GB 201817615 D0 | 2018-12-12 |
| | | GB 2573353 A | 2019-11-06 |
| | | WO 2020089599 A1 | 2020-05-07 |
| ------------------------------- | --------------- | ------------------------------- | --------------- |
| KR 20120049032 A | 2012-05-16 | KR 101315166 B1 | 2013-10-07 |
| ------------------------------- | --------------- | ------------------------------- | --------------- |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | *To Be Assigned* |
| Appl. No.: | *To Be Assigned* | Group Art Unit: | *To Be Assigned* |
| Filed: | *Concurrently Herewith* | Examiner: | *To Be Assigned* |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:     S105508 1010US.C8 (0040.5)
Customer No.:   26158

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### PRELIMINARY AMENDMENT
### 37 CFR § 1.115

Sir:

Please enter this Preliminary Amendment before calculating the claim fee and amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims beginning on page 3 of this paper.

**Remarks** begin on page 7 of this paper.

WBD (US) 59558022v1

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 118 of 551

Amendments to the Specification:

On page 1, after the title of the invention, please amend the following paragraph:

CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. Application No. 17/471,658, filed September 10, 2021, and a continuation of U.S. Application No. 17/343,114, filed June 9, 2021, which is a continuation of U.S. Application No. 17/232,799, filed April 16, 2021, which is a continuation of U.S. Application No. 16/987,886, filed August 7, 2020, which granted September 7, 2021 as U.S. Patent No. 11,111,690, which is a continuation of U.S. Patent No. 16/224,465, filed December 18, 2018, which granted August 25, 2020 as U.S. Patent No. 10,753,117, which is a continuation of U.S. Application No. 15/675,715, filed August 12, 2017, which granted January 29, 2019 as U.S. Patent No. 10,190,330, which is a non-provisional of U.S. Provisional Patent Application 62/409,426 filed October 18, 2016, ~~the contents of which are hereby incorporated by reference in its entirety~~ which applications are hereby incorporated by reference in their entirety in this application.

Amendments to the Claims:

1. – 20.         (Canceled)

21.     (New)  A system for providing shade onto a surface, the system comprising:

a frame engageable with the surface;

a sheet of material extending between a suspension end and an opposing trailing end, the suspension end of the sheet of material being coupleable with the frame about a portion of the frame.

22.     (New)  The system of claim 21, wherein the sheet of material is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

23.     (New)  The system of claim 22, wherein the plurality of sheets of material are selectively coupled together so that a first sheet of material is coupled with the frame about a suspension end and a suspension end of a second sheet of material is removeably coupled to a trailing end of the first sheet of material.

24.     (New)  The system of claim of claim 21, wherein the sheet of material has at least one set of parallel sides.

25.     (New)  The system of claim 24, wherein the sheet of material has two sets of parallel sides.

26.     (New)  The system of claim 21, wherein the sheet of material comprises one or more vent holes defined within the sheet of material, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27.     (New)  The system of claim 21, wherein the trailing end of the sheet of material is spaced apart from the portion of the frame such that when a wind force is applied to the sheet of material, the sheet of material extends at an angle relative to the surface, the angle varying with the wind force, and when there is de minimis wind force, the sheet of material is in contact with the surface at the trailing end.

28.     (New)  The system of claim 21, wherein the frame comprises a plurality of longitudinally-extending sections.

29.     (New)  The system of claim 28, wherein the plurality of longitudinally-extending sections are arrangeable so that at least a first longitudinally-extending section and a second longitudinally-extending section are each engageable with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween.

30.     (New)  The system of claim 28, further comprising a cable extending through the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween.

31.     (New)  The system of claim 28, wherein the plurality of longitudinally-extending sections are arrangeable so that they are non-coextensive relative to one another.

32.     (New)  The system of claim 31, wherein a first longitudinally-extending section is engaged with the surface and a second, non-coextensive longitudinally-extending section is engaged with the first longitudinally-extending section so that the second, non-coextensive longitudinally-extending section is arranged at a non-zero angle relative to a longitudinal axis of

the first longitudinally-extending section, and wherein the suspension end of the sheet of material is coupleable to the second, non-coextensive longitudinally-extending section.

33.     (New)  The system of claim 28, wherein the plurality of longitudinally-extending sections are arranged telescopically with one another such that a second longitudinally-extending section is receivable in and extendable from a first longitudinally-extending section.

34.     (New)  The system of claim 21, wherein the frame comprises a singular, longitudinally-extending section.

35.     (New)  The system of claim 21, wherein the frame is directly engageable with the surface.

36.     (New)  The system of claim 21, further comprising two frames each being engageable with the surface, wherein the sheet of material is coupleable with the first frame about the suspension end and the sheet of material is coupleable with the second frame about the opposing trailing end.

37.     (New)  The system of claim 21, further comprising an object engageable with the frame or with the sheet of material to act as a counterweight against a wind force applied to the sheet of material so that the frame remains engaged with the surface when the wind force is applied to the sheet of material.

38.     (New)  The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the sheet of material.

WBD (US) 59558022v1

39.     (New)  The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when a wind force is applied to the sheet of material.

40.     (New)  The system of claim 39, wherein the first end of the cord is coupleable to the trailing end of the sheet of material and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind force is applied to the sheet of material.

WBD (US) 59558022v1

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 123 of 551

Appl. No.: *To Be Assigned*
Filed: *Concurrently Herewith*
Amdt. Dated November 30, 2022

## REMARKS

With this preliminary amendment, claims 1-20 are canceled and claims 21-40 are added. No new matter is added by way of this amendment. Claims 21-40 are pending.

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

**ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT & TRADEMARK OFFICE ON NOVEMBER 30, 2022.**

WBD (US) 59558022v1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Attorney Docket Number:** | S105508 1010US.C8 (0040.5 |

Filed as Large Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY APPLICATION FILING | 1011 | 1 | 320 | 320 |
| UTILITY SEARCH FEE | 1111 | 1 | 700 | 700 |
| UTILITY EXAMINATION FEE | 1311 | 1 | 800 | 800 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | 1820 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 47117303 |
| **Application Number:** | 18072143 |
| **International Application Number:** | |
| **Confirmation Number:** | 1080 |
| **Title of Invention:** | SHADING SYSTEM AND METHOD OF USE |
| **First Named Inventor/Applicant Name:** | Dane Brooks Barnes |
| **Customer Number:** | 26158 |
| **Filer:** | Lauren F Anderson/Shari Elofson |
| **Filer Authorized By:** | Lauren F Anderson |
| **Attorney Docket Number:** | S105508 1010US.C8 (0040.5 |
| **Receipt Date:** | 30-NOV-2022 |
| **Filing Date:** | |
| **Time Stamp:** | 15:43:24 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $ 1820 |
| RAM confirmation Number | E2022ATF46030951 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | S105508_1010US_C8_0040_5_Transmittal.pdf | 297741 / 5fcd17d20a934001816cdafcef253f16d3f2e15b | no | 2 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | S105508_1010US_C8_0040_5_Fee_Transmittal.pdf | 343424 / d95d82d76200cbecbb59ee1c4744ab0cf2a40130 | no | 2 |

**Warnings:**

**Information:**

| 3 | Application Data Sheet | S105508_1010US_C8_0040_5_ADS.pdf | 2226644 / 18d390d95b5cb81799080a7e5ef4caa4078e4bda | no | 9 |

**Warnings:**

**Information:**

| 4 | | S105508_1010US_C8_0040_5_Application_from_Parent.pdf | 874082 / 8d575c2165539a5dfb37c16d792c88242a9869e4 | yes | 15 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | | End |
| | Specification | | 1 | | 11 |
| | Claims | | 12 | | 14 |
| | Abstract | | 15 | | 15 |

**Warnings:**

**Information:**

| 5 | Drawings-only black and white line drawings | S105508_1010US_C8_0040_5_Drawings_from_Parent.pdf | 434736 / 6db359038d921f54e6233d1e98e9892c92bb70cf | no | 7 |

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 128 of 551

**Warnings:**

**Information:**

| 6 | Oath or Declaration filed | S105508_1010US_C8_0040_5_Declaration_from_Parent.pdf | 335588<br><br>21a4a8c8c65f5414fe965ec95358d05c9fc0a35b | no | 5 |

**Warnings:**

**Information:**

| 7 | Power of Attorney | S105508_1010US_C8_0040_5_POA.pdf | 385852<br><br>af572f86bf4aaeb0e71a6f03546e56def343ed78 | no | 2 |

**Warnings:**

**Information:**

| 8 | Assignee showing of ownership per 37 CFR 3.73 | S105508_1010US_C8_0040_5_Stmt_373.pdf | 118153<br><br>045dbc6495e74f66b075d03fe0ba0f47d603c349 | no | 3 |

**Warnings:**

**Information:**

| 9 | Transmittal Letter | S105508_1010US_C8_0040_5_IDS_Cover.pdf | 125022<br><br>6cb5d89f68e2298e3ebc83851317430fbb60b852 | no | 1 |

**Warnings:**

**Information:**

| 10 | Information Disclosure Statement (IDS) Form (SB08) | S105508_1010US_C8_0040_5_IDS_1449.pdf | 208106<br><br>1c9c724906754b513fdcafede9c06f0a59ee050b | no | 5 |

**Warnings:**

**Information:**

This is not an USPTO supplied IDS fillable form

| 11 | Foreign Reference | AU200511300.PDF | 205232<br><br>0dc724d21afb0ea28cad61489c5040f99f5c39dd | no | 6 |

**Warnings:**

**Information:**

| 12 | Foreign Reference | BR302019005581.PDF | 94603<br><br>0553415f51324ad87b61c9142e1e3c93c900beb1 | no | 3 |

**Information:**

| 13 | Foreign Reference | CH130505.PDF | 182828<br><br>a13f290cfd2a0282a7e47cad70e46e64b444<br>1c91 | no | 4 |
|----|-------------------|--------------|----------------|----|----|

**Warnings:**

**Information:**

| 14 | Foreign Reference | CH132260.PDF | 228239<br><br>dd11af49797349fa48218cf377d0b0bd4683<br>51f0 | no | 5 |
|----|-------------------|--------------|----------------|----|----|

**Warnings:**

**Information:**

| 15 | Foreign Reference | WO2011012969.PDF | 608475<br><br>997413f546ac92588e439906d777469334a<br>1d4d4 | no | 16 |
|----|-------------------|------------------|----------------|----|-----|

**Warnings:**

**Information:**

| 16 | Foreign Reference | WO2022174316.PDF | 1150987<br><br>a243f53a0a5d8ae83c8ba09f527d0fb145bc<br>edde | no | 31 |
|----|-------------------|------------------|----------------|----|-----|

**Warnings:**

**Information:**

| 17 | | S105508_1010US_C8_0040_5_<br>Preliminary_Amendment.pdf | 115959<br><br>a0a1e9b7f5f91e7113c6d5268cea3837fa68f<br>262 | yes | 7 |
|----|--|----------------------------------|----------------|-----|----|

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Preliminary Amendment | 1 | 1 |
| Specification | 2 | 2 |
| Claims | 3 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | 7 | 7 |

**Warnings:**

**Information:**

| 18 | Fee Worksheet (SB06) | fee-info.pdf | 43968 | no | 2 |
| | | | 7dee7e722fb491a09b3b664768c682239c708bed | | |

**Warnings:**

**Information:**

| | | |
|---|---|---|
| | **Total Files Size (in bytes):** | 7979639 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | 1820 | | S105508 1010US.C8 (0040.5 | 20 | 1 |

**CONFIRMATION NO. 1080**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

**FILING RECEIPT**

*OC000000051702716*

Date Mailed: 12/14/2022

Receipt is acknowledged of this non-provisional utility patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF FIRST INVENTOR, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection.

**Please verify the accuracy of the data presented on this receipt.** If an error is noted on this Filing Receipt, please submit a written request for a corrected Filing Receipt, including a properly marked-up ADS showing the changes with strike-through for deletions and underlining for additions. If you received a "Notice to File Missing Parts" or other Notice requiring a response for this application, please submit any request for correction to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections provided that the request is grantable.

**Inventor(s)**

Dane Brooks Barnes, Raleigh, NC;
Alexander Griffith Slater, Raleigh, NC;
Scott Christian Barnes, Raleigh, NC;

**Applicant(s)**

Shibumi Shade, Inc., Raleigh, NC;

**Power of Attorney:** The patent practitioners associated with Customer Number 26158

**Domestic Priority data as claimed by applicant**

This application is a CON of 17/471,658 09/10/2021
    which is a CON of 17/232,799 04/16/2021
This application is a CON of 17/343,114 06/09/2021 PAT 11,536,046
    which is a CON of 17/232,799 04/16/2021
    which is a CON of 16/987,886 08/07/2020 PAT 11,111,690
    which is a CON of 16/224,465 12/18/2018 PAT 10,753,117
    which is a CON of 15/675,715 08/12/2017 PAT 10,190,330
    which claims benefit of 62/409,426 10/18/2016

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 132 of 551

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 12/13/2022
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 18/072,143**
**Projected Publication Date:** 03/23/2023
**Non-Publication Request:** No
**Early Publication Request:** No
**Title**

SHADING SYSTEM AND METHOD OF USE

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative,

this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 134 of 551

technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

**Application or Docket Number**
18/072,143

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | 320 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | 700 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | 800 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 minus 20 = | * 0 | | | OR | x = | 0 |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 1 minus 3 = | * | | | | x = | 0 |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | 0 |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | 0 |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | | TOTAL | 1820 |

### APPLICATION AS AMENDED - PART II

#### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

#### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

| | | Application/Control No. 18/072,143 | Applicant(s)/Patent Under Reexamination Barnes et al. | |
|---|---|---|---|---|
| **Notice of References Cited** | | Examiner NOAH C HAWK | Art Unit 3636 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-6286531-B1 | 09-2001 | Joo-Tai; Choi | E04H15/60 | 135/114 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)        **Notice of References Cited**        Part of Paper No. 20230309

| **Search Notes** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

| **CPC - Searched*** | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| E04H 15/005, 15/60, 15/62 | 03/09/2023 | NCH |

| **CPC Combination Sets - Searched*** | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| **US Classification - Searched*** | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| **Search Notes** | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Considered and updated search for parent application 17/471658 | 03/09/2023 | NCH |
| Considered IDS filed 11/30/22 | 03/09/2023 | NCH |
| Please see attached PE2E search history | 03/09/2023 | NCH |
| Performed inventor name search in DAV | 03/09/2023 | NCH |

| **Interference Search** | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 138 of 551

<table>
<tr><td rowspan="2"><strong><em>Index of Claims</em></strong><br><br>‖‖‖‖‖‖‖‖‖‖‖</td><td><strong>Application/Control No.</strong><br><br>18/072,143</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br><br>3636</td></tr>
</table>

| ✓ | **Rejected** | − | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | | | | | | | |
| | 1 | − | | | | | | | |
| | 2 | − | | | | | | | |
| | 3 | − | | | | | | | |
| | 4 | − | | | | | | | |
| | 5 | − | | | | | | | |
| | 6 | − | | | | | | | |
| | 7 | − | | | | | | | |
| | 8 | − | | | | | | | |
| | 9 | − | | | | | | | |
| | 10 | − | | | | | | | |
| | 11 | − | | | | | | | |
| | 12 | − | | | | | | | |
| | 13 | − | | | | | | | |
| | 14 | − | | | | | | | |
| | 15 | − | | | | | | | |
| | 16 | − | | | | | | | |
| | 17 | − | | | | | | | |
| | 18 | − | | | | | | | |
| | 19 | − | | | | | | | |
| | 20 | − | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | | | | | | | |
| | 24 | ✓ | | | | | | | |
| | 25 | ✓ | | | | | | | |
| | 26 | ✓ | | | | | | | |
| | 27 | ✓ | | | | | | | |
| | 28 | ✓ | | | | | | | |
| | 29 | ✓ | | | | | | | |
| | 30 | ✓ | | | | | | | |
| | 31 | ✓ | | | | | | | |
| | 32 | ✓ | | | | | | | |
| | 33 | ✓ | | | | | | | |
| | 34 | ✓ | | | | | | | |
| | 35 | ✓ | | | | | | | |
| | 36 | ✓ | | | | | | | |
| | 37 | ✓ | | | | | | | |
| | 38 | ✓ | | | | | | | |
| | 39 | ✓ | | | | | | | |
| | 40 | ✓ | | | | | | | |

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | British Equivalents | Time Stamp |
|---|---|---|---|---|---|---|---|
| L155 | 161 | e04h2015/326.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2020/04/16 04:08 PM |
| L156 | 1058 | 135/119.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L157 | 860 | 135/118.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L158 | 1187 | 135/115,120.1.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L159 | 1203 | e04H15/003.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L160 | 521 | 135/114.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L161 | 116 | 135/127.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L162 | 4260 | L156 L157 L158 L160 L161 L159 | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L163 | 289 | 40/214,606.11,217.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2020/04/16 04:08 PM |
| L164 | 237 | 40/412.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2020/04/16 04:08 PM |
| L165 | 2205 | 160/135,350,351,352,377.ccls. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L166 | 6916 | L162 L163 L164 L165 | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L167 | 704 | e04h12/22.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L168 | 7748 | L155 L166 L167 | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L169 | 8 | L168 and @pd>"20200107" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2020/04/16 04:08 PM |
| L170 | 4 | (15/675715 \| 16/224465).APP. | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2021/06/10 12:16 PM |
| L171 | 8267 | L155 L166 L167 | (US-PGPUB; USPAT; | OR | OFF | OFF | 2021/06/10 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | USOCR; FPRS; EPO; JPO; IBM_TDB) | | | | 12:16 PM |
| L173 | 57 | L171 AND @pd>"20200416" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2021/06/10 12:18 PM |
| L174 | 2 | "16987886" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2021/06/10 12:18 PM |
| L175 | 164 | 171 AND (telescop$6) AND bend$4 | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2021/06/14 12:08 PM |
| L176 | 49 | shibumi | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2021/06/14 01:06 PM |
| L178 | 8272 | L155 L166 L167 | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2021/07/28 03:00 PM |
| L179 | 13 | 178 AND @pd>"20210610" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2021/07/28 03:00 PM |
| L180 | 4531 | e04h15/30.cpc. e04h15/32.cpc. e04h15/36.cpc. e04h15/44.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2021/07/28 03:09 PM |
| L181 | 620 | 180 AND wind | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2021/07/28 03:09 PM |
| L182 | 366 | 181 AND (weight anchor) | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2021/07/28 03:09 PM |
| L183 | 245 | 182 AND (bag sleeve container) | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2021/07/28 03:09 PM |
| L184 | 10 | shibumi | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2021/10/22 02:43 PM |
| L189 | 64 | ((US-20140041703-A1 OR US-20150040957-A1 OR US-20140209132-A1 OR US-20040123886-A1 OR US-20040123887-A1 OR US-20120291830-A1 OR US-20100212709-A1 | (USPAT; US-PGPUB; FPRS; USOCR; IBM_TDB; EPO; JPO; DERWENT; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, | OR | ON | ON | 2021/10/25 03:50 PM |

| | | OR US-20070079857-A1 OR US-20130074894-A1 OR US-20090114260-A1 OR US-20150252585-A1 OR US-20180106064-A1 OR US-20190119942-A1 OR US-20030089390-A1 OR US-20210062535-A1 OR US-20210002918-A1 OR US-20210293044-A1 OR US-20210293045-A1 OR US-20210230899-A1 OR US-20210293046-A1).did. AND PGPB.dbnm.) OR ((US-3394720-A OR US-3042053-A OR US-3070107-A OR US-3075536-A OR US-2554688-A OR US-3052249-A).did. AND USOC.dbnm.) OR ((US-8453664-B2 OR US-4739784-A OR US-4881565-A OR US-4930534-A OR US-9482024-B2 OR US-6964277-B2 OR US-5299590-A OR US-5950649-A OR US-7789097-B1 OR US-5080123-A OR US-6286531-B1 OR US-7841356-B2 OR US-9051754-B2 OR US-8720461-B2 OR US-3970096-A OR US-4590956-A OR US-8424549-B1 OR US-7406977-B1 OR US-5823217-A OR US-8899251-B2 OR US-9051755-B2 OR US-9113724-B1 OR US-5345962-A OR US-7708339-B2 OR US-4716918-A OR US-8087423-B2 OR US-9051756-B1 OR US-10190330-B2 OR US-5927311-A OR US-10753117-B2 OR US-11111690-B2).did. AND USPT.dbnm.) OR ((DE- | IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN)) | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 102009020795-A1 OR FR-2884844-A1 OR WO-0204768-A1 OR WO-2011150477-A1).did. AND FPRS.dbnm.) OR ((US-20210002918-A1 OR US-20190119942-A1 OR US-20180106064-A1).did. AND DWPI.dbnm.) | | | | | |
| L191 | 36 | 189 AND strap | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2021/10/25 03:50 PM |
| L192 | 4 | "17343114" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, CA, CH, CN, DD, DE, EA, EP, ES, FR, GB, JP, KR, OA, RU, SU, WO); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2021/10/26 04:00 PM |
| L194 | 58 | L171 AND @pd>"20200610" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | OFF | OFF | 2021/10/26 04:09 PM |
| L195 | 5 | ("2186510" "3052249" "5678704").pn. | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2022/02/07 04:09 PM |
| L196 | 12 | "101315166" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2022/02/07 04:19 PM |
| L201 | 23 | ("584726" \| "2415956" \| "4924893" \| "5065879" \| "5520364" \| "5524990" \| "5931583" \| "6149305" \| "6186662" \| "6240940" \| "6554149" \| "6739095" \| "6964277" \| "7353833" \| "7524111" \| "7946305" \| | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2022/04/13 01:42 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | "8439058" \| "8656937" \| "20020026890" \| "20040123887" \| "20050061409" \| "20120017960" \| "20130051707").pn. OR ("9482024").urpn. AND (PGPB \| USPT \| USOC).dbnm. | | | | | |
| L202 | 41 | ("486256" \| "1293526" \| "1460821" \| "2024946" \| "2126030" \| "2551963" \| "3407825" \| "4118902" \| "4546730" \| "4570465" \| "4648482" \| "4733840").pn. OR ("4924893").urpn. AND (PGPB \| USPT \| USOC).dbnm. | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2022/04/13 01:44 PM |
| L203 | 2359 | e04h15/60,62.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/26 05:17 PM |
| L204 | 312 | 203 AND (auger screw corkscrew) | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/26 05:17 PM |
| L205 | 77 | ("1883477" \| "4832304" \| "4910902" \| "5046699" \| "5564232" \| "5881978" \| "5921035" \| "6095081" \| "6629389" \| "20090277368" \| "3519234" \| "4233769" \| "4524533" \| "4717110" \| "4765277" \| "5067683" \| "5181335" \| "5492429" \| "5502910" \| "5833181" \| "5921035" \| "6820379" \| "7007910" \| "7246783" \| "8407949" \| "20020014570" \| "20060060749" \| "20080156957" \| "20120104190" \| "168890" \| "345877" \| "907799" \| "1562343" \| "2269996" \| "2447444" \| "2563159" \| "2901789" \| "3059732" \| "3286962" \| "3318560" \| "3688454" \| "3865309" \| "4607608" \| "4928418" \| "5098057" \| "6401656" \| "6412236" \| "6481147" \| "6487977" \| "6698132" \| "6810630" \| "6901693" \| "D550071" \| "7493873" "8006946" \| "8230638" \| "9316016" \| | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2022/06/26 06:02 PM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | "20050268522").pn. OR ("8656651" \| "9447599" \| "2016/0360869" \| "9854899").urpn. AND (PGPB \| USPT \| USOC).dbnm. | | | | | |
| L206 | 77 | ((US-20090114260-A1 OR US-20100212709-A1 OR US-20070079857-A1 OR US-20130074894-A1 OR US-20150252585-A1 OR US-20180106064-A1 OR US-20140041703-A1 OR US-20150040957-A1 OR US-20140209132-A1 OR US-20040123886-A1 OR US-20040123887-A1 OR US-20120291830-A1 OR US-20190119942-A1 OR US-20030089390-A1 OR US-20160360869-A1 OR US-20210062535-A1 OR US-20210002918-A1 OR US-20210293044-A1 OR US-20210293045-A1 OR US-20210293046-A1 OR US-20210230899-A1).did. AND PGPB.dbnm.) OR ((US-7841356-B2 OR US-9051754-B2 OR US-8720461-B2 OR US-3970096-A OR US-4590956-A OR US-8424549-B1 OR US-7406977-B1 OR US-5823217-A OR US-8899251-B2 OR US-9051755-B2 OR US-9113724-B1 OR US-5345962-A OR US-7708339-B2 OR US-4716918-A OR US-8087423-B2 OR US-9051756-B1 OR US-5080123-A OR US-8453664-B2 OR US-4739784-A OR US-4881565-A OR US-4930534-A OR US-6964277-B2 OR US-5299590-A OR US- | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2022/06/28 10:49 AM |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 5950649-A OR US-7789097-B1 OR US-6286531-B1 OR US-9482024-B2 OR US-10190330-B2 OR US-5927311-A OR US-10753117-B2 OR US-8656651-B1 OR US-9447599-B1 OR US-9854899-B2 OR US-4832304-A OR US-5046699-A OR US-6487977-B1 OR US-4924893-A OR US-5678704-A OR US-11111690-B2).did. AND USPT.dbnm.) OR ((WO-2011150477-A1 OR DE-102009020795-A1 OR FR-2884844-A1 OR WO-0204768-A1 OR KR-101315166-B1).did. AND FPRS.dbnm.) OR ((US-3394720-A OR US-3042053-A OR US-3070107-A OR US-3075536-A OR US-2554688-A OR US-3286962-A OR US-3052249-A OR US-2186510-A).did. AND USOC.dbnm.) OR ((US-20180106064-A1 OR US-20210002918-A1 OR US-20190119942-A1).did. AND DWPI.dbnm.) OR ((KR-101315166-B1).did. AND FTDB.dbnm.) | | | | | |
| L207 | 30 | 206 AND (elastic bungee) | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/28 10:50 AM |
| L208 | 20 | 207 NOT barnes.in. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/28 10:50 AM |
| L209 | 55 | e04h15/64.cpc. AND (elatic bungee) | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/28 10:54 AM |
| L210 | 236 | e04h15/64.cpc. AND (elastic bungee) | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/28 10:54 AM |
| L211 | 248 | e04h15/64.cpc. AND strap | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/28 11:06 AM |
| L212 | 11 | ("824332" \| "3139662" \| | (US-PGPUB; USPAT; | OR | ON | ON | 2022/06/28 |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 146 of 551

| | | | | | | | | 11:09 AM |
|---|---|---|---|---|---|---|---|---|
| | | "3422504" \| "3597812" \| "3780400" \| "4184233" \| "4534089").pn. OR ("5291640").urpn. AND (PGPB \| USPT \| USOC).dbnm. | USOCR) | | | | | |
| L213 | 13 | "17232799" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/28 04:46 PM |
| L214 | 12 | 206 AND telescop$4 | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/06/29 03:06 PM |
| L215 | 75 | ((US-20210062535-A1 OR US-20210002918-A1 OR US-20210293044-A1 OR US-20210293045-A1 OR US-20210293046-A1 OR US-20210230899-A1 OR US-20150040957-A1 OR US-20140041703-A1 OR US-20100212709-A1 OR US-20090114260-A1 OR US-20070079857-A1 OR US-20040123886-A1 OR US-20040123887-A1 OR US-20030089390-A1 OR US-20150252585-A1 OR US-20120291830-A1 OR US-20190119942-A1 OR US-20180106064-A1 OR US-20140209132-A1 OR US-20130074894-A1 OR US-20160360869-A1).did. AND PGPB.dbnm.) OR ((US-20210002918-A1 OR US-20190119942-A1 OR US-20180106064-A1).did. AND DWPI.dbnm.) OR ((US-4924893-A OR US-5678704-A OR US-11111690-B2 OR US-9482024-B2 OR US-9113724-B1 OR US-9051755-B2 OR US-9051754-B2 OR US-8720461-B2 OR US-8453664-B2 OR US-8424549-B1 OR US-8087423-B2 OR US- | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/09/14 01:38 PM |

| | | 7841356-B2 OR US-7789097-B1 OR US-7708339-B2 OR US-7406977-B1 OR US-6964277-B2 OR US-6286531-B1 OR US-5950649-A OR US-5927311-A OR US-5823217-A OR US-5345962-A OR US-5299590-A OR US-4930534-A OR US-4881565-A OR US-4739784-A OR US-4716918-A OR US-4590956-A OR US-3970096-A OR US-9051756-B1 OR US-8899251-B2 OR US-5080123-A OR US-10190330-B2 OR US-10753117-B2 OR US-6487977-B1 OR US-5046699-A OR US-4832304-A OR US-9854899-B2 OR US-8656651-B1 OR US-5771912-A OR US-5291640-A OR US-9447599-B1).did. AND USPT.dbnm.) OR ((KR-101315166-B1 OR WO-2011150477-A1 OR FR-2884844-A1 OR WO-0204768-A1 OR DE-102009020795-A1).did. AND FPRS.dbnm.) OR ((KR-101315166-B1).did. AND FTDB.dbnm.) OR ((US-3052249-A OR US-2186510-A OR US-3394720-A OR US-3075536-A OR US-3042053-A OR US-2554688-A OR US-3070107-A OR US-3286962-A).did. AND USOC.dbnm.) | | | | | |
|---|---|---|---|---|---|---|---|
| L216 | 1 | "17471658" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/09/14 01:39 PM |
| L217 | 31 | "2524310" | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2022/09/14 01:46 PM |
| L218 | 147 | e04h15/005.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; | OR | ON | ON | 2022/09/14 04:23 PM |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 148 of 551

| | | | JPO; IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|
| L219 | 101 | ("10066417"\|"10252778"\|"10602817"\|"11156012"\|"11219286"\|"1129194"\|"1571295"\|"20030066550"\|"20030089390"\|"20070079857"\|"20120291830"\|"20130074894"\|"20140041703"\|"20140209132"\|"20150040957"\|"20150252585"\|"20150354244"\|"2186510"\|"2190566"\|"2554688"\|"2963031"\|"3042053"\|"3051185"\|"3052249"\|"3070107"\|"3075536"\|"3190300"\|"3286962"\|"3388711"\|"3394720"\|"4590956"\|"4646770"\|"4739784"\|"4750508"\|"4915120"\|"4924893"\|"4930534"\|"5046699"\|"5080123"\|"5215109"\|"5291640"\|"5299590"\|"5358209"\|"5546971"\|"5678704"\|"5771912"\|"5823217"\|"5927311"\|"5950649"\|"6321861"\|"6964277"\|"7021866"\|"7191996"\|"7316239"\|"7406977"\|"7708339"\|"7789097"\|"8424549"\|"8453664"\|"8720461"\|"8899251"\|"9051755"\|"9051756"\|"9113724"\|"9447599"\|"9903134"\|"D263984"\|"D363755"\|"D397401"\|"D398363"\|"D421532"\|"D438929"\|"D544062"\|"D555748"\|"D577092"\|"D593315"\|"D630834"\|"D739555"\|"D741437"\|"D843200"\|"D859808"\|"D877486"\|"D928899"\|"D947975"\|"D948653"\|"D960277").PN. | (US-PGPUB; USPAT; USOCR) | OR | ON | ON | 2023/03/09 01:54 PM |
| L220 | 18 | "2011012969" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, | OR | ON | ON | 2023/03/09 02:00 PM |

| | | | TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | | | | |
|---|---|---|---|---|---|---|---|---|
| L221 | 6 | "2022174316" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/03/09 02:01 PM |
| L222 | 13 | "2020089599" | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/03/09 02:02 PM |
| L223 | 105 | ((US-20210293044-A1 OR US-20210293045-A1 OR US-20210293046-A1 OR US-20210230899-A1 OR US-20210062535-A1 OR US-20210002918-A1 OR US-20190119942-A1 OR US-20180106064-A1 OR US-20160360869-A1 OR US-20150252585-A1 OR US-20150040957-A1 OR US-20140209132-A1 OR US-20140041703-A1 OR US-20130074894-A1 OR US-20120291830-A1 OR US-20100212709-A1 | (US-PGPUB; USPAT; USOCR; FIT (AU, AP, AT, BE, BG, BR, BY, CA, CH, CN, CS, CU, CZ, DD, DE, DK, EA, EE, EP, ES, FI, FR, GB, HR, HU, ID, IE, IL, IS, IT, JP, KR, LT, LU, LV, MA, OA, RU, SU, WO, MC, MD, MY, NL, NO, NZ, PH, PL, PT, RO, RS, SE, SG, SI, SK, TH, TN, TR, TW, UA, VN); FPRS; EPO; JPO; DERWENT; IBM_TDB) | OR | ON | ON | 2023/03/09 04:23 PM |

| | | OR US-20090114260-A1 OR US-20070079857-A1 OR US-20040123886-A1 OR US-20040123887-A1 OR US-20030089390-A1 OR US-20210404208-A1 OR US-20030066550-A1 OR US-20150354244-A1).did. AND PGPB.dbnm.) OR ((US-11111690-B2 OR US-10753117-B2 OR US-10190330-B2 OR US-9854899-B2 OR US-9482024-B2 OR US-9447599-B1 OR US-9113724-B1 OR US-9051755-B2 OR US-9051754-B2 OR US-9051756-B1 OR US-8899251-B2 OR US-8720461-B2 OR US-8656651-B1 OR US-8453664-B2 OR US-8424549-B1 OR US-8087423-B2 OR US-7841356-B2 OR US-7789097-B1 OR US-7708339-B2 OR US-7406977-B1 OR US-6964277-B2 OR US-6487977-B1 OR US-6286531-B1 OR US-5950649-A OR US-5927311-A OR US-5823217-A OR US-5771912-A OR US-5678704-A OR US-5345962-A OR US-5299590-A OR US-5291640-A OR US-5080123-A OR US-5046699-A OR US-4930534-A OR US-4924893-A OR US-4881565-A OR US-4832304-A OR US-4739784-A OR US-4716918-A OR US-4590956-A OR US-3970096-A OR US-4646770-A OR US-4750508-A OR US-4915120-A OR US-5215109-A OR US-5358209-A OR US- | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 5546971-A OR US-6321861-B1 OR US-7021866-B2 OR US-7191996-B2 OR US-7316239-B2 OR US-9903134-B2 OR US-10066417-B1 OR US-10252778-B1 OR US-10602817-B2 OR US-11156012-B2 OR US-11219286-B2).did. AND USPT.dbnm.) OR ((KR-101315166-B1 OR WO-2011150477-A1 OR DE-102009020795-A1 OR FR-2884844-A1 OR WO-0204768-A1 OR CA-2524310-A1 OR WO-2011012969-A3).did. AND FPRS.dbnm.) OR ((US-3394720-A OR US-3286962-A OR US-3075536-A OR US-3070107-A OR US-3052249-A OR US-3042053-A OR US-2554688-A OR US-2186510-A OR US-1129194-A OR US-1571295-A OR US-2190566-A OR US-2963031-A OR US-3051185-A OR US-3190300-A OR US-3388711-A).did. AND USOC.dbnm.) OR ((WO-2022174316-A1 OR WO-2020089599-A1).did. AND FTDB.dbnm.) | | | | | |
| L224 | 2508 | e04h15/60,62.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2023/03/09 04:34 PM |
| L225 | 156 | e04h15/005.cpc. | (US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; IBM_TDB) | OR | ON | ON | 2023/03/09 04:34 PM |

## PE2E SEARCH – Search History (Interference)

There are no Interference searches to show.

## PE2E SEARCH – Search History (Similarity Search)

No Similarity Results available

| | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | *To Be Assigned* |
| | Filing Date | *Concurrently Herewith* |
| | First Named Inventor | Dane Brooks Barnes |
| | Art Unit | *To Be Assigned* |
| | Examiner Name | *To Be Assigned* |
| Sheet 1 of 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-1,129,194 | 02-23-1915 | Hanley | |
| | 2 | US-1,571,295 | 02-02-1926 | Newman | |
| | 3 | US-2,186,510 | 01-09-1940 | Walter *et al.* | |
| | 4 | US-2,190,566 | 02-13-1940 | Julian | |
| | 5 | US-2,554,688 | 05-29-1951 | Vollweiler | |
| | 6 | US-2,963,031 | 12-06-1960 | Carroll | |
| | 7 | US-3,042,053 | 07-03-1962 | Gabriel | |
| | 8 | US-3,051,185 | 08-28-1962 | Reynolds | |
| | 9 | US-3,052,249 | 09-04-1962 | Seaman *et al.* | |
| | 10 | US-3,070,107 | 12-25-1962 | Beatty | |
| | 11 | US-3,075,536 | 01-29-1963 | Parker | |
| | 12 | US-3,190,300 | 06-22-1965 | Wear'n | |
| | 13 | US-3,286,962 | 11-22-1966 | Warth | |
| | 14 | US-3,388,711 | 06-18-1968 | Huddle | |
| | 15 | US-3,394,720 | 07-30-1968 | Moss | |
| | 16 | US-4,590,956 | 05-27-1986 | Griesenbeck | |
| | 17 | US-4,646,770 | 03-03-1987 | Lobato | |
| | 18 | US-4,739,784 | 04-26-1988 | Fast | |
| | 19 | US-4,750,508 | 06-14-1988 | Tatoian | |
| | 20 | US-4,915,120 | 04-10-1990 | Ziolkowski | |
| | 21 | US-4,924,893 | 05-15-1990 | Furey | |
| | 22 | US-4,930,534 | 06-05-1990 | Hill | |
| | 23 | US-5,046,699 | 09-10-1991 | Perreault *et al.* | |
| | 24 | US-5,080,123 | 01-14-1992 | Stein | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 03/09/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Complete if Known | |
|---|---|---|
| | Application Number | *To Be Assigned* |
| | Filing Date | *Concurrently Herewith* |
| | First Named Inventor | Dane Brooks Barnes |
| | Art Unit | *To Be Assigned* |
| | Examiner Name | *To Be Assigned* |
| Sheet    2    of    5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| | 25 | US-5,215,109 | 06-01-1993 | Kent, Jr. | |
| | 26 | US-5,291,640 | 03-08-1994 | Rise | |
| | 27 | US-5,299,590 | 08-05-1994 | Deibert *et al.* | |
| | 28 | US-5,358,209 | 10-25-1994 | Ward | |
| | 29 | US-5,546,971 | 08-20-1996 | Leonhardt | |
| | 30 | US-5,678,704 | 10-21-1997 | Deeds | |
| | 31 | US-5,771,912 | 06-30-1998 | Swetish | |
| | 32 | US-5,823,217 | 10-20-1998 | Rice | |
| | 33 | US-5,927,311 | 07-27-1999 | Jager | |
| | 34 | US-5,950,649 | 09-14-1999 | Gerig | |
| | 35 | US-6,321,861 | 11-27-2001 | Leichter | |
| | 36 | US-6,964,277 | 11-15-2005 | Naber | |
| | 37 | US-7,021,866 | 04-04-2006 | Keefe | |
| | 38 | US-7,191,996 | 03-20-2007 | Patsalaridis | |
| | 39 | US-7,316,239 | 01-08-2008 | Yang | |
| | 40 | US-7,406,977 | 08-05-2008 | Shires | |
| | 41 | US-7,708,339 | 05-04-2010 | Zapater | |
| | 42 | US-7,789,097 | 09-07-2010 | Sotirkys *et al.* | |
| | 43 | US-8,424,549 | 04-23-2013 | Goldsmith *et al.* | |
| | 44 | US-8,453,664 | 06-04-2013 | Parsons *et al.* | |
| | 45 | US-8,720,461 | 05-13-2014 | Nichols | |
| | 46 | US-8,899,251 | 12-02-2014 | Leung *et al.* | |
| | 47 | US-9,051,755 | 06-09-2015 | Heining *et al.* | |
| | 48 | US-9,051,756 | 06-09-2015 | Jenkins | |
| | 49 | US-9,113,724 | 08-25-2015 | Heining *et al.* | |
| | 50 | US-9,447,599 | 09-20-2016 | Parent | |
| | 51 | US-9,903,134 | 02-27-2018 | Munnerlyn | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 03/09/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| | | | | Complete if Known | |
|---|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Application Number | *To Be Assigned* | |
| | | | Filing Date | *Concurrently Herewith* | |
| | | | First Named Inventor | Dane Brooks Barnes | |
| | | | Art Unit | *To Be Assigned* | |
| | | | Examiner Name | *To Be Assigned* | |
| Sheet | 3 | of | 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| | 52 | US-10,066,417 | 09-04-2018 | Linyard *et al.* | |
| | 53 | US-10,252,778 | 04-09-2019 | Greer | |
| | 54 | US-10,602,817 | 03-31-2020 | Price | |
| | 55 | US-11,156,012 | 10-26-2021 | Graham | |
| | 56 | US-11,219,286 | 01-11-2022 | Cox | |
| | 57 | US-D263,984 | 04-20-1982 | Moss | |
| | 58 | US-D363,755 | 10-31-1995 | Diederich | |
| | 59 | US-D397,401 | 08-25-1998 | Diederich | |
| | 60 | US-D398,363 | 09-15-1998 | LoBue | |
| | 61 | US-D421,532 | 03-14-2000 | Koroncai | |
| | 62 | US-D438,929 | 03-13-2001 | Middleton *et al.* | |
| | 63 | US-D544,062 | 06-05-2007 | Baker | |
| | 64 | US-D555,748 | 11-20-2007 | Gyr *et al.* | |
| | 65 | US-D577,092 | 09-16-2008 | West | |
| | 66 | US-D593,315 | 06-02-2009 | Zemel | |
| | 67 | US-D630,834 | 01-18-2011 | Cohen | |
| | 68 | US-D739,555 | 09-22-2015 | McAlister | |
| | 69 | US-D741,437 | 10-20-2015 | Zimmer *et al.* | |
| | 70 | US-D843,200 | 03-19-2019 | Tjerrild | |
| | 71 | US-D859,808 | 09-17-2019 | Goldszer | |
| | 72 | US-D877,486 | 03-10-2020 | Chen | |
| | 73 | US-D928,899 | 08-24-2021 | Zhu | |
| | 74 | US-D947,975 | 04-05-2022 | Lah | |
| | 75 | US-D948,653 | 04-12-2022 | Lah | |
| | 76 | US-D960,277 | 08-09-2022 | Lah | |
| | 77 | US-2003/0066550 | 04-10-2003 | Al-Ghamdi | |
| | 78 | US-2003/0089390 | 05-15-2003 | Seo | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 03/09/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

WBD (US) 59557970v1

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | *To Be Assigned* |
| | | | Filing Date | *Concurrently Herewith* |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | *To Be Assigned* |
| | | | Examiner Name | *To Be Assigned* |
| Sheet | 4 | of | 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| | 79 | US-2007/0079857 | 04-12-2007 | Tseng |
| | 80 | US-2012/0291830 | 11-22-2012 | Crimi |
| | 81 | US-2013/0074894 | 03-28-2013 | Cook |
| | 82 | US-2014/0041703 | 02-13-2014 | Funston |
| | 83 | US-2014/0209132 | 07-31-2014 | Landry |
| | 84 | US-2015/0040957 | 02-12-2015 | Mallookis *et al.* |
| | 85 | US-2015/0252585 | 09-10-2015 | Mallookis *et al.* |
| | 86 | US-2015/0354244 | 12-10-2015 | Fernandez Gonzalez |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br><br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | 87 | AU 200511300 | 09-01-2005 | Gyr | | |
| | 88 | BR 302019005581 | 12-10-2019 | Vinicius Rolim Tamassia | | |
| | 89 | CA 2524310 | 04-25-2006 | Aqua-Leisure Industries, Inc | | |
| | 90 | CH 130505 | 05-14-2004 | Fischer | | |
| | 91 | CH 132260 | 12-15-2005 | Fischer | | |
| | 92 | DE 10 2009 020 795 | 11-04-2010 | Schmidt | | |
| | 93 | FR 2 884 844 | 04-26-2005 | Cahours De Virgile | | |
| | 94 | KR 10-1315166 | 10-07-2013 | Kang | | Machine Translation |
| | 95 | WO 02/04768 | 01-17-2002 | Selby | | |
| | 96 | WO 2011/012969 A2 | 02-03-2011 | De Pasquale | | |
| | 97 | WO 2020/089599 | 05-07-2020 | Osborne | | |
| | 98 | WO 2022/174316 | 08-25-2022 | Ribeiro Lucchese Gualdi | | Machine Translation |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 03/09/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | *To Be Assigned* |
| | | | Filing Date | *Concurrently Herewith* |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | *To Be Assigned* |
| | | | Examiner Name | *To Be Assigned* |
| Sheet | 5 | of | 5 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

## OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 99 | YouTube video by Robert Marazzita:  The Best Beach Cabana – Set Up and Tear Down, July 9, 2015, [site visited August 8, 2017]; Available on the Internet URL: <https:www.youtube.com/watch?v=LfccH7yV6SE>. | |
| | 100 | YouTube video by Robb's Homemade Life: Make $15 Beach Shade tent Easy Quick DIY, October 6, 2015 [site visited August 8, 2017] Available on the internet URL: <www.youtube.com/watch?v+X20b4pLJx1c> | |
| | 101 | YouTube video by Beachspirit: Kitent (R) - the Floating beach tent for sun shade, October 8, 2016 [site visited August 8, 2017] Available on the internet URL: <https://m.youtube.com/watch?v=OUaDZeqdTRQ> | |
| | 102 | YouTube video by ZiggyShade Beach Sunshade: ZiggyShade – Beach Sunshade – Set up instructions November 24, 2016 [site visited August 8, 2017] Available on the internet URL: <https://youtu.be/1krQ0rlumws> | |
| | 103 | YouTube video by bibitedog: How to set up a butterfly arch, May 26, 2012 [site visited December 18, 2018] Available on the internet URL: <https://www.youtube.com/watch?v=FOTYtjQAL4s> | |
| | 104 | Suniela Beach Portable Shade Cabanas, [site visited October 21, 2021], Available on the internet URL: <https://suniela.com> | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 03/09/2023 |
|---|---|---|---|

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 30, 2022*

WBD (US) 59557970v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

# Bibliographic Data

Application No: 18/072,143

Foreign Priority claimed: ○ Yes ● No

35 USC 119 (a-d) conditions met: ☐ Yes ☑ No      ☐ Met After Allowance

Verified and Acknowledged: /Noah Chandler Hawk/ | NCH

Examiner's Signature | Initials

Title: SHADING SYSTEM AND METHOD OF USE

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 11/30/2022 **RULE** | 135 | 3636 | S105508 1010US.C8 (0040.5 |

**APPLICANTS**

Shibumi Shade, Inc.,

**INVENTORS**

Dane Brooks Barnes, Raleigh, NC, UNITED STATES

Alexander Griffith Slater, Raleigh, NC, UNITED STATES

Scott Christian Barnes, Raleigh, NC, UNITED STATES

**CONTINUING DATA**

This application is a CON of 17471658 09/10/2021

This application is a CON of 17343114 06/09/2021 PAT 11536046

17343114 is a CON of 17232799 04/16/2021

17471658 is a CON of 17232799 04/16/2021

17232799 is a CON of 16987886 08/07/2020 PAT 11111690

16987886 is a CON of 16224465 12/18/2018 PAT 10753117

16224465 is a CON of 15675715 08/12/2017 PAT 10190330

15675715 has PRO of 62409426 10/18/2016

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

12/13/2022

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489

ATLANTA, GA 30357-0037

UNITED STATES

**FILING FEE RECEIVED**

$1,820



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508<br>1010US.C8 (0040.5 | 1080 |

| | | | |
|---|---|---|---|
| 26158 | 7590 | 03/14/2023 | EXAMINER |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/14/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

<table>
<tr><td rowspan="2"><strong><em>Office Action Summary</em></strong></td><td colspan="2"><strong>Application No.</strong><br>18/072,143</td><td colspan="2"><strong>Applicant(s)</strong><br>Barnes et al.</td></tr>
<tr><td colspan="2"><strong>Examiner</strong><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br>3636</td><td><strong>AIA (FITF) Status</strong><br>Yes</td></tr>
</table>

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☐ Responsive to communication(s) filed on _____.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL.**    2b)☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>21-40</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>21-40</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>9/10/21</u> is/are: a)☐ accepted or b)☑ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date <u>11/30/22</u>.
3) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.


### *Drawings*

2.      The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every feature of the invention specified in the claims.  Therefore, the "plurality of longitudinally-extending sections are arrangeable so that they are non-coextensive relative to one another" recited in Claim 32 and "the plurality of longitudinally-extending sections are arranged telescopically with one another" recited in Claim 33 must be shown or the feature(s) canceled from the claim(s).  No new matter should be entered.

        Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New

Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner,

the applicant will be notified and informed of any required corrective action in the next

Office action. The objection to the drawings will not be held in abeyance.

### *Claim Rejections - 35 USC § 102*

3.       The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.
>
> (a)(2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention.

4.       Claims 21-27 and 34-39 are rejected under 35 U.S.C. 102(a)(1) as being

anticipated by KR 10-1315166 (Kang).

      a.       Regarding Claim 21, Kang teaches a system for providing shade onto a

surface, the system comprising: a frame (100) engageable with the surface; a

sheet of material (200/400) extending between a suspension end (at the frame

100) and an opposing trailing end, the suspension end of the sheet of material

being coupleable with the frame about a portion of the frame.

      b.       Regarding Claim 22, Kang teaches that the sheet of material is a unitary

sheet of material or comprises a plurality of sheets of material coupleable

together.

c.      Regarding Claim 23, Kang teaches that the plurality of sheets of material are selectively coupled together (via 201/401) so that a first sheet (200) of material is coupled with the frame about a suspension end and a suspension end of a second sheet of material is removeably coupled to a trailing end of the first sheet of material.

d.      Regarding Claim 24, Kang teaches that the sheet of material has at least one set of parallel sides (the front and rear sides).

e.      Regarding Claim 25, Kang teaches that the sheet of material has two sets of parallel sides (the front and rear sides are parallel and the left and right sides are parallel).

f.      Regarding Claim 26, Kang teaches that the sheet of material comprises one or more vent holes (240) defined within the sheet of material, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

g.      Regarding Claim 27, Kang teaches that the trailing end of the sheet of material (the trailing end of 200 when the device is used as in Fig. 2) is spaced apart from the portion of the frame such that when a wind force is applied to the sheet of material, the sheet of material extends at an angle relative to the surface, the angle varying with the wind force, and when there is de minimis wind force, the sheet of material is in contact with the surface at the trailing end (the sheet is longer front-to-back than the height of the frame, therefore, the tail will inherently contact the surface when there is no wind).

h.      Regarding Claim 34, Kang teaches that the frame comprises a singular, longitudinally- extending section ("a pole for a tent" – the use of the word "a" indicates that the frame is a single pole).

i.      Regarding Claim 35, Kang teaches that the frame is directly engageable with the surface.

j.      Regarding Claim 36, Kang teaches two frames (100, 100') each being engageable with the surface, wherein the sheet of material is coupleable with the first frame about the suspension end and the sheet of material is coupleable with the second frame about the opposing trailing end.

k.      Regarding Claim 37, Kang teaches an object (330) engageable (at 310) with the frame or with the sheet of material to act as a counterweight against a wind force applied to the sheet of material so that the frame remains engaged with the surface when the wind force is applied to the sheet of material.

l.      Regarding Claim 38, Kang teaches a cord (330) having a first end and a second end, the first end or the second end of the cord being coupleable to the frame (at 310) or the sheet of material.

m.      Regarding Claim 39, Kang teaches an anchor (320) coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when a wind force is applied to the sheet of material.

## Claim Rejections - 35 USC § 103

5.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

6.      Claims 28-32 are rejected under 35 U.S.C. 103 as being unpatentable over

Kang, as applied to Claim 21 above in view of Joo-Tai in US Patent 6286531. Kang is

silent on the use of a multi-part frame. Joo-Tai teaches an arched frame, wherein the

frame comprises a plurality of longitudinally-extending sections (2), the plurality of

longitudinally-extending sections are arrangeable so that at least a first longitudinally-

extending section and a second longitudinally-extending section are each engageable

with the surface at first ends thereof and are coupleable to one another about opposing,

second ends or are each respectively coupleable to first and second ends of at least

one intermediate longitudinally-extending section arranged therebetween, further

comprising a cable (5) extending through the plurality of longitudinally-extending

sections of the frame from the first end of the first longitudinally-extending section to the

first end of the second longitudinally-extending section and any of the at least one

intermediate longitudinally-extending sections arranged therebetween, wherein the

plurality of longitudinally-extending sections are arrangeable so that they are non-

coextensive relative to one another (the leftmost section is not co-extensive with the

rightmost section), wherein a first longitudinally-extending section is engaged with the

surface and a second, non-coextensive longitudinally-extending section is engaged with the first longitudinally-extending section (via 7) so that the second, non-coextensive longitudinally-extending section is arranged at a non-zero angle relative to a longitudinal axis of the first longitudinally-extending section (the central curved section and the bottom-most straight section meet this arrangement), and wherein the suspension end of the sheet of material is coupleable to the second, non-coextensive longitudinally-extending section (the sheet of Kang is not coupled to the end-most sections of the pole). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-section pole as taught by Joo-Tai in order to allow the user to more compactly store the device.

7.    Claims 28 and 33 are rejected under 35 U.S.C. 103 as being unpatentable over Kang, as applied to Claim 21 above in view of Seaman et al. in US Patent 3052249. Kang is silent on the use of a multi-part frame. Seaman teaches a frame (24/34), wherein the frame comprises a plurality of longitudinally-extending sections (24 and 34) and wherein the plurality of longitudinally-extending sections are arranged telescopically with one another such that a second longitudinally-extending section (34) is receivable in and extendable from a first longitudinally-extending section (24). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Seaman for, as Seaman teaches, "compactness in storing and transporting the dismantled tent structure."

8.    Claims 38-40 are rejected under 35 U.S.C. 103 as being unpatentable over Kang, as applied to Claim 21 above in view of Beatty in US Patent 3070107. Kang is

silent on the use of an anchor coupled to the trailing edge of the sheet. Beatty teaches a system for providing shade including a sheet (19), and further comprising a cord (22) having a first end and a second end, the first end or the second end of the cord being coupleable to the sheet of material, further comprising an anchor (23) coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when a wind force is applied to the sheet of material, wherein the first end of the cord is coupleable to the trailing end of the sheet of material and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind force is applied to the sheet of material. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a trailing end anchor as taught by Beatty in order to prevent excessive flapping of the sheet.

### *Conclusion*

9.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480. The examiner can normally be reached M-F 9am to 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 |

**CONFIRMATION NO. 1080**

26158
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

**PUBLICATION NOTICE**

*OC000000137624611*

**Title:**SHADING SYSTEM AND METHOD OF USE

**Publication No.**US-2023-0089529-A1
**Publication Date:**03/23/2023

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 170 of 551

|  | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 18/072,143 |
| | | | | Filing Date | November 30, 2022 |
| | | | | First Named Inventor | Dane Brooks Barnes |
| | | | | Art Unit | 3636 |
| | | | | Examiner Name | Noah Chandler Hawk |
| Sheet | 1 | of | 1 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 105 | US-6,209,149 | 04-03-2001 | Song *et al.* | |
| | 106 | US-2007/0295380 | 12-27-2007 | Glaeser | |
| | 107 | US-2010/0212709 | 08-26-2010 | Sotirkys *et al.* | |
| | 108 | US-2018/0106064 | 04-19-2018 | Barnes *et al.* | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | 109 | AU 2020100586 | 05-28-2020 | Fraser | | |
| | 110 | WO 82/03317 | 10-14-1982 | Montgomery | | |
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON APRIL 14, 2023.*

WBD (US) 61257820v1

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re:          Barnes *et al.*                    Confirmation No.:   1080
Appl. No.:   18/072,143                         Group Art Unit:     3636
Filed:          November 30, 2022              Examiner:            Noah Chandler Hawk
For:            SHADING SYSTEM AND METHOD OF USE

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT CITATION UNDER 37 C.F.R. § 1.97(c)

Sir:

Attached is a list of documents on form PTO-1449 along with a copy of any cited foreign patent documents and non-patent literature documents in accordance with 37 CFR 1.98(a)(2).

It is requested that the Examiner consider these documents and officially make them of record in accordance with the provisions of 37 C.F.R. § 1.97 and Section 609 of the MPEP. By identifying the listed documents, Applicants in no way make any admission as to the prior art status of the listed documents, but are instead identifying the listed documents for the sake of full disclosure.

This Information Disclosure Statement is submitted in accordance with 37 C.F.R. § 1.97(c), before final Office Action or Allowance, whichever is earlier. Each item of information contained in this statement was first cited in a communication from a foreign patent office in a counterpart foreign application not more than three (3) months prior to the filing of this statement. In this regard, Applicants note that the communication from the foreign patent office was not received by any individual designated by 37 CFR § 1.56(c) more than thirty (30) days prior to the filing of this Information Disclosure Statement.

It is not believed that any fees are due under 37 C.F.R. § 1.17(p), however, in the event that additional fees are required, the Commissioner is authorized to charge any additional fee, or credit any refund, to our Deposit Account No. 09-0528.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/Ryan W. Cagle/

Ryan W. Cagle
Registration No. 47,468

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON APRIL 14, 2023.*

WBD (US) 61257829v1

**(12) INNOVATION PATENT**
**(19) AUSTRALIAN PATENT OFFICE**

(11) Application No. **AU 2020100586 A4**

(54) Title
**A shelter**

(51) International Patent Classification(s)
***E04H 15/44*** (2006.01)      ***E04H 15/54*** (2006.01)
***E04H 15/40*** (2006.01)

(21)   Application No:   **2020100586**        (22)   Date of Filing:   **2020.04.17**

(45)   Publication Date:          **2020.05.28**
(45)   Publication Journal Date:  **2020.05.28**
(45)   Granted Journal Date:      **2020.05.28**

(71)   Applicant(s)
**Mark Andrew Fraser**

(72)   Inventor(s)
**Fraser, Mark Andrew**

(74)   Agent / Attorney
**Spruson & Ferguson, GPO Box 3898, Sydney, NSW, 2001, AU**

## ABSTRACT

The present invention relates to a shelter. The shelter includes a frame and a canopy. The canopy includes a fixed-end non-releasably extending from the frame and a free-end for fluttering in the breeze. Advantageously, the fixed-end non-releasably extends from the frame, and need not be attached to the frame during assembly on site, thereby resulting in improved assembly time.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 174 of 551

2020100586    17 Apr 2020



Figure 1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 175 of 551

17 Apr 2020

2020100586

AUSTRALIA

PATENTS ACT 1990

COMPLETE SPECIFICATION

INNOVATION PATENT

**A SHELTER**

The following statement is a full description of this invention including the best method of performing it known to me:

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 176 of 551

# A SHELTER

## TECHNICAL FIELD

[0001]     The present invention relates to a shelter. The present invention has particular, although not exclusive application to a beach shelter suitable to windy conditions.

## BACKGROUND

[0002]     The reference to any prior art in this specification is not, and should not be taken as an acknowledgement or any form of suggestion that the prior art forms part of the common general knowledge.

[0003]     US 10,190,330 discloses a beach shelter suitable for windy conditions. The shelter includes a continuous frame, and a canopy including a fixed-end extending from the frame.  A free-end of the canopy flutters freely in the breeze.

[0004]     The frame includes frame segments which are serially interconnected during erection of the structure. In practice, assembly can be a time-consuming exercise, complicated in extremely windy conditions at the beach with sand flying around.

[0005]     Once assembled, the frame is threaded through loops of the canopy. Once again, assembly can be a time-consuming exercise, complicated in extremely windy conditions at the beach with sand flying around.

[0006]     The preferred embodiment provides for improved assembly of the shelter.

## SUMMARY OF THE INVENTION

[0007]     According to one aspect of the present invention, there is provided a shelter including:

a frame; a

a canopy including a fixed-end non-releasably extending from the frame and a free-end for fluttering in the breeze.

[0008]    Advantageously, the fixed-end non-releasably extends from the frame, and need not be attached to the frame during assembly on site, thereby resulting in improved assembly time.

[0009]    The frame may include frame segments, and respective hinges interconnecting adjacent frame segments. Advantageously, the frame segments can be simply hingedly extended to form the expanded frame, and need not be connected together during assembly on site, thereby resulting in improved assembly time.

[00010]    The canopy may define a sleeve though which the frame passes. The shelter may include one or more screws for non-releasably affixing the fixed-end to the frame.

[00011]    The frame may terminate in a pair of uprights. The shelter may include one or more support spurs extending from the frame toward ground. The support spurs may be hinged to the frame. The support spurs may extend in line with the canopy.

[00012]    The shelter may further include one or more anchors, and respective lines extending from the anchors toward the frame. Each anchor may include a receptacle.

[00013]    According to one aspect of the present invention, there is provided a shelter including:

a frame including a frame segments, and respective hinges interconnecting adjacent frame segments; and

a canopy including a fixed-end for extending from the frame and a free-end for fluttering in the breeze.

[00014]    Any of the features described herein can be combined in any combination with any one or more of the other features described herein within the scope of the invention.

**BRIEF DESCRIPTION OF THE DRAWINGS**

[00015]    Preferred features, embodiments and variations of the invention may be discerned from the following Detailed Description which provides sufficient information for those skilled in the art to perform the invention. The Detailed Description is not to be

regarded as limiting the scope of the preceding Summary of the Invention in any way. The Detailed Description will make reference to a drawing as follows:

[00016]    Figure 1 is a schematic view of a shelter in accordance with an embodiment of the present invention.

## DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

[00017]    According to an embodiment of the present invention, there is provided a portable beach shelter 100 as shown in Figure 1. The shelter 100 includes a continuous frame 102 engaging with the sand 103 at either end. A sheet canopy 104 includes a fixed-end 106 which non-releasably extends from the top of the frame 102.  A free-end 108 of the canopy 104 flutters in the breeze providing shade underneath from the sun. A couple of persons can be readily sheltered beneath the canopy 104.

[00018]    Advantageously, the fixed-end 106 non-releasably extends from the frame 102, and need not be attached to the frame 102 during assembly at the beach, thereby resulting in improved assembly time.

[00019]    The frame 102 includes multiple frame segments 110, and respective hinges 112 interconnecting adjacent frame segments 110. Advantageously, the frame segments 110 can be simply hingedly extended to form the expanded frame 102, and need not be connected together during assembly at the beach, thereby resulting in improved assembly time.

[00020]    The canopy 104 defines a sleeve 114 at the fixed-end 106 though which the frame 102 passes. The shelter 100 includes screws for passing through and non-releasably affixing the fixed-end 106 to the frame 102. The screws are screwed in the opposing ends of the sleeve 114 or along the length of the canopy's fixed-end 106, or both.

[00021]    The frame 102 terminates in a pair of sand-engaging upright segments, from which a pair of inclined segments extend toward each other to form a peak. The shelter 100 includes a pair of support spurs 116, extending from half way or above up the upright segments, toward the sand 103 (i.e. ground). The inclined support spurs 116 are also connected to the frame 102 with hinges 112. The support spur segments 116 fold

flat with the upright segments for transport, and extend in line with the canopy 104 in the wind. The uprights also fold in half, about the hinge 112, so the whole frame 102 can be collapsed with the segments 110 compactly stacked or bundled for transport without the need to release the canopy 104.

[00022]    Although not always required, the shelter 100 further includes three sand anchors 118, and respective lines 120 extending from the anchors 118 toward the frame 102 to which they are releasably tied. Each anchor 118 includes a fabric receptacle which can be filled with sand 103.

[00023]    A method for assembling the shelter 100 at the beach is briefly described.

[00024]     Initially, the shelter 100 is transported in a collapsed state to the beach in a carry bag.

[00025]    The frame segments 110 are expanded about the hinges 112 to form the uprights and peak. The canopy 104, permanently fastened to the frame 102 at the fixed-end 106, is unwound from around the continuous frame 102.

[00026]    The continuous frame 102 is then stood upright, standing from the sand perpendicular the breeze. The spurs 116 are pivoted outwardly to stabilize the frame 102 now free standing on the sand 103.

[00027]    The anchors 118 can be filled with sand 103 and tied to the frame 102 with lines 120 as required.

[00028]    At the end of the day, the shelter 100 can be unassembled for transport and storage by performing the reverse steps above.

[00029]    A person skilled in the art will appreciate that many embodiments and variations can be made without departing from the ambit of the present invention.

[00030]    In compliance with the statute, the invention has been described in language more or less specific to structural or methodical features. It is to be understood that the invention is not limited to specific features shown or described since the means herein described comprises preferred forms of putting the invention into effect. The invention

17 Apr 2020

2020100586

is, therefore, claimed in any of its forms or modifications within the proper scope of the appended claims appropriately interpreted by those skilled in the art.

[00031]    Reference throughout this specification to 'one embodiment' or 'an embodiment' means that a particular feature, structure, or characteristic described in connection with the embodiment is included in at least one embodiment of the present invention.  Thus, the appearance of the phrases 'in one embodiment' or 'in an embodiment' in various places throughout this specification are not necessarily all referring to the same embodiment.  Furthermore, the particular features, structures, or characteristics may be combined in any suitable manner in one or more combinations.

**The claims defining the invention are as follows:**

1.      A shelter including:

a frame; a

a canopy including a fixed-end non-releasably extending from the frame and a free-end for fluttering in the breeze.

2.      A shelter as claimed in claim 1, wherein the frame includes frame segments, and respective hinges interconnecting adjacent frame segments.

3.      A shelter as claimed in claim 1 or claim 2, wherein the canopy defines a sleeve though which the frame passes and one or more fasteners for non-releasably affixing the fixed-end to the frame.

4.      A shelter as claimed in any one of the preceding claims, wherein the frame includes one or more support spurs extending from the frame toward ground.

5.      A shelter as claimed in claim 4, wherein each support spur is hinged to the frame so that the frame can be collapsed with stacked or bundled together segments without the need to release the canopy.

6.    A shelter including:

a frame including a frame segments, and respective hinges interconnecting adjacent frame segments; and

a canopy including a fixed-end for extending from the frame and a free-end for fluttering in the breeze.

2020100586    17 Apr 2020



Figure 1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 183 of 551

# PCT

WORLD INTELLECTUAL PROPERTY ORGANIZATION
International Bureau



INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

| (51) International Patent Classification [3] : | | (11) International Publication Number: | WO 82/ 03317 |
|---|---|---|---|
| A45F 1/00, 1/14; E04B 1/347 | A1 | (43) International Publication Date: | 14 October 1982 (14.10.82) |

(21) International Application Number: PCT/AU82/00048

(22) International Filing Date: 5 April 1982 (05.04.82)

(31) Priority Application Number: PE 8327

(32) Priority Date: 6 April 1981 (06.04.81)

(33) Priority Country: AU

(71)(72) Applicant and Inventor: MONTGOMERY, Rodney, Lee [US/AU]; 4 Kellaway Street, Fannie Bay, Darwin, N.T. 5790 (AU).

(74) Agent: GRANT ADAMS & COMPANY; 333 Adelaide Street (G.P.O. Box 1413), Brisbane, Qld. 4000 (AU).

(81) Designated States: AT (European patent), AU, BE (European patent), CH (European patent), DE (European patent), FR (European patent), GB (European patent), JP, LU (European patent), NL (European patent), SE (European patent), US.

Published
*With international search report.*

(54) Title: SHELTER



(57) Abstract

A shelter includes a substantially rectangular fabric cover consisting mainly of square or rectangular corner sections (10, 21, 31) of a fabric which is unstable on the bias, the cover being supported, at the innermost corners of the corner sections, by one or more posts (15, 24) or ribs (37), and the outermost corners of the corner sections are attached to tensioning means (17, 28, 37) so as to stretch the corner sections (10, 21, 31) on the bias in downward and outward directions.

## FOR THE PURPOSES OF INFORMATION ONLY

Codes used to identify States party to the PCT on the front pages of pamphlets publishing international applications under the PCT.

| | | | |
|---|---|---|---|
| AT | Austria | KP | Democratic People's Republic of Korea |
| AU | Australia | LI | Liechtenstein |
| BE | Belgium | LK | Sri Lanka |
| BR | Brazil | LU | Luxembourg |
| CF | Central African Republic | MC | Monaco |
| CG | Congo | MG | Madagascar |
| CH | Switzerland | MW | Malawi |
| CM | Cameroon | NL | Netherlands |
| DE | Germany. Federal Republic of | NO | Norway |
| DK | Denmark | RO | Romania |
| FI | Finland | SE | Sweden |
| FR | France | SN | Senegal |
| GA | Gabon | SU | Soviet Union |
| GB | United Kingdom | TD | Chad |
| HU | Hungary | TG | Togo |
| JP | Japan | US | United States of America |

Title:                     " SHELTER "

BACKGROUND OF THE INVENTION

THIS INVENTION relates to an improved shelter.

BRIEF SUMMARY OF THE INVENTION

The general object of the invention is to provide a shelter such as a shade to give protection from the sun's heat, or a shelter of the nature of a tent, the shelter being particularly simple and economical to manufacture and capable of being quickly and easily erected, or taken down and folded for transport or storage.

Woven fabrics under load behave in different ways depending on their inherent characteristics, and they may be grouped as being either stable or unstable on the bias. Those fabrics which are unstable on the bias are capable of being readily stretched or extended in a direction diagonal with respect to the weave of the fabric, those that are stable on the bias resisting such stretching or extension.

The present invention resides broadly in a shelter including a cover having substantially rectangular corner sections of fabric which is unstable on the bias, means for supporting the cover at the innermost corners of the corner sections, tensioning means, and means for attaching the tensioning means to the outermost corners of the corner sections to stretch such corner sections on the bias in a downward direction relative to the point or points at which the shelter cover is supported.

BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

In order that preferred embodiments of the invention may be readily understood and carried into practical effect, reference is now made to the accompanying drawings wherein:-

FIG. 1 is a perspective view of a shelter according to the invention and erected for use,

FIG. 2 is a plan view of the shelter shown in FIG. 1,

FIG. 3 is a perspective view of a shelter according

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 186 of 551

- 2 -

to another embodiment of the invention,

FIG. 4 is a perspective view of a further embodiment of the invention,

FIG. 5 is a broken-away perspective detail drawing showing the central part of the shelter shown in FIG. 4, and

FIG. 6 is a perspective detail drawing showing, from inside, a corner of the shelter illustrated in FIGS. 4 and 5.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring initially to FIGS. 1 and 2 of the drawings, a shelter cover is made of four equal square sections 10, cut from a fabric which is unstable on the bias. The shelter may be for affording shade protection, the fabric employed being of the open-weave type commonly known as "shade cloth", woven of flat filaments of a plastics material. The four square sections, which constitute corner sections, are sewn together to form the four corners of a square cover the joins being reinforced by narrow strips 11 of non-stretching material sewn in place. The fabric cover is bordered by an edging 12 of any suitable flexible material which is resistant to stretching, such as a plasticised fabric which is stable on the bias. A grommet with an eye, indicated at 13, is provided at each of the four corners of the shelter cover, and a central reinforced grommet and eye 14 is provided in the cover at the junction of the four fabric corner sections 10.

The shelter cover is supported by a primary support pole 15, which may consist of coaxially interfitted metal tubular sections of which the uppermost has a reduced-diameter upwardly extending pin 16 engaging closely in the central eye 14 of the shelter. Guy ropes 17 are secured to the four corner eyes at 12 and are tensioned and made fast to pegs 18 driven into the ground.

The tension of the guy ropes 17 on the corner

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 187 of 551

sections 10, which are unstable on the bias, results in these four corner sections being stretched or extended diagonally so that the shelter cover which originally was of flat square shape assumes a somewhat pyramidal shape.

Instead of using a primary support pole 15, the shelter cover may be centrally suspended by a rope from a tree branch or overhead structure.

In the embodiment of the invention shown in FIG. 3, the shelter cover includes a rectangular central transverse section 20 of a fabric or other pliable material which is stable on the bias, and to each end of this central section there are secured two adjacent square corner sections 21 substantially similar to the corner sections 10 before described with reference to FIGS. 1 and 1, being made of a material which is unstable on the bias, the joins being reinforced by non-stretching strips 22 and the whole shelter sheet having an edging 23 of pliable non-stretching material. This shelter cover is supported by two primary support poles 24 engaged with eyes in two reinforced grommets 25, each at a junction of one pair of corner sections 21 and the central section 20, and by secondary support poles 26 engaged with eyes in reinforced grommets 27 at the corners of the central transverse section 20. Guy ropes 28 secured to grommets and eyes at the four corners of the cover are tensioned and fixed to pegs 29 driven into the ground so that the corner sections 21 of the shelter cover are stretched on the bias. Additional grommets with eyes are provided, as indicated at 30, for alternate methods of erection, for example with additional secondary support poles or guy ropes.

The covers of shelters according to either of the illustrated embodiments of the invention, when taken down, may be quickly restored to their square or rectangular shape, and easily folded, for transport or storage. The shelters may be manufactured very simply and economically,

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 188 of 551

without the expense of cutting the fabric to other than very simple shapes, with little, if any, wastage of material, and without the seaming ordinarily required.

In the embodiment of the invention shown in FIGS. 4, 5 and 6, the shelter cover consists primarily of four equal square sections 31 of material, which is unstable on the bias, sewn together and reinforced at the joins by flexible strips 32, as before described. Along its diagonal lines 33 the shelter cover is folded over and a line of zig-zag stitching is sewn along each folded-over part a fairly short distance from the fold to form a tubular sleeve 34. The four radiating sleeves 34 are cut away at and near to their outer ends, at the corners of the cover. An edging strip 35 of flexible non-stretching material is sewn about the periphery of the shelter cover and, at the underside of each corner of the cover there is formed a pocket 36.

Four resiliently flexible rods 37, which may suitably be of fibreglass, are hingedly interconnected, each of the rods having an end pivoted by a pin 38 between a pair of parallel flanges 39 extending upwardly from a stop disc 40, the parts being so made and arranged that the four rods 37 may be raised hingedly to lie close to each other, perpendicular to the stop disc 40, or may be hingedly lowered so that, as shown in FIG. 5, their inner end portions lie upon the stop disc, radiating in equally spaced relationship.

The rods 37 are passed through the sleeves 34 and, by bringing the rods close to each other, the shelter may be folded, the cover being inside-out, and about or close to the rods. In this compact form the shelter may be easily stored in a tubular container (not shown) for storage.

To erect the shelter, the four rods 37 are brought hingedly down so that their inner end portions, with their axes substantially co-planar, rest on the stop disc 40.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 189 of 551

The outer ends of the rods are then inserted in the pockets 36 at the corners of the shelter cover, the rods being of such length that to do this, the shelter cover must be considerably stretched along its diagonals. The periphery of the shelter cover being non-stretchable, the shelter is thus caused to assume a more or less umbrella-shaped or domed form, as shown in FIG. 4, without supporting pole, guy ropes or pegs being required. The shelter may be entered by raising part of it, or one or more or its corners may be raised and supported in any suitable way.

Fabrics other than shade cloth, and which are sufficiently unstable on the bias and, at the same time, have adequate waterproofing qualities, may be used for the corner sections of shelter covers according to the invention, so that the shelters may give protection from rain as well as from the sun. Provision may be made for the attachment of side wall sections to the shelters. These, and many other modifications of constructional detail and design, which will be readily apparent to persons skilled in the art, are considered to lie within the scope and ambit of the invention herein described.

CLAIMS:

1.      A shelter including:

a cover having substantially rectangular corner sections of fabric which is unstable on the bias,

means for supporting the cover at the innermost corners of the corner sections,

tensioning means, and

attachment means for attaching the tensioning means to the outermost corners of the corner sections to stretch such corner sections on the bias in a downward direction relative to the point or points at which the shelter cover is supported.

2.      A shelter according to Claim 1 wherein:

two pairs of adjacent corner sections are secured to opposite ends of a central section of a fabric which is stable on the bias.

3.      A shelter according to Claim 1 wherein:

the tensioning means include four resiliently flexible ribs interconnected at one end,

retaining means are provided for retaining the ribs substantially adjacent to the diagonals of the cover, and

the attachment means are adapted to connect the other ends of the ribs to the outermost corners of the corner sections when these are stretched on the bias.

4.      A shelter according to Claim 3 wherein:

the ribs are interconnected hingedly for movement in one direction to folded positions, close to each other, or in reverse direction to, but not beyond, radially extending positions.

5.      A shelter according to any one of the preceding Claims wherein:

adjacent sections of the cover are joined along lines reinforced by strips of flexible material resistant to stretch.

6.      A shelter according to any one of the preceding Claims wherein:

        there is secured to the periphery of the cover a strip of flexible material resistant to stretch.

7.      A shelter substantially as herein described with reference to FIGS. 1 and 2 of the accompanying drawings.

8.      A shelter substantially as herein described with reference to FIG. 3 of the accompanying drawings.

9.      A shelter substantially as herein described with reference to FIGS. 4, 5 and 6 of the accompanying drawings.

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 192 of 551



1/2

Fig. 1.



Fig. 2.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 193 of 551



Fig. 3.

Fig.4.

Fig.5.

Fig.6.

# INTERNATIONAL SEARCH REPORT

International Application No PCT/AU82/00048

## I. CLASSIFICATION OF SUBJECT MATTER (if several classification symbols apply, indicate all) [3]

According to International Patent Classification (IPC) or to both National Classification and IPC

Int. Cl.[3]  A45F 1/00, 1/14, E04B  1/347

## II. FIELDS SEARCHED

### Minimum Documentation Searched [4]

| Classification System | Classification Symbols |
|---|---|
| IPC | A45F  1/00,  1/14,  E04B  1/347 |

Documentation Searched other than Minimum Documentation
to the Extent that such Documents are Included in the Fields Searched [5]

AU :          IPC as above.

## III. DOCUMENTS CONSIDERED TO BE RELEVANT [14]

| Category [*] | Citation of Document, [16] with indication, where appropriate, of the relevant passages [17] | Relevant to Claim No. [18] |
|---|---|---|
| X | GB,A, 637114 (FRIEDER) 10 May 1950 (10.05.50)  See page 1 lines 40 to 49, page 3 Lines 102 to 108  (& US,A, 2497596, & FR,A, 947584) | 1,2 |
| X | US,A,  3060949 (MOSS)  30 October 1962 (30.10.62)  See col. 1 lines 26 to 36 | 1 |
| A | GB,A, 1018978, (L STROMEYER CO. GMBH) 2 February 1966  (02.02.66). | 1 |

* Special categories of cited documents: [15]
"A" document defining the general state of the art which is not considered to be of particular relevance
"E" earlier document but published on or after the international filing date
"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)
"O" document referring to an oral disclosure, use, exhibition or other means
"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention
"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step
"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.
"&" document member of the same patent family

## IV. CERTIFICATION

| Date of the Actual Completion of the International Search [2] | Date of Mailing of this International Search Report [2] |
|---|---|
| 27 April 1982  (27.04.82) | 3  May 1982  (03.05.82) |
| International Searching Authority [1]  Australian Patent Office | Signature of Authorized Officer [20]  A.S. MOORE.   A. A Moore |

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 195 of 551

Form PCT/ISA/210 (second sheet) (October 1981)



UNITED STATES
PATENT AND TRADEMARK OFFICE

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**18/072,143** | RECEIPT DATE / TIME<br>**04/14/2023 05:29:43 PM ET** | ATTORNEY DOCKET #<br>**S105508 1010US.C8 (0040.5** |
|---|---|---|

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 61916835 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Ryan Cagle |

## Documents

# TOTAL DOCUMENTS: 4

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S105508_1010US_C8_0040_5_Suppl_IDS_Cover.pdf | 1 | Letter specifying the conditions for filing under 37 CFR 1.97 | 117 KB |
| S105508_1010US_C8_0040_5_Suppl_IDS_1449.pdf | 1 | Information Disclosure Statement (IDS) Form (SB08) | 142 KB |

Warning: This is not a USPTO supplied IDS fillable form. Data in the form cannot be automatically loaded to other USPTO systems.

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| FOR_AU2020100586.pdf | 11 | Foreign Reference | 360 KB |
| FOR_WO8203317.pdf | 12 | Foreign Reference | 520 KB |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 196 of 551

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|----------|-------------------------|
| S105508_1010US_C8_0040_5_Suppl_IDS_Cover.pdf | B2658E949FDAB72CEB08966FEACE6D1A72910331C6FD640C6 B809C6E9CE33E93D3B619F15A9448CF8CDC4B6029AC5F2C5 772B06FBDCA214DEA56B79E3F7B621B |
| S105508_1010US_C8_0040_5_Suppl_IDS_1449.pdf | B16200AF4EEEF6C56B28A0CB31534FE0467B39998CE46F799 2EA5C611400F6CB2D66BE9D570ABD0AA78ACD284A3AA6F9C E806D20BF5A44F28EFD287FD31F766F |
| FOR_AU2020100586.pdf | DFD4100BDDB9D405BFDB41D565249CE54F418744D2DD1E47 3EC28A97D12988FF757B41BC874D713C17BC01957E21F280C FA952138C66ACF06CA63A09D2350775 |
| FOR_WO8203317.pdf | F82B045CE0E55E97F0CE0675B449AA6DF7D7BCC7A10095EC 2C326A417F1D371FC32C3584E3B57A9B45FF4C11A7D58A363 E097704F0D74BB9918FBEBEA3087CC0 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re:         Barnes *et al.*                    Confirmation No.:   1080
Appl. No.:     18/072,143                         Group Art Unit:     3636
Filed:         November 30, 2022                  Examiner:           Noah Chandler Hawk
For:           SHADING SYSTEM AND METHOD OF USE


Docket No.:    S105508 1010US.C8 (0040.5)
Customer No.:  26158


Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


## AMENDMENT UNDER 37 C.F.R. § 1.111

Sir:

In response to the Office Action dated March 14, 2023, please amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims beginning on page 3 of this paper.

**Remarks** begin on page 18 of this paper.

WBD (US) 62163663v1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 198 of 551

Amendments to the Specification:

Please amend paragraph [0041] of the originally-filed application as follows.

According to some embodiments, the frame 14 of the system 10 may include, or consist essentially of, a plurality of sections 24 configured for end-to-end alignment from a left end 20 of the frame 14 to a right end 22 of the frame 14. Each of the sections 24 may be further configured to engage with any adjacent sections 24. When two or more or all of the sections 24 are aligned end-to-end and engaged with adjacent sections 24, the sections 24 being an example embodiment of an aligning component, the frame 14 may be positioned to receive and support the canopy 12. In some embodiments, the sections 24 are arranged telescopically, where each adjacent section 24 may be housed within, and extend from each adjacent section 24. In other embodiments, as depicted in FIG. 2, many of the sections include both a male end 62 and a female end 60 for engaging adjacent sections 24 to each other to construct the supporting frame 14. In some embodiments, all but one of the sections 24 includes a female end 60 for accepting a male end 62 of one of the adjacent sections 24 therein.

Please amend paragraph [0043] of the originally-filed application as follows.

As depicted in FIG. 2, the system 10 may further include a cable 30 extending through the plurality of sections 24 of the frame 12 from the left end 20 to the right end 22. The cable 30 may be elastic so that the sections 24 may be maneuvered between a transport configuration (e.g., FIG. 2) and a supporting configuration (e.g., FIG. 1), yet still remain adjacent and aligned end-to-end, the cable 30 being an example of an aligning component by providing supporting tension to the end-to-end alignment of the supporting configuration. The cable 30 may be affixed to an interior and/or cap 68 of the first section 64 and second section 66. The cable 30 may also be affixed to interiors of any of the other sections 24.

WBD (US) 62163663v1

Amendments to the Claims:

1. – 20.     (Canceled)

21.     (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged engageable with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopysheet of material extending between a suspension end and an opposing trailing end, the suspension end of the canopysheet of material being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism and an opposing

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 200 of 551

second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame~~coupleable with the frame about a portion of the frame~~.

22.     (Currently Amended)  The system of claim 21, wherein the canopy~~sheet of material~~ is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

23.     (Currently Amended)  The system of claim 22, wherein the plurality of sheets of material are selectively engageable sections~~coupled together so that a first sheet of material is coupled with the frame about a suspension end and a suspension end of a second sheet of material is removeably coupled to a trailing end of the first sheet of material~~.

24.     (Currently Amended)  The system of claim of claim 21, wherein the canopy~~sheet of material~~ has at least one set of parallel sides.

25.     (Canceled)

26.     (Currently Amended)  The system of claim 21, wherein the canopy~~sheet of material~~ comprises one or more vent holes defined within the canopy~~sheet of material~~, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27.     (Canceled)

28.     (Currently Amended)  The system of claim 21, wherein the one or more adjacent sections of the frame comprises a plurality of longitudinally-extending sections.

29.     (Currently Amended)  The system of claim 21, wherein one or both of the first and second securing mechanisms are capable of wrapping or folding about one of the adjacent ~~the plurality of longitudinally-extending~~ sections of the frame and being engaged to itself when the portion of the frame is accepted through the loop ~~are arrangeable so that at least a first~~

WBD (US) 62163663v1

longitudinally-extending section and a second longitudinally-extending section are each engageable with the surface at first ends thereof and are coupleable to one another about opposing, second ends or are each respectively coupleable to first and second ends of at least one intermediate longitudinally-extending section arranged therebetween.

30.    (Currently Amended)  The system of claim [[28]]21, wherein the at least one aligning component comprises further comprising a cable extending through and affixed to the one or more adjacent sections of the frame the plurality of longitudinally-extending sections of the frame from the first end of the first longitudinally-extending section to the first end of the second longitudinally-extending section and any of the at least one intermediate longitudinally-extending sections arranged therebetween.

31.    (Canceled)

32.    (Canceled)

33.    (Canceled)

34.    (Canceled)

35.    (Previously Presented)  The system of claim 21, wherein the frame is directly engageable with the surface.

36.    (Canceled)

37.    (Canceled)

WBD (US) 62163663v1

38.    (Currently Amended)  The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the canopy~~sheet of material~~.

39.    (Currently Amended)  The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when [[a]]the wind ~~force~~ is applied to the canopy~~sheet of material~~.

40.    (Currently Amended)  The system of claim 39, wherein the first end of the cord is coupleable to the trailing end of the ~~sheet of material~~canopy and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind ~~force~~ is applied to the canopy~~sheet of material~~.

41.    (New) The system of claim 21, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

42.    (New)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the

WBD (US) 62163663v1

supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety of a length of the suspension end of the canopy,

wherein, for securing the canopy into position relative to the frame, a portion of the loop at one end of the length of the suspension end of the canopy defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and being engaged to itself when the portion of the frame is accepted through the loop.

43. (New) The system of claim 42, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

44. (New) The system of claim 42, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

45. (New) The system of claim 42, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

WBD (US) 62163663v1

46. (New) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface; and

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the at least one fastener is a loop configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop defining the suspension end of the canopy and extending along a length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism and an opposing second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame.

47. (New) The system of claim 46, wherein one or both of the first and second securing mechanisms are capable of wrapping or folding about one of the adjacent sections of the frame and being engaged to itself when the portion of the frame is accepted through the loop.

48. (New) The system of claim 46, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

WBD (US) 62163663v1

49.      (New)  The system of claim 46, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

50. A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface; and

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame,

wherein, for securing the canopy into position relative to the frame, a portion of the loop at one of the left and right ends of the canopy defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and being engaged to itself when the portion of the frame is accepted through the loop.

51.    (New) The system of claim 50, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

52.    (New) The system of claim 50, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

53.    (New) The system of claim 50, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

54. (New)    A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising a cable extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end; and

a loop extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the left or right end of the loop that secures the canopy in position relative to the frame is wrapped or folded about one of the adjacent sections of the frame and engaged to itself.

Appl. No.: 18/072,143
Filed: November 30, 2022
Amdt Dated: June 5, 2023

55.      (New) The system of claim 54, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

56.      (New) The system of claim 54, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

57.      (New)  The system of claim 54, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

58.      (New)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising a cable extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end; and

a loop extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the left or right ends of the loop that secures the canopy in position relative to the frame is wrapped or folded about one of the adjacent sections of the frame and engaged to itself, the one of the adjacent sections of the frame being adjacent to the first section of the frame with the corkscrew shape or the second section of the frame with the corkscrew shape.

11 of 23

WBD (US) 62163663v1

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 208 of 551

59. (New) The system of claim 58, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

60. (New) The system of claim 58, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

61. (New) The system of claim 58, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

62. (New) A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the

WBD (US) 62163663v1

supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface;

a loop defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy; and

a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

63.    (New) The system of claim 62, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

64.    (New) The system of claim 62, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

65.    (New)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable

WBD (US) 62163663v1

by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the at least one fastener is a loop extending an entire length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position relative to the frame; and

a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

66.     (New) The system of claim 65, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

67.     (New) The system of claim 65, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

68.     (New)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising a cable extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end; and

a loop extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is

supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position relative to the frame.

69.     (New) The system of claim 68, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

70.     (New) The system of claim 68, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

71.     (New)  The system of claim 68, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

72.     (New)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport

WBD (US) 62163663v1

configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface;

a loop defined by the suspension end of the canopy and configured for engaging a portion of the frame and a loop defined by the suspension end of the canopy and configured for fastening the canopy to the frame, the loop configured for engaging extending a smaller distance of the suspension end of the canopy relative to the loop configured for fastening the canopy to the frame; and

a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

73.     (New) The system of claim 72, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

74.     (New) The system of claim 72, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

75.     (New)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame

WBD (US) 62163663v1

in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the at least one fastener is a loop defined by the suspension end of the canopy and configured for engaging a portion of the frame and a loop defined by the suspension end of the canopy and configured for fastening the canopy to the frame, the loop configured for engaging extending a smaller distance of the suspension end of the canopy relative to the loop configured for fastening the canopy to the frame; and

a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

76.     (New) The system of claim 75, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

77.     (New) The system of claim 75, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

WBD (US) 62163663v1

## REMARKS

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the claim amendments and the remarks that follow. Claims 1-20 were previously canceled. With this Amendment, claims 25, 27, 31-34, 36, and 37 are canceled, while claims 21, 22-24, 26, 28-30 and 38-40 are amended. Claims 41-77 are now added. As such, claims 21-24, 26, 28-30, 35, and 38-77 are pending following this Amendment.

<u>Drawings</u>

The drawings are objected to because the "plurality of longitudinally-extending sections are arrangeable so that they are non-coextensive relative to one another" recited in claim 32, and the "the plurality of longitudinally-extending sections are arranged telescopically with one another" recited in claim 33 are allegedly not shown. Applicant notes that claims 32 and 33 are now canceled.

<u>Specification</u>

Applicant notes that the specification is amended to clarify that the cable 30 is an example embodiment of an aligning component. The cable 30 is illustrated in at least FIG. 2. No new matter has been added.

<u>Claim Rejections -35 U.S.C. § 102</u>

Claims 21 -27 and 34-39 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by KR 10-1315166 (Kang). Claims 34, 36, and 37 are now canceled. As such this rejection of the claims is now moot.

Claim 21 is the independent claim from which the remaining claims depend. Claim 21 is now amended to recite <u>a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged engageable with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the</u>

WBD (US) 62163663v1

surface; and one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. Support for this amendment can be found in part from claim 28, now canceled, as well as the disclosure of the original application. No new matter has been found.

The office action acknowledges that Kang is silent as to the use of a multi-part frame. *See, e.g.,* page 6 of the Office Action. Since independent claim 21 now recites a multi-part frame, i.e., a frame comprising a first section, a last section, and one or more adjacent sections, Applicant respectfully submits that the claim is not anticipated by Kang because Kang is silent at least as to the use of a multi-part frame. Consequently, Applicant respectfully requests that this rejection of the claims be withdrawn at this time.

### Claim Rejections – 35 USC § 103

Claims 28-32 are rejected under 35 U.S.C. § 103 as allegedly being unpatentable over Kang, as applied to Claim 21 above in view of Joo-Tai in US Patent 6,286,531.

Claim 31 is now canceled. As such, Applicant respectfully submits that this rejection of the claim is now moot.

Applicant has already described above the reasons why there is no teaching or suggestion in Kang for the claimed subject matter. Applicant respectfully submits that there is nothing in Joo-Tai that cures these deficiencies.

Joo-Tai discloses a tent pole having the form of a tube including pipes 1 coupled together with a finishing portion 3' formed by shrinking both ends of the protective covering to enclose both ends of the pipes. *See, e.g.,* the Abstract of Joo-Tai. Joo-Tai fails to provide any teaching, suggestion, motivation, or rendering of predictability of a first section defining a left end of the frame with a corkscrew shape and engaged engageable with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and one or more

adjacent sections coupled into alignment between the first section and the last section, let alone a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface or a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism and an opposing second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame as recited in the claims. Thus, Applicant respectfully requests that the rejection of the claims under 35 USC § 103 be withdrawn at this time.

Claims 28 and 33 are rejected under 35 U.S.C. 103 as being unpatentable over Kang, as applied to Claim 21 above in view of Seaman et al. in US Patent 3052249.

Claim 33 is now canceled. As such, Applicant respectfully submits that this rejection of the claim is now moot.

Applicant has already described above the reasons why there is no teaching or suggestion in Kang for the claimed subject matter. Applicant respectfully submits that there is nothing in Seaman that cures these deficiencies. Seaman discloses a tent structure with tubular members and straight tent stakes over which a cover is draped. Seaman fails to provide any teaching, suggestion, motivation, or rendering of predictability of a first section defining a left end of the frame with a corkscrew shape and engaged engageable with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and one or more adjacent sections coupled into alignment between the first section and the last section, let alone a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting

WBD (US) 62163663v1

configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface or a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism and an opposing second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame as recited in the claims. Thus, Applicant respectfully requests that the rejection of the claims under 35 USC § 103 be withdrawn at this time.

Claims 38-40 are rejected under 35 U.S.C. 103 as being unpatentable over Kang, as applied to Claim 21 above in view of Beatty in US Patent 3070107.

Applicant has already described above the reasons why there is no teaching or suggestion in Kang for the claimed subject matter. Applicant respectfully submits that there is nothing in Beatty that cures these deficiencies. Beatty discloses a shelter apparatus having tubes and rods, where one end of the cloth 19 is attached to a T-shaped tube and rod configuration and an opposite end of the cloth 19 is attached to bags 23 engaged with the surface. Beatty fails to provide any teaching, suggestion, motivation, or rendering of predictability of a first section defining a left end of the frame with a corkscrew shape and engaged engageable with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and one or more adjacent sections coupled into alignment between the first section and the last section, let alone a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface or a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy such that when the portion of the frame is accepted through

WBD (US) 62163663v1

the loop then a first end of the loop defines a first securing mechanism and an opposing second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame as recited in the claims. Thus, Applicant respectfully requests that the rejection of the claims under 35 USC § 103 be withdrawn at this time.

New Claims

Claims 41-77 are added by way of this amendment. Support for new claims 41-77 is found in at least, for example, col. 2, lines 13-16, col. 4, lines 29-34, 43-50, 53-56, and col. 5, lines 1-18, 51-62 of the published application, as well as the original drawings. Applicant submits that no new matter has been added.

For at least the reasons noted above, claims 41-77 are novel and non-obvious in view of the cited references and allowance of these claims is requested.

WBD (US) 62163663v1

Appl. No.: 18/072,143
Filed: November 30, 2022
Amdt Dated: June 5, 2023

## CONCLUSION

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

**ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT & TRADEMARK OFFICE ON JUNE 5, 2023.**

WBD (US) 62163663v1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 220 of 551



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/072,143 | 06/05/2023 01:20:58 PM ET | S105508 1010US.C8 (0040.5 |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 62207319 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| DA / 090528 | E202365D21426128 | Shari Elofson |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1806 | SUBMISSION OF AN INFORMATION DISCLOSURE STATEMENT | 260.00 | 1 | 260.00 |
| 1202 | EACH CLAIM IN EXCESS OF 20 | 100.00 | 29 | 2900.00 |
| 1201 | EACH INDEPENDENT CLAIM IN EXCESS OF THREE | 480.00 | 8 | 3840.00 |
| | | | TOTAL AMOUNT: | $7,000.00 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **06/05/2023 01:20:58 PM ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 62207319 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

# TOTAL DOCUMENTS: 12

| DOCUMENT | PAGES | | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA.pdf | | 23 | - | 149 KB |
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-A....pdf | (1-1) | 1 | Amendment/Request for Reconsideration-After Non-Final Rejection | 97 KB |
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-SPEC.pdf | (2-2) | 1 | Specification | 49 KB |
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-CLM.pdf | (3-17) | 15 | Claims | 113 KB |

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 223 of 551

| | | | | |
|---|---|---|---|---|
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-REM.pdf | (18-23) | 6 | Applicant Arguments/Remarks Made in an Amendment | 109 KB |
| NPL-Kitent.PDF | | 3 | Non Patent Literature | 631 KB |
| NPL-YouTube-Robbs_Homemade_Life.PDF | | 5 | Non Patent Literature | 3518 KB |
| NPL-YouTube-ZiggyShade.PDF | | 5 | Non Patent Literature | 3040 KB |
| NPL-YouTube-Butterfly_Arch.PDF | | 5 | Non Patent Literature | 2141 KB |
| NPL-YouTube-Best_Beach_Cabana.PDF | | 4 | Non Patent Literature | 2258 KB |
| NPL-Suniela_Beach_Portable-Shade-Cabanas.PDF | | 9 | Non Patent Literature | 4985 KB |
| S105508_1010US_C8_0040_5_Suppl_IDS_Cover.pdf | | 1 | Transmittal Letter | 117 KB |
| S105508_1010US_C8_0040_5_Suppl_IDS_1449.pdf | | 3 | Information Disclosure Statement (IDS) Form (SB08) | 185 KB |

Warning: This is not a USPTO supplied IDS fillable form. Data in the form cannot be automatically loaded to other USPTO systems.

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA.pdf | EF95C619D80DB9106DD0471208BD8A562BA948438AD7A8020 2BCFE4C850BF7B19D72FC8973DB00D6DBD15A7D85D3564CB A2ACB224270BAE7C3E8406B9978BF20 |

| | |
|---|---|
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-A....pdf | 2231E544FE9E9CCCD06F23C27B038CD459C99F824D54DBCC88C4B7E1DCF755A360EE85D90199D60EDC4E364C3B202DE87E9F94D0FE53C8492AF1AD78881465B2 |
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-SPEC.pdf | 7816F1D947C39D66A38A1AF5270DCF5A14CD460961000D2C4CC2E33665A5E5A6632ECB2B328786E8133BF34E65AF137748F2E17EF7E02A790A0E94F9C7390F0E |
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-CLM.pdf | FEEA22D0E9314ADC80D62052F051447BA053FE277701E1FEB4CD2C2AC5010F8C94DD0ABD6DDFC276A6DFE560655D6772DD65A30AE6EA87093999473C27B2236 |
| S105508_1010US_C8_0040_5_Amendment_for_3-14-2023_OA-REM.pdf | E5EDE52C2C8596E36F2AFB9EC4DB1458A7E9652569DA7AAD15658B0AF0E9D0DAC44C16AD45D398F50F0A083F968F8FD81F5B6A871032768395019702FEDEC0C2 |
| NPL-Kitent.PDF | D051837E4AAA26D2C1B5ABC25A7ADEFDC586C8145DDC66E648FAB9DC0ABF3F4727AF843F6165C21FB9760B4A3DD7717854405B1503EBA1C82548FCEAD6420023 |
| NPL-YouTube-Robbs_Homemade_Life.PDF | C53C087495B12ABAC8D8B5FEE9D42783F73FFE3837CFB34725F183B7DA6687ABB82B852F5A8926433E9EAF2EDA529A08646D1CE8CA2C780B7EF0EBA01B4ED707 |
| NPL-YouTube-ZiggyShade.PDF | 2C81690E27ADF4B46086787C031C43BCE1F4874DFAE62DB789EA4C486CE4FF0FE0196189B9A8513DBF67AB74DFFD365585B7434D8CB7A4131B594F6696E9EC1B |
| NPL-YouTube-Butterfly_Arch.PDF | C8981ED1908CF7F87C28BCBEEA8BFC13A17F33A674D422DB966095E4E8F2AC87CBC24650DD5E0B8C62DB3EA8F2D175A68F0615870E1E3B0AE34B6B338EC9D747 |
| NPL-YouTube-Best_Beach_Cabana.PDF | 4FDBD67F97F8D096557CF1204BE064A0F4A967B863318C780C8784C318B109D346988C4594A68FCC867B3ED22A6E4FA3347C88C51B44226040039439DA0422E |
| NPL-Suniela_Beach_Portable-Shade-Cabanas.PDF | A2ACBDB66B255B1C4DE783B8B3B61226EE1329021E9412674A2149C373A9D4C70319CDC2228957B925CFCE5B4A1EA7EE95E07F9C45E1CB00A4253F94BE1740AB |

S105508_1010US_C8_0040_5
_Suppl_IDS_Cover.pdf

055A464072142AA50A256E025C986837DB1EC9131B3BA24BD5
42CB585C6D2D715243A8DA3781A9A78BE6A52D8FC648F0C9B
F616F798F4D07DE6272575E6A6322

S105508_1010US_C8_0040_5
_Suppl_IDS_1449.pdf

4CFE9A914FC1A74C0C7BA0D4917C80AC4244A3827C47C28C
0A1898BBFB00D2E74650CCD995C20D1C6E184CDFAE252EF4
D34DEF04AAEC9D17CF4901F45786B6AE

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Complete if Known | |
|---|---|---|
| | Application Number | 18/072,143 |
| | Filing Date | November 30, 2022 |
| | First Named Inventor | Dane Barnes |
| | Art Unit | 3636 |
| | Examiner Name | Noah Chandler Hawk |
| Sheet 1 of 3 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-2,055,044 | 09-22-1936 | Nelson | |
| | 2 | US-2,193,469 | 03-12-1940 | Ashton | |
| | 3 | US-3,165,110 | 01-12-1965 | Brooks | |
| | 4 | US-3,261,134 | 07-19-1966 | Crist | |
| | 5 | US-3,970,096 | 07-20-1976 | Nicolai | |
| | 6 | US-4,098,281 | 07-04-1978 | Bonfilio | |
| | 7 | US-4,312,371 | 01-26-1982 | Koon | |
| | 8 | US-4,404,980 | 09-20-1983 | Wade | |
| | 9 | US-4,829,694 | 05-16-1989 | Oasheim | |
| | 10 | US-4,941,422 | 07-17-1990 | Muller | |
| | 11 | US-5,595,203 | 01-21-1997 | Espinosa | |
| | 12 | US-5,690,134 | 11-25-1997 | McCauley | |
| | 13 | US-6,026,613 | 02-22-2000 | Quiring et al. | |
| | 14 | US-6,062,243 | 05-16-2000 | Touch et al. | |
| | 15 | US-6,272,695 | 08-14-2001 | Brandner | |
| | 16 | US-6,276,382 | 08-21-2001 | Bindschatel et al. | |
| | 17 | US-6,402,220 | 06-11-2002 | Allen | |
| | 18 | US-6,434,891 | 08-20-2002 | Cameron | |
| | 19 | US-7,654,277 | 02-02-2010 | Brewer et al. | |
| | 20 | US-7,721,361 | 05-25-2010 | Shubert | |
| | 21 | US-8,991,411 | 03-31-2015 | Neuman | |
| | 22 | US-9,103,137 | 08-11-2015 | Williams | |
| | 23 | US-9,187,924 | 11-17-2015 | Jackson *et al.* | |
| | 24 | US-9,371,641 | 06-21-2016 | Christensen *et al.* | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241354v1

| | | | | | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | **Complete if Known** | | | |
| | | Application Number | 18/072,143 | | |
| | | Filing Date | November 30, 2022 | | |
| | | First Named Inventor | Dane Barnes | | |
| | | Art Unit | 3636 | | |
| | | Examiner Name | Noah Chandler Hawk | | |
| Sheet | 2 | of | 3 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| | 25 | US-9,394,719 | 07-19-2016 | Choi | |
| | 26 | US-9,394,721 | 07-19-2016 | Hotes *et al.* | |
| | 27 | US-9,435,133 | 09-06-2016 | Bourland | |
| | 28 | US-9,506,268 | 11-29-2016 | Bright *et al.* | |
| | 29 | US-D256,829 | 09-09-1980 | Qui *et al.* | |
| | 30 | US-D321,924 | 11-26-1991 | Bonner | |
| | 31 | US-D390,730 | 02-17-1998 | Gerhart et al. | |
| | 32 | US-D400,949 | 11-10-1998 | Gale | |
| | 33 | US-D601,653 | 10-062009 | Kirkham, Jr. | |
| | 34 | US-D624,623 | 09-28-2010 | Viglione | |
| | 35 | US-D638,954 | 05-31-2011 | Nichols | |
| | 36 | US-D761,372 | 07-12-2016 | Cihal | |
| | 37 | US-D788,319 | 05-30-2017 | LeMoine et al. | |
| | 38 | US-2016/0017631 | 01-21-2016 | Gilmore | |
| | 39 | US-2016/0053508 | 02-25-2016 | Gutwenger *et al.* | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 40 | YouTube video by Robert Marazzita:  The Best Beach Cabana – Set Up and Tear Down, July 9, 2015, [site visited August 8, 2017], Available on the Internet URL: <https:www.youtube.com/watch?v=LfccH7yV6SE>. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241354v1

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 228 of 551

<table>
<tr><td rowspan="5"><b>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</b></td><td colspan="2"><b>Complete if Known</b></td></tr>
<tr><td>Application Number</td><td>18/072,143</td></tr>
<tr><td>Filing Date</td><td>November 30, 2022</td></tr>
<tr><td>First Named Inventor</td><td>Dane Barnes</td></tr>
<tr><td>Art Unit</td><td>3636</td></tr>
</table>

| | | | Examiner Name | Noah Chandler Hawk |
|---|---|---|---|---|
| Sheet | 3 | of 3 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 41 | YouTube video by Robb's Homemade Life: Make $15 Beach Shade tent Easy Quick DIY, October 6, 2015 [site visited August 8, 2017] Available on the internet URL: <www.youtube.com/watch?v+X20b4pLJx1c> | |
| | 42 | YouTube video by Beachspirit: Kitent (R) - the Floating beach tent for sun shade, October 8, 2016 [site visited August 8, 2017] Available on the internet URL: <https://m.youtube.com/watch?v=OUaDZeqdTkQ> | |
| | 43 | YouTube video by ZiggyShade Beach Sunshade: ZiggyShade – Beach Sunshade – Set up instructions, November 24, 2016 [site visited August 8, 2017] Available on the internet URL: <https://youtu.be/1krQ0rlumws> | |
| | 44 | YouTube video by bibitedog: How to set up a butterfly arch, May 26, 2012 [site visited December 18, 2018] Available on the internet URL: <https://www.youtube.com/watch?v=FOTYtjQAL4s> | |
| | 45 | Suniela Beach Portable Shade Cabanas, [site visited October 21, 2021], Available on the internet URL: <https://suniela.com> | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

\*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241354v1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 229 of 551

Attorney's Docket No. **S105508 1010US.C8 (0040.5)** PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re: Barnes *et al.* Confirmation No.: 1080
Appl. No.: 18/072,143 Group Art Unit: 3636
Filed: November 30, 2022 Examiner: Noah Chandler Hawk
For: SHADING SYSTEM AND METHOD OF USE

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT
### UNDER 37 C.F.R. § 1.97(c)

Sir:

Attached is a list of documents on form PTO-1449 along with a copy of any cited foreign patent documents and non-patent literature document in accordance with 37 CFR 1.98(a)(2). Also enclosed is a translation or a concise explanation of each non-English language document.

It is requested that the Examiner consider these documents and officially make them of record in accordance with the provisions of 37 C.F.R. § 1.97 and Section 609 of the MPEP. By identifying the listed documents, Applicant in no way makes any admission as to the prior art status of the listed documents, but is instead identifying the listed documents for the sake of full disclosure.

This Information Disclosure Statement is submitted in accordance with 37 C.F.R. § 1.97(c), before final Office Action or Allowance, whichever is earlier. The Commissioner is authorized to charge the $260.00 fee specified in 37 C.F.R. § 1.17(p) and any additional fee, or credit any refund, to our Deposit Account No. **09-0528**.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241721v1

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 18/072,143 | Filing Date 11/30/2022 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE ☐ SMALL ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT 06/05/2023 | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 49 | Minus | ** 20 | = 29 | x $100 = | 2900 |
| Independent (37 CFR 1.16(h)) | * 11 | Minus | *** 3 | = 8 | x $480 = | 3840 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | 6740 |

| AMENDMENT | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/CRYSTAL QUEEN/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

| | Index of Claims | Application/Control No. 18/072,143 | Applicant(s)/Patent Under Reexamination Barnes et al. |
|---|---|---|---|
| | | Examiner NOAH C HAWK | Art Unit 3636 |

| ✔ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | | | | | | |
| | 1 | - | - | | | | | | |
| | 2 | - | - | | | | | | |
| | 3 | - | - | | | | | | |
| | 4 | - | - | | | | | | |
| | 5 | - | - | | | | | | |
| | 6 | - | - | | | | | | |
| | 7 | - | - | | | | | | |
| | 8 | - | - | | | | | | |
| | 9 | - | - | | | | | | |
| | 10 | - | - | | | | | | |
| | 11 | - | - | | | | | | |
| | 12 | - | - | | | | | | |
| | 13 | - | - | | | | | | |
| | 14 | - | - | | | | | | |
| | 15 | - | - | | | | | | |
| | 16 | - | - | | | | | | |
| | 17 | - | - | | | | | | |
| | 18 | - | - | | | | | | |
| | 19 | - | - | | | | | | |
| | 20 | - | - | | | | | | |
| | 21 | ✓ | ✓ | | | | | | |
| | 22 | ✓ | ✓ | | | | | | |
| | 23 | ✓ | ✓ | | | | | | |
| | 24 | ✓ | ✓ | | | | | | |
| | 25 | ✓ | - | | | | | | |
| | 26 | ✓ | ✓ | | | | | | |
| | 27 | ✓ | - | | | | | | |
| | 28 | ✓ | ✓ | | | | | | |
| | 29 | ✓ | ✓ | | | | | | |
| | 30 | ✓ | ✓ | | | | | | |
| | 31 | ✓ | - | | | | | | |
| | 32 | ✓ | - | | | | | | |
| | 33 | ✓ | - | | | | | | |
| | 34 | ✓ | - | | | | | | |
| | 35 | ✓ | ✓ | | | | | | |
| | 36 | ✓ | - | | | | | | |
| | 37 | ✓ | - | | | | | | |
| | 38 | ✓ | ✓ | | | | | | |
| | 39 | ✓ | ✓ | | | | | | |
| | 40 | ✓ | ✓ | | | | | | |
| | 41 | | ✓ | | | | | | |
| | 42 | | ✓ | | | | | | |

| | Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 18/072,143 | Barnes et al. |
| | | **Examiner** | **Art Unit** |
| | | NOAH C HAWK | 3636 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | | | | | | |
| | 43 | | ✓ | | | | | | |
| | 44 | | ✓ | | | | | | |
| | 45 | | ✓ | | | | | | |
| | 46 | | ✓ | | | | | | |
| | 47 | | ✓ | | | | | | |
| | 48 | | ✓ | | | | | | |
| | 49 | | ✓ | | | | | | |
| | 50 | | ✓ | | | | | | |
| | 51 | | ✓ | | | | | | |
| | 52 | | ✓ | | | | | | |
| | 53 | | ✓ | | | | | | |
| | 54 | | ✓ | | | | | | |
| | 55 | | ✓ | | | | | | |
| | 56 | | ✓ | | | | | | |
| | 57 | | ✓ | | | | | | |
| | 58 | | ✓ | | | | | | |
| | 59 | | ✓ | | | | | | |
| | 60 | | ✓ | | | | | | |
| | 61 | | ✓ | | | | | | |
| | 62 | | ✓ | | | | | | |
| | 63 | | ✓ | | | | | | |
| | 64 | | ✓ | | | | | | |
| | 65 | | ✓ | | | | | | |
| | 66 | | ✓ | | | | | | |
| | 67 | | ✓ | | | | | | |
| | 68 | | ✓ | | | | | | |
| | 69 | | ✓ | | | | | | |
| | 70 | | ✓ | | | | | | |
| | 71 | | ✓ | | | | | | |
| | 72 | | ✓ | | | | | | |
| | 73 | | ✓ | | | | | | |
| | 74 | | ✓ | | | | | | |
| | 75 | | ✓ | | | | | | |
| | 76 | | ✓ | | | | | | |
| | 77 | | ✓ | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| E04H 15/005, 15/60, 15/62 | 03/09/2023 | NCH |
| updated above | 07/24/2023 | NCH |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| Considered and updated search for parent application 17/471658 | 03/09/2023 | NCH |
| Considered IDS filed 11/30/22 | 03/09/2023 | NCH |
| Please see attached PE2E search history | 03/09/2023 | NCH |
| Performed inventor name search in DAV | 03/09/2023 | NCH |
| Considered IDS filed 4/14/23 and 6/5/23 | 07/23/2023 | NCH |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | | | |

| | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 18/072,143 | |
| | | | Filing Date | November 30, 2022 | |
| | | | First Named Inventor | Dane Barnes | |
| | | | Art Unit | 3636 | |
| | | | Examiner Name | Noah Chandler Hawk | |
| Sheet | 1 | of | 3 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

| **U. S. PATENT DOCUMENTS** | | | | | |
|---|---|---|---|---|---|
| Examiner Initials* | Cite No. | Document Number<br><br>Number - Kind Code (if known) | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
| | 1 | US-2,055,044 | 09-22-1936 | Nelson | |
| | 2 | US-2,193,469 | 03-12-1940 | Ashton | |
| | 3 | US-3,165,110 | 01-12-1965 | Brooks | |
| | 4 | US-3,261,134 | 07-19-1966 | Crist | |
| | 5 | US-3,970,096 | 07-20-1976 | Nicolai | |
| | 6 | US-4,098,281 | 07-04-1978 | Bonfilio | |
| | 7 | US-4,312,371 | 01-26-1982 | Koon | |
| | 8 | US-4,404,980 | 09-20-1983 | Wade | |
| | 9 | US-4,829,694 | 05-16-1989 | Oasheim | |
| | 10 | US-4,941,422 | 07-17-1990 | Muller | |
| | 11 | US-5,595,203 | 01-21-1997 | Espinosa | |
| | 12 | US-5,690,134 | 11-25-1997 | McCauley | |
| | 13 | US-6,026,613 | 02-22-2000 | Quiring et al. | |
| | 14 | US-6,062,243 | 05-16-2000 | Touch et al. | |
| | 15 | US-6,272,695 | 08-14-2001 | Brandner | |
| | 16 | US-6,276,382 | 08-21-2001 | Bindschatel et al. | |
| | 17 | US-6,402,220 | 06-11-2002 | Allen | |
| | 18 | US-6,434,891 | 08-20-2002 | Cameron | |
| | 19 | US-7,654,277 | 02-02-2010 | Brewer et al. | |
| | 20 | US-7,721,361 | 05-25-2010 | Shubert | |
| | 21 | US-8,991,411 | 03-31-2015 | Neuman | |
| | 22 | US-9,103,137 | 08-11-2015 | Williams | |
| | 23 | US-9,187,924 | 11-17-2015 | Jackson *et al.* | |
| | 24 | US-9,371,641 | 06-21-2016 | Christensen *et al.* | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 07/23/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241354v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Application Number | 18/072,143 |
| | | Filing Date | November 30, 2022 |
| | | First Named Inventor | Dane Barnes |
| | | Art Unit | 3636 |
| | | Examiner Name | Noah Chandler Hawk |
| Sheet | 2 | of | 3 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| | 25 | US-9,394,719 | 07-19-2016 | Choi |
| | 26 | US-9,394,721 | 07-19-2016 | Hotes *et al.* |
| | 27 | US-9,435,133 | 09-06-2016 | Bourland |
| | 28 | US-9,506,268 | 11-29-2016 | Bright *et al.* |
| | 29 | US-D256,829 | 09-09-1980 | Qui *et al.* |
| | 30 | US-D321,924 | 11-26-1991 | Bonner |
| | 31 | US-D390,730 | 02-17-1998 | Gerhart et al. |
| | 32 | US-D400,949 | 11-10-1998 | Gale |
| | 33 | US-D601,653 | 10-062009 | Kirkham, Jr. |
| | 34 | US-D624,623 | 09-28-2010 | Viglione |
| | 35 | US-D638,954 | 05-31-2011 | Nichols |
| | 36 | US-D761,372 | 07-12-2016 | Cihal |
| | 37 | US-D788,319 | 05-30-2017 | LeMoine et al. |
| | 38 | US-2016/0017631 | 01-21-2016 | Gilmore |
| | 39 | US-2016/0053508 | 02-25-2016 | Gutwenger *et al.* |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 40 | YouTube video by Robert Marazzita:  The Best Beach Cabana – Set Up and Tear Down, July 9, 2015, [site visited August 8, 2017], Available on the Internet URL: <https:www.youtube.com/watch?v=LfccH7yV6SE>. | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 07/23/2023 |
|---|---|---|---|

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241354v1

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 236 of 551

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| | | Complete if Known |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 18/072,143 |
| | Filing Date | November 30, 2022 |
| | First Named Inventor | Dane Barnes |
| | Art Unit | 3636 |
| | Examiner Name | Noah Chandler Hawk |
| Sheet | 3 | of | 3 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 41 | YouTube video by Robb's Homemade Life: Make $15 Beach Shade tent Easy Quick DIY, October 6, 2015 [site visited August 8, 2017] Available on the internet URL: <www.youtube.com/watch?v+X20b4pLJx1c> | |
| | 42 | YouTube video by Beachspirit: Kitent (R) - the Floating beach tent for sun shade, October 8, 2016 [site visited August 8, 2017] Available on the internet URL: <https://m.youtube.com/watch?v=OUaDZeqdTkQ> | |
| | 43 | YouTube video by ZiggyShade Beach Sunshade: ZiggyShade – Beach Sunshade – Set up instructions, November 24, 2016 [site visited August 8, 2017] Available on the internet URL: <https://youtu.be/1krQ0rlumws> | |
| | 44 | YouTube video by bibitedog: How to set up a butterfly arch, May 26, 2012 [site visited December 18, 2018] Available on the internet URL: <https://www.youtube.com/watch?v=FOTYtjQAL4s> | |
| | 45 | Suniela Beach Portable Shade Cabanas, [site visited October 21, 2021], Available on the internet URL: <https://suniela.com> | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 07/23/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON JUNE 5, 2023.*

WBD (US) 62241354v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | 18/072,143 |
| | | | Filing Date | November 30, 2022 |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | 3636 |
| | | | Examiner Name | Noah Chandler Hawk |
| Sheet | 1 | of | 1 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br><br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 105 | US-6,209,149 | 04-03-2001 | Song *et al.* | |
| | 106 | US-2007/0295380 | 12-27-2007 | Glaeser | |
| | 107 | US-2010/0212709 | 08-26-2010 | Sotirkys *et al.* | |
| | 108 | US-2018/0106064 | 04-19-2018 | Barnes *et al.* | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br><br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | 109 | AU 2020100586 | 05-28-2020 | Fraser | | |
| | 110 | WO 82/03317 | 10-14-1982 | Montgomery | | |
| | | | | | | |

## OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | | | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 07/23/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON APRIL 14, 2023.*

WBD (US) 61257820v1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

| | | |
|---|---|---|
| 26158 | 7590 | 07/28/2023 |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/28/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

<table>
<tr><td rowspan="2"><em>Office Action Summary</em></td><td><strong>Application No.</strong><br>18/072,143</td><td colspan="2"><strong>Applicant(s)</strong><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br>3636</td><td><strong>AIA (FITF) Status</strong><br>Yes</td></tr>
</table>

<em>-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --</em>

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>6/5/2023</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☑ This action is **FINAL.**     2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>21-24,26,28-30,35 and 38-77</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>21-24,26,28-30,35 and 38-77</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on <u>11/30/22</u> is/are: a)☑ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a)☐ All     b)☐ Some**     c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1) ☐ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date <u>6/5/23, 4/14/23</u>.
3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 240 of 551

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.

### Drawings

2.      The drawings were received on 11/30/2022.  These drawings are accepted in

light of the cancellation of Claims 32 and 33.

### Claim Rejections - 35 USC § 103

3.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

4.      Claims 21, 22, 26, 28, 30, 35, 38, and 39 are rejected under 35 U.S.C. 103 as

being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent

6286531 and Warth in US Patent 3286962.

        a.      Regarding Claim 21, Kang teaches a system for providing shade onto a

surface, the system comprising: a frame (100) with a left end engaged with the

surface (at 110 on the left) and a right end engaged with the surface (at 110 on

the right) and a canopy (200) extending between a suspension end (toward 212)

and an opposing trailing end (toward 240), the suspension end of the canopy

being engageable with the frame about one or more adjacent sections of the

frame, wherein the trailing end of the canopy is spaced apart from the frame in

the supporting configuration such that the canopy is supportable by the frame

and at least partially supportable by wind in a first configuration (see Fig. 2) for

providing shade to the surface; and a loop (212) defined at the suspension end of

the canopy and configured for accepting a portion of the frame therethrough for

engaging the canopy with the frame, the loop extending an entire length of the

suspension end of the canopy such that when the portion of the frame is

accepted through the loop then a first end of the loop defines a first securing

mechanism (220 on one end) and an opposing second end of the loop defines a

second securing mechanism (220 on the opposing end) for securing the canopy

into position relative to the frame.

b.       Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame

including a plurality of sections (2) and being maneuverable between a transport

configuration (1) and a supporting configuration (2), the sections including: a first

section (the leftmost section 2) defining a left end of the frame engageable with

the surface; a last section (the rightmost section 2) defining a right end of the

frame engageable with the surface; and one or more adjacent sections(interior

sections 2) coupled into alignment between the first section and the last section,

the one or more adjacent sections additionally comprising at least one aligning

component (5) affixed to one or more adjacent sections of the frame and

providing supporting tension to the alignment in the supporting configuration and

allowing the one or more adjacent sections to be maneuvered between the

transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

c.      Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) engaged with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

d.      Regarding Claim 22, Kang, as modified, teaches that the canopy is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

e.      Regarding Claim 26, Kang, as modified, teaches that the canopy comprises one or more vent holes (within 240) defined within the canopy, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

f.      Regarding Claim 28, Kang, as modified, teaches (see Joo-Tai) that the one or more adjacent sections of the frame comprises a plurality of longitudinally-extending sections.

g.      Regarding Claim 30, Kang, as modified, teaches (see Joo-Tai) that the at least one aligning component comprises a cable (Joo-Tai 5) extending through and affixed to the one or more adjacent sections of the frame.

h.      Regarding Claim 35, Kang, as modified, teaches that the frame is directly engageable with the surface.

i.      Regarding Claim 38, Kang, as modified, teaches a cord (330) having a first end (at 310) and a second end (at 320), the first end or the second end of the cord being coupleable (via 310) to the frame or the canopy.

j.      Regarding Claim 39, Kang, as modified, teaches an anchor (320) coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

5.      Claims 42--44 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962 and Knipschild in US Publication 2009/0114260.

k.      Regarding Claim 42, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) with a left end engaged with the surface (at 110 on the left) and a right end engaged with the surface (at 110 on the right) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy being engageable with the frame about the sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least

partially supportable by wind in a first configuration for providing shade to the surface; and a loop (212) defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety of a length of the suspension end of the canopy, wherein, for securing the canopy into position relative to the frame, a portion of the loop at one end of the length of the suspension end of the canopy defines a securing mechanism (220) capable of wrapping or folding about the frame when the portion of the frame is accepted through the loop.

I.      Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2) and being maneuverable between a transport configuration (Fig. 1) and a supporting configuration (Fig. 3), the sections including: a first section (the leftmost section 2) defining a left end of the frame engaged with the surface; a last section (the rightmost section 2) defining a right end of the frame engaged with the surface; one or more adjacent sections (intermediate sections 2) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable (5) extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the

claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

m.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

n.     Kang, as modified, is silent on the use of a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a securing mechanism (26) capable of wrapping or folding about one of the adjacent sections of a frame (4) and being engaged to itself (see Fig. 1 and paragraph 0027). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

o.     Regarding Claim 43, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

p.     Regarding Claim 44, Kang, as modifies, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

6.      Claims 46 and 48 are rejected under 35 U.S.C. 103 as being unpatentable over

KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US

Patent 3286962.

> q.      Regarding Claim 46, Kang teaches a system for providing shade onto a
> surface, the system comprising: a frame (100) with a left end engaged with the
> surface (at 110 on the left) and a right end engaged with the surface (at 110 on
> the right) and a canopy (200) extending between a suspension end (toward 212)
> and an opposing trailing end (toward 240), the suspension end of the canopy
> extending between a left end and a right end, the suspension end of the canopy
> including at least one fastener (212) that engages the canopy with the frame and
> that secures the canopy in position relative to the frame, wherein the trailing end
> of the canopy is spaced apart from the frame in the supporting configuration such
> that the canopy is supportable by the frame and at least partially supportable by
> wind in a first configuration for providing shade to the surface, wherein the at
> least one fastener is a loop configured for accepting a portion of the frame
> therethrough for engaging the canopy with the frame (see Fig. 2), the loop
> defining the suspension end of the canopy and extending along a length of the
> suspension end of the canopy from the left end to the right end, such that when
> the portion of the frame is accepted through the loop then a first end of the loop
> defines a first securing mechanism (220 on one end) and an opposing second
> end of the loop defines a second securing mechanism (220 on the opposite end)
> for securing the canopy into position relative to the frame.

r.      Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame

defined by a plurality of sections (2) that include a left end (the leftmost section

2), a right end (the rightmost section 2), and a plurality of sections (the

intermediate sections 2) positioned between the left end and the right end and

comprising a cable (5) extending therethrough, each of the plurality of sections

having one or both of a male end (3) and a female end (7) making the plurality of

sections thereby engageable with at least one adjacent section to define the

frame in a supporting configuration (Fig. 3) and thereby disengageable to define

the frame in a transport configuration (Fig. 1). It would have been obvious to one

of ordinary skill in the art before the effective filing date of the claimed invention

to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in

order to provide a more compact device for easier transportation.

s.      Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth

teaches a frame with an end (35) effective for engaging with a surface and

having a corkscrew shape. It would have been obvious to one of ordinary skill in

the art before the effective filing date of the claimed invention to modify the

device of Kang, as modified, to have the ends of the frame in a corkscrew shape

as taught by Warth in order to more securely anchor the device in the surface.

t.      Regarding Claim 48, Kang, as modified, teaches that the canopy defines

one or more vent holes (with 240), one or more tails extending from a side

opposite the suspension end, one or more wind socks, or a combination thereof.

7.      Claims 50-52 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962 and Knipschild in US Publication 2009/0114260.

u.      Regarding Claim 50, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) with left and right ends (at 110 on either side) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (the outer edges toward 201), the suspension end of the canopy including at least one fastener (220) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, a loop (212) defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame.

v.      Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) that include a left end (leftmost section 2), a right end (rightmost section 2), and a plurality of sections (intermediate sections 2) positioned between the left end and the right end and comprising a cable (5) extending therethrough, each of the plurality of sections having one or both of a male end (3) and a female end (7) making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting

configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

w.      Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

x.      Kang, as modified, is silent on the use of a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a securing mechanism (26) wherein, for securing the canopy into position relative to the frame, a portion of a loop (the outer edge of the canopy) at one of the left and right ends of the canopy defines the securing mechanism (26) capable of wrapping or folding about a frame (4) and being engaged to itself when the portion of the frame is accepted through the loop (see Fig. 1 and paragraph 0027). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

y.      Regarding Claim 51, Kang, as modified, teaches that the canopy is

unitarily constructed or comprises a plurality of coupled sections.

z.      Regarding Claim 52, Kang, as modified, teaches that the canopy defines

one or more vent holes (through 240), one or more tails extending from a side

opposite the suspension end, one or more wind socks, or a combination thereof.

8.      Claims 54-56 are is/are rejected under 35 U.S.C. 103 as being unpatentable over

KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US

Patent 3286962.

aa.     Regarding Claim 54, Kang teaches a system for providing shade onto a

surface, the system comprising: a frame (100) with a left and right end (110 at

each end) and a canopy (200) extending between a suspension end (toward

212) and an opposing trailing end (toward 240), the suspension end of the

canopy extending between a left end and a right end (toward 201 on either

edge); and a loop (212) extending a length of the suspension end from the left

end to the right end and that secures the canopy in position relative to the frame,

wherein the trailing end of the canopy is spaced apart from the frame in the

supporting configuration such that the canopy is supportable by the frame and at

least partially supportable by wind in a first configuration for providing shade to

the surface, wherein the left or right end of the loop that secures the canopy in

position relative to the frame is wrapped or folded about one of the adjacent

sections of the frame and engaged to itself (a sleeve such as 212 is inherently

fastened to itself to form the tunnel of the sleeve).

bb.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a multi-part frame defined by a plurality of sections (2) and comprising a cable (5) extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

cc.    Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

dd.    Regarding Claim 55, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

ee.    Regarding Claim 56, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

9.    Claims 58-60 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Knipschild in US Publication 2009/0114260.

ff.     Regarding Claim 58, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100), a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 on either edge); and a loop (212) extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface.

gg.     Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) and comprising a cable (5) extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

hh.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the

device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

ii.       Kang, as modified, is silent on the use of a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a loop (the edge of canopy 3) having an end (26) that is wrapped or folded about a frame (4) and being engaged to itself (see Fig. 1 and paragraph 0027). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

jj.       Regarding Claim 59, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

kk.      Regarding Claim 60, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

10.     Claims 62-64 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

ll.       Regarding Claim 62, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100), and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy being engageable with the frame, wherein the trailing end of the canopy is spaced apart from the frame in the

supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; a loop (212) defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy.

mm.　Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2) and being maneuverable between a transport configuration (Fig. 1) and a supporting configuration (Fig. 3), the sections including: a first section (the leftmost section 2) defining a left end of the frame; a last section (the rightmost section 2) defining a right end of the frame; one or more adjacent sections (the intermediate sections 2) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable (5) extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

nn.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

oo.     Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

pp.     Regarding Claim 63, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

qq.     Regarding Claim 64, Kang, as modified, teaches that the canopy defines one or more vent holes (within 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

11.　　Claims 65-67 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

rr.　　Regarding Claim 65, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 at either edge), the suspension end of the canopy including at least one fastener (212) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein the at least one fastener is a loop extending an entire length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position relative to the frame.

ss.　　Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) that include a left end (the left most section 2), a right end (the rightmost section 2), and a plurality of sections (intermediate sections 2) positioned between the left end and the right end and comprising a cable (5) extending therethrough, each of the plurality of sections having one or

both of a male end (3) and a female end (7) making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

tt.　　Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

uu.　　Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

vv.　　Regarding Claim 66, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

ww.　　Regarding Claim 67, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

12.　　Claims 68-70 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.

xx.　　Regarding Claim 68, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 at either edge); and a loop (212) extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position relative to the frame (the friction between the loop and the frame will inherently provide some resistance to relative movement between the two).

yy.　Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) and comprising a cable (5) extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3)and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

zz.　Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

aaa.　Regarding Claim 69, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

bbb.　Regarding Claim 70, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

13.　Claims 72-74 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

ccc.    Regarding Claim 72, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; a loop (220) defined by the suspension end of the canopy and configured for engaging a portion of the frame and a loop (212) defined by the suspension end of the canopy and configured for fastening the canopy to the frame, the loop configured for engaging extending a smaller distance of the suspension end of the canopy relative to the loop configured for fastening the canopy to the frame.

ddd.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2) and being maneuverable between a transport configuration (Fig. 1) and a supporting configuration (Fig. 3), the sections including: a first section (the leftmost section 2) defining a left end of the frame; a last section (the rightmost section 2) defining a right end of the frame; one or more adjacent sections (intermediate sections 2) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable (5) extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing

the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

eee.    Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

fff.      Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

ggg.   Regarding Claim 73, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

hhh.   Regarding Claim 74, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

14.   Claims 75-77 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

iii.   Regarding Claim 75, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 on either edge), the suspension end of the canopy including at least one fastener (212/220) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein the at least one fastener is a loop (220) defined by the suspension end of the canopy and configured for engaging a portion of the frame and a loop (212) defined by the suspension end of the canopy and configured for fastening the canopy to the frame, the loop configured for engaging extending a

smaller distance of the suspension end of the canopy relative to the loop
configured for fastening the canopy to the frame.

jjj.     Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame
defined by a plurality of sections (2) that include a left end (leftmost section 2), a
right end (rightmost section 2), and a plurality of sections (intermediate sections
2) positioned between the left end and the right end and comprising a cable (5)
extending therethrough, each of the plurality of sections having one or both of a
male end (3) and a female end (7) making the plurality of sections thereby
engageable with at least one adjacent section to define the frame in a supporting
configuration (Fig. 3) and thereby disengageable to define the frame in a
transport configuration (Fig. 1). It would have been obvious to one of ordinary
skill in the art before the effective filing date of the claimed invention to modify the
device of Kang by using a multi-part frame as taught by Joo-Tai in order to
provide a more compact device for easier transportation.

kkk.    Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth
teaches a frame with an end (35) effective for engaging with a surface and
having a corkscrew shape. It would have been obvious to one of ordinary skill in
the art before the effective filing date of the claimed invention to modify the
device of Kang, as modified, to have the ends of the frame in a corkscrew shape
as taught by Warth in order to more securely anchor the device in the surface.

lll.     Kang, as modified, fails to teach a container. Furey teaches a shade
system including a container (103) capable of housing and transporting the
components of the system therein ("components may be readily carried in the

anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

mmm. Regarding Claim 76, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

nnn.    Regarding Claim 77, Kang teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

15.    Claim 29 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to claim 21 above, and further in view of Knipschild in US Publication 2009/0114260. Kang, as modified, fails to teach a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a loop (the edge of canopy 3) having a securing mechanism (26) capable of wrapping or folding about one of the adjacent sections of a frame (4) and being engaged to itself (see Fig. 1 and paragraph 0027) when the frame is engaged with the loop. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

16.    Claims 23 and 24 rejected under 35 U.S.C. 103 as being unpatentable over

Kang, as modified, as applied to Claim 21 above in view of Sotirkys et al. in US Patent

7789097. Kang, as modified, fails to teach a canopy including a plurality of sections.

Sotirkys teaches a canopy (10/80) that comprises a plurality of coupled sections (10 and

80), wherein the plurality of coupled sections are selectively engageable sections

(detachable at 85/86). It would have been obvious to one of ordinary skill in the art

before the effective filing date of the claimed invention to modify the canopy of Kang, as

modified, by using a plurality of sections as taught by Sotirkys in order to allow the user

to select the amount of coverage available under the shelter.

17.    Claims 38-40 are rejected under 35 U.S.C. 103 as being unpatentable over

Kang, as modified, as applied to Claim 21 above in view of Beatty in US Patent

3070107. Kang, as modified, is silent on the use of an anchor coupled to the trailing

edge of the canopy. Beatty teaches a system for providing shade including a canopy

(19), and further comprising a cord (22) having a first end and a second end, the first

end or the second end of the cord being coupleable to the canopy, further comprising

an anchor (23) coupleable to the other of the second end or the first end of the cord and

being in contact with the surface so that the frame remains engaged with the surface

when the wind is applied to the canopy, wherein the first end of the cord is coupleable to

the trailing end of the canopy and the second end of the cord is coupleable to the

anchor, the anchor being in contact with the surface so that the frame remains engaged

with the surface when the wind is applied to the canopy. It would have been obvious to

one of ordinary skill in the art before the effective filing date of the claimed invention to

modify the device of Kang, as modified, by using a trailing end anchor as taught by Beatty in order to prevent excessive flapping of the canopy.

18.    Claim 41 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

19.    Claim 45 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 42 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention

to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

20.	Claim 47 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to claim 46 above, and further in view of Knipschild in US Publication 2009/0114260. Kang, as modified, fails to teach a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a loop (the edge of canopy 3) having a securing mechanism (26) capable of wrapping or folding about one of the adjacent sections of a frame (4) and being engaged to itself (see Fig. 1 and paragraph 0027) when the frame is engaged with the loop. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

21.	Claim 49 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 46 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

22.    Claim 53 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 50 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

23.    Claim 57 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 54 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

24.    Claim 61 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as

modified, as applied to Claim 58 above, and further in view of Furey in US Patent

4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system

including a container (103) capable of housing and transporting the components of the

system therein ("components may be readily carried in the anchoring member when it is

emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is

coupleable (via 27) to one or both of the frame and the canopy and engageable with the

surface to retain the frame in the supporting configuration. It would have been obvious

to one of ordinary skill in the art before the effective filing date of the claimed invention

to modify the device of Kang, as modified, by adding a container as taught by Furey in

order to more securely erect the shade and contain all of the components of the device.

25.    Claim 71 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as

modified, as applied to Claim 68 above, and further in view of Furey in US Patent

4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system

including a container (103) capable of housing and transporting the components of the

system therein ("components may be readily carried in the anchoring member when it is

emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is

coupleable (via 27) to one or both of the frame and the canopy and engageable with the

surface to retain the frame in the supporting configuration. It would have been obvious

to one of ordinary skill in the art before the effective filing date of the claimed invention

to modify the device of Kang, as modified, by adding a container as taught by Furey in

order to more securely erect the shade and contain all of the components of the device.

### *Response to Arguments*

26.    Applicant's arguments filed 6/5/2023 have been fully considered but they are not persuasive.

27.    Regarding the applicant's arguments with respect to Claims 21-27 and 34-39: Kang is not relied up on to teach the new limitations in the claim(s).

28.    With respect to the applicant's arguments regarding Claims 28-32: neither Kang nor Joo-Tai are relied upon to teach the corkscrew frame ends. Kang plainly teaches a loop and Knipschild teaches a second securing mechanism.

29.    With respect to Claims 38-40, Beatty is not relied upon to teach the corkscrew shape frame ends (taught by Warth), details of the canopy, or details of the securing mechanism.

30.    The remainder of the Applicant's arguments relies on the alleged shortcomings of the rejection of Claim 21 and its dependent claims addressed above, presents no further arguments advancing the patentability of the dependent claims and as such, is not deemed persuasive.

### *31.    Conclusion*

32.    Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

33.    A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

34.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480. The examiner can normally be reached M-F 9am to 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 18/072,143 | 11/30/2022 | ☐ To be Mailed |

**ENTITY:** ☑ LARGE ☐ SMALL ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 08/22/2023 | | | | | | |
| | Total (37 CFR 1.16(i)) | * 54 | Minus | ** 49 | = 5 | x $100 = | 500 |
| | Independent (37 CFR 1.16(h)) | * 12 | Minus | *** 11 | = 1 | x $480 = | 480 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 980 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE

/JACQUELYN L WILLIAMS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:  S105508 1010US.C8 (0040.5)
Customer No.:  26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

In response to the final Office Action dated July 28, 2023, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks** begin on page 19 of this paper.

WBD (US) 63432147v3

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 275 of 551



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **08/22/2023 05:49:44 PM ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 62657673 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

# TOTAL DOCUMENTS: 4

| DOCUMENT | | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| S105508_1010US_C8_0040_5_Amendment_After_7-28-2023_FOA.pdf | | 44 | - | 318 KB |
| S105508_1010US_C8_0040_5_Amendment_After_7-28-2023_FOA-A.NE.pdf | (1-1) | 1 | Response After Final Action | 108 KB |
| S105508_1010US_C8_0040_5_Amendment_After_7-28-2023_FOA-CLM.pdf | (2-18) | 17 | Claims | 120 KB |
| S105508_1010US_C8_0040_5_Amendment_After_7-28-2023_FOA-REM.pdf | (19-44) | 26 | Applicant Arguments/Remarks Made in an Amendment | 277 KB |

| S105508_1010US_C8_0040 _5_AFCP_2_0.pdf | 2 | After Final Consideration Program Request | 253 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
| --- | --- |
| S105508_1010US_C8_0040_5 _Amendment_After_7-28- 2023_FOA.pdf | 22543BF57F8366F70F822BB58E77B75BB55C4CB0719950398F A87C01966AC14DC577B4A37BB0B95D002FACC66DBB1F9F84 4FBF1ECC072477C1F5526B26454D98 |
| S105508_1010US_C8_0040_5 _Amendment_After_7-28- 2023_FOA-A.NE.pdf | D5B2E6FEB93B304737ACD68AE5E5C304B2568FD34E2595471 3EBED2149C88E513A51B4A8F1D15971D595FD49EA4568241E 181A6FFBCDEFE1A0500DFEB3BFA2A3 |
| S105508_1010US_C8_0040_5 _Amendment_After_7-28- 2023_FOA-CLM.pdf | 3359785F762A0B3991BEC2A738F0E1714A85C284392D5963E1 B8DE1015919C167F5809E5215CB59ADF6D4416354AA9A1F7A 651F76E44B485040FCA45CB769028 |
| S105508_1010US_C8_0040_5 _Amendment_After_7-28- 2023_FOA-REM.pdf | 983E7380F5062FDE01A8A9F6636DF886EAB104F5A5417EC291 C3EF8D03C913A1DB1B5A6D68F3417BA4E0C25D6A9BC1D192 785A20111430343951AFC28F783554 |
| S105508_1010US_C8_0040_5 _AFCP_2_0.pdf | 44F417C773F1948551DFF4DF579E3E1D9561A38F777457D524 97DB9A1B8C2A98115C59E4F2A5E943EC3ACDDC8589552ABA AE00080B0AB47B6A2DC53A8F67EB58 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **08/22/2023 05:49:44 PM ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 62657673 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| DA / 090528 | E20238LH51107407 | Shari Elofson |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1202 | EACH CLAIM IN EXCESS OF 20 | 100.00 | 5 | 500.00 |
| 1201 | EACH INDEPENDENT CLAIM IN EXCESS OF THREE | 480.00 | 1 | 480.00 |
| | | | **TOTAL AMOUNT:** | **$980.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 279 of 551

Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:     S105508 1010US.C8 (0040.5)
Customer No.:   26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

In response to the final Office Action dated July 28, 2023, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks** begin on page 19 of this paper.

WBD (US) 63432147v3

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 281 of 551

Amendments to the Claims:

1. – 20.        (Canceled)

21.        (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism and an opposing

second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame;

wherein the canopy, the loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric.

22.     (Previously Presented)  The system of claim 21, wherein the canopy is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

23.     (Previously Presented)  The system of claim 22, wherein the plurality of sheets of material are selectively engageable sections.

24.     (Previously Presented)  The system of claim of claim 21, wherein the canopy has at least one set of parallel sides.

25.     (Canceled)

26.     (Previously Presented)  The system of claim 21, wherein the canopy comprises one or more vent holes defined within the canopy, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27.     (Canceled)

28.     (Previously Presented)  The system of claim 21, wherein the one or more adjacent sections of the frame comprises a plurality of longitudinally-extending sections.

29.     (Currently Amended)  The system of claim 21, wherein one or both of the first and second securing mechanisms are capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with ~~being engaged to~~ itself when the portion of the frame is accepted through the loop.

WBD (US) 63432147v3

30. (Previously Presented) The system of claim 21, wherein the at least one aligning component comprises a cable extending through and affixed to the one or more adjacent sections of the frame of the frame.

31. (Canceled)

32. (Canceled)

33. (Canceled)

34. (Canceled)

35. (Previously Presented) The system of claim 21, wherein the frame is directly engageable with the surface.

36. (Canceled)

37. (Canceled)

38. (Previously Presented) The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the canopy.

39. (Previously Presented) The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

WBD (US) 63432147v3

40.    (Previously Presented)  The system of claim 39, wherein the first end of the cord is coupleable to the trailing end of the canopy and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

41.    (Previously Presented) The system of claim 21, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

42.    (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the

supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety of a length of the suspension end of the canopy,

wherein, for securing the canopy into position relative to the frame, a portion of the loop at one end of the length of the suspension end of the canopy defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with being engaged to itself when the portion of the frame is accepted through the loop.

43.     (Previously Presented) The system of claim 42, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

44.     (Previously Presented) The system of claim 42, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

45.     (Previously Presented)       The system of claim 42, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

46.     (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and an intermediate plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the intermediate plurality of sections being substantially the same length and a majority of the intermediate plurality of sections having one or both of a male end and a female end making the intermediate plurality of sections thereby

engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface; and

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the at least one fastener is a loop configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop defining the suspension end of the canopy and extending along a length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism and an opposing second end of the loop defines a second securing mechanism for securing the canopy into position relative to the frame.

47.    (Currently Amended) The system of claim 46, wherein one or both of the first and second securing mechanisms are capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with ~~being engaged to~~ itself when the portion of the frame is accepted through the loop.

48.    (Previously Presented) The system of claim 46, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

49.    (Previously Presented)    The system of claim 46, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a

WBD (US) 63432147v3

counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

50.    (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, a portion each of the plurality of sections positioned between the left end and the right end having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface; and

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame,

wherein, for securing the canopy into position relative to the frame, a portion of the loop at one of the left and right ends of the canopy defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with being engaged to itself when the portion of the frame is accepted through the loop.

51.    (Previously Presented) The system of claim 50, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

52.     (Previously Presented) The system of claim 50, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

53.     (Previously Presented)       The system of claim 50, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

54.     (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising a cable extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end; and

a loop extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the left or right end of the loop that secures the canopy in position relative to the frame forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with engaged to itself.

55.     (Previously Presented) The system of claim 54, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

56.     (Previously Presented) The system of claim 54, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

57.     (Previously Presented)      The system of claim 54, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

58.     (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising a cable extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end; and

a loop extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the left or right ends of the loop that secures the canopy in position relative to the frame is wrapped or folded about one of the adjacent sections of the frame and brought into contact with~~engaged to~~ itself, the one of the adjacent sections of the frame being adjacent to the first section of the frame with the corkscrew shape or the second section of the frame with the corkscrew shape.

WBD (US) 63432147v3

59.    (Previously Presented) The system of claim 58, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

60.    (Previously Presented) The system of claim 58, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

61.    (Previously Presented)    The system of claim 58, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

62.    (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent

sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface;

a loop defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame without an additional fastener to secure the canopy into position relative to the frame, the loop extending an entire length of the suspension end of the canopy; and

a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

63.     (Previously Presented) The system of claim 62, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

64.     (Previously Presented) The system of claim 62, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

65.     (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of

WBD (US) 63432147v3

the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the at least one fastener is a loop extending a substantial entirety of aan entire length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the loop only uses friction between the frame and the canopy to secure the canopy in position relative to the frame; and

a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

66.    (Previously Presented) The system of claim 65, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

67.    (Previously Presented) The system of claim 65, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

68.    (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising a cable extending through at least one of the plurality of sections therethrough, each but one of the plurality of sections having the cable extending therethrough being longitudinally-extending between a first end and a second end, the first end having a diameter smaller than a diameter of the second end, and being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left

end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end; and

a loop extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position relative to the frame.

69. (Previously Presented) The system of claim 68, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

70. (Previously Presented) The system of claim 68, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

71. (Previously Presented) The system of claim 68, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

72. (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections <u>being substantially the same in length and</u> coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a<u>n aligning component</u> ~~cable~~ extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface;

a loop defined by the suspension end of the canopy and configured for engaging a portion of the frame and ~~a loop defined by the suspension end of the canopy and configured~~ for fastening the canopy to the frame~~, the loop configured for engaging extending a smaller distance of the suspension end of the canopy relative to the loop configured for fastening the canopy to the frame~~; and

a container capable of housing and transporting the components of the system therein ~~as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration~~.

73.    (Previously Presented) The system of claim 72, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

WBD (US) 63432147v3

74.     (Previously Presented) The system of claim 72, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

75.     (Currently Amended) A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein the at least one fastener is a loop defined by the suspension end of the canopy and forming a securing mechanism configured for engaging a portion of the frame and a loop defined by the suspension end of the canopy and configured for fastening the canopy to the frame, the loop configured for engaging extending a smaller distance of the suspension end of the canopy relative to the loop configured for fastening the canopy to the frame; and

a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration,

wherein the canopy, the loop, and the securing mechanism are formed entirely of fabric.

76.    (Previously Presented) The system of claim 75, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

77.    (Previously Presented) The system of claim 75, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

78.    (New)  The system of claim 62, further comprising an anchor member configured for housing weight and positioned adjacent to the left end of the frame and an anchor member configured for housing weight and positioned adjacent to the right end of the frame for further securing the frame into position.

79.    (New)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising an aligning component extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the

WBD (US) 63432147v3

supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface;

a loop defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy; and

an anchor member configured for housing weight and positioned adjacent to the left end of the frame and an anchor member configured for housing weight and positioned adjacent to the right end of the frame for further securing the frame into position.

80.    (New)  The system of claim 79, wherein the aligning component comprises a cable.

81.    (New)  The system of claim 79, wherein the anchor members are coupled to the canopy to secure the canopy in position for providing shade onto the surface.

82.    (New)  The system of claim 81, wherein the anchor members are arranged on opposing sides of the canopy adjacent the suspension end.

WBD (US) 63432147v3

## REMARKS

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the claim amendments and the remarks that follow. Claims 1-20, 25, 27, 31-34, 36, and 37 were previously canceled. With this Amendment, claims 21, 46, 50, 54, 62, 65, 68, 72, and 75 are amended and claims 78-82 are now added. As such, claims 21-24, 26, 28-30, 35, and 38-82 are pending following this Amendment.

### New Claims

New independent claim 79 is now added. Support for new claim 79 is based off of independent claim 62 and col. 7, lines 17-22 of the parent patent (US 10,190,330). New dependent claims 80-82 depend from claim 79, while new dependent claim 78 depends from independent claim 62. Support for these claims is found in at least, for example, col. 6, lines 17-31 of U.S. Patent No. 10,190,330. No new matter has been added. For at least the reasons discussed, the new claims recite patentable subject matter and should be allowed at this time.

### Claim Rejections – 35 USC § 103

**Claims 21, 22, 26, 28, 30, 35, 38, and 39 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.**

Independent claim 21 is the independent claim from which claims 22, 26, 28, 30, 35, 38, and 39 depend. Independent claim 21 is amended to further define the system and recites at least the following elements:

1. a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface.

2. wherein the canopy, the loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric. Support for this amendment is found in at least, for example, col. 4, lines 58-64 of U.S. Patent No. 10, 190,330.

*The cited combination of references does not disclose a frame including a plurality of sections, a first section defining a corkscrew shape and a last section defining a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 4. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees.

Warth discloses a dog umbrella adapted to protect a dog against sun and provide means for securing a dog against wandering. Warth discloses a conventional umbrella 11 mounted on a shaft 2. *See, e.g.,* col. 1, lines 53-56 of Warth.

Applicant respectfully submits that one of ordinary skill in the art would not be motivated to modify Kang with Warth to include a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface as doing so would change the principle of operation of Kang, counter to MPEP § 2143.01(VI), which states that "[i]f the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims *prima facie* obvious." *In re Ratti,* 270 F.2d 810, 813, 123 USPQ 349, 352 (CCPA 1959).

In particular, the pole 100 in Kang requires a cylindrical fitting 110 specifically shaped to be inserted through a center of a fitting ring 3 formed on a support piece 220 of the canopy and then snugly received by a fitting groove 110a of a pile 320 driven into the ground. *See, e.g.,* FIG. 2 of Kang, below. Kang discloses that this arrangement is used to "strengthen" the sunscreen 200 as the fitting ring 3 of the sunscreen is sandwiched between the cylindrical fitting 110 and the

pile 320, and that the fitting groove 110a acts to prevent damage to the fitting protrusion 110 passing through the fitting ring 3 to be more firmly fixed to the ground.



FIG. 2 of Kang

Accordingly, any modification to this arrangement in Kang (i.e., changing the cylindrical fitting 110 to be the claimed corkscrew shape via the skewer 35 and the shaft 12 in Warth), would require changing the sunscreen 200 so that the fitting ring 3 is no longer sandwiched between the cylindrical fitting 110 and the pile 320, and would thereby result in changing the principle of operation of Kang as the fitting 110 would no longer able to be inserted (without significant effort) through a center of the fitting ring 3 and then snugly received by a fitting groove 110a of a pile 320 driven into the ground. Without this type of connection, the sunscreen 200 in Kang would slide around on the pole 100 and could not be secured to the pole 100. Thus, such a change to the principle of operation of Kang would be insufficient to render independent claim 21 *prima facie* obvious.

*The cited combination of references does not disclose that the canopy, the loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric.*

The examiner cites Kang as allegedly disclosing the claimed canopy, loop, the first securing mechanism, and the second securing mechanism. *See, e.g.,* Office Action page 3. In particular, the examiner alleges that the claimed first and second securing mechanisms are met by the fabric piece 220 in Kang. However, the fabric piece 220 in Kang is specifically described as having a fitting ring 3 formed by compressing and punching two rings to one part 3 (e.g., a grommet, which is traditionally metal). As such, Kang does not disclose that the claimed canopy, loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric, as claimed. Nothing in Joo-Tai or Warth cures this deficiency in Kang.

Consequently, and for at least these reasons, independent claim 21 (and claims 22, 26, 28, 30, 35, 38, and 39) is/are not rendered obvious by Kang separately or in combination with Joo-Tai and/or Warth. Applicant respectfully requests that this rejection be withdrawn.

**Claims 42-44 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962 and Knipschild in US Publication 2009/0114260.**

Independent claim 42 is the independent claim from which claims 43 and 44 depend. Independent claim 42 is amended to further define the securing mechanism, and recites at least the following elements:

1. a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface.

2. a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and being brought into contact with itself when the portion of the frame is accepted through the loop.

*The cited combination of references does not disclose a frame including a plurality of sections, a first section defining a corkscrew shape and a last section defining a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 7. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21. Knipschild does not provide any disclosure that cures this deficiency in Warth.

*The cited combination of references does not disclose securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on the use of a securing mechanism that fastens to itself. *See, e.g.,* Office Action page 7. Knipschild is cited as allegedly curing this deficiency. Applicant respectfully disagrees.

Knipschild discloses an apparatus for providing sun protection. Knipschild includes two arched poles that are crossed at their apices. The examiner cites to FIG. 1 and paragraph [0027] of Knipschild as allegedly disclosing a securing mechanism 26 capable of wrapping or folding about one of the adjacent sections of the frame 4. However, the straps 26 are not (1) defined by a portion of a loop at one end of the length of the suspension end, and are (2) not brought into contact with themselves.

WBD (US) 63432147v3

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 303 of 551



Firstly, the apparatus in Knipschild does not even have a loop within the meaning of the independent claim. Instead, the rods 4 in Knipschild are retained by connecting struts 16 that are clipped to the individual rods 4. *See, e.g.,* paragraph [0025] of Knipschild. The cross-struts 16 are then inserted into pockets 20 on the lateral longitudinal edge 21 or sewn into pockets 22. Thus, there is no portion of a loop in Knipschild that defines a securing mechanism.

Applicant notes that even if one could argue that the pockets 20, 22 in Knipschild met the claimed element of a loop, these pockets 20, 22 do not define the straps 26, allegedly meeting the claimed element of the securing mechanism.

Regardless, the alleged straps 26 in Knipschild are not capable of wrapping or folding about one of the adjacent sections of the frame and being brought into contact with itself when the portion of the frame is accepted through the loop. In fact, the strap 26 attaches to another, separate strap 26, and is not brought into contact with itself. This is illustrated in FIG. 5 of Knipschild where it can be clearly seen how there are two separate straps 26, such that the first strap 26 is not brought into contact with itself, but rather engages a second strap that is sewn to the canopy 3. Thus, the straps 26 in Knipschild do not meet the claimed element of the securing mechanism.

WBD (US) 63432147v3



Fig. 5

Moreover, there is no suggestion or motivation to modify Kang to include <u>a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop</u> as doing so would change the principle of operation of Kang, counter to MPEP § 2143.01(VI), which states that "[i]f the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims *prima facie* obvious." *In re Ratti*, 270 F.2d 810, 813, 123 USPQ 349, 352 (CCPA 1959).

In particular, the cylindrical fitting 110 in Kang is specifically shaped to be inserted through a center of a fitting ring 3 formed on a support piece 220 of the canopy and then snugly received by a fitting groove 110a of a pile 320 driven into the ground in order to "strengthen" the sunscreen 200 as the fitting ring 3 of the sunscreen is sandwiched between the cylindrical fitting 110 and the pile 320.



FIG. 2 of Kang

Accordingly, any modification to this arrangement in Kang (i.e., changing the fitting ring 3 and support piece 220 to be the strap 26 in Knipschild), would require changing the sunscreen 200 so that either (1) there is no longer a cylindrical fitting 110 piercing the strap 26 or (2) the cylindrical fitting 110 pierces the strap. This would then result in changing the principle of operation of Kang as (1) without the fitting 110, nothing would be inserted into the pile 320 and there would be no way to secure the frame in the ground, and (2) with the cylindrical fitting 110 piercing the strap 26, then the strap 26 would be compromised and wouldn't be strong enough to retain the sunscreen in position.  In either of these situations, the sunscreen 200 in Kang would slide around on the pole 100, could not be secured to the pole 100, and might not be secured to the ground. Further, either of these modifications to Kang would not result in the claimed element, i.e., a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop. Thus, such a change to the principle of operation of Kang would be insufficient to render independent claim 21 *prima facie* obvious.

WBD (US) 63432147v3

Consequently, and for at least these reasons, independent claim 42 (and claims 43-44) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Knipschild. Applicant respectfully requests that this rejection be withdrawn.

**Claims 46 and 48 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962. Applicant traverses this rejection**.

Independent claim 46 is the independent claim from which claim 48 depends. Independent claim 46 is amended to clarify the frame and now recites at least the following elements:

1.  a frame defined by a plurality of sections that include a left end, a right end, and an intermediate plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the intermediate plurality of sections being substantially the same length and a majority of the intermediate plurality of sections having both of a male end and a female end making the intermediate plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface. Support for this claim amendment is found in at least, for example, FIG. 3 and the corresponding description of US Patent No. 10,190,330. Thus, no new matter has been added.

*The cited combination of references does not disclose a frame with a majority of the intermediate sections having both a male end and a female end.*

The examiner acknowledges that Kang is silent on the use of a multi-part frame. *See, e.g.,* Office Action page 9. Joo-Tai is cited as allegedly curing this deficiency. Applicant respectfully disagrees.

Joo-Tai discloses tent poles includes pipes 1', 1" formed of a fiberglass-reinforced plastic and combined with each other by means of a coupler 7. The examiner argues that the finishing

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 307 of 551

portion 3 on the pipe 1' meets the claimed element of a male end, while the coupler 7 meets the claimed element of a female end. However, and as now amended, the claim requires that each of the intermediate plurality of sections (1) are substantially the same length, and (2) a majority of the intermediate plurality of sections have both of a male end and a female end. Neither of these elements is disclosed by Joo-Tai. Regarding (1), i.e., the length of the sections, the coupler 7 is not substantially the same length as the pipes 1', 1". Regarding (2), i.e., a majority of the intermediate plurality of sections having both male ends and female ends, neither the coupler 7 nor the pipes 1', 1" have **both** a male end and a female end. Therefore, Joo-Tai is silent as to this element.

FIG. 1



_The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end having a corkscrew shape._

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 9. Warth is cited as allegedly curing this

deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21.

Consequently, and for at least these reasons, independent claim 46 (and claim 48) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, and/or Warth. Applicant respectfully requests that this rejection be withdrawn.

**Claims 50-52 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962 and Knipschild in US Publication 2009/0114260**.

Independent claim 50 is the independent claim from which claims 51 and 52 depend. Independent claim 50 is currently amended to further define the frame, and recites at least the following elements:

1.  <u>a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end …, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface</u>.

2.  <u>a portion of the plurality of sections positioned between the left end and the right end having both of a male end and a female end</u>. Support for this claim amendment can be found in at least, for example, FIG. 3 and the corresponding description of US Patent No. 10,190,330.

3.  <u>a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop</u>.

*<u>The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end having a corkscrew shape</u>.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 11. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in

WBD (US) 63432147v3

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 309 of 551

relation to independent claim 21. Knipschild does not provide any disclosure that cures this deficiency in Warth.

*The cited combination of references does not disclose a frame with a portion of the plurality of sections including both a male end and a female end.*

The examiner acknowledges that Kang is silent on a multi-part frame. *See, e.g.,* Office Action page 10. Joo-Tai is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 46. Warth and/or Knipschild does not provide any disclosure that cures this deficiency in Kang as modified by Joo-Tai.

*The cited combination of references does not disclose securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on the use of a securing mechanism that fastens to itself. *See, e.g.,* Office Action page 11. Knipschild is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 42.

Consequently, and for at least these reasons, independent claim 50 (and claims 51-52) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Knipschild. Applicant respectfully requests that this rejection be withdrawn.

**Claims 54-56 are is/are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.**

Independent claim 54 is the independent claim from which claims 55-56 depend. Independent claim 54 is amended to further define the loop and recites at least the following elements:

WBD (US) 63432147v3

1.  <u>a frame defined by a plurality of sections …, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface.</u>

2.  <u>wherein the left or right end of the loop that secures the canopy in position relative to the frame forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself.</u>

*<u>The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end having a corkscrew shape.</u>*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 13. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21.

*<u>The cited combination of references does not disclose securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself.</u>*

The examiner states that the sleeve 212 in Kang is inherently fastened to itself to form the tunnel of the sleeve. Applicant respectfully disagrees. The sleeve 212 in Kang is formed by wrapping a longitudinal end of the canopy over and sewing it to the canopy to create a channel. This differs from the claimed element, where the left or right **ends of the loop** form a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself (meaning the loop, not the canopy). In other words, the claim refers to an additional wrapping or folding that forms a securing mechanism in addition to the forming of the loop. Kang does not disclose such an additional wrapping or folding.

Consequently, and for at least these reasons, independent claim 54 (and claims 55-56) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, and/or Warth. Applicant respectfully requests that this rejection be withdrawn.

WBD (US) 63432147v3

**Claims 58-60 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Knipschild in US Publication 2009/0114260.**

Independent claim 58 is the independent claim from which claims 59 and 60 depend. Independent claim 58 recites at least the following elements:

1. <u>a frame defined by a plurality of sections …, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface</u>.

2. <u>wherein the left or right ends of the loop that secures the canopy in position relative to the frame is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself, the one of the adjacent sections of the frame being adjacent to the first section of the frame with the corkscrew shape or the second section of the frame with the corkscrew shape</u>.

*<u>The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end having a corkscrew shape.</u>*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action pages 14-15. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21. Knipschild does not provide any disclosure that cures this deficiency in Warth.

*<u>The cited combination of references does not disclose left or right ends of the loop that secures the canopy in position relative to the frame being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself, the one of the adjacent sections of the frame being adjacent to the first section of the frame with the corkscrew shape or the second section of the frame with the corkscrew shape.</u>*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on the use of a securing mechanism that fastens to itself. *See, e.g.,* Office Action page 15. Knipschild is cited as

allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 42.

Consequently, and for at least these reasons, independent claim 58 (and claims 59-60) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Knipschild. Applicant respectfully requests that this rejection be withdrawn.

**Claims 62-64 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.**

Independent claim 62 is the independent claim from which claims 63-64 depend. Independent claim 62 is amended to clarify how the canopy is engageable with the frame, and now recites at least the following elements:

1. _a loop defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame without an additional fastener to secure the canopy into position relative to the frame, the loop extending an entire length of the suspension end of the canopy._ Support for this amendment can be found in at least, for example, col. 4, lines 7-34 of the parent patent, US Patent No. 10, 190,330.

2. _a frame including a plurality of sections ... the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface._

_The cited combination of references does not disclose a loop defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame without an additional fastener to secure the canopy into position relative to the frame, the loop extending an entire length of the suspension end of the canopy._

Applicant respectfully submits that Kang, separately or in combination with Joo-Tai, Warth, and Furey does not disclose a loop as claimed. In Kang, cylindrical fittings 110 act as fasteners in addition to the sewing hole 212. Thus, Kang is silent as to a loop defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame **without an additional fastener to secure the canopy into position relative to the frame**, the loop extending an entire length of the suspension end of the canopy. Joo-Tai is also silent as to this element as it discloses only a pole, while Furey is directed to a conventional beach umbrella without a suspension end and a loop as claimed. Warth, as described above in reference to independent claim 21, does not disclose a loop whatsoever. Therefore, Applicant respectfully submits that the cited combination of references does not disclose the claimed loop.

*The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end with a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 17. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21. Nothing in Furey cures this deficiency in modified Warth.

Consequently, and for at least these reasons, independent claim 62 (and claims 63-64) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claims 65-67 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.**

Independent claim 65 is the independent claim from which claims 66-67 depend. Independent claim 65 is amended to clarify how the canopy is engageable with the frame and now recites at least the following elements:

WBD (US) 63432147v3

1. wherein the at least one fastener is a loop extending a substantial entirety of a length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the loop **only** uses friction between the frame and the canopy to secure the canopy in position relative to the frame. Emphasis Added. Support for this amendment can be found in at least, for example, col. 4, lines 7-34 of the parent patent, US Patent No. 10,190,330.

2. a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end …, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface.

*The cited combination of references does not disclose wherein the at least one fastener is a loop extending a substantial entirety of a length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the loop **only** uses friction between the frame and the canopy to secure the canopy in position relative to the frame.*

Applicant respectfully submits that Kang, separately or in combination with Joo-Tai, Warth, and Furey does not disclose a loop as claimed. In Kang, cylindrical fittings 110 act as fasteners in addition to the sewing hole 212. Thus, Kang is silent as to a loop that **only** uses friction between the frame and the canopy to secure the canopy in position relative to the frame. Joo-Tai is also silent as to this element as it discloses only a pole, while Furey is directed to a conventional beach umbrella without a suspension end and a loop as claimed. Warth, as described above in reference to independent claim 21, does not disclose a loop whatsoever. Therefore, Applicant respectfully submits that the cited combination of references does not disclose the claimed loop.

*The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end has a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 19. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21. Nothing in Furey cures this deficiency in modified Warth.

Consequently, and for at least these reasons, independent claim 65 (and claims 66-67) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claims 68-70 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.**

Independent claim 68 is the independent claim from which claims 69-70 depend. Independent claim 68 is amended to further define the frame and recites at least the following element(s):

1. a frame defined by a plurality of sections and comprising a cable extending through at least one of the plurality of sections, each but one of the plurality of sections having the cable extending therethrough being longitudinally-extending between a first end and a second end, the first end having a diameter smaller than a diameter of the second end, and being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface. Support for these amendments can be found in at least, for example, dependent claim 30 and FIG. 3 and the corresponding description of U.S. Patent No. 10,190,330.

*The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end has a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 21. Warth is cited as allegedly curing this

WBD (US) 63432147v3

deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21.

*The cited combination of references does not disclose a frame with each but one of the plurality of sections having the cable extending therethrough being longitudinally-extending between a first end and a second end, the first end having a diameter smaller than a diameter of the second end.*

The examiner acknowledges that Kang is silent on a multi-part frame. *See, e.g.,* Office Action page 21. Joo-Tai is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 46. Warth does not provide any disclosure that cures this deficiency in Kang as modified by Joo-Tai.

Consequently, and for at least these reasons, independent claim 68 (and claims 69-70) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, and/or Warth. Applicant respectfully requests that this rejection be withdrawn.

**Claims 72-74 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.**

Independent claim 72 is the independent claim from which claims 73-74 depend. Independent claim 72 is amended to further define the loop and recites at least the following element(s).

1. a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface.

2. one or more adjacent sections being substantially the same in length and coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising an aligning component extending therethrough and

WBD (US) 63432147v3

<u>providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration.</u> Support for this amendment can be found in at least, for example, dependent claim 30 and FIG. 3 and the corresponding description of U.S. Patent No. 10,190,330.

*The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end with a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 23. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21. Nothing in Furey cures this deficiency in modified Warth.

*The cited combination of references does not disclose a frame including one or more adjacent sections being substantially the same in length and coupled into alignment.*

The examiner acknowledges that Kang is silent on a multi-part frame. *See, e.g.,* Office Action page 22. Joo-Tai is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 46. Warth and/or Furey does not provide any disclosure that cures this deficiency in Kang as modified by Joo-Tai.

Consequently, and for at least these reasons, independent claim 72 (and claims 73-74) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claims 75-77 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.**

WBD (US) 63432147v3

Independent claim 75 is the independent claim from which claims 76-77 depend. Independent claim 75 is amended to further define the at least one fastener and recites at least the following elements:

1. a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end ..., wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface.

2. wherein the at least one fastener is a loop defined by the suspension end of the canopy and forming a securing mechanism configured for engaging a portion of the frame and for fastening the canopy to the frame, ... wherein the canopy, the loop, and the securing mechanism are formed entirely of fabric. Support for this claim amendment is found in at least for example, col. 4, lines 7-64 of U.S. Patent No. 10,190,330.

*The cited combination of references does not disclose a frame including a plurality of sections, a left end and a right end having a corkscrew shape.*

The examiner acknowledges that Kang, as modified by Joo-Tai, is silent on corkscrew shaped ends of the frame. *See, e.g.,* Office Action page 25. Warth is cited as allegedly curing this deficiency. Applicant respectfully disagrees and cites to the arguments presented hereinabove in relation to independent claim 21. Nothing in Furey cures this deficiency in modified Warth.

*The cited combination of references does not disclose that the canopy, the loop, and the securing mechanism are formed entirely of fabric.*

The examiner cites Kang as allegedly disclosing the claimed canopy and loop. *See, e.g.,* Office Action page 24. Yet, Kang does not does that the canopy, the loop and any securing mechanism is formed entirely of fabric as discussed hereinabove in relation to independent claim 21. Nothing in Warth or Furey cures this deficiency in modified Kang.

Consequently, and for at least these reasons, independent claim 75 (and claims 76-77) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 29 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to claim 21 above, and further in view of Knipschild in US Publication 2009/0114260.**

Claim 29 depends on independent claim 21. As discussed hereinabove in relation to independent claim 21, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 21. Nothing in Knipschild cures this deficiency in modified Kang. Therefore, claim 29 is also not rendered obvious by Kang as modified and in further view of Knipschild. Applicant respectfully requests that this rejection be withdrawn.

**Claims 23 and 24 rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above in view of Sotirkys et al. in US Patent 7789097.**

Claims 23 and 24 depend on independent claim 21. As discussed hereinabove in relation to independent claim 21, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 21. Nothing in Sotirkys cures this deficiency in modified Kang. Therefore, claims 23 and 24 are also not rendered obvious by Kang as modified and in further view of Sotirkys. Applicant respectfully requests that this rejection be withdrawn.

**Claims 38-40 are rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above in view of Beatty in US Patent 3070107.**

Claims 38 and 40 depend on independent claim 21. As discussed hereinabove in relation to independent claim 21, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 21. Nothing in Beatty cures this deficiency in modified Kang. Therefore, claims 38 and 40 are also not rendered obvious by Kang as modified and in further view of Beatty. Applicant respectfully requests that this rejection be withdrawn.

WBD (US) 63432147v3

**Claim 41 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above, and further in view of Furey in US Patent 4924893.**

Claim 41 depends on independent claim 21. As discussed hereinabove in relation to independent claim 21, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 21. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 41 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 45 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 42 above, and further in view of Furey in US Patent 4924893.**

Claim 45 depends on independent claim 42. As discussed hereinabove in relation to independent claim 42, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 42. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 45 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 47 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to claim 46 above, and further in view of Knipschild in US Publication 2009/0114260.**

Claim 47 depends on independent claim 46. As discussed hereinabove in relation to independent claim 46, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 42. Nothing in Knipschild cures this deficiency in modified Kang. Therefore, claim 47 is also not rendered obvious by Kang as modified and in further view of Knipschild. Applicant respectfully requests that this rejection be withdrawn.

WBD (US) 63432147v3

**Claim 49 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 46 above, and further in view of Furey in US Patent 4924893.**

Claim 49 depends on independent claim 46. As discussed hereinabove in relation to independent claim 46, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 46. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 49 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 53 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 50 above, and further in view of Furey in US Patent 4924893.**

Claim 53 depends on independent claim 50. As discussed hereinabove in relation to independent claim 50, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 50. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 53 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 57 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 54 above, and further in view of Furey in US Patent 4924893.**

Claim 57 depends on independent claim 54. As discussed hereinabove in relation to independent claim 54, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 54. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 57 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 61 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 58 above, and further in view of Furey in US Patent 4924893.**

WBD (US) 63432147v3

Claim 61 depends on independent claim 58. As discussed hereinabove in relation to independent claim 58, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 58. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 61 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Claim 71 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 68 above, and further in view of Furey in US Patent 4924893.**

Claim 71 depends on independent claim 68. As discussed hereinabove in relation to independent claim 68, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 68. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 71 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

WBD (US) 63432147v3

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 323 of 551

## CONCLUSION

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

Respectfully submitted,

/lauren f. anderson/

Lauren F. Anderson
Registration No. 69,344

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

**ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT & TRADEMARK OFFICE ON AUGUST 22, 203.**

WBD (US) 63432147v3

PTO/SB/434 (3-22)

## CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE
## AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0

| Practitioner Docket No.:<br>S105508 1010US.C8 (0040.5) | Application No.:<br>18/072,143 | Filing Date:<br>November 30, 2022 |
|---|---|---|
| First Named Inventor:<br>Dane Brooks Barnes | Title:<br>SHADING SYSTEM AND METHOD OF USE | |

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1.  The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2.  The above-identified application contains an outstanding final rejection.

3.  Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4.  This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5.  Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6.  This certification and request is being filed electronically using the USPTO's patent electronic filing system.

7.  Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8.  By filing this certification and request, applicant acknowledges the following:

    *   Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
    *   The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
        *   The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
        *   If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, then the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
            *   The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
            *   If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature<br>/Lauren F. Anderson/ | Date<br>August 22, 2023 | Practitioner Registration No.<br>69,344 |
|---|---|---|
| Name (Print/Typed)<br>Lauren F. Anderson | Telephone Number<br>(919) 755-8127 | |

***Note***: *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below\*.*

☐ \* Total of _____ forms are submitted.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 325 of 551

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.



UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

| 26158 | 7590 | 08/29/2023 |
|---|---|---|

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/29/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Advisory Action*** <br> ***Before the Filing of an Appeal Brief*** | 18/072,143 | Barnes et al. |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | NOAH C HAWK | 3636 | Yes |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED <u>22 August 2023</u> FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.
<u>NO NOTICE OF APPEAL FILED</u>

1. ☑ The reply was filed after a final rejection. No Notice of Appeal has been filed. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114 if this is a utility or plant application. Note that RCEs are not permitted in design applications. The reply must be filed within one of the following time periods:

a) ☐ The period for reply expires ____ months from the mailing date of the final rejection.

b) ☑ The period for reply expires on: (1) the mailing date of this Advisory Action; or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

c) ☐ A prior Advisory Action was mailed more than 3 months after the mailing date of the final rejection in response to a first after-final reply filed within 2 months of the mailing date of the final rejection.The current period for reply expires ____ months from the mailing date of *the prior Advisory Action* or SIX MONTHS from the mailing date of the final rejection, whichever is earlier.

> *Examiner Note*: If box 1 is checked, check either box (a), (b) or (c). ONLY CHECK BOX (b) WHEN THIS ADVISORY ACTION IS THE <u>FIRST</u> RESPONSE TO APPLICANTS <u>FIRST</u> AFTER-FINAL REPLY WHICH WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. ONLY CHECK BOX (c) IN THE LIMITED SITUATION SET FORTH UNDER BOX (c). See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) or (c) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☑ The proposed amendments filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

a) ☑ They raise new issues that would require further consideration and/or search (see NOTE below);

b) ☐ They raise the issue of new matter (see NOTE below);

c) ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

d) ☐ They present additional claims without canceling a corresponding number of finally rejected claims.

> NOTE: <u>See Continuation Sheet</u> (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☑ For purposes of appeal, the proposed amendment(s):(a)☑ will not be entered, or (b)☐ will be entered, and an explanation of how the new or amended claims would be rejected is provided below or appended.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____

9. ☐ The affidavit or other evidence filed after final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

10. ☐ The affidavit or other evidence filed after the date of filing the Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing of good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

11. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

12. ☐ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: _____.

13. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

14. ☑ Other: <u>Note the attached After-Final Consideration Pilot (PTO-2323) Paper No. 20230824</u>.

<u>STATUS OF CLAIMS</u>

15. The status of the claim(s) is (or will be) as follows:
Claim(s) allowed:_____.
Claim(s) objected to:_____.
Claim(s) rejected:<u>21-24,26,28-30,35 and 38-77</u>.
Claim(s) withdrawn from consideration:_____.

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 328 of 551

Continuation of 3. NOTE: The new issues not previously considered include new claims 78-82 and the new limitations in Claims 21 and 62

| AFCP 2.0 Decision | Application No. | Applicant(s) | |
|---|---|---|---|
| | 18/072,143 | Barnes et al. | |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | NOAH C HAWK | 3636 | Yes |

This is in response to the After Final Consideration Pilot request filed <u>22 August 2023</u>.

1. **Improper Request** – The AFCP 2.0 request is improper for the following reason(s) and the after final amendment submitted with the request will be treated under pre-pilot procedure.

   ☐ An AFCP 2.0 request form PTO/SB/434 (or equivalent document) was not submitted.

   ☐ A non-broadening amendment to at least one independent claim was not submitted.

   ☐ The request is not the first proper AFCP 2.0 request submitted in response to the most recent final rejection.

   ☐ Other: _____

2. **Proper Request**

   **A.** After final amendment submitted with the request will not be treated under AFCP 2.0.
   The after final amendment cannot be reviewed and a search conducted within the guidelines of the pilot program.

   ☑ The after final amendment will be treated under pre-pilot procedure.

   **B.** Updated search and/or completed additional consideration.
   The examiner performed an updated search and/or completed additional consideration of the after final amendment within the time authorized for the pilot program. The result(s) of the updated search and/or completed additional consideration are:

   ☐ 1. All of the rejections in the most recent final Office action are overcome and a Notice of Allowance is issued herewith.

   ☐ 2. The after final amendment would not overcome all of the rejections in the most recent final Office action . See attached interview summary for further details.

   ☐ 3. The after final amendment was reviewed, and it raises a new issue(s). See attached interview summary for further details.

   ☐ 4. The after final amendment raises new issues, but would overcome all of the rejections in the most recent final Office action. A decision on determining allowability could not be made within the guidelines of the pilot. See attached interview summary for further details, including any newly discovered prior art.

   ☐ 5. Other: _____

   Examiner Note: Please attach an interview summary when necessary as described above.

DO NOT ENTER: /NCH/ 08/24/2023

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:    S105508 1010US.C8 (0040.5)
Customer No.:    26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**AMENDMENT UNDER 37 C.F.R. § 1.116**

Sir:

In response to the final Office Action dated July 28, 2023, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks** begin on page 19 of this paper.

WBD (US) 63432147v3

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 331 of 551

**UNITED STATES
PATENT AND TRADEMARK OFFICE**

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION #<br>**18/072,143** | RECEIPT DATE / TIME<br>**08/29/2023 04:29:59 PM ET** | ATTORNEY DOCKET #<br>**S105508 1010US.C8 (0040.5** |
|---|---|---|

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 62697247 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD<br>DA / 090528 | PAYMENT TRANSACTION ID<br>E20238SG33249769 | PAYMENT AUTHORIZED BY<br>Shari Elofson |
|---|---|---|

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1801 | REQUEST FOR CONTINUED EXAMINATION (RCE) - 1ST REQUEST (SEE 37 CFR 1.114) | 1360.00 | 1 | 1360.00 |
| | | | TOTAL AMOUNT: | $1,360.00 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **08/29/2023 04:29:59 PM ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 62697247 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S105508_1010US_C8_0040_5_RCE.pdf | 3 | Request for Continued Examination (RCE) | 1628 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_RCE.pdf | 97487CBA1CF89F80FBEBE836888EE285103BB9A70357A416C828D95981D2D44688DB383D8EE793341BF1C50C0B9EFADC89BF1826B12FAC5ABE03069E20A4A651 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized

by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 18/072,143 | Filing Date | 2022-11-30 | Docket Number (if applicable) | S105508 1010US.C8 (0040.5 | Art Unit | 3636 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Dane Brooks Barnes | | | Examiner Name | Noah Chandler Hawk | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

[X] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

     [ ] Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

     [X] Other    Response After Final Action filed August 22, 2023

[ ] Enclosed

     [ ] Amendment/Reply

     [ ] Information Disclosure Statement (IDS)

     [ ] Affidavit(s)/ Declaration(s)

     [ ] Other _____

## MISCELLANEOUS

[ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months _____
(Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

[ ] Other _____

## FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
[X] The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to
Deposit Account No    090528

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

[X] Patent Practitioner Signature
[ ] Applicant Signature

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 336 of 551

EFS - Web 2.1.16

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Lauren F. Anderson/ | Date (YYYY-MM-DD) | 2023-08-29 |
| Name | Lauren F. Anderson | Registration Number | 69344 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EFS - Web 2.1.16

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| E04H 15/005, 15/60, 15/62 | 03/09/2023 | NCH |
| updated above | 09/27/2023 | NCH |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Considered and updated search for parent application 17/471658 | 03/09/2023 | NCH |
| Considered IDS filed 11/30/22 | 03/09/2023 | NCH |
| Please see attached PE2E search history | 03/09/2023 | NCH |
| Performed inventor name search in DAV | 03/09/2023 | NCH |
| Considered IDS filed 4/14/23 and 6/5/23 | 07/23/2023 | NCH |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 339 of 551

| | **Index of Claims** | **Application/Control No.**<br><br>18/072,143 | **Applicant(s)/Patent Under Reexamination**<br><br>Barnes et al. |
|---|---|---|---|
| | | **Examiner**<br><br>NOAH C HAWK | **Art Unit**<br><br>3636 |

| ✔ | **Rejected** | − | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | | | | | | |
| | 1 | − | − | − | | | | | | |
| | 2 | − | − | − | | | | | | |
| | 3 | − | − | − | | | | | | |
| | 4 | − | − | − | | | | | | |
| | 5 | − | − | − | | | | | | |
| | 6 | − | − | − | | | | | | |
| | 7 | − | − | − | | | | | | |
| | 8 | − | − | − | | | | | | |
| | 9 | − | − | − | | | | | | |
| | 10 | − | − | − | | | | | | |
| | 11 | − | − | − | | | | | | |
| | 12 | − | − | − | | | | | | |
| | 13 | − | − | − | | | | | | |
| | 14 | − | − | − | | | | | | |
| | 15 | − | − | − | | | | | | |
| | 16 | − | − | − | | | | | | |
| | 17 | − | − | − | | | | | | |
| | 18 | − | − | − | | | | | | |
| | 19 | − | − | − | | | | | | |
| | 20 | − | − | − | | | | | | |
| | 21 | ✓ | ✓ | ✓ | | | | | | |
| | 22 | ✓ | ✓ | ✓ | | | | | | |
| | 23 | ✓ | ✓ | ✓ | | | | | | |
| | 24 | ✓ | ✓ | ✓ | | | | | | |
| | 25 | ✓ | − | − | | | | | | |
| | 26 | ✓ | ✓ | ✓ | | | | | | |
| | 27 | ✓ | − | − | | | | | | |
| | 28 | ✓ | ✓ | ✓ | | | | | | |
| | 29 | ✓ | ✓ | ✓ | | | | | | |
| | 30 | ✓ | ✓ | ✓ | | | | | | |
| | 31 | ✓ | − | − | | | | | | |
| | 32 | ✓ | − | − | | | | | | |
| | 33 | ✓ | − | − | | | | | | |
| | 34 | ✓ | − | − | | | | | | |
| | 35 | ✓ | ✓ | ✓ | | | | | | |
| | 36 | ✓ | − | − | | | | | | |
| | 37 | ✓ | − | − | | | | | | |
| | 38 | ✓ | ✓ | ✓ | | | | | | |
| | 39 | ✓ | ✓ | ✓ | | | | | | |
| | 40 | ✓ | ✓ | ✓ | | | | | | |
| | 41 | | ✓ | ✓ | | | | | | |
| | 42 | | ✓ | ✓ | | | | | | |

*Index of Claims*

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | | | | | | |
| | 43 | | ✓ | ✓ | | | | | | |
| | 44 | | ✓ | ✓ | | | | | | |
| | 45 | | ✓ | ✓ | | | | | | |
| | 46 | | ✓ | ✓ | | | | | | |
| | 47 | | ✓ | ✓ | | | | | | |
| | 48 | | ✓ | ✓ | | | | | | |
| | 49 | | ✓ | ✓ | | | | | | |
| | 50 | | ✓ | ✓ | | | | | | |
| | 51 | | ✓ | ✓ | | | | | | |
| | 52 | | ✓ | ✓ | | | | | | |
| | 53 | | ✓ | ✓ | | | | | | |
| | 54 | | ✓ | ✓ | | | | | | |
| | 55 | | ✓ | ✓ | | | | | | |
| | 56 | | ✓ | ✓ | | | | | | |
| | 57 | | ✓ | ✓ | | | | | | |
| | 58 | | ✓ | ✓ | | | | | | |
| | 59 | | ✓ | ✓ | | | | | | |
| | 60 | | ✓ | ✓ | | | | | | |
| | 61 | | ✓ | ✓ | | | | | | |
| | 62 | | ✓ | ✓ | | | | | | |
| | 63 | | ✓ | ✓ | | | | | | |
| | 64 | | ✓ | ✓ | | | | | | |
| | 65 | | ✓ | ✓ | | | | | | |
| | 66 | | ✓ | ✓ | | | | | | |
| | 67 | | ✓ | ✓ | | | | | | |
| | 68 | | ✓ | ✓ | | | | | | |
| | 69 | | ✓ | ✓ | | | | | | |
| | 70 | | ✓ | ✓ | | | | | | |
| | 71 | | ✓ | ✓ | | | | | | |
| | 72 | | ✓ | ✓ | | | | | | |
| | 73 | | ✓ | ✓ | | | | | | |
| | 74 | | ✓ | ✓ | | | | | | |
| | 75 | | ✓ | ✓ | | | | | | |
| | 76 | | ✓ | ✓ | | | | | | |
| | 77 | | ✓ | ✓ | | | | | | |
| | 78 | | | ✓ | | | | | | |
| | 79 | | | ✓ | | | | | | |
| | 80 | | | ✓ | | | | | | |
| | 81 | | | ✓ | | | | | | |
| | 82 | | | ✓ | | | | | | |



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508<br>1010US.C8 (0040.5 | 1080 |

| | | | | |
|---|---|---|---|---|
| 26158 | 7590 | 10/06/2023 | | |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/06/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

<table>
<tr><td rowspan="2"><strong><em>Office Action Summary</em></strong></td><td colspan="2"><strong>Application No.</strong><br>18/072,143</td><td colspan="2"><strong>Applicant(s)</strong><br>Barnes et al.</td></tr>
<tr><td colspan="2"><strong>Examiner</strong><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br>3636</td><td><strong>AIA (FITF) Status</strong><br>Yes</td></tr>
</table>

<em>-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --</em>

**Period for Reply**

    A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>8/22/2023</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**    2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>21-24,26,28-30,35 and 38-82</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>21-24,26,28-30,35 and 38-82</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on <u>11/30/22</u> is/are: a)☐ accepted or b)☑ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
        a)☐ All    b)☐ Some**    c)☐ None of the:
        1.☐ Certified copies of the priority documents have been received.
        2.☐ Certified copies of the priority documents have been received in Application No. _____.
        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)  Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)  Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 343 of 551

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Continued Examination Under 37 CFR 1.114*

2.      A request for continued examination under 37 CFR 1.114, including the fee set forth in 37 CFR 1.17(e), was filed in this application after final rejection. Since this application is eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission filed on 8/22/2023 has been entered.

### *Drawings*

3.      The drawings are objected to under 37 CFR 1.83(a). The drawings must show every feature of the invention specified in the claims. Therefore, the anchors housing weight and connected to left and right ends of the frame as recited in Claims 78 and 79 must be shown or the feature(s) canceled from the claim(s). No new matter should be entered.

4.      Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure

number of an amended drawing should not be labeled as "amended." If a drawing figure

is to be canceled, the appropriate figure must be removed from the replacement sheet,

and where necessary, the remaining figures must be renumbered and appropriate

changes made to the brief description of the several views of the drawings for

consistency. Additional replacement sheets may be necessary to show the renumbering

of the remaining figures. Each drawing sheet submitted after the filing date of an

application must be labeled in the top margin as either "Replacement Sheet" or "New

Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner,

the applicant will be notified and informed of any required corrective action in the next

Office action. The objection to the drawings will not be held in abeyance.


### *Claim Rejections - 35 USC § 103*

5.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

6.      Claims 21, 22, 26, 28, 30, 35, 38, and 39 are rejected under 35 U.S.C. 103 as

being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent

6286531 and Warth in US Patent 3286962.

        a.      Regarding Claim 21, Kang teaches a system for providing shade onto a

        surface, the system comprising: a frame (100) with a left end engaged with the

        surface (at 110 on the left) and a right end engaged with the surface (at 110 on

the right) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy being engageable with the frame about one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration (see Fig. 2) for providing shade to the surface; and a loop (212) defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy such that when the portion of the frame is accepted through the loop then a first end of the loop defines a first securing mechanism (220 on one end) and an opposing second end of the loop defines a second securing mechanism (220 on the opposing end) for securing the canopy into position relative to the frame wherein the canopy, the loop, the first securing mechanism and the second securing mechanism are formed entirely of fabric (Kang teaches that the canopy and loop are integral pieces, that tape 220 is a "fabric piece" – there is no discussion of a "grommet" or the material used for element 3 in the fabric piece to indicate that it is anything other than fabric).

b.      Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2) and being maneuverable between a transport configuration (1) and a supporting configuration (2), the sections including: a first section (the leftmost section 2) defining a left end of the frame engageable with the surface; a last section (the rightmost section 2) defining a right end of the

frame engageable with the surface; and one or more adjacent sections(interior sections 2) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component (5) affixed to one or more adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

c.       Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) engaged with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

d.       Regarding Claim 22, Kang, as modified, teaches that the canopy is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

e.       Regarding Claim 26, Kang, as modified, teaches that the canopy comprises one or more vent holes (within 240) defined within the canopy, one or

more tails extending therefrom, one or more wind socks, or a combination

thereof.

f.        Regarding Claim 28, Kang, as modified, teaches (see Joo-Tai) that the

one or more adjacent sections of the frame comprises a plurality of longitudinally-

extending sections.

g.        Regarding Claim 30, Kang, as modified, teaches (see Joo-Tai) that the at

least one aligning component comprises a cable (Joo-Tai 5) extending through

and affixed to the one or more adjacent sections of the frame.

h.        Regarding Claim 35, Kang, as modified, teaches that the frame is directly

engageable with the surface.

i.        Regarding Claim 38, Kang, as modified, teaches a cord (330) having a

first end (at 310) and a second end (at 320), the first end or the second end of

the cord being coupleable (via 310) to the frame or the canopy.

j.        Regarding Claim 39, Kang, as modified, teaches an anchor (320)

coupleable to the other of the second end or the first end of the cord and being in

contact with the surface so that the frame remains engaged with the surface

when the wind is applied to the canopy.

7.        Claims 42--44 are rejected under 35 U.S.C. 103 as being unpatentable over KR

10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent

3286962 and Knipschild in US Publication 2009/0114260.

k.        Regarding Claim 42, Kang teaches a system for providing shade onto a

surface, the system comprising: a frame (100) with a left end engaged with the

surface (at 110 on the left) and a right end engaged with the surface (at 110 on

the right) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy being engageable with the frame about the sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and a loop (212) defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety of a length of the suspension end of the canopy, wherein, for securing the canopy into position relative to the frame, a portion of the loop at one end of the length of the suspension end of the canopy defines a securing mechanism (220) capable of wrapping or folding about the frame when the portion of the frame is accepted through the loop.

I.      Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2) and being maneuverable between a transport configuration (Fig. 1) and a supporting configuration (Fig. 3), the sections including: a first section (the leftmost section 2) defining a left end of the frame engaged with the surface; a last section (the rightmost section 2) defining a right end of the frame engaged with the surface; one or more adjacent sections (intermediate sections 2) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable (5) extending therethrough and providing supporting tension to the alignment in

the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

m.      Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

n.      Kang, as modified, is silent on the use of a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a securing mechanism (26) capable of wrapping or folding about one of the adjacent sections of a frame (4) and brought into contact with itself (see Fig. 1 and paragraph 0027). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

o.    Regarding Claim 43, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

p.    Regarding Claim 44, Kang, as modifies, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

8.    Claims 46 and 48 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.

q.    Regarding Claim 46, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) with a left end engaged with the surface (at 110 on the left) and a right end engaged with the surface (at 110 on the right) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including at least one fastener (212) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein the at least one fastener is a loop configured for accepting a portion of the frame therethrough for engaging the canopy with the frame (see Fig. 2), the loop defining the suspension end of the canopy and extending along a length of the suspension end of the canopy from the left end to the right end, such that when

the portion of the frame is accepted through the loop then a first end of the loop

defines a first securing mechanism (220 on one end) and an opposing second

end of the loop defines a second securing mechanism (220 on the opposite end)

for securing the canopy into position relative to the frame.

r.        Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame

defined by a plurality of sections (2) that include a left end (the leftmost section

2), a right end (the rightmost section 2), and an intermediate plurality of sections

(the intermediate sections 2) positioned between the left end and the right end

and comprising a cable (5) extending therethrough, each of the intermediate

plurality of sections being substantially the same length (see Fig. 1 – each of the

intermediate sections is defined as including 1 element 2 and 1 element 7, which

makes these sections all the same length) and a majority of the intermediate

plurality of sections having both of a male end (3) and a female end (7) making

the plurality of sections thereby engageable with at least one adjacent section to

define the frame in a supporting configuration (Fig. 3) and thereby disengageable

to define the frame in a transport configuration (Fig. 1). It would have been

obvious to one of ordinary skill in the art before the effective filing date of the

claimed invention to modify the device of Kang by using a multi-part frame as

taught by Joo-Tai in order to provide a more compact device for easier

transportation.

s.        Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth

teaches a frame with an end (35) effective for engaging with a surface and

having a corkscrew shape. It would have been obvious to one of ordinary skill in

the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

t.     Regarding Claim 48, Kang, as modified, teaches that the canopy defines one or more vent holes (with 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

9.     Claims 50-52 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962 and Knipschild in US Publication 2009/0114260.

u.     Regarding Claim 50, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) with left and right ends (at 110 on either side) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (the outer edges toward 201), the suspension end of the canopy including at least one fastener (220) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, a loop (212) defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame.

v.      Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) that include a left end (leftmost section 2), a right end (rightmost section 2), and a plurality of sections (intermediate sections 2) positioned between the left end and the right end and comprising a cable (5) extending therethrough, a portion of the plurality of sections (defined as including both an element 2 and an element 7) positioned between the left end and the right end having both of a male end (3) and a female end (7) making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

w.      Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

x.      Kang, as modified, is silent on the use of a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) with a securing mechanism (26) wherein, for securing the canopy into position relative to the frame, a portion of the canopy defines the securing mechanism (26) capable of wrapping or folding

about a frame (4) and brought into contact with itself when the portion of the frame is accepted through the loop (see Fig. 1 and paragraph 0027). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

y.      Regarding Claim 51, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

z.      Regarding Claim 52, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

10.    Claims 54-56 are is/are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.

aa.     Regarding Claim 54, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) with a left and right end (110 at each end) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 on either edge); and a loop (212) extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at

least partially supportable by wind in a first configuration for providing shade to the surface, wherein the left or right end of the loop that secures the canopy in position relative to the frame forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself (a sleeve such as 212 is inherently in contact with itself to form the tunnel of the sleeve).

bb.     Kang is silent on the use of a multi-part frame. Joo-Tai teaches a multi-part frame defined by a plurality of sections (2) and comprising a cable (5) extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

cc.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

dd.     Regarding Claim 55, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

ee.    Regarding Claim 56, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

11.    Claims 58-60 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Knipschild in US Publication 2009/0114260.

ff.    Regarding Claim 58, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100), a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 on either edge); and a loop (212) extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface.

gg.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) and comprising a cable (5) extending therethrough, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-

part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

hh.　　Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

ii.　　Kang, as modified, is silent on the use of a securing mechanism that fastens to itself. Knipschild teaches a canopy (3) having an end (26) that is wrapped or folded about a frame (4) and brought into contact with itself (see Fig. 1 and paragraph 0027). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by using a securing mechanism as taught by Knipschild in order to more securely fasten the canopy along the length of the frame.

jj.　　Regarding Claim 59, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

kk.　　Regarding Claim 60, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

12.　Claims 62-64 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

ll.      Regarding Claim 62, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100), and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy being engageable with the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; a loop (212) defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame with an additional fastener to secure the canopy into position relative to the frame (while there is another fastener on Kang, it is not part of the loop), the loop extending an entire length of the suspension end of the canopy.

mm.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2) and being maneuverable between a transport configuration (Fig. 1) and a supporting configuration (Fig. 3), the sections including: a first section (the leftmost section 2) defining a left end of the frame; a last section (the rightmost section 2) defining a right end of the frame; one or more adjacent sections (the intermediate sections 2) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable (5) extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport

configuration and the supporting configuration, the adjacent sections being configuration configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

nn.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

oo.     Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

pp.     Regarding Claim 63, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

qq.     Regarding Claim 64, Kang, as modified, teaches that the canopy defines one or more vent holes (within 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

13.     Claims 65-67 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

rr.     Regarding Claim 65, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 at either edge), the suspension end of the canopy including at least one fastener (212) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein the at least one fastener is a loop extending a substantial entirety of a length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position relative to the frame.

ss.     Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) that include a left end (the left most section

2), a right end (the rightmost section 2), and a plurality of sections (intermediate sections 2) positioned between the left end and the right end and comprising a cable (5) extending therethrough, each of the plurality of sections having one or both of a male end (3) and a female end (7) making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

tt.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

uu.     Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 362 of 551

container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

vv.     Regarding Claim 66, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

ww.     Regarding Claim 67, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

14.     Claims 68-70 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531 and Warth in US Patent 3286962.

xx.     Regarding Claim 68, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 at either edge); and a loop (212) extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein when the portion of the frame is accepted through the loop and engaged with the frame, the loop uses friction between the frame and the canopy to secure the canopy in position

relative to the frame (the friction between the loop and the frame will inherently provide some resistance to relative movement between the two).

yy.     Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2/7 and 2) and comprising a cable (5) extending through at least one of the plurality of sections, each but one (the last element 2 at one end) of the plurality of sections being having the cable extending therethrough being longitudinally-extending between a first end (the free end of 2) and a second end (the outer end of 7), the first end having a diameter smaller than a diameter of the second end and being engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

zz.     Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

aaa.   Regarding Claim 69, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

bbb.    Regarding Claim 70, Kang, as modified, teaches that the canopy defines

one or more vent holes (through 240), one or more tails extending from a side

opposite the suspension end, one or more wind socks, or a combination thereof.

15.    Claims 72-74 are rejected under 35 U.S.C. 103 as being unpatentable over KR

10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent

3286962, and Furey in US Patent 4924893.

ccc.    Regarding Claim 72, Kang teaches a system for providing shade onto a

surface, the system comprising: a frame (100) and a canopy (200) extending

between a suspension end (toward 212) and an opposing trailing end (toward

240), the suspension end of the canopy being engageable with the frame about

the one or more adjacent sections of the frame, wherein the trailing end of the

canopy is spaced apart from the portion of the frame in the supporting

configuration such that the canopy is supportable by the frame and at least

partially supportable by wind in a first configuration for providing shade to the

surface; a loop (220) defined by the suspension end of the canopy and

configured for engaging a portion of the frame for fastening the canopy to the

frame.

ddd.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame

including a plurality of sections (2/7 and 2) and being maneuverable between a

transport configuration (Fig. 1) and a supporting configuration (Fig. 3), the

sections including: a first section (the leftmost section 2) defining a left end of the

frame; a last section (the rightmost section 2/7) defining a right end of the frame;

one or more adjacent sections (intermediate sections 2/7) being substantially the

same length and coupled into alignment between the first section and the last

section, the one or more adjacent sections additionally comprising an aligning

component (5) extending therethrough and providing supporting tension to the

alignment in the supporting configuration and allowing the one or more adjacent

sections to be maneuvered between the transport configuration and the

supporting configuration, the adjacent sections being configured to engage with

the first section and the last section in the supporting configuration. It would have

been obvious to one of ordinary skill in the art before the effective filing date of

the claimed invention to modify the device of Kang by using a multi-part frame as

taught by Joo-Tai in order to provide a more compact device for easier

transportation.

eee.   Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth

teaches a frame with an end (35) effective for engaging with a surface and

having a corkscrew shape. It would have been obvious to one of ordinary skill in

the art before the effective filing date of the claimed invention to modify the pile

(320) of Kang, as modified, to have the ends of the frame in a corkscrew shape

as taught by Warth in order to more securely anchor the device in the surface.

fff.     Kang, as modified, fails to teach a container. Furey teaches a shade

system including a container (103) capable of housing and transporting the

components of the system therein ("components may be readily carried in the

anchoring member when it is emptied of sand" – Column 7, lines 22-23). It would

have been obvious to one of ordinary skill in the art before the effective filing date

of the claimed invention to modify the device of Kang, as modified, by adding a

container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

ggg. Regarding Claim 73, Kang, as modified, teaches that the canopy is unitarily constructed or comprises a plurality of coupled sections.

hhh. Regarding Claim 74, Kang, as modified, teaches that the canopy defines one or more vent holes (through 240), one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

16. Claims 75-77 are rejected under 35 U.S.C. 103 as being unpatentable over KR 10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent 3286962, and Furey in US Patent 4924893.

iii. Regarding Claim 75, Kang teaches a system for providing shade onto a surface, the system comprising: a frame (100) and a canopy (200) extending between a suspension end (toward 212) and an opposing trailing end (toward 240), the suspension end of the canopy extending between a left end and a right end (toward 201 on either edge), the suspension end of the canopy including at least one fastener (212/220) that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface, wherein the at least one fastener is a loop (220) defined by the suspension end of the canopy and forming a securing mechanism configured for engaging a portion of the frame and configured for fastening the canopy to the

frame, wherein the canopy, the loop, and the securing mechanism are formed entirely of fabric (Kang teaches that the canopy and loop are integral pieces, that tape 220 is a "fabric piece" – there is no discussion of a "grommet" or the material used for element 3 in the fabric piece to indicate that it is anything other than fabric).

jjj.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame defined by a plurality of sections (2) that include a left end (leftmost section 2), a right end (rightmost section 2), and a plurality of sections (intermediate sections 2) positioned between the left end and the right end and comprising a cable (5) extending therethrough, each of the plurality of sections having one or both of a male end (3) and a female end (7) making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration (Fig. 3) and thereby disengageable to define the frame in a transport configuration (Fig. 1). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

kkk.    Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) effective for engaging with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

lll.     Kang, as modified, fails to teach a container. Furey teaches a shade

system including a container (103) capable of housing and transporting the

components of the system therein ("components may be readily carried in the

anchoring member when it is emptied of sand" – Column 7, lines 22-23). It would

have been obvious to one of ordinary skill in the art before the effective filing date

of the claimed invention to modify the device of Kang, as modified, by adding a

container as taught by Furey in order to more securely erect the shade and

contain all of the components of the device.

mmm. Regarding Claim 76, Kang, as modified, teaches that the canopy is

unitarily constructed or comprises a plurality of coupled sections.

nnn.    Regarding Claim 77, Kang teaches that the canopy defines one or more

vent holes (through 240), one or more tails extending from a side opposite the

suspension end, one or more wind socks, or a combination thereof.

17.    Claim 29 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as

modified, as applied to claim 21 above, and further in view of Knipschild in US

Publication 2009/0114260. Kang, as modified, fails to teach a securing mechanism that

fastens to itself. Knipschild teaches a canopy (3) having a securing mechanism (26)

capable of wrapping or folding about one of the adjacent sections of a frame (4) and

brought into contact with itself (see Fig. 1 and paragraph 0027). It would have been

obvious to one of ordinary skill in the art before the effective filing date of the claimed

invention to modify the device of Kang, as modified, by using a securing mechanism as

taught by Knipschild in order to more securely fasten the canopy along the length of the

frame.

18.    Claims 23 and 24 rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above in view of Sotirkys et al. in US Patent 7789097. Kang, as modified, fails to teach a canopy including a plurality of sections. Sotirkys teaches a canopy (10/80) that comprises a plurality of coupled sections (10 and 80), wherein the plurality of coupled sections are selectively engageable sections (detachable at 85/86). It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the canopy of Kang, as modified, by using a plurality of sections as taught by Sotirkys in order to allow the user to select the amount of coverage available under the shelter.

19.    Claims 38-40 are rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above in view of Beatty in US Patent 3070107. Kang, as modified, is silent on the use of an anchor coupled to the trailing edge of the canopy. Beatty teaches a system for providing shade including a canopy (19), and further comprising a cord (22) having a first end and a second end, the first end or the second end of the cord being coupleable to the canopy, further comprising an anchor (23) coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy, wherein the first end of the cord is coupleable to the trailing end of the canopy and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to

modify the device of Kang, as modified, by using a trailing end anchor as taught by Beatty in order to prevent excessive flapping of the canopy.

20.     Claim 41 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 21 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

21.     Claim 45 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 42 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention

to modify the device of Kang, as modified, by adding a container as taught by Furey in

order to more securely erect the shade and contain all of the components of the device.

22.     Claim 47 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as

modified, as applied to claim 46 above, and further in view of Knipschild in US

Publication 2009/0114260. Kang, as modified, fails to teach a securing mechanism that

fastens to itself. Knipschild teaches a canopy (3) having a securing mechanism (26)

capable of wrapping or folding about one of the adjacent sections of a frame (4) and

brought into contact with itself (see Fig. 1 and paragraph 0027) when the frame is

engaged with the loop. It would have been obvious to one of ordinary skill in the art

before the effective filing date of the claimed invention to modify the device of Kang, as

modified, by using a securing mechanism as taught by Knipschild in order to more

securely fasten the canopy along the length of the frame.

23.     Claim 49 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as

modified, as applied to Claim 46 above, and further in view of Furey in US Patent

4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system

including a container (103) capable of housing and transporting the components of the

system therein ("components may be readily carried in the anchoring member when it is

emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is

coupleable (via 27) to one or both of the frame and the canopy and engageable with the

surface to retain the frame in the supporting configuration. It would have been obvious

to one of ordinary skill in the art before the effective filing date of the claimed invention

to modify the device of Kang, as modified, by adding a container as taught by Furey in

order to more securely erect the shade and contain all of the components of the device.

24.     Claim 53 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 50 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

25.     Claim 57 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 54 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

26.     Claim 61 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 58 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

27.     Claim 71 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as modified, as applied to Claim 68 above, and further in view of Furey in US Patent 4924893. Kang, as modified, fails to teach a container. Furey teaches a shade system including a container (103) capable of housing and transporting the components of the system therein ("components may be readily carried in the anchoring member when it is emptied of sand" – Column 7, lines 22-23) as well as acting as a counterweight that is coupleable (via 27) to one or both of the frame and the canopy and engageable with the surface to retain the frame in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding a container as taught by Furey in order to more securely erect the shade and contain all of the components of the device.

28.     Claim 78 is rejected under 35 U.S.C. 103 as being unpatentable over Kang, as

modified, as applied to Claim 62 above in view of WO 02/04768 (Schepis). Kang, as

modified, is silent on the use of anchors at both ends of the frame. Schepis teaches a

system including a frame with left and right ends (at 6 on either side) and further

comprising an anchor member (4 on the left) configured for housing weight and

positioned adjacent to the left end of the frame and an anchor member (4 on the right)

configured for housing weight and positioned adjacent to the right end of the frame for

further securing the frame into position. It would have been obvious to one of ordinary

skill in the art before the effective filing date of the claimed invention to modify the

device of Kang, as modified, by adding anchor members to both side of the frame as

taught by Schepis in order to more securely anchor the device.

29.     Claims 79-82 are rejected under 35 U.S.C. 103 as being unpatentable over KR

10-1315166 (Kang) in view of Joo-Tai in US Patent 6286531, Warth in US Patent

3286962, and WO 02/04768 (Schepis).

> ooo.    Kang teaches a system for providing shade onto a surface, the system
>
> comprising: a frame including left and right ends (at 110) engaged with the
>
> surface, a canopy (200) extending between a suspension end (toward 212) and
>
> an opposing trailing end (toward 240), the suspension end of the canopy being
>
> engageable with the frame about the one or more adjacent sections of the frame,
>
> wherein the trailing end of the canopy is spaced apart from the frame in the
>
> supporting configuration such that the canopy is supportable by the frame and at
>
> least partially supportable by wind in a first configuration for providing shade to
>
> the surface (see Fig. 2); a loop (212) defined by the suspension end of the

canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending an entire length of the suspension end of the canopy.

ppp.    Kang is silent on the use of a multi-part frame. Joo-Tai teaches a frame including a plurality of sections (2 and 2/7) and being maneuverable between a transport configuration (fig. 1) and a supporting configuration (Fig. 2), the sections including: a first section (2 at the left end) defining a left end of the frame

qqq.    a last section (2/7 at the right end) defining a right end of the frame, one or more adjacent sections (2/7 between the left and right end sections) coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising an aligning component comprising a cable s(5) extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang by using a multi-part frame as taught by Joo-Tai in order to provide a more compact device for easier transportation.

rrr.    Kang, as modified, is silent on corkscrew shaped ends of the frame. Warth teaches a frame with an end (35) engaged with a surface and having a corkscrew shape. It would have been obvious to one of ordinary skill in the art

before the effective filing date of the claimed invention to modify the pile (320) of Kang, as modified, to have the ends of the frame in a corkscrew shape as taught by Warth in order to more securely anchor the device in the surface.

sss.    Kang, as modified, is silent on the use of anchors at both ends of the frame. Schepis teaches a system including a canopy (2) with a suspension end (toward 6), a frame with left and right ends (at 6 on either side) and further comprising an anchor member (4 on the left) configured for housing weight and positioned adjacent to the left end of the frame and an anchor member (4 on the right) configured for housing weight and positioned adjacent to the right end of the frame for further securing the frame into position, wherein the anchor members are coupled to the canopy to secure the canopy in position for providing shade onto the surface, and wherein the anchor members are arranged on opposing sides of the canopy adjacent the suspension end. It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify the device of Kang, as modified, by adding anchor members to both side of the frame as taught by Schepis in order to more securely anchor the device.

### *Response to Arguments*

30.    Applicant's arguments filed 8/22/2023 have been fully considered but they are not persuasive.

31.    With respect to the applicant's arguments regarding the corkscrew shape ends. Kang: the Warth device is relied upon to teach the shape of a ground engaging anchor.

The ground engaging anchor of Kang is element "pile 320" – not, as the applicant alleges, cylindrical fitting 110. The connection of the securing mechanism of the canopy to the frame would not be changed at all, merely the shape of the pile that is attached after the canopy is secured. As such, the operation of the Kang device would not be changed or destroyed.

32.    The applicant alleges that Kang teaches a "grommet, which is traditionally metal." However, upon inspection of the Kang device, no mention is made of a grommet or metal. The reference only teaches that a "ring" is present in the fabric. There is no suggestion in Kang that the "ring" is anything other than the same material as the piece of the canopy in which it is located.

33.    The applicant alleges that Knipschild does not teach a lop with a securing mechanism. However, Knipschild is not relied upon to teach the loop. Kang clearly teaches the loop with a securing mechanism. Knipschild is relied upon only to teach the use of a self-attaching securing mechanism.

34.    The applicant argues the Joo-Tai fails to teach a plurality of intermediate section of the same length and having both male and female ends. The intermediate sections of the Joo-Tai reference are considered to comprise both elements 2 and 7 in combination (i.e., an intermediate section will include both an element 2 and an element 7). As seen in Fig. 1, each element 2 is the same length and all of the element 7 pieces are the same. A plurality of pieces including both will also present uniform lengths.

35.    The applicant alleges that Kang does not teach that right or left ends of the loop form a securing mechanism that is wrapped or folded about the frame and brought into

contact with itself. However, this is explicitly how a loop is formed: one end is wrapped around an object and secured (in this case by sewing) to itself.

36.     The applicant's arguments regarding the loop with an additional fastener (as recited in Claim 62) are not found persuasive. The limitation "without an additional fastener" is used in the claim to limit the loop feature. While there are other securing mechanisms present on the canopy, the loop does not have an additional securing feature.

37.     The applicant alleges that Kang does not teach the use of "only" a frictional fastener. However, the claims do not require "only" a frictional fastener, but merely that a frictional fastener is used. Kang meets this limitation as the friction between the loop and the frame will inherently provide some resistance to relative movement between the two.


## *Conclusion*

38.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480. The examiner can normally be reached M-F 9am to 5:30pm.

        Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

Oct 9 2023

This paper requesting to schedule and/or conduct an interview is appropriate because:

This submission is requested to be accepted as an authorization for this interview to communicate via the internet. Recognizing that Internet communications are not secure, I hereby authorize the USPTO to communicate with the undersigned concerning scheduling of the interview via video conference, instant messaging, or electronic mail, and to conduct the interview in accordance with office practice including video conferencing.

Name(s):
Lauren Anderson

S-signature:
/Lauren Anderson/

Registration Number:
69344

U.S. Application Number:
18072143

Confirmation Number:
1080

E-mail Address:
lauren.anderson@wbd-us.com

Phone Number:
+1 9197558127

Proposed Time of Interview:
10-16-2023 10:30 AM ET

Prefered Interview Type:
Telephonic

I am the applicant or applicant's representative for this application.

Topic for Discussion:
non-final office action



**UNITED STATES
PATENT AND TRADEMARK OFFICE**



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

| | | | |
|---|---|---|---|
| 26158 7590 10/19/2023 | | EXAMINER | |
| WOMBLE BOND DICKINSON (US) LLP | | HAWK, NOAH CHANDLER | |
| ATTN: IP DOCKETING | | | |
| P.O. Box 570489 | | ART UNIT | PAPER NUMBER |
| ATLANTA, GA 30357-0037 | | 3636 | |
| | | NOTIFICATION DATE | DELIVERY MODE |
| | | 10/19/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

| *Applicant-Initiated Interview Summary* | Application No. 18/072,143 | Applicant(s) Barnes et al. | | |
|---|---|---|---|---|
| | Examiner NOAH C HAWK | Art Unit 3636 | AIA (First Inventor to File) Status Yes | Page 1 of 1 |

| All Participants (applicant, applicants representative, PTO personnel) | Title | Type |
|---|---|---|
| NOAH C HAWK | Primary Examiner | Telephonic |
| Lauren Anderson | Attorney | |

**Date of Interview:** 16 October 2023

**Issues Discussed:**

**35 U.S.C. 103**

Applicant's arguments (see attached) were discussed but no agreement was reached during the interview. A proposed amendment to Claim 58 wherein the loop does not extend the entire length of the suspension end of the canopy was discussed and appears to overcome the Kang device. However, in light of Munnerlyn, it is not clear that this is a patentable feature.

The applicant will prepare a response and the search will be updated accordingly.

☑ Attachment

| /Noah Chandler Hawk/ Primary Examiner, Art Unit 3636 | |
|---|---|

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

| | | | | | |
|---|---|---|---|---|---|
| ***Notice of References Cited*** | | Application/Control No. 18/072,143 | | Applicant(s)/Patent Under Reexamination Barnes et al. | |
| | | Examiner NOAH C HAWK | | Art Unit 3636 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-9903134-B2 | 02-2018 | Munnerlyn; Ken | E04H15/001 | 1/1 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| * | N | KR101315166B1 | 10-2013 | KR | Kang | E04H15/64 |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| * | U | "How to Reinforce a Hole in Sunbrella®," webpage <https://www.sailrite.com/How-to-Reinforce-a-Hole-in-Sunbrella>, 1 page, October 16/2023 (Year: 2023) |
| | V | Machine Translation of KR101315166B1, retrieved from EPO 11-23-2021 (Year: 2021) |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:   S105508 1010US.C8 (0040.5)
Customer No.:   26158

**APPLICANT-INITIATED EXAMINER INTERVIEW AGENDA**

FOR INTERVIEW PURPOSES ONLY

Dear Examiner:

Applicant's Representative looks forward to the Interview scheduled on October 16, 2023 at 10:30 AM. Applicant will call the Examiner at the scheduled time at 571-272-1480. Applicant submits the following for discussion during the Interview:

Claim 21

- In subparagraph a) the examiner argues that the "securing mechanism" in Kang is formed entirely of fabric (alleging that is element 220) and that there is no discussion of a "grommet" or material used for element 3 to indicate it is anything other than fabric. Applicant disagrees.
  - Kang says that 3 is an insert ring attached to fabric piece 220. They are thus clearly two separate elements that are combined, so Applicant submits that there cannot be any presumption that the insert ring is fabric.
  - Paragraph [0024] of Kang says the insert ring is a "conventional insert ring" formed by compressing and punching two rings coupled to each other, i.e., a grommet. Therefore, the insert ring in Kang is clearly not fabric.

1 of 8

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 385 of 551

Claim 42

- Applicant respectfully submits that the addition of Knipschild is: (1) based entirely on hindsight bias and (2) is also mischaracterized.
  - Regarding (1) Knipschild teaches that the straps 26 are what is used to secure the canopy to the rods 4 somewhere between the ends of the rods. In Kang, the loop extends substantially from one end of the frame to the other end. There is thus no place on the frame of Kang where the straps of Knipschild could be used to, as argued by the Examiner, "more securely fasten the canopy along the length of the frame."
    - Even if the straps of Knipschild were added, they would not wrap around the frame in Kang and would only be in contact with the loop that is already surrounding the frame and would thus serve no purpose. Thus, there would be no motivation to modify the device of Kang using the strap in Knipschild to more securely fasten the canopy along the length of the frame.
    - Any argument to the contrary is premised on hindsight bias
  - Regarding (2), Applicant also respectfully submits that Knipschild is mischaracterized as wrapping around the frame and being brought into contact with itself. From FIG. 5 of Knipschild, it is evident that the strap 26 is one part of a hook and loop closure, and the other part is fastened to the canopy. The strap 26 is thus not brought into contact with itself, where it attaches to the other part.

WBD (US) 4886-9420-3526v1



Fig. 5

- o Based on the above, any combination of Knipschild with Kang would not result in Applicant's claim requirement of a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop.

Claim 46

- Applicant respectfully submits that the examiner mischaracterizes Joo-Tai as teaching an intermediate plurality of sections that are substantially the same length.
  - o The examiner argues that the intermediate sections are each defined as including one of element 2 and one of element 7.

WBD (US) 4886-9420-3526v1





FIG. 1

- o However, it is illustrated in FIG. 1 of Joo-Tai that the number 2 elements and the number 7 elements are separate pieces. This is necessary in Joo-Tai to allow for assembly of disassembly by means of the coupler 7. *See, e.g.,* col. 2, lines 58-61 of Joo-Tai.
- o Claim 46 requires that **each** of the intermediate plurality of sections are the same length. Since elements 2 and 7 are separate and are not the same length, then **each** intermediate piece in Joo-Tai is not the same length. Thus, when the Joo-Tai frame is disassembled, **each** intermediate piece is not the same length.

Claim 50
- • See arguments in relation to claim 46 and claim 42

Claim 54
- • Claim 54 requires that the end of the loop forms a securing mechanism - "wherein the left or right end of the loop that secures the canopy in position relative to the frame forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself"

WBD (US) 4886-9420-3526v1

- o   This is clear language in that the securing mechanism is formed at the end of the loop, in addition to the loop, and is not just the loop itself.

- o   Therefore, the examiner's argument that "a sleeve such as 212 is inherently in contact with itself to form the tunnel of the sleeve" does not apply, as it disregards the limitation that the securing mechanism is formed at the end of the loop

## Claim 58

- Knipschild is cited in relation to a securing mechanism, but that is not recited in claim 58.

- To the extent that Knipschild is relied on for the "wrapping" and "engaging with itself" parts, please see arguments in relation to claim 42.

## Claim 62

- The office action states

the surface; a loop (212) defined by the suspension end of the canopy and configured for both accepting a portion of the frame therethrough and engaging the canopy with the frame with an additional fastener to secure the canopy into position relative to the frame (while there is another fastener on Kang, it is not part of the loop), the loop extending an entire length of the suspension end of the canopy.

- This directly contradicts what is stated in relation to claim 21, where it is argued that the loop 212 defines element 220.

WBD (US) 4886-9420-3526v1

accepted through the loop then a first end of the loop defines a first securing mechanism (220 on one end) and an opposing second end of the loop defines a second securing mechanism (220 on the opposing end) for securing the canopy into position relative to the frame wherein the canopy, the loop, the first securing mechanism and the second securing mechanism are formed entirely of fabric (Kang teaches that the canopy and loop are integral pieces, that tape 220 is a "fabric piece" – there is no discussion of a "grommet" or the material used for element 3 in the fabric piece to indicate that it is anything other than fabric).

- Applicant notes that claims must be given their broadest reasonable interpretation. In order to argue that the loop secures the canopy without an additional fastener, element 220 is disregarded because it allegedly is not part of the loop.

- Claim 62 does not say that the loop does not have another fastener. Claim 62 says that the loop engages the canopy with the frame without an additional fastener to secure the canopy. **Any additional fastener that is disclaimed does not have to be part of the loop.** Kang clearly requires element 220 in addition to the loop.

Claim 65

- Proposed claim amendment. See argument in relation to claim 62:

wherein the at least one fastener is a loop extending a substantial entirety of a length of the suspension end of the canopy from the left end to the right end, such that when the portion of the frame is accepted through the loop and engaged with the frame, the ~~loop~~ canopy only uses friction between the frame and a portion of the canopy defining the loop to secure the canopy in position relative to the frame;

Claim 68

- Please see argument in relation to claim 46.

Claim 72

- Please see argument in relation to claim 46.

WBD (US) 4886-9420-3526v1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 390 of 551

Claim 75

- Please see argument in relation to claim 21. Element 3 is not formed of fabric.

- Please see argument in relation to claim 62 – in claim 21 and now claim 75, there are arguments in the office action that element 212 and loop 220 are one and the same, but in claim 62, there are arguments that 212 is not part of loop 220.

Claim 79

- Applicant respectfully submits that Schepis is mischaracterized. The weight elements 4 are not adjacent left and right ends of the frame. They are all forward or rearward from the frame (which is not even a frame but is just two, separate poles that poke through holes in the canopy.

- Applicant also respectfully submits that Schepis is not combinable with Kang. They are two completely different kinds of structures, and the ballast members in Schepis are necessary to hold the canopy in place given the use of two separate, vertical poles instead of a curved frame in Kang.



FIG.1

WBD (US) 4886-9420-3526v1

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>18/072,143 | Filing Date<br>11/30/2022 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE ☐ SMALL ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 11/20/2023 | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 31 | Minus | ** 54 | = 0 | | x $100 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 4 | Minus | *** 12 | = 0 | | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /VENICE M WILLIAMS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION #<br>**18/072,143** | RECEIPT DATE / TIME<br>**11/20/2023 04:58:29 PM Z ET** | ATTORNEY DOCKET #<br>**S105508 1010US.C8 (0040.5** |
|---|---|---|

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 63324742 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD<br>DA / 090528 | PAYMENT TRANSACTION ID<br>E2023AJG59035614 | PAYMENT AUTHORIZED BY<br>Shari Elofson |
|---|---|---|

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1806 | SUBMISSION OF AN INFORMATION DISCLOSURE STATEMENT | 260.00 | 1 | 260.00 |
| | | | **TOTAL AMOUNT:** | **$260.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 394 of 551

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:  S105508 1010US.C8 (0040.5)
Customer No.:  26158

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R. § 1.111

Sir:

In response to the Office Action dated October 6, 2023, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks/Arguments** begin on page 10 of this paper.

Amendments to the Claims

1. – 20.        (Canceled)

21.        (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more of the adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined [[at]]toward the suspension end of the canopy and ~~and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop~~ extending an entire length of the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough

WBD (US) 4874-6961-8823v2

and extending a smaller distance of a length of the suspension end, the first portion of the loop defining ~~such that when the portion of the frame is accepted through the loop then a first end of the loop defines~~ a first securing mechanism and the second portion~~an opposing second end~~ of the loop defining~~defines~~ a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame;

wherein the canopy, the loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric.

22.     (Previously Presented)  The system of claim 21, wherein the canopy is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

23.     (Previously Presented)  The system of claim 22, wherein the plurality of sheets of material are selectively engageable sections.

24.     (Previously Presented)  The system of claim of claim 21, wherein the canopy has at least one set of parallel sides.

25.     (Canceled)

26.     (Previously Presented)  The system of claim 21, wherein the canopy comprises one or more vent holes defined within the canopy, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27.     (Canceled)

28.     (Previously Presented)  The system of claim 21, wherein the one or more adjacent sections of the frame comprises a plurality of longitudinally-extending sections.

WBD (US) 4874-6961-8823v2

29. (Previously Presented) The system of claim 21, wherein one or both of the first and second securing mechanisms are capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop.

30. (Previously Presented) The system of claim 21, wherein the at least one aligning component comprises a cable extending through and affixed to the one or more adjacent sections of the frame of the frame.

31. (Canceled)

32. (Canceled)

33. (Canceled)

34. (Canceled)

35. (Previously Presented) The system of claim 21, wherein the frame is directly engageable with the surface.

36. (Canceled)

37. (Canceled)

38. (Previously Presented) The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the canopy.

39.    (Previously Presented)  The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

40.    (Previously Presented)  The system of claim 39, wherein the first end of the cord is coupleable to the trailing end of the canopy and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

41.    (Previously Presented)  The system of claim 21, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

42.    (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety, but less than an entire [[of a]] length of the suspension end of the canopy,

wherein, for securing the canopy into position relative to the frame, a portion of the loop at one end of the looplength of the suspension end of the canopy defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop.

43.    (Previously Presented)  The system of claim 42, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

44.    (Previously Presented)  The system of claim 42, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

45.    (Previously Presented)  The system of claim 42, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

46-53.  (Canceled)

54.    (Currently Amended)  A system for providing shade onto a surface, the system comprising:

WBD (US) 4874-6961-8823v2

a frame defined by a plurality of sections and comprising a~~n~~ aligning component ~~cable~~ extending through at least one of the plurality of sections of the frame~~therethrough~~, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end and being positioned proximal to the frame in the supporting configuration; and

a loop configured for accepting a portion of the frame therethrough and securing the canopy in position relative to the frame ~~extending a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame~~, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein a portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end and a portion of the loop ~~the left or right end of the loop that secures the canopy in position relative to the frame~~ forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself.

55.    (Previously Presented)  The system of claim 54, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

56.    (Previously Presented)  The system of claim 54, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

57.    (Previously Presented)  The system of claim 54, further comprising a container capable of

housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

58.     (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising an aligning component ~~cable~~ extending through at least one of the plurality of sections of the frame~~therethrough~~, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end and being positioned proximal to the frame in the supporting configuration; and

a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein one or more portions of the loop forms a securing mechanism that ~~the left or right ends of the loop that secures the canopy in position relative to the frame~~ is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop, the one of the adjacent sections of the frame being adjacent to the left end ~~first section~~ of the frame with the corkscrew shape or the right end~~second section~~ of the frame with the corkscrew shape.

59.     (Previously Presented)  The system of claim 58, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

WBD (US) 4874-6961-8823v2

60. (Previously Presented) The system of claim 58, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

61. (Previously Presented) The system of claim 58, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

62-82. (Canceled)

83. (New) The system of claim 54, wherein the aligning component comprises a cable.

84. (New) The system of claim 58, wherein the aligning component comprises a cable.

85. (New) The system of claim 21, wherein the corkscrew shape comprises a helical thread.

86. (New) The system of claim 42, wherein the corkscrew shape comprises a helical thread.

87. (New) The system of claim 54, wherein the corkscrew shape comprises a helical thread.

88. (New) The system of claim 58, wherein the corkscrew shape comprises a helical thread.

WBD (US) 4874-6961-8823v2

## REMARKS/ARGUMENTS

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the claim amendments and the remarks that follow. With this Amendment, claims 46-53 and 62-82 are canceled, claims 21, 42, 45, and 58 are amended, and claims 83-88 are added. Claims 1-20, 25, 27, 31-34, and 36-37 were previously canceled. As such, claims 21-24, 26, 28-30, 35, 38-45, and 54-88 remain pending following this amendment. Applicant submits that no new matter is added by way of this Amendment.

### Examiner Interview Summary

Applicant thanks the examiner for the Examiner Interview held with Applicant's Representative on October 16, 2023. Proposed arguments and claim amendments were discussed. No agreement was reached.

### Drawing Objection

The drawings are objected to for allegedly failing to show the element recited in claims 78 and 79. These claims are now canceled. As such, Applicant respectfully submits that this objection is now moot.

### Claim Rejections – 35 U.S.C. § 103

**Independent Claims 21, 46, 54, and 68, and dependent claims 22, 26, 28, 30, 35, 38, 39, 48, 55-56, and 69-70, are rejected as allegedly being obvious over Kang (KR 10-1315166) combined with Joo-Tai (US 6,286,531) in view of US Patent No. 3,286,962 to Warth.**

Initially, Applicant notes that independent claims 46 and 68 and claims 48 and 69-70 are canceled. Therefore, the rejection of these claims is moot.

**Independent Claim 21**

Independent claim 21 is the independent claim from which claims 22, 26, 28, 30, 35, 38,

and 39 depend. New dependent claim 85 depends on claim 21, as well. Support for the new dependent claim can be found in at least, for example, the original description. Independent claim 21 is amended to further define the system and recites at least the following elements:

- <u>a loop defined toward the suspension end of the canopy and extending an entire length of the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and extending a smaller distance of a length of the suspension end.</u>

- <u>the first portion of the loop defining a first securing mechanism and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame.</u> Support for this amendment is found in at least, for example, col. 4, lines 30-57 and FIGS. 1 and 3 of U.S. Patent No. 10, 190,330.

*<u>The cited combination of references does not disclose a loop defined toward the suspension end of the canopy and extending an entire length of the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and extending a smaller distance of a length of the suspension end.</u>*

The examiner states at page 4 of the Office Action that the suspension end of Kang is "toward 212", which is the sewing hole that the pole 100 can enter and exit, while the loop is considered by the examiner to be the sewing hole 212. As can be seen in FIG. 1 of Kang, the sewing hole 212 extends the **entirety of the length** of the suspension end, and does not include a central portion arranged between a first portion and a second portion, where the central portion is configured for accepting a portion of the frame therethrough and extends a smaller distance of a length of the suspension end, as presently claimed.

WBD (US) 4874-6961-8823v2



FIG. 1 of Kang

Joo-Tai and/or Warth do not cure this deficiency in Kang. Joo-Tai is directed to a tent pole, while Warth is directed to a dog umbrella constructed as a traditional umbrella with a single vertical pole. As such, both Joo-Tai and Warth are silent as to any type of loop, as presently claimed.

Likewise, there is no teaching in any of Kang, Joo-Tai, or Warth, individually or in any combination thereof, that would have led a person of ordinary skill in the art to have modified Kang so that the sewing hole 212 of Kang extended less than the entirety of the length of the suspension end. In Kang, the fabric piece 220 at the right and left of the suspension end are arranged to connect directly to the fitting protrusion 110. As such, there would be no motivation to shorten the suspension end of the Kang canopy because it would have necessitated lengthening the fabric pieces 220, and there is nothing in Kang suggesting that change or teaching that such change would be even possible. Moreover, the shape of the Kang canopy is critical to achieve the alternative embodiment where the mesh curtain 400 is attached to the back end of the canopy 200. Thus, it would not be a simple matter to merely make the canopy 200 of Kang shorter between the

WBD (US) 4874-6961-8823v2

left and right ends, such that it would not have been obvious to one of ordinary skill in the art to modify Kang in this manner.

Accordingly, Kang separately or in combination with Joo-Tai and/or Warth does not disclose a loop defined toward the suspension end of the canopy and extending an entire length of the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and extending a smaller distance of a length of the suspension end, as presently claimed.

*The cited combination of references does not disclose the first portion of the loop defining a first securing mechanism and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame.*

The examiner states at page 4 of the Office Action that Kang discloses "a first securing mechanism" and "a second securing mechanism" via fabric piece 220. However, Kang does not disclose wrapping or folding the fabric piece 220 about the frame and bringing into contact with itself, as required by independent claim 21.

Joo-Tai and/or Warth do not cure this deficiency in Kang since both are silent as to any type of loop, as presently claimed. As such, Kang separately or in combination with Joo-Tai and/or Warth does not disclose the first portion of the loop defining a first securing mechanism and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame, as presently claimed.

Likewise, there is no teaching in any of Kang, Joo-Tai, or Warth, individually or in any combination thereof, that would have led a person of ordinary skill in the art to have modified Kang so that the fabric pieces 220 are wrapped or folded about the pole 100 and brought into contact with itself. In Kang, the fabric piece 220 at the right and left of the suspension end are

arranged with the fitting ring 3 so that the fitting protrusion 110 slides therethrough and traps the fabric piece 220 between the ground surface and the end of the pole. Notably, only very little of the pole 100 is exposed at the right and left of the suspension end and the canopy. Presumably, this is to minimize a length of the fabric pieces 220 as it stretches to receive the fitting protrusion 110 through the fitting ring 3. As such, there would be no motivation to modify Kang so that the fabric pieces 220 wrap around the pole 100, instead of receiving the fitting protrusion 110, as there is not enough exposed surface area of the pole 100 for the fabric pieces 220 to wrap around. Even if the fabric pieces 220 were wrapped or folded about the pole, they would likely slide off the end of the pole 100 since there is little exposed surface of the pole 100. This would render Kang unsatisfactory for its intended purpose because the canopy 100 would not remain stationary on the pole. *See, e.g.,* MPEP § 2143.01(V). Thus, it would not be a simple matter to merely wrap or fold the fabric pieces 220 about the pole 110, such that it would not have been obvious to one of ordinary skill in the art to modify Kang in this manner.

Consequently, and for at least these reasons, independent claim 21 (and claims 22-24, 26, 28, -30, 35, 38, and 39) is/are not rendered obvious by Kang separately or in combination with Joo-Tai and/or Warth. Applicant respectfully requests that this rejection be withdrawn. For at least the same reasons, the pending rejection likewise is inapplicable to new dependent claim 85.

**Independent Claim 54**

Independent claim 54 is the independent claim from which claims 55-56 depend. New dependent claims 83 and 87 depend on claim 54, as well. Support for the new dependent claims can be found in at least, for example, pending claim 30 and the original description. Independent claim 54 is amended to further define the system and recites at least the following elements:

- wherein a portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end.

- a portion of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself. Support for this amendment is found in at least, for example, col. 4, lines 30-57 and FIGS. 1 and 3 of U.S. Patent No. 10, 190,330.

WBD (US) 4874-6961-8823v2

*The cited combination of references does not disclose a portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end.*

The examiner states at page 13 of the Office Action that the suspension end of Kang is "toward 212", which is the sewing hole that the pole 100 can enter and exit, while the loop is considered by the examiner to be the sewing hole 212. As can be seen in FIG. 1 of Kang, the sewing hole 212 extends the **entirety of the length** of the suspension end, rather than a smaller distance of a length of the suspension end from the left end to the right end, as presently claimed.

Joo-Tai and/or Warth do not cure this deficiency in Kang since both Joo-Tai and Warth are silent as to any type of loop, as presently claimed. Kang separately or in combination with Joo-Tai and/or Warth does not disclose a portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end, as presently claimed, in light of at least the reasons presented above with regard to independent claim 21.

*The cited combination of references does not disclose a portion of the loop that forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself.*

The examiner states at pages 13-14 of the Office Action that Kang discloses a "securing mechanism" where "sleeve such as 212 is inherently in contact with itself to form the tunnel of the sleeve". Thus, it appears that the examiner is considering the fabrication of the sleeve (i.e., the sewing of the seam of the sleeve 212) as the securing mechanism that is wrapped or folded about one of the adjacent sections of the frame an brought into contact with itself.

While not agreeing with this interpretation of the claims, Applicant respectfully submits that the claim is now amended to clarify that the securing mechanism is formed by a portion of the loop, separate from a portion of the loop that accepts a portion of the frame therethrough. Therefore, Applicant respectfully submits that the securing mechanism is not just the seam of the loop, such that the examiner's argument that "a sleeve such as 212 is inherently in contact with

WBD (US) 4874-6961-8823v2

itself to form the tunnel of the sleeve" does not apply, as it disregards which portion of the loop forms the securing mechanism.

Joo-Tai and/or Warth do not cure this deficiency in Kang since both are silent as to any type of loop, as presently claimed. As such, Kang separately or in combination with Joo-Tai and/or Warth does not disclose a portion of the loop that forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself, as presently claimed, in light of at least the reasons presented above with regard to independent claim 21.

Consequently, and for at least these reasons, independent claim 54 (and claims 55-56) is/are not rendered obvious by Kang separately or in combination with Joo-Tai and/or Warth. Applicant respectfully requests that this rejection be withdrawn.  For at least the same reasons, the pending rejection likewise is inapplicable to new dependent claims 83 and 87.

**Independent Claims 42, 50, and 58, and dependent Claims 29, 43-44, 47, 51-52, and 59-60, are rejected as allegedly being obvious over Kang combined with Joo-Tai in view of Warth and US Pub. No. 2009/0114260 to Knipschild.**

Initially, Applicant notes that independent claim 50 and dependent claims 51-52 are canceled. Therefore, the rejection of these claims is moot.

### Independent Claim 42

Independent claim 42 is the independent claim from which claims 43-44 depend. New dependent claim 86 depends on claim 42, as well. Support for the new dependent claim can be found in at least, for example, the original description. Independent claim 42 is amended to further define the system and recites at least the following elements:

- a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety, but less than an entire length of the suspension end of the canopy.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 411 of 551

- wherein, for securing the canopy into position relative to the frame, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop. Support for this amendment is found in at least, for example, col. 4, lines 30-57 and FIGS. 1 and 3 of U.S. Patent No. 10, 190,330.

*The cited combination of references does not disclose a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety, but less than an entire length of the suspension end of the canopy.*

The examiner states at page 7 of the Office Action that the suspension end of Kang is "toward 212", which is the sewing hole that the pole 100 can enter and exit, while the loop is considered by the examiner to be the sewing hole 212. As can be seen in FIG. 1 of Kang, the sewing hole 212 extends the **entirety of the length** of the suspension end, rather than a substantial entirety, but less than an entire length of the suspension end of the canopy, as presently claimed.

Joo-Tai, Warth, and/or Knipschild (individually or in any combination) do not cure this deficiency in Kang. Knipschild discloses an apparatus for providing sun protection. Knipschild includes two arched poles that are crossed at their apices. However, Knipschild does not disclose a loop as presently claimed. Instead, the "fabric 3 is retained by the tips 6 of the individual rods 4 by means of **straps 24** with eyelets 25 provided on the bottom longitudinal edge 23 (see FIG. 4 also in this respect). Additional straps 26 on the lateral longitudinal edge 21 of the fabric 3 connect the fabric 3 to the individual rods 4 by means of touch-and-close fasteners (see FIG. 1 and FIG. 5)." Emphasis added. *See, e.g.,* paragraph [0027] of Knipschild. Thus, these references are silent as to any type of loop, as presently claimed. Kang, separately or in combination with any one or more of Joo-Tai, Warth, and/or Knipschild, thus does not disclose a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety, but less than an entire length of the suspension end of the canopy, as presently claimed.

WBD (US) 4874-6961-8823v2

*The cited combination of references does not disclose wherein, for securing the canopy into position relative to the frame, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop.*

The examiner acknowledges at page 8 of the Office Action that Kang is silent on the use of a securing mechanism that fastens to itself. Knipschild is cited a curing this deficiency. Applicant respectfully disagrees.

The examiner cites to FIG. 1 and paragraph [0027] of Knipschild as allegedly disclosing a securing mechanism 26 capable of wrapping or folding about one of the adjacent sections of the frame 4. However, (1) one end of a loop does not define the straps 26, and the straps 26 are (2) not brought into contact with themselves.



Fig. 1

Firstly, the apparatus in Knipschild does not even have a loop within the meaning of the independent claim. Instead, the rods 4 in Knipschild are retained by connecting struts 16 that are clipped to the individual rods 4. *See, e.g.,* paragraph [0025] of Knipschild. The cross-struts 16 are then inserted into pockets 20 on the lateral longitudinal edge 21 or sewn into pockets 22. Thus, Knipschild cannot disclose one end of a loop that defines a securing mechanism.

Applicant notes that even if one could argue that the pockets 20, 22 in Knipschild met the

claimed element of a loop, these pockets 20, 22 do not define the straps 26, allegedly meeting the claimed element of the securing mechanism.

Regardless, the alleged straps 26 in Knipschild are not capable of wrapping or folding about one of the adjacent sections of the frame and being brought into contact with itself when the portion of the frame is accepted through the loop. In fact, the strap 26 attaches to another, separate strap, and is not brought into contact with itself. This is illustrated in FIG. 5 of Knipschild where it can be clearly seen how there are two separate straps (a first strap labeled element 26 and a second strap that is unnumbered), such that the first strap 26 is not brought into contact with itself, but rather engages a second strap that is sewn to the canopy 3. These are clearly separate and distinct straps as it is clear that the second strap is securely sewn to the canopy a significant distance away from the point where the end of the first strap 26 is separately sewn to the canopy. The arrangement of the straps in Knipschild and the positions of the straps in Knipschild make it evident that there is no suggestion that it would be possible to utilize an element, as presently claimed, that attaches to itself. Thus, the straps 26 in Knipschild do not meet the claimed element of the securing mechanism.



Fig. 5

Moreover, there is no suggestion or motivation to modify Kang to include <u>wherein, for</u>

securing the canopy into position relative to the frame, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop as doing so would change the principle of operation of Kang, counter to MPEP § 2143.01(VI), which states that "[i]f the proposed modification or combination of the prior art would change the principle of operation of the prior art invention being modified, then the teachings of the references are not sufficient to render the claims *prima facie* obvious." *In re Ratti,* 270 F.2d 810, 813, 123 USPQ 349, 352 (CCPA 1959).

In particular, the cylindrical fitting 110 in Kang is specifically shaped to be inserted through a center of a fitting ring 3 formed on a support piece 220 of the canopy and then snugly received by a fitting groove 110a of a pile 320 driven into the ground in order to "strengthen" the sunscreen 200 as the fitting ring 3 of the sunscreen is sandwiched between the cylindrical fitting 110 and the pile 320.



FIG. 2 of Kang

Accordingly, any modification to this arrangement in Kang (i.e., changing the fitting ring 3 and support piece 220 to be the strap 26 in Knipschild), would require changing the sunscreen 200 so that either (1) there is no longer a cylindrical fitting 110 piercing the strap 26 or (2) the

cylindrical fitting 110 pierces the strap. This would then result in changing the principle of operation of Kang as (1) without the fitting 110, nothing would be inserted into the pile 320 and there would be no way to secure the frame in the ground, and (2) with the cylindrical fitting 110 piercing the strap 26, then the strap 26 would be compromised and wouldn't be strong enough to retain the sunscreen in position.  In either of these situations, the sunscreen 200 in Kang would slide around on the pole 100, could not be secured to the pole 100, and might not be secured to the ground. Further, either of these modifications to Kang would not result in the claimed element, i.e., wherein, for securing the canopy into position relative to the frame, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop. Thus, such a change to the principle of operation of Kang would be insufficient to render independent claim 42 *prima facie* obvious.

In addition to the above, it is insufficient for an examiner to merely propose that a modification *could be* made, and the examiner is required to provide evidence that a person of ordinary skill in the art *would have made* the proposed modification to arrive at the claimed invention.  See *Personal Web Techs., LLC, v. Apple, Inc.*, 848 F.3d 987, 993 (Fed. Cir 2017) (rejecting "reasoning [which] seems to say no more than that a skilled artisan, once presented with the two references, would have understood that they could be combined").  The examiner must provide evidence or provide a sufficient rationale for combining disparate disclosures from the prior art.  Kang expressly requires an arrangement where the fitting ring 3 is positioned between the ground and the end of the pole 100.  In Knipschild, a completely different type of securing mechanism (strap 26) is used and is arranged in a completely different location than in Kang.  The examiner has not provided any rationale for combining these disparate disclosures and thus has not shown that a person of ordinary skill in the art would have made the alleged modification to Kang.

As such, Kang separately or in combination with Joo-Tai, Knipschild, and/or Warth does not disclose wherein, for securing the canopy into position relative to the frame, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted

WBD (US) 4874-6961-8823v2

through the loop, as presently claimed.

Consequently, and for at least these reasons, independent claim 42 (and claims 43-44) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Knipschild. Applicant respectfully requests that this rejection be withdrawn. For at least the same reasons, the pending rejection likewise is inapplicable to new dependent claim 86.

### Independent Claim 58

Independent claim 58 is the independent claim from which claims 59-60 depend. New dependent claims 84 and 88 depend on claim 58, as well. Support for the new dependent claims can be found in at least, for example, pending claim 30 and the original description. Independent claim 58 is amended to further define the system and recites at least the following elements:

- a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame.

- wherein one or more portions of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop. Support for this amendment is found in at least, for example, col. 4, lines 30-57 and FIGS. 1 and 3 of U.S. Patent No. 10,190,330.

*The cited combination of references does not disclose a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame.*

The examiner states at page 15 of the Office Action that the suspension end of Kang is "toward 212", which is the sewing hole that the pole 100 can enter and exit, while the loop is considered by the examiner to be the sewing hole 212. As can be seen in FIG. 1 of Kang, the sewing hole 212 extends the **entirety of the length** of the suspension end, rather than a length different from a length of the suspension end from the left end to the right end, as presently claimed.

WBD (US) 4874-6961-8823v2

As discussed hereinabove relative to independent claim 42, Joo-Tai, Warth, and/or Knipschild do not cure this deficiency in Kang as these references are silent as to any type of loop, as presently claimed. Kang separately or in combination with Joo-Tai, Warth, and/or Knipschild does not disclose a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, as presently claimed.

*The cited combination of references does not disclose wherein one or more portions of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop.*

The examiner states at pages 13-14 of the Office Action, and in reference to independent claim 54, that Kang discloses a "securing mechanism" where "sleeve such as 212 is inherently in contact with itself to form the tunnel of the sleeve". Thus, it appears that the examiner is considering the fabrication of the sleeve (i.e., the sewing of the seam of the sleeve 212) as the securing mechanism that is wrapped or folded about one of the adjacent sections of the frame an brought into contact with itself.

While not agreeing with this interpretation of the claims, Applicant respectfully submits that the claim is now amended to clarify that one or more portions of the loop form a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop. Therefore, Applicant respectfully submits that the securing mechanism is not just the seam of the loop, such that the examiner's argument that "a sleeve such as 212 is inherently in contact with itself to form the tunnel of the sleeve" does not apply, as it disregards which portion of the loop forms the securing mechanism.

As discussed hereinabove relative to independent claim 42, Joo-Tai, Warth, and/or Knipschild do not cure this deficiency in Kang since these references are silent as to any type of loop, as presently claimed. As such, Kang separately or in combination with Joo-Tai, Knipschild, and/or Warth does not disclose wherein one or more portions of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought

WBD (US) 4874-6961-8823v2

into contact with itself only at the one or more portions of the loop, as presently claimed.

Consequently, and for at least these reasons, independent claim 58 (and claims 59-60) is/are not rendered obvious by Kang separately or in combination with Joo-Tai, Warth, and/or Knipschild. Applicant respectfully requests that this rejection be withdrawn. For at least the same reasons, the pending rejection likewise is inapplicable to new dependent claims 84 and 88.

**Independent Claims 62, 65, 72, and 75, and dependent Claims 41, 49, 57, 63, 64, 66, 67, 71, 73, 74, 76, and 77, are rejected as allegedly being obvious over Kang combined with Joo-Tai, Warth, and US Patent No. 4,924,893 to Furey.**

Initially, Applicant notes that independent claims 62, 65, 72, and 75, and claims 49, 63, 64, 66, 67, 71, 73, 74, 76, and 77 are canceled. Therefore, the rejection of these claims is moot.

Claim 41 depends on independent claim 21 and claim 57 depends on independent claim 54. As discussed hereinabove in relation to independent claims 21 and 54, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claims 21 and 54. Nothing in Furey cures this deficiency in modified Kang. Therefore, claims 41 and 57 are also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Dependent Claims 23 and 24 are rejected as allegedly being obvious over Kang combined with Joo-Tai and Warth in view of US Patent No. 7,789,097 to Sotirkys.**

Claims 23 and 24 depend on independent claim 21. As discussed hereinabove in relation to independent claim 21, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 21. Nothing in Sotirkys cures this deficiency in modified Kang. Therefore, claims 23 and 24 are also not rendered obvious by Kang as modified and in further view of Sotirkys. Applicant respectfully requests that this rejection be withdrawn.

**Dependent Claims 38-40 are rejected as allegedly being obvious over Kang combined with Joo-Tai and Warth in view of US Patent No. 3,070,107 to Beatty.**

WBD (US) 4874-6961-8823v2

Claims 38, 39, and 40 depend on independent claim 21. As discussed hereinabove in relation to independent claim 21, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 21. Nothing in Beatty cures this deficiency in modified Kang. Therefore, claims 38, 39, and 40 are also not rendered obvious by Kang as modified and in further view of Beatty. Applicant respectfully requests that this rejection be withdrawn.

**Dependent Claims 45, 53, and 61 are rejected as allegedly being obvious over Kang combined with Joo-Tai in view of Warth, Knipschild, and Furey.**

Initially, Appliant notes that claims 53 and 61 are now canceled. Therefore, the rejection of these claims is now moot.

Claim 45 depends on independent claim 42. As discussed hereinabove in relation to independent claim 42, Kang as modified does not teach, suggest, provide motivation for, or otherwise render predictable the subject matter of independent claim 42. Nothing in Furey cures this deficiency in modified Kang. Therefore, claim 45 is also not rendered obvious by Kang as modified and in further view of Furey. Applicant respectfully requests that this rejection be withdrawn.

**Dependent Claim 78 is rejected as allegedly being obvious over Kang combined with Joo-Tai, Warth, and Furey and in view of WO 02/04768 (Schepis).**

Applicant notes that claim 78 is canceled. Therefore, the rejection of this claim is moot.

**Independent Claim 79, and dependent Claims 80-82, are rejected as allegedly being obvious over Kang combined with Joo-Tai, Warth, and Schepis.**

Initially, Applicant notes that independent claim 79 and claims 80-82 are canceled. Therefore, the rejection of these claims is moot.

Appl. No.:    18/072,143
Amdt. Dated:  November 20, 2023
Reply to Office Action dated October 6, 2023

## CONCLUSION

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn:  Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/Lauren F. Anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMER 20, 2023.*

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | 18/072,143 |
| | | | Filing Date | November 30, 2022 |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | 3636 |
| | | | Examiner Name | Noah Chandler Hawk |
| Sheet | 1 | of | 1 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-D884,816 | 05-19-2020 | Goldberg | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s) , volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 2 | Solbello Shade Training Video, YouTube, April 20, 2023, https://www.youtube.com/watch?v=wd3XV9hADZc | |
| | 3 | "No Wind Kit for Beach Shades," Upgrade Your Shade, https://www.upgradeyourshade.com/product/upgrade-your-shade-kit   Retrieved 2023 | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 20, 2023.*

WBD (US) 4863-1253-6466



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **11/20/2023 04:58:29 PM Z ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 63324742 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

# TOTAL DOCUMENTS: 7

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S105508_1010US_C8_0040 _5_Supplemental_IDS_Cover .pdf | 1 | Transmittal Letter | 117 KB |
| S105508_1010US_C8_0040 _5_Supplemental_IDS_1449. pdf | 1 | Information Disclosure Statement (IDS) Form (SB08) | 132 KB |

Warning: This is not a USPTO supplied IDS fillable form. Data in the form cannot be automatically loaded to other USPTO systems.

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S105508_1010US_C8_0040 _5_Amendment_10-6- 2023_OA.pdf | 26 | - | 422 KB |

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 423 of 551

| | | | | |
|---|---|---|---|---|
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA-A....pdf | (1-1) | 1 | Amendment/Request for Reconsideration-After Non-Final Rejection | 127 KB |
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA-CLM.pdf | (2-9) | 8 | Claims | 98 KB |
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA-REM.pdf | (10-26) | 17 | Applicant Arguments/Remarks Made in an Amendment | 383 KB |
| NPL-Upgrade_Your_Shade.pdf | | 4 | Non Patent Literature | 629 KB |
| NPL-Solbello_Shade_Training_Video.pdf | | 3 | Non Patent Literature | 2529 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_Supplemental_IDS_Cover.pdf | 5B9EF7204E08D392096321811322F2464B29CEFD42D3565F25E5A25BA090481D8E8763EE7A13A36BCB00FA7A5DD42535C30AE4335D06A59A6166993F0E42C4AF |
| S105508_1010US_C8_0040_5_Supplemental_IDS_1449.pdf | DE27B6AC5A29F93742E6590B1A45FDEC85F6EC296B8D774008CE8877B8269FE64A558197E2209CF972FC236D7DAEFA11737995C0B5349D3B229D9980BF17BBCC |
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA.pdf | A74403374041477E0638012DBD6901AC8D876F9C08469925A341415422331E1150B700E79CE02453FF468F92F6B6FB6AFEF2F4B9A29023F49EE91067A79B8C1A |
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA-A....pdf | 7CB2362AE52358BA836A70EE3F7FCF892CF1473A9512EAA0FA3ED89E26D20C3869976EFF6A878019B9F2500B3F8E1881E30A00C9333594AF55286704333084AE |

| | |
|---|---|
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA-CLM.pdf | F9EC530F90911AA821E2B0644E4A6221A79A25DB569AFED4DD4BBE33873A4CEFF3324865A74C08D1DA119B05882704B99F57F5D2410462A1CFA3B2387755D082 |
| S105508_1010US_C8_0040_5_Amendment_10-6-2023_OA-REM.pdf | 472834FE7EDFC3B69BA94FBF98547843D442EE77373AB57E96C9E43178C9D8814461CA1BDB3AE7D1E4360DE4902A9A079BFCB6B9C388C75B6A9B464928994825 |
| NPL-Upgrade_Your_Shade.pdf | 99A4F3214A1F512E6532B591D5E170224393D466BC9F7E5EF69E6FA192B18ECABD0DC27C0CF101EE13B69B173EB4895C7806B68FBAB7756349DA2E069B851520 |
| NPL-Solbello_Shade_Training_Video.pdf | B5D56AA481B3E77EBE12BCC6F764373D082FD5D39793DD3C780080249BD25782CFC2F7B3CB5C0653BBD55137F8A95B8534ED8DD1F1A3C79C31AD44E82A5928D7 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT
### UNDER 37 C.F.R. § 1.97(c)

Sir:

Attached is a list of documents on form PTO-1449 along with a copy of any cited foreign patent documents and non-patent literature document in accordance with 37 CFR 1.98(a)(2). Also enclosed is a translation or a concise explanation of each non-English language document.

It is requested that the Examiner consider these documents and officially make them of record in accordance with the provisions of 37 C.F.R. § 1.97 and Section 609 of the MPEP. By identifying the listed documents, Applicant in no way makes any admission as to the prior art status of the listed documents, but is instead identifying the listed documents for the sake of full disclosure.

This Information Disclosure Statement is submitted in accordance with 37 C.F.R. § 1.97(c), before final Office Action or Allowance, whichever is earlier. The Commissioner is authorized to charge the $260.00 fee specified in 37 C.F.R. § 1.17(p) and any additional fee, or credit any refund, to our Deposit Account No. **09-0528**.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/Lauren F. Anderson/

Lauren F. Anderson
Registration No. 69,344

WBD (US) 4864-7604-8786v1

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 20, 2023.*

<table>
<tr><td rowspan="2"><strong><em>Search Notes</em></strong><br><br>[barcode]</td><td colspan="2"><strong>Application/Control No.</strong><br><br>18/072,143</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>Barnes et al.</td></tr>
<tr><td colspan="2"><strong>Examiner</strong><br><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br><br>3636</td></tr>
</table>

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| E04H 15/005, 15/60, 15/62 | 03/09/2023 | NCH |
| updated above | 11/30/2023 | NCH |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Considered and updated search for parent application 17/471658 | 03/09/2023 | NCH |
| Considered IDS filed 11/30/22 | 03/09/2023 | NCH |
| Please see attached PE2E search history | 03/09/2023 | NCH |
| Performed inventor name search in DAV | 03/09/2023 | NCH |
| Considered IDS filed 4/14/23 and 6/5/23 | 07/23/2023 | NCH |
| Considered IDS filed 11/20/23 | 11/30/2023 | NCH |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 427 of 551

|  ***Search Notes*** | Application/Control No. 18/072,143 | Applicant(s)/Patent Under Reexamination Barnes et al. |
|---|---|---|
| | **Examiner** NOAH C HAWK | **Art Unit** 3636 |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

U.S. Patent and Trademark Office

Page 2 of 2

Part of Paper No.: 20231130

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| *Index of Claims* | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | 11/30/2023 | | | | | |
| | 1 | - | - | - | - | | | | | |
| | 2 | - | - | - | - | | | | | |
| | 3 | - | - | - | - | | | | | |
| | 4 | - | - | - | - | | | | | |
| | 5 | - | - | - | - | | | | | |
| | 6 | - | - | - | - | | | | | |
| | 7 | - | - | - | - | | | | | |
| | 8 | - | - | - | - | | | | | |
| | 9 | - | - | - | - | | | | | |
| | 10 | - | - | - | - | | | | | |
| | 11 | - | - | - | - | | | | | |
| | 12 | - | - | - | - | | | | | |
| | 13 | - | - | - | - | | | | | |
| | 14 | - | - | - | - | | | | | |
| | 15 | - | - | - | - | | | | | |
| | 16 | - | - | - | - | | | | | |
| | 17 | - | - | - | - | | | | | |
| | 18 | - | - | - | - | | | | | |
| | 19 | - | - | - | - | | | | | |
| | 20 | - | - | - | - | | | | | |
| | 21 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 22 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 23 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 24 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 25 | ✓ | - | - | - | | | | | |
| | 26 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 27 | ✓ | - | - | - | | | | | |
| | 28 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 29 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 30 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 31 | ✓ | - | - | - | | | | | |
| | 32 | ✓ | - | - | - | | | | | |
| | 33 | ✓ | - | - | - | | | | | |
| | 34 | ✓ | - | - | - | | | | | |
| | 35 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 36 | ✓ | - | - | - | | | | | |
| | 37 | ✓ | - | - | - | | | | | |
| | 38 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 39 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 40 | ✓ | ✓ | ✓ | ✓ | | | | | |
| | 41 | | ✓ | ✓ | ✓ | | | | | |
| | 42 | | ✓ | ✓ | ✓ | | | | | |

# Index of Claims

| | | |
|---|---|---|
| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
| | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | 11/30/2023 | | | | |
| | 43 | | ✓ | ✓ | ✓ | | | | |
| | 44 | | ✓ | ✓ | ✓ | | | | |
| | 45 | | ✓ | ✓ | ✓ | | | | |
| | 46 | | ✓ | ✓ | - | | | | |
| | 47 | | ✓ | ✓ | - | | | | |
| | 48 | | ✓ | ✓ | - | | | | |
| | 49 | | ✓ | ✓ | - | | | | |
| | 50 | | ✓ | ✓ | - | | | | |
| | 51 | | ✓ | ✓ | - | | | | |
| | 52 | | ✓ | ✓ | - | | | | |
| | 53 | | ✓ | ✓ | - | | | | |
| | 54 | | ✓ | ✓ | ✓ | | | | |
| | 55 | | ✓ | ✓ | ✓ | | | | |
| | 56 | | ✓ | ✓ | ✓ | | | | |
| | 57 | | ✓ | ✓ | ✓ | | | | |
| | 58 | | ✓ | ✓ | ✓ | | | | |
| | 59 | | ✓ | ✓ | ✓ | | | | |
| | 60 | | ✓ | ✓ | ✓ | | | | |
| | 61 | | ✓ | ✓ | ✓ | | | | |
| | 62 | | ✓ | ✓ | - | | | | |
| | 63 | | ✓ | ✓ | - | | | | |
| | 64 | | ✓ | ✓ | - | | | | |
| | 65 | | ✓ | ✓ | - | | | | |
| | 66 | | ✓ | ✓ | - | | | | |
| | 67 | | ✓ | ✓ | - | | | | |
| | 68 | | ✓ | ✓ | - | | | | |
| | 69 | | ✓ | ✓ | - | | | | |
| | 70 | | ✓ | ✓ | - | | | | |
| | 71 | | ✓ | ✓ | - | | | | |
| | 72 | | ✓ | ✓ | - | | | | |
| | 73 | | ✓ | ✓ | - | | | | |
| | 74 | | ✓ | ✓ | - | | | | |
| | 75 | | ✓ | ✓ | - | | | | |
| | 76 | | ✓ | ✓ | - | | | | |
| | 77 | | ✓ | ✓ | - | | | | |
| | 78 | | | ✓ | - | | | | |
| | 79 | | | ✓ | - | | | | |
| | 80 | | | ✓ | - | | | | |
| | 81 | | | ✓ | - | | | | |
| | 82 | | | ✓ | - | | | | |
| | 83 | | | | ✓ | | | | |
| | 84 | | | | ✓ | | | | |
| | 85 | | | | ✓ | | | | |
| | 86 | | | | ✓ | | | | |
| | 87 | | | | ✓ | | | | |
| | 88 | | | | ✓ | | | | |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | 18/072,143 |
| | | | Filing Date | November 30, 2022 |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | 3636 |
| | | | Examiner Name | Noah Chandler Hawk |
| Sheet | 1 | of | 1 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-D884,816 | 05-19-2020 | Goldberg | |
| | | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Foreign Patent Document<br>Country Code - Number Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | English Language Translation Attached |
|---|---|---|---|---|---|---|
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 2 | Solbello Shade Training Video, YouTube, April 20, 2023, https://www.youtube.com/watch?v=wd3XV9hADZc | |
| | 3 | "No Wind Kit for Beach Shades," Upgrade Your Shade, https://www.upgradeyourshade.com/product/upgrade-your-shade-kit   Retrieved 2023 | |
| | | | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 11/30/2023 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON NOVEMBER 20, 2023*

WBD (US) 4863-1253-6466

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

| | | | EXAMINER |
|---|---|---|---|
| 26158 | 7590 | 12/05/2023 | HAWK, NOAH CHANDLER |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/05/2023 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 432 of 551

<table>
<tr><td rowspan="2"><strong><em>Office Action Summary</em></strong></td><td colspan="2"><strong>Application No.</strong><br>18/072,143</td><td colspan="2"><strong>Applicant(s)</strong><br>Barnes et al.</td></tr>
<tr><td colspan="2"><strong>Examiner</strong><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br>3636</td><td><strong>AIA (FITF) Status</strong><br>Yes</td></tr>
</table>

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☑ Responsive to communication(s) filed on <u>11/20/2023</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☑ This action is **FINAL.**    2b) ☐ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>21-24,26,28-30,35,38-45,54-61 and 83-88</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☐ Claim(s) _____ is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☐ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>11/30/22</u> is/are: a)☐ accepted or b)☑ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>11/20/2023</u>.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

Case 5:24-cv-00588-FL   Document 28-11   Filed 03/23/26   Page 433 of 551

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Drawings*

2.      The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every feature of the invention specified in the claims.  Therefore, the loop including first, central and second portions, the central portion extending only a portion of the suspension end length, and the first and section portions including wrapped or folded portions recited in Claim 21, the loop extending less than a length of the suspension end recited in Claims 42 and 54, the loop that extends a length different from that of the suspension end recited in Claim 58, the "helical thread" recited in Claims 85-88 must be shown or the feature(s) canceled from the claim(s).  No new matter should be entered.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering

of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

3.      The drawings are objected to as failing to comply with 37 CFR 1.84(p)(5) because they do not include the following reference sign(s) mentioned in the description: 46.  Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

## Claim Rejections - 35 USC § 112

4.      The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly
> connected, to make and use the same, and shall set forth the best mode contemplated by the
> inventor of carrying out his invention.

5.      Claims 21-24, 26, 28-30, 35, 38-45, 54-61, and 83-88 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for applications subject to pre-AIA 35 U.S.C. 112, the inventor(s), at the time the application was filed, had possession of the claimed invention.

> a.      Claim 21 recites a "section portion of the loop defining the second securing mechanism being wrapped or folded... and brought into contact with itself" which is considered new matter in the Application. The applicant discloses the use of a loop that may include tie strings (paragraph 0037), but separately discusses securing mechanisms (paragraph 0039) to include the straps 50 and fasteners 46, 52, and 54. There is no discussion in the disclosure of the use of a loop as the fastening mechanism. Conflating these two features is not supported by the disclosure as filed and is new matter in the application.

> b.      Claim 42 recites that "one end of the loop defines a securing mechanism capable of wrapping or folding... and brought into contact with itself." Please see rejection of Claim 21 above. The use of a loop as a wrapped securing mechanism is not supported by the disclosure and is considered new matter.

c.      Claim 54 recites "a portion of the loop" forms a securing mechanism that is wrapped or folded…and brought into contact with itself." Please see rejection of Claim 21 above. The use of a loop as a wrapped securing mechanism is not supported by the disclosure and is considered new matter.

d.      Claim 58 recites "one or more portions of the loop forms a securing mechanism that that is wrapped or folded…and brought into contact with itself." Please see rejection of Claim 21 above. The use of a loop as a wrapped securing mechanism is not supported by the disclosure and is considered new matter.

e.      Claims 85-88 recite a "helical thread" which is not found in the application as filed and is therefore considered new matter.

### *Response to Arguments*

6.      Applicant's arguments with respect to claims 21-24, 26, 28-30, 35, 38-45, 54-61, 83-88 have been considered but are moot because the new ground of rejection does not rely on any reference applied in the prior rejection of record for any teaching or matter specifically challenged in the argument.

### *Conclusion*

7.      Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP § 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

8.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480. The examiner can normally be reached M-F 9am to 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK<br>
Primary Examiner<br>
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number 18/072,143 | Filing Date 11/30/2022 | ☐ To be Mailed |
|---|---|---|

**ENTITY:** ☑ LARGE ☐ SMALL ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 12/21/2023 | | | | | | | |
| | Total (37 CFR 1.16(i)) | * 31 | Minus | ** 54 | = 0 | | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 12 | = 0 | | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /DANTE SMITH/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 440 of 551

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:      S105508 1010US.C8 (0040.5)
Customer No.:      26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

In response to the Office Action dated December 5, 2023, please amend the above-identified application as follows:

**Amendments to the Figures** begin on page 2 of this paper.

**Amendments to the Specification** begin on page 3 of this paper.

**Pending Claims** are reflected in the listing of claims beginning on page 4 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.



FIG. 1



FIG. 2



**FIG. 3**



**FIG. 4**



FIG. 5



FIG. 6

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 447 of 551



FIG. 7



FIG. 8

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 449 of 551



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **12/21/2023 05:25:45 PM Z ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 63712070 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

## TOTAL DOCUMENTS: 6

| DOCUMENT | | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA.pdf | | 20 | - | 534 KB |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-A.NE.pdf | (1-1) | 1 | Response After Final Action | 116 KB |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-DRW.pdf | (2-2) | 1 | Drawings-only black and white line drawings | 47 KB |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-SPEC.pdf | (3-3) | 1 | Specification | 48 KB |

| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-CLM.pdf | (4-11) | 8 | Claims | 95 KB |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-REM.pdf | (12-20) | 9 | Applicant Arguments/Remarks Made in an Amendment | 477 KB |
| S105508_1010US_C8_0040_5_Amended_Drawing_Sheets.pdf | | 8 | Drawings-only black and white line drawings | 1835 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA.pdf | A496B76AF11898A6AB35E9C9B98162E59C9BA04CCE5DFB631 723D908E7EBBB2BB4AD06952B2BA0C88536E2FF71AC3D35D D25053A856D0016F3C9B44E3A679E6B |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-A.NE.pdf | 5CC617E179E6921FC18610D9566DBEE75E00290CB7A1AC83D E25D7BCE6607650BE285BDDCBF2F4D3FAC878847F0F439C6 FAAD8EBEBCCB4BE5225DF2DE47E8E7A |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-DRW.pdf | 414CE256A490457BAC7DB4064D70BF60D4DAB219093B7B91D 150B553620AAC1723AD1F7B957110906F5282166019CE4BAAA E756DAAE168F7E2A952A91ABADDB8 |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-SPEC.pdf | 5B17E7228838AFAB01A9B0A3C23AD9783ECC85F3C81C4F4D7 BE05FF1A78F732F58A4FE2690C38E8AA912B0176EC3FD4919 1CF6C6E22E08AFD6BA01C796F5F771 |
| S105508_1010US_C8_0040_5_Amendment_for_12-5-2023_FOA-CLM.pdf | A3C77790B788BB7FB04FFEEB365CACABA9CB9BD4555193A7 A63B908A95FC7071546A48A70B78AC121D2EFC0DEEFE0188B C9F6732B93BC7F959B621C3A324ED3D |
| S105508_1010US_C8_0040_5_Amendment_for_12-5- | 41AF7A3E09E8A44C4A1286533234EDBAAFBF31755771FA6990 25424EED17B7C94EFF449CF74E350233907A0C84D47F09D7C |

2023_FOA-REM.pdf                    C57FBB815E6F14F8AEA9E0DEBF542

S105508_1010US_C8_0040_5            63942CA5098F8A055A7B2EC30BA7096BE20E98976D4CA5DB1
_Amended_Drawing_Sheets.pd          595371C0C0514AA911936A9CFC1C1CF210CD977CAAA4709C4
f                                   04910B4D8C2EB0B8B27172646893A5

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:　　　S105508 1010US.C8 (0040.5)
Customer No.:　　26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

In response to the Office Action dated December 5, 2023, please amend the above-identified application as follows:

**Amendments to the Figures** begin on page 2 of this paper.

**Amendments to the Specification** begin on page 3 of this paper.

**Pending Claims** are reflected in the listing of claims beginning on page 4 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

Amendments to the Figures

Please add new FIG. 8, and amend FIG. 4, and update the original sheets of drawings originally labeled with page numbers 1-7 and including original FIGS. 1-7 with the replacement sheets of drawings now labeled with page numbers 1-8 and including original FIGS. 1-3 and 5-7 to reflect the addition of replacement FIG. 4 and new FIG. 8.

WBD (US) 4884-7313-5511v1

Amendments to the Specification

Please add one new paragraph after paragraph [0033] in the Brief Description of the Drawings, and before the Detailed Description as follows:

> FIG. 8 is a perspective view of a system for providing shade according to one or more embodiments of the presently disclosed subject matter.

Please amend paragraph [0051] of the originally-filed application as follows:

The left end 20 and the right end 22 of the frame 14 may be each be embedded in the surface 2. As shown in FIG. 8, the [[The]] ends 20, 22 may define a conical shape or a corkscrew shape 47 for ease of penetration of the surface 2. Additional anchor(s) 35 may be engaged or coupled to the left end 20 and/or right end 22 for further securing the frame 14 into position. In embodiments where a tail is defined by the canopy 12, the tail may be engaged with or coupled to an additional anchor 34 for securing the canopy 12 into position for providing shade 1 to the surface 2. In yet additional embodiments, an additional suspension end 43 may be defined by the canopy 12. The additional suspension end 43 may include any of the features and characteristics described herein attributed to the suspension end 42. For example, the additional suspension end 43 may form an additional loop 41 for engaging or coupling an additional frame 15, thereby further suspending the canopy 12 from both the frame 14 and the additional frame 15.

WBD (US) 4884-7313-5511v1
Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 455 of 551

Pending Claims

1. – 20.        (Canceled)

21.        (Previously Presented)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; and

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more of the adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined toward the suspension end of the canopy and extending an entire length of the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and extending a smaller distance of a length of the suspension end, the first portion of the loop defining a first securing mechanism

WBD (US) 4884-7313-5511v1

and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame;

wherein the canopy, the loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric.

22. (Previously Presented) The system of claim 21, wherein the canopy is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

23. (Previously Presented) The system of claim 22, wherein the plurality of sheets of material are selectively engageable sections.

24. (Previously Presented) The system of claim of claim 21, wherein the canopy has at least one set of parallel sides.

25. (Canceled)

26. (Previously Presented) The system of claim 21, wherein the canopy comprises one or more vent holes defined within the canopy, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27. (Canceled)

28. (Previously Presented) The system of claim 21, wherein the one or more adjacent sections of the frame comprises a plurality of longitudinally-extending sections.

29. (Previously Presented) The system of claim 21, wherein one or both of the first and second securing mechanisms are capable of wrapping or folding about one of the adjacent

WBD (US) 4884-7313-5511v1

sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop.

30.    (Previously Presented)  The system of claim 21, wherein the at least one aligning component comprises a cable extending through and affixed to the one or more adjacent sections of the frame of the frame.

31.    (Canceled)

32.    (Canceled)

33.    (Canceled)

34.    (Canceled)

35.    (Previously Presented)  The system of claim 21, wherein the frame is directly engageable with the surface.

36.    (Canceled)

37.    (Canceled)

38.    (Previously Presented)  The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the canopy.

39.    (Previously Presented)  The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

WBD (US) 4884-7313-5511v1

40.    (Previously Presented)  The system of claim 39, wherein the first end of the cord is coupleable to the trailing end of the canopy and the second end of the cord is coupleable to the anchor, the anchor being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

41.    (Previously Presented)  The system of claim 21, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

42.    (Previously Presented)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface;

a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, the one or more adjacent sections additionally comprising a cable extending therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the

WBD (US) 4884-7313-5511v1

supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a loop defined at the suspension end of the canopy and configured for accepting a portion of the frame therethrough and engaging the canopy with the frame, the loop extending a substantial entirety, but less than an entire length of the suspension end of the canopy,

wherein, for securing the canopy into position relative to the frame, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself when the portion of the frame is accepted through the loop.

43.     (Previously Presented)  The system of claim 42, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

44.     (Previously Presented)  The system of claim 42, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

45.     (Previously Presented)  The system of claim 42, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

46-53.  (Canceled)

54.     (Previously Presented)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising an aligning component extending through at least one of the plurality of sections of the frame, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting

WBD (US) 4884-7313-5511v1

configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end and being positioned proximal to the frame in the supporting configuration; and

a loop configured for accepting a portion of the frame therethrough and securing the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein a portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end and a portion of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself.

55. (Previously Presented) The system of claim 54, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

56. (Previously Presented) The system of claim 54, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

57. (Previously Presented) The system of claim 54, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

58. (Previously Presented) A system for providing shade onto a surface, the system

comprising:

a frame defined by a plurality of sections and comprising an aligning component ~~cable~~ extending through at least one of the plurality of sections of the frame, each of the plurality of sections being engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end and being positioned proximal to the frame in the supporting configuration; and

a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein one or more portions of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop, the one of the adjacent sections of the frame being adjacent to the left end of the frame with the corkscrew shape or the right end of the frame with the corkscrew shape.

59.     (Previously Presented)  The system of claim 58, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

60.     (Previously Presented)  The system of claim 58, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

61.     (Previously Presented)  The system of claim 58, further comprising a container capable of

WBD (US) 4884-7313-5511v1

housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

62-82.  (Canceled)

83.    (Previously Presented)    The system of claim 54, wherein the aligning component comprises a cable.

84.    (Previously Presented)    The system of claim 58, wherein the aligning component comprises a cable.

85.    (Previously Presented)    The system of claim 21, wherein the corkscrew shape comprises a helical thread.

86.    (Previously Presented)    The system of claim 42, wherein the corkscrew shape comprises a helical thread.

87.    (Previously Presented)    The system of claim 54, wherein the corkscrew shape comprises a helical thread.

88.    (Previously Presented)    The system of claim 58, wherein the corkscrew shape comprises a helical thread.

WBD (US) 4884-7313-5511v1

## REMARKS/ARGUMENTS

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the remarks that follow.  Claims 1-20, 25, 27, 31-34, 36-37, 46-53, and 62-82 were previously canceled. With this Amendment, claims 21-24, 26, 28-30, 35, 38-45, and 54-88 remain pending. Applicant submits that no new matter is added by way of this Amendment.

### Drawings

The drawings are objected to under 37 CFR § 1.83(a) as allegedly failing to show every feature of the invention specified in the claims. Therefore, the examiner argues that the loop including first, central and second portions, the central portion extending only a portion of the suspension end length, and the first and section portions including wrapped or folded portions recited in Claim 21, the loop extending less than a length of the suspension end recited in Claims 42 and 54, the loop that extends a length different from that of the suspension end recited in Claim 58, the "helical thread" recited in Claims 85-88 must be shown or the feature(s) canceled from the claim(s).

### Claim 21

The examiner argues that the "first, central and second portions, the central portion extending only a portion of the suspension end length, and the first and section portions including wrapped or folded portions", are allegedly not shown in the figures. Applicant first notes that the quoted language from the examiner is not a verbatim recitation of the language of claim 21. Indeed, the following shows the comparison between the language quoted by the examiner and the actual claim language.

| Drawing Objection (as quoted by the examiner) – Claim 21 | Claim Language of Claim 21 |
|---|---|
| "loop including first, central, and second portions, the central portion extending only a portion of the suspension end length," | "wherein *the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop*, the *central* |

| | *portion* of the loop being configured for accepting a portion of the frame therethrough and *extending a smaller distance of a length of the suspension end*". Emphasis added. |
|---|---|
| "and the first and section [sic] portions including wrapped or folded portions" | "the first portion of the loop defining a first securing mechanism and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop *defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame* and brought into contact with itself for securing the canopy into position relative to the frame". Emphasis added. |

Applicant respectfully submits that "wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and extending a smaller distance of a length of the suspension end" and "the first portion of the loop defining a first securing mechanism and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame" are both shown in the figures.

For example, in FIG. 1, annotated below, the loop is illustrated. The loop defines the central portion (red arrow) arranged between a first portion of the loop and a second portion of the loop. In this example figure, the first and section portions of the loop are the straps (blue arrow). As can be seen, the central portion is configured for accepting a portion of the frame therethrough and extends a smaller distance of a length of the suspension end since the straps are located at the ends of the central portion of the loop such that the loop (defined by the central portion, the first portion, and the second portion) extends more than just the central portion of the loop.

Further, in FIG. 1, annotated below, the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for

WBD (US) 4884-7313-5511v1

securing the canopy into position relative to the frame is illustrated as shown by the blue arrow. A more detailed view of this element is shown in one example in FIG. 3, which illustrates the straps 50. The straps are wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame, as described in at least, for example, paragraph [0040] of the originally-filed application. Thus, Applicant respectfully submits that the claim language of independent claim 21 is shown in at least FIGS. 1 and 3.



FIG. 1

Claim 42

The examiner argues that the "the loop extending less than a length of the suspension end", is allegedly not shown in the figures. Applicant first notes that the quoted language from the examiner is not a verbatim recitation of the language of claim 42. Indeed, the following shows the comparison between the language quoted by the examiner and the actual claim language.

| Drawing Objection (as quoted by the examiner) – Claims 42 | Claim Language of Claim 42 |
|---|---|
| "the loop extending less than a length of the suspension end" | "the loop extending a substantial entirety, but **less than an entire length** of the suspension end of the canopy". Emphasis Added. |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 466 of 551

Applicant respectfully submits that "the loop extending a substantial entirety, but less than an entire length of the suspension end of the canopy", as recited in claim 42, is shown in the figures.

For example, in FIG. 1, annotated above, a loop configured for accepting a portion of the frame therethrough (red arrow) and engaging the canopy with the frame is illustrated. As shown, one end of the loop defines a securing mechanism capable of wrapping or folding about one of the adjacent sections of the frame and brought into contact with itself with the portion of the frame is accepted through the loop. In this example, the securing mechanism is the strap (as shown in detail in FIG. 3 and illustrated by the blue arrow above in FIG. 1). As can be seen, the loop extends less than an entire length of the suspension end of the canopy since the straps are located at the ends of the loop. Thus, Applicant respectfully submits that the claim language of independent claim 42 is shown in at least FIG. 1.

<u>Claim 54</u>

The examiner argues that the "the loop extending less than a length of the suspension end", is allegedly not shown in the figures. Applicant first notes that the quoted language from the examiner is not a verbatim recitation of the language of claim 54. Indeed, the following shows the comparison between the language quoted by the examiner and the actual claim language.

| Drawing Objection (as quoted by the examiner) – Claims 42 and 54 | Claim Language of Claim 54 |
|---|---|
| "the loop extending less than a length of the suspension end" | "wherein a portion of the loop that accepts a portion of the frame therethrough **extends a smaller distance of a length** of the suspension end from the left end to the right end". Emphasis Added. |

Applicant respectfully submits that "wherein a portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end", as recited in claim 54, is shown in the figures.

WBD (US) 4884-7313-5511v1

For example, in FIG. 1, annotated above, a loop configured for accepting a portion of the frame therethrough and securing the canopy in position relative to the frame is illustrated. As shown, a portion of the loop that accepts a portion of the frame (red arrow) therethrough extends a smaller distance of a length of the suspension end from the left end to the right end and a portion of the loop forms a securing mechanism (blue arrow) is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself. In this example, the securing mechanism is the strap (as shown in detail in FIG. 3). As can be seen, the portion of the loop that accepts a portion of the frame therethrough extends a smaller distance of a length of the suspension end from the left end to the right end since the straps are located at the ends of the this portion of the loop such that the loop (defined by the portion of the loop that accepts a portion of the frame therethrough and a portion of the loop forms a securing mechanism) extends more than just the portion of the loop that accepts a portion of the frame therethrough. Thus, Applicant respectfully submits that the claim language of independent claim 54 is shown in at least FIG. 1.

Claim 58

The examiner argues that the "the loop that extends a length different from that of the suspension end", is allegedly not shown in the figures. Applicant first notes that the quoted language from the examiner is not a verbatim recitation of the language of claim 58. Indeed, the following shows the comparison between the language quoted by the examiner and the actual claim language.

| Drawing Objection (as quoted by the examiner) – Claims 42 and 54 | Claim Language of Claim 58 |
|---|---|
| "the loop that extends a length different from that of the suspension end" | "a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right end". |

Applicant respectfully submits that "a loop proximate to the suspension end and extending at a length different from a length of the suspension end from the left end to the right

end", as recited in claim 58, is shown in the figures.

For example, in FIG. 1, annotated above, a loop that secures the canopy in position relative to the frame is illustrated. As shown, the loop that secures the canopy in position relative to the frame (red arrow) extends at a length different from a length of the suspension end from the left end to the right end and one or more portions of the loop forms a securing mechanism (blue arrow) that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop. In this example, the securing mechanism is the strap (as shown in detail in FIG. 3). As can be seen, the loop extends at a length different from a length of the suspension end from the left end to the right end since the straps are located at the ends of the loop. Thus, Applicant respectfully submits that the claim language of independent claim 58 is shown in at least FIG. 1.

Regarding claims 85-88, a helical thread (47) is now illustrated in new FIG. 8. Support for this new drawing comes from original FIG. 1, as well as paragraph [0051] of the originally-filed application. No new matter has been added. Thus, Applicant respectfully submits that the claim language of claims 85-88 is shown in at least FIG. 8.

The drawings are objected to for failing to comply with 37 CFR § 1.84(p)(5) for not including the reference sign: 46. FIG. 4 is now amended to include reference sign 46, which was inadvertently not included in the original figures. Support for this claim amendment can be found in at least, for example, paragraphs [0037] and [0039] of the published application. No new matter has been added.

Applicant therefore respectfully requests that the objections to the drawings be withdrawn at this time.

Specification

The specification is now amended in order to include reference to new FIG. 8, as well as include a reference number referring to "corkscrew shape" now illustrated in FIG. 8. No new matter is added with these amendments.

WBD (US) 4884-7313-5511v1

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 469 of 551

Claim Rejections – 35 U.S.C. § 112

Claims 21-24, 26, 28-30, 35, 38-45, 54-61, and 83-88 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AlA), first paragraph, as failing to comply with the written description requirement. The claim(s) allegedly contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for applications subject to pre-AlA 35 U.S.C. 112, the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim 21 recites a "section [sic] portion of the loop defining the second securing mechanism being wrapped or folded...and brought into contact with itself" which the examiner considers new matter in the application. Applicant notes that again, this is not a verbatim recitation of the claim language, which states that, "the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself for securing the canopy into position relative to the frame." The examiner further argues that Applicant discloses the use of a loop that may include tie strings (paragraph 0037), but separately discusses securing mechanisms (paragraph 0039) to include the straps 50 and fasteners 46, 52, and 54. The examiner argues that "there is no discussion in the disclosure of the use of a loop as the fastening mechanism. Conflating these two features is not supported by the disclosure as filed and is new matter in the application." Applicant respectfully disagrees.

First, Applicant points to the arguments presented in response to the objection to the drawings regarding the language of claim 21. Next, Applicant notes that paragraph [0037] of the originally-filed application states that, "[i]n some embodiments, one or more loops 40 may include tie strings for engaging the suspension end 42 with the frame 14." Paragraph [0039] of the originally-filed application states that, "[t]he at least one strap 50 may engage or couple to the canopy 12 on either or both ends of the suspension end 42 and/or to the loop 40 of the suspension end 42. " As claimed, the loop defines first and second portions, where the first portion defines a first securing mechanism and the second portion defines a second securing mechanism. The tie strings or straps 50 are examples of the claimed first and second securing mechanisms.

Paragraph [0040] of the originally-filed application states that "[i]n some embodiments, the at least one strap 50 may be elastic. Being able to stretch the at least one strap 50 about the frame 14 when engaging the strap 50 thereto can greatly increase the friction between the strap 50 and the frame 14, particularly if the strap 50 is also fastened to itself after wrapping." As stated in this portion of the disclosure, the straps wrap and fasten to themselves. Thus, Applicant respectfully submits that there is disclosure in the original description for the securing mechanisms being wrapped or folded, such that this rejection should be withdrawn.

Applicant also respectfully requests that the rejection of claims 42, 54, and 58 for allegedly not disclosing "one end of the loop defines a securing mechanism capable of wrapping or folding...and brought into contact with itself" (claim 42), "a portion of the loop" forms a securing mechanism that is wrapped or folded...and brought into contact with itself" (claim 54), and "one or more portions of the loop forms a securing mechanism that that is wrapped or folded...and brought into contact with itself" (claim 58) be withdrawn for at least the reasons discussed hereinabove in relation to claim 21.

Regarding the rejection of claims 85-88 for reciting a "helical thread" which is not found in the application, Applicant points to paragraph [0051] which describes a "corkscrew shape". A "corkscrew shape" inherently has a helical thread, which is what gives it a "corkscrew shape". Thus, Applicant respectfully submits that there is disclosure in the original description for a helical thread, and respectfully requests that this rejection be withdrawn.

WBD (US) 4884-7313-5511v1

Appl. No.:    18/072,143
Amdt. Dated:  December 21, 2023
Reply to Office Action dated December 5, 2023

<u>**CONCLUSION**</u>

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn:  Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/Lauren F. Anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC*
*FILING SYSTEM OF THE UNITED STATES PATENT AND*
*TRADEMARK OFFICE ON DECEMBER 21, 2023.*

WBD (US) 4884-7313-5511v1



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

26158        7590        01/11/2024
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 01/11/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

<table>
<tr><td rowspan="2"><b><i>Advisory Action</i><br><i>Before the Filing of an Appeal Brief</i></b></td><td colspan="2"><b>Application No.</b><br>18/072,143</td><td colspan="2"><b>Applicant(s)</b><br>Barnes et al.</td></tr>
<tr><td colspan="2"><b>Examiner</b><br>NOAH C HAWK</td><td><b>Art Unit</b><br>3636</td><td><b>AIA (FITF) Status</b><br>Yes</td></tr>
</table>

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

THE REPLY FILED <u>21 December 2023</u> FAILS TO PLACE THIS APPLICATION IN CONDITION FOR ALLOWANCE.

<u>NO NOTICE OF APPEAL FILED</u>

1. ☑ The reply was filed after a final rejection. No Notice of Appeal has been filed. To avoid abandonment of this application, applicant must timely file one of the following replies: (1) an amendment, affidavit, or other evidence, which places the application in condition for allowance; (2) a Notice of Appeal (with appeal fee) in compliance with 37 CFR 41.31; or (3) a Request for Continued Examination (RCE) in compliance with 37 CFR 1.114 if this is a utility or plant application. Note that RCEs are not permitted in design applications. The reply must be filed within one of the following time periods:

a) ☐ The period for reply expires ____ months from the mailing date of the final rejection.

b) ☑ The period for reply expires on: (1) the mailing date of this Advisory Action; or (2) the date set forth in the final rejection, whichever is later. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of the final rejection.

c) ☐ A prior Advisory Action was mailed more than 3 months after the mailing date of the final rejection in response to a first after-final reply filed within 2 months of the mailing date of the final rejection. The current period for reply expires ____ months from the mailing date of *the prior Advisory Action* or SIX MONTHS from the mailing date of the final rejection, whichever is earlier.

> *Examiner Note*: If box 1 is checked, check either box (a), (b) or (c). ONLY CHECK BOX (b) WHEN THIS ADVISORY ACTION IS THE <u>FIRST</u> RESPONSE TO APPLICANTS <u>FIRST</u> AFTER-FINAL REPLY WHICH WAS FILED WITHIN TWO MONTHS OF THE FINAL REJECTION. ONLY CHECK BOX (c) IN THE LIMITED SITUATION SET FORTH UNDER BOX (c). See MPEP 706.07(f).

Extensions of time may be obtained under 37 CFR 1.136(a). The date on which the petition under 37 CFR 1.136(a) and the appropriate extension fee have been filed is the date for purposes of determining the period of extension and the corresponding amount of the fee. The appropriate extension fee under 37 CFR 1.17(a) is calculated from: (1) the expiration date of the shortened statutory period for reply originally set in the final Office action; or (2) as set forth in (b) or (c) above, if checked. Any reply received by the Office later than three months after the mailing date of the final rejection, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

<u>NOTICE OF APPEAL</u>

2. ☐ The Notice of Appeal was filed on _____. A brief in compliance with 37 CFR 41.37 must be filed within two months of the date of filing the Notice of Appeal (37 CFR 41.37(a)), or any extension thereof (37 CFR 41.37(e)), to avoid dismissal of the appeal. Since a Notice of Appeal has been filed, any reply must be filed within the time period set forth in 37CFR 41.37(a).

<u>AMENDMENTS</u>

3. ☐ The proposed amendments filed after a final rejection, but prior to the date of filing a brief, will <u>not</u> be entered because

a) ☐ They raise new issues that would require further consideration and/or search (see NOTE below);

b) ☐ They raise the issue of new matter (see NOTE below);

c) ☐ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal; and/or

d) ☐ They present additional claims without canceling a corresponding number of finally rejected claims.

> NOTE: _____ (See 37 CFR 1.116 and 41.33(a)).

4. ☐ The amendments are not in compliance with 37 CFR 1.121. See attached Notice of Non-Compliant Amendment (PTOL-324).

5. ☐ Applicant's reply has overcome the following rejection(s): _____

6. ☐ Newly proposed or amended claim(s) _____ would be allowable if submitted in a separate, timely filed amendment canceling the non-allowable claim(s).

7. ☑ For purposes of appeal, the proposed amendment(s):(a)☐ will not be entered, or (b)☑ will be entered, and an explanation of how the new or amended claims would be rejected is provided below or appended.

<u>AFFIDAVIT OR OTHER EVIDENCE</u>

8. ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____

9. ☐ The affidavit or other evidence filed after final action, but before or on the date of filing a Notice of Appeal will <u>not</u> be entered because applicant failed to provide a showing of good and sufficient reasons why the affidavit or other evidence is necessary and was not earlier presented. See 37 CFR 1.116(e).

10. ☐ The affidavit or other evidence filed after the date of filing the Notice of Appeal, but prior to the date of filing a brief, will <u>not</u> be entered because the affidavit or other evidence failed to overcome <u>all</u> rejections under appeal and/or appellant fails to provide a showing of good and sufficient reasons why it is necessary and was not earlier presented. See 37 CFR 41.33(d)(1).

11. ☐ The affidavit or other evidence is entered. An explanation of the status of the claims after entry is below or attached.

<u>REQUEST FOR RECONSIDERATION/OTHER</u>

12. ☑ The request for reconsideration has been considered but does NOT place the application in condition for allowance because: <u>See Continuation Sheet</u>.

13. ☐ Note the attached Information *Disclosure Statement*(s). (PTO/SB/08) Paper No(s). _____

14. ☐ Other: _____.

<u>STATUS OF CLAIMS</u>

15. The status of the claim(s) is (or will be) as follows:

Claim(s) allowed:_____.

Claim(s) objected to:_____.

Claim(s) rejected:<u>21-24,26,28-30,35,38-45,54-61 and 83-88</u>.

Claim(s) withdrawn from consideration:_____.

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 474 of 551

Continuation of REQUEST FOR RECONSIDERATION/OTHER 12. The request for reconsideration has been considered but does NOT place the application in condition for allowance because: With respect to the applicant's arguments regarding the language used by the examiner in the drawing objections; the examiner paraphrased the claim limitations for simplicity's sake. With the exception of the first portion including wrapped or folded portions, all of the paraphrased elements in the Objection are actually in the claims.

The applicant attempts to show in Figure 1 where the first, central, and second portions of the loop are found in Figure 1 by using blue and red arrows in an annotated figure. Due to technological limitations, color annotations do not show up in the application files and these details cannot be discerned. Even if these arrows could be distinguished, the loop shown in Figure 1 still extends the entire length of the canopy suspension end. There is nothing to distinguish a first or second portion from a central portion other than an arbitrary arrow, which is not found persuasive.

Additionally, as discussed in the 112(a) rejection of Claim 21, there is no discussion of the use of the loop as a fastening mechanism that wraps or folds about the frame. Element 50 (indicated at the end portion of the loop as the first or second portion in the applicant's arguments) is separately discussed as a securing mechanism, not as a part of the loop. The only securing mechanism discussed as part of the loop is a tie string. No discussion is found of the loop extending less than the entire length and no discussion is found of using any portion of the loop as a securing mechanism. The applicant cannot conflate two previously distinct elements (the loop and the securing mechanisms) of the device to meet some new alleged feature that is not present. IF the applicant were to claim a loop with tie strings and a separate securing mechanism that wraps or folds, the claims would be supported by the disclosure.

With respect to the applicant's arguments regarding the "helical" thread: the applicant argues that a corkscrew shape inherently has a helical thread. The examiner agrees. However, if that is the case, Claims 85-88 would now be objected to for failing to further limit the parent claim. There is no further structure imparted to the claimed device if the features in the claims are inherent in features already present.

The drawing objections with respect to the lack of the "helical thread" and reference number 46 are withdrawn. All of the other drawing objections are maintained. All of the 112(a) rejections are maintained.

OK TO ENTER: /NCH/ 01/07/2024

PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:     S105508 1010US.C8 (0040.5)
Customer No.:   26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

AMENDMENT UNDER 37 C.F.R. § 1.116

Sir:

    In response to the Office Action dated December 5, 2023, please amend the above-identified application as follows:

**Amendments to the Figures** begin on page 2 of this paper.

**Amendments to the Specification** begin on page 3 of this paper.

**Pending Claims** are reflected in the listing of claims beginning on page 4 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 18/072,143 | Filing Date 11/30/2022 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE ☐ SMALL ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 12/21/2023 | | | | | | | |
| | Total (37 CFR 1.16(i)) | * 31 | Minus | ** 54 | = 0 | | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 4 | Minus | *** 12 | = 0 | | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 03/04/2024 | | | | | | | |
| | Total (37 CFR 1.16(i)) | * 19 | Minus | ** 54 | = 0 | | x $100 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 12 | = 0 | | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /RENEE M COLLINS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 18/072,143 | Filing Date | 2022-11-30 | Docket Number (if applicable) | S105508 1010US.C8 (0040.5 | Art Unit | 3636 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Dane Brooks Barnes | | | Examiner Name | Noah Chandler Hawk | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    ☐ Other _____

☒ Enclosed

    ☒ Amendment/Reply

    ☒ Information Disclosure Statement (IDS)

    ☐ Affidavit(s)/ Declaration(s)

    ☐ Other _____

## MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months _____
(Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

☐ Other _____

## FEES

**The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**

☒ The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No    090528

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

☒ Patent Practitioner Signature

☐ Applicant Signature

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 478 of 551

EFS - Web 2.1.16

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (01-22)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Lauren F. Anderson/ | Date (YYYY-MM-DD) | 2024-03-04 |
| Name | Lauren F. Anderson | Registration Number | 69344 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EFS - Web 2.1.16

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

 UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/072,143 | 03/04/2024 04:10:21 PM Z ET | S105508 1010US.C8 (0040.5 |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 64539207 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

## TOTAL DOCUMENTS: 7

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S105508_1010US_C8_0040_5_Supplemental_IDS_1449.pdf | 1 | Information Disclosure Statement (IDS) Form (SB08) | 142 KB |
| Warning: This is not a USPTO supplied IDS fillable form. Data in the form cannot be automatically loaded to other USPTO systems. | | | |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action.pdf | 10 | - | 154 KB |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action-AMSB.pdf | (1-1) 1 | Amendment Submitted/Entered with Filing of Continued Prosecution Application (CPA)/Request for Continued Examination(RCE) | 113 KB |
| S105508_1010US_C8_004 | (2-7) 6 | Claims | 88 KB |

| | | | | |
|---|---|---|---|---|
| 0_5_Amendment_after_Advisory_Action-CLM.pdf | | | | |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action-REM.pdf | (8-10) | 3 | Applicant Arguments/Remarks Made in an Amendment | 104 KB |
| S105508_1010US_C8_0040_5_Supplemental_IDS_Cover.pdf | | 1 | Transmittal Letter | 116 KB |
| S105508_1010US_C8_0040_5_RCE.pdf | | 3 | Request for Continued Examination (RCE) | 1628 KB |
| NPL-Shibumi_Shade_Facebook.pdf | | 5 | Non Patent Literature | 254 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_Supplemental_IDS_1449.pdf | ED8B560053265954ACF97FEB86763F25D1FFD32AAE232AD7F7D28B325F287B681D354699553106B1B96B4276F530ACBA1A5EB049C272EC561FD457F46508F2AB |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action.pdf | 78CBB84D44AACF08D113262CF4C830AF34E3C9CEE0751D64EAB63CCE295C89D269035DBC35F3ECF1E5FD3A80F3E02B7F10932757C2688309144ED9BAB1CE5DB9 |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action-AMSB.pdf | 0F8AC3EAC2E5AF3F0C99B6D5AFBAD146FEA0B53BEBA2F008E828698992E659B7C8A115DF2257E6479E70035E617DF4DDC057BDB32C1B57253502F583D90D1060 |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action-CLM.pdf | 9DB974C2F0AF56A4EE49066E50F8FC15E58570B14A9D07BAF06C92507FD6C2FD5D73D2DB3BBD64204B0758EF56DEE626CD8A98BF3CF6FE79F4F1E0EB1D828E09 |
| S105508_1010US_C8_0040_5_Amendment_after_Advisory_Action-REM.pdf | AB0261AAC75C909B542623031C4E11D0AE6D755B994D04F055C813598D204ECE2FAF1E5CC4716BF4FF387B563C705A2D9C9279D4150211FE96BE229503C574EA |
| S105508_1010US_C8_0040_5_Supplemental_IDS_Cover.pdf | D6F8C00C519BE99EC147183FF6C8CA6757E7286A61FB76F5EFF0D1EF271640188454643EA551763957786329877864DC02B83618530857988458D89AD34E2117 |
| S105508_1010US_C8_0040_5_RCE.pdf | 6BAE592AE96FD971A24C4ACAEF9AE109485C61DF1A3E1115E1C6D80FD17C5EE50025B690C3379A16DCD8A22A8C471FD3E16E91EA6504625AA7D7A37F0FBF9767 |
| NPL- | 3AFF0DDE0622D5ED5313F652366130EBB65D8D4FABC1C283 |

Shibumi_Shade_Facebook.pdf      4DF7BBC44307F9F06F1B124FD752F4DB5C5E7B32A28C65F49
F1AFEE264FBE70B3B2CA371C7DE3AD2

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

<table>
<tr><td rowspan="2" colspan="3"><b>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</b></td><td colspan="2"><b>Complete if Known</b></td></tr>
</table>

| | | | | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 18/072,143 |
| | | | Filing Date | November 30, 2022 |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | 3636 |
| | | | Examiner Name | Noah Chandler Hawk |
| Sheet | 1 | of 1 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number — Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-4,534,089 | 08-13-1985 | Swan | |
| | 2 | US-4,832,304 | 05-23-1989 | Morgulis | |
| | 3 | US-10,190,330 | 01-29-2019 | Barnes et al. | |
| | 4 | US-11,634,924 | 04-25-2023 | Barnes *et al.* | |
| | 5 | US-11,686,120 | 06-27-2023 | Yates | |
| | 6 | US-D823,419 | 07-17-2018 | Ceccaldi | |
| | 7 | US-D829,839 | 10-02-2018 | Crimi | |
| | 8 | US-D947,411 | 03-29-2022 | Climent Bonet *et al.* | |
| | 9 | US-D948,653 | 04-12-2022 | Lah | |
| | 10 | US-D989,350 | 06-13-2023 | Barnes *et al* | |
| | 11 | US-D990,605 | 06-27-2023 | Barnes *et al* | |
| | 12 | US-D993,454 | 07-25-2023 | McKenna *et al* | |
| | 13 | US-D993,455 | 07-25-2023 | McKenna *et al* | |
| | 14 | US-2015/0108295 | 04-23-2015 | Brooks | |
| | 15 | US-2018/0245367 | 08-30-2018 | Grieshop | |
| | 16 | US-2022/0024290 | 01-27-2022 | Howard | |
| | 17 | US-2023/0096848 | 03-30-2023 | Wang | |
| | 18 | US-2023/0126867 | 04-27-2023 | Barnes *et al.* | |
| | 19 | US-2023/0151636 | 05-18-2023 | Li *et al.* | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 20 | Shibumi Shade, posted 10/12/2018 [online], [retrieved 01/19/2023], Retrieved from internet, https://www.facebook.com/shibumishade/ (Year: 2018) | |

| | | | |
|---|---|---|---|
| Examiner Signature | | Date Considered | |

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON MARCH 4, 2024*

WBD (US) 4885-0665-3866

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:      S105508 1010US.C8 (0040.5)

Customer No.:   26158

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### AMENDMENT UNDER 37 C.F.R. § 1.114

Sir:

In response to the Office Action dated December 5, 2023, and the Advisory Action dated January 11, 2024, please amend the above-identified application as follows:

**Amendments to the Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks/Arguments** begin on page 8 of this paper.

Amendments to the Claims

1-20.    (Canceled)

21.    (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame ~~with a corkscrew shape and~~ engaged with the surface;

a last section defining a right end of the frame ~~with a corkscrew shape and~~ engaged with the surface; and

one or more adjacent sections coupled into alignment <u>and engaged </u>between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more of the adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage [[with]]<u>between</u> the first section and the last section in the supporting configuration;

a canopy extending between a <u>first</u>~~suspension~~ end and an <u>second</u>~~opposing trailing~~ end, the <u>first</u>~~suspension~~ end of the canopy <u>defining a suspension end capable of being engaged</u> ~~being engageable~~ with the frame about the one or more adjacent sections of the frame, wherein the <u>second end of the canopy defines a </u>trailing end ~~of the canopy is~~ spaced apart from the frame in the supporting configuration such that the <u>first end of the</u> canopy is supportable by the frame and <u>the trailing end of the canopy is totally supported</u>~~at least partially supportable~~ by wind in a first configuration for providing shade to the surface; and

a loop <u>on</u>~~defined toward~~ the suspension end of the canopy and ~~extending an entire length of the suspension end of the canopy, wherein the loop defines a central portion arranged between~~

~~a first portion of the loop and a second portion of the loop, the central portion of the loop being~~ configured for accepting a portion of the frame therethrough <u>for engaging the canopy with the frame, the loop being the only fastener</u> ~~and extending a smaller distance of a length of the suspension end, the first portion of the loop defining a first securing mechanism and the second portion of the loop defining a second securing mechanism, at least the second portion of the loop defining the second securing mechanism being wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself~~ for securing the canopy into position relative to the frame~~;~~

~~wherein the canopy, the loop, the first securing mechanism, and the second securing mechanism are formed entirely of fabric~~.

22.    (Previously Presented)  The system of claim 21, wherein the canopy is a unitary sheet of material or comprises a plurality of sheets of material coupleable together.

23.    (Previously Presented)  The system of claim 22, wherein the plurality of sheets of material are selectively engageable sections.

24.    (Previously Presented)  The system of claim of claim 21, wherein the canopy has at least one set of parallel sides.

25.    (Canceled)

26.    (Previously Presented)  The system of claim 21, wherein the canopy comprises one or more vent holes defined within the canopy, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27.    (Canceled)

28.    (Previously Presented)  The system of claim 21, wherein the one or more adjacent

WBD (US) 4894-1609-5402v1

sections of the frame comprises a plurality of longitudinally-extending sections.

29.      (Canceled)

30.      (Previously Presented)  The system of claim 21, wherein the at least one aligning component comprises a cable extending through and affixed to the one or more adjacent sections of the frame of the frame.

31.      (Canceled)

32.      (Canceled)

33.      (Canceled)

34.      (Canceled)

35.      (Previously Presented)  The system of claim 21, wherein the frame is directly engageable with the surface.

36.      (Canceled)

37.      (Canceled)

38.      (Previously Presented)  The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the canopy.

39.      (Previously Presented)  The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so

that the frame remains engaged with the surface when the wind is applied to the canopy.


40.    (Canceled)


41.    (Previously Presented)  The system of claim 21, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.


42-57. (Canceled)


58.    (Currently Amended)  A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections and comprising an aligning component extending through at least a portion~~one of the plurality~~ of the sections ~~of the frame~~, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby ~~being~~ engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration~~, wherein each of a left end and a right end of the frame in the supporting configuration has a corkscrew shape for engaging a surface~~; and

a canopy defining one or more sections extending between a first end forming a suspension end of the canopy and a second end forming an opposing trailing end of the canopy, the suspension end of the canopy including only a single fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and the trailing end is totally supported by wind in a first configuration for providing shade to the surface, ~~extending between a left end and a right end and being positioned proximal to the frame in the supporting configuration; and~~

wherein the single fastener comprises a loop~~proximate to the suspension end and~~

WBD (US) 4894-1609-5402v1

extending at a length different from a length of the suspension end from the left end to the right end and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface,

wherein one or more portions of the loop forms a securing mechanism that is wrapped or folded about one of the adjacent sections of the frame and brought into contact with itself only at the one or more portions of the loop, the one of the adjacent sections of the frame being adjacent to the left end of the frame with the corkscrew shape or the right end of the frame with the corkscrew shape.

59.     (Previously Presented)  The system of claim 58, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.

60.     (Previously Presented)  The system of claim 58, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.

61.     (Previously Presented)  The system of claim 58, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

62-83.  (Canceled)

84.     (Previously Presented)      The system of claim 58, wherein the aligning component comprises a cable.

85-88.  (Canceled)

WBD (US) 4894-1609-5402v1

89.    (New)  The system of claim 21, wherein the left end of the frame has a corkscrew shape and the right end of the frame has a corkscrew shape.

90.    (New)  The system of claim 58, wherein the left end of the frame has a corkscrew shape and the right end of the frame has a corkscrew shape.

91.    (New)  The system of claim 58, further comprising a container capable of housing and transporting the components of the system.

WBD (US) 4894-1609-5402v1
Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 491 of 551

## REMARKS/ARGUMENTS

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the remarks that follow.  Claims 1-20, 25, 27, 31-34, 36-37, 46-53, and 62-82 were previously canceled. With this Amendment, claims 21 and 58 are amended, while claims 40, 42-45, 54-57, 83, and 85-88 are canceled, and claims 89-91 are added. Claims 21-24, 26, 28-30, 35, 38-39, 41, 58-61, 84, and 89-91 are now pending.  Applicant submits that no new matter is added by way of this Amendment.

### New Claims

New claims 89-91 are now added and are based off of the subject matter originally recited in claims 21, 41, and 58. No new matter is added with these amendments.

### Drawings

The drawings are objected to under 37 CFR § 1.83(a) as allegedly failing to show every feature of the invention specified in the claims (i.e., claims 21, 42, 54, 58, and 85-88). Claims 42, 54, and 85-88 are now canceled, while claims 21 and 58 are amended to remove reference to the loop including first, central and second portions, the central portion extending only a portion of the suspension end length, and the first and section portions including wrapped or folded portions recited in Claim 21, and the loop that extends a length different from that of the suspension end recited in Claim 58. Therefore, Applicant respectfully submits that this objection to the drawings should be withdrawn at this time.

The drawings are objected to for failing to comply with 37 CFR § 1.84(p)(5) for not including the reference sign: 46. As noted in the previous response filed December 21, 2023, FIG. 4 is amended to include reference sign 46, which was inadvertently not included in the original figures. Applicant therefore respectfully requests this the objections to the drawings be withdrawn at this time.

Claim Rejections – 35 U.S.C. § 112

Claims 21-24, 26, 28-30, 35, 38-45, 54-61, and 83-88 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) allegedly contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for applications subject to pre-AIA 35 U.S.C. 112, the inventor(s), at the time the application was filed, had possession of the claimed invention. Claims 42, 54, and 85-88 are now canceled, such that Applicant respectfully submits that this rejection of the claim is now moot.

Claim 21 recites a "section [sic] portion of the loop defining the second securing mechanism being wrapped or folded...and brought into contact with itself", while claim 58 recites "one or more portions of the loop forms a securing mechanism that that is wrapped or folded...and brought into contact with itself", which the examiner considers new matter in the application. This language is now canceled from claims 21 and 58, such that Applicant respectfully submits that this rejection is now moot.

WBD (US) 4894-1609-5402v1

Appl. No.: 18/072,143
Amdt. Dated: March 4, 2024
Reply to Office Action dated December 5, 2023, and Advisory Action dated January 11, 2024

## CONCLUSION

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: IP Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/Lauren F. Anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC*
*FILING SYSTEM OF THE UNITED STATES PATENT AND*
*TRADEMARK OFFICE ON MARCH 4, 2024.*

WBD (US) 4894-1609-5402v1

Attorney's Docket No.  **S105508 1010US.C8 (0040.5)**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT
### UNDER 37 C.F.R. § 1.97(b)(4)

Sir:

Attached is a list of documents on form PTO-1449 along with a copy of any cited foreign patent documents and non-patent literature document in accordance with 37 CFR 1.98(a)(2). Also enclosed is a translation or a concise explanation of each non-English language document.

It is requested that the Examiner consider these documents and officially make them of record in accordance with the provisions of 37 C.F.R. § 1.97 and Section 609 of the MPEP. By identifying the listed documents, Applicant in no way makes any admission as to the prior art status of the listed documents, but is instead identifying the listed documents for the sake of full disclosure.

This Information Disclosure Statement is submitted in accordance with 37 C.F.R. § 1.97(b)(4), before the mailing of a first office action and after the filing of a request for continued examination under § 1.114.

Respectfully submitted,

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn:  IP Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

/Lauren F. Anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC
FILING SYSTEM OF THE UNITED STATES PATENT AND
TRADEMARK OFFICE ON MARCH 4, 2024.*

WBD (US) 4864-5898-1546v1

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 495 of 551



UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **03/04/2024 04:10:21 PM Z ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 64539207 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| DA / 090528 | E202434G11049575 | Shari Elofson |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1820 | REQUEST FOR CONTINUED EXAMINATION (RCE)- 2ND AND SUBSEQUENT REQUEST (SEE 37 CFR 1.114) | 2000.00 | 1 | 2000.00 |
| | | | **TOTAL AMOUNT:** | **$2,000.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 496 of 551

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

| ✔ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | |
|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA  ☐ T.D.  ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | 11/30/2023 | 03/07/2024 | | | | |
| | 1 | - | - | - | - | - | | | | |
| | 2 | - | - | - | - | - | | | | |
| | 3 | - | - | - | - | - | | | | |
| | 4 | - | - | - | - | - | | | | |
| | 5 | - | - | - | - | - | | | | |
| | 6 | - | - | - | - | - | | | | |
| | 7 | - | - | - | - | - | | | | |
| | 8 | - | - | - | - | - | | | | |
| | 9 | - | - | - | - | - | | | | |
| | 10 | - | - | - | - | - | | | | |
| | 11 | - | - | - | - | - | | | | |
| | 12 | - | - | - | - | - | | | | |
| | 13 | - | - | - | - | - | | | | |
| | 14 | - | - | - | - | - | | | | |
| | 15 | - | - | - | - | - | | | | |
| | 16 | - | - | - | - | - | | | | |
| | 17 | - | - | - | - | - | | | | |
| | 18 | - | - | - | - | - | | | | |
| | 19 | - | - | - | - | - | | | | |
| | 20 | - | - | - | - | - | | | | |
| | 21 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 22 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 23 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 24 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 25 | ✔ | - | - | - | - | | | | |
| | 26 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 27 | ✔ | - | - | - | - | | | | |
| | 28 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 29 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 30 | ✔ | ✔ | ✔ | ✔ | ✔ | | | | |
| | 31 | ✔ | - | - | - | - | | | | |
| | 32 | ✔ | - | - | - | - | | | | |
| | 33 | ✔ | - | - | - | - | | | | |
| | 34 | ✔ | - | - | - | - | | | | |
| | 35 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 36 | ✔ | - | - | - | - | | | | |
| | 37 | ✔ | - | - | - | - | | | | |
| | 38 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 39 | ✔ | ✔ | ✔ | ✔ | O | | | | |
| | 40 | ✔ | ✔ | ✔ | ✔ | - | | | | |
| | 41 | | ✔ | ✔ | ✔ | O | | | | |
| | 42 | | ✔ | ✔ | ✔ | - | | | | |



| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | 11/30/2023 | 03/07/2024 | | | | |
| | 43 | | ✓ | ✓ | ✓ | - | | | | |
| | 44 | | ✓ | ✓ | ✓ | - | | | | |
| | 45 | | ✓ | ✓ | ✓ | - | | | | |
| | 46 | | ✓ | ✓ | - | - | | | | |
| | 47 | | ✓ | ✓ | - | - | | | | |
| | 48 | | ✓ | ✓ | - | - | | | | |
| | 49 | | ✓ | ✓ | - | - | | | | |
| | 50 | | ✓ | ✓ | - | - | | | | |
| | 51 | | ✓ | ✓ | - | - | | | | |
| | 52 | | ✓ | ✓ | - | - | | | | |
| | 53 | | ✓ | ✓ | - | - | | | | |
| | 54 | | ✓ | ✓ | ✓ | - | | | | |
| | 55 | | ✓ | ✓ | ✓ | - | | | | |
| | 56 | | ✓ | ✓ | ✓ | - | | | | |
| | 57 | | ✓ | ✓ | ✓ | - | | | | |
| | 58 | | ✓ | ✓ | ✓ | ✓ | | | | |
| | 59 | | ✓ | ✓ | ✓ | O | | | | |
| | 60 | | ✓ | ✓ | ✓ | O | | | | |
| | 61 | | ✓ | ✓ | ✓ | O | | | | |
| | 62 | | ✓ | ✓ | - | - | | | | |
| | 63 | | ✓ | ✓ | - | - | | | | |
| | 64 | | ✓ | ✓ | - | - | | | | |
| | 65 | | ✓ | ✓ | - | - | | | | |
| | 66 | | ✓ | ✓ | - | - | | | | |
| | 67 | | ✓ | ✓ | - | - | | | | |
| | 68 | | ✓ | ✓ | - | - | | | | |
| | 69 | | ✓ | ✓ | - | - | | | | |
| | 70 | | ✓ | ✓ | - | - | | | | |
| | 71 | | ✓ | ✓ | - | - | | | | |
| | 72 | | ✓ | ✓ | - | - | | | | |
| | 73 | | ✓ | ✓ | - | - | | | | |
| | 74 | | ✓ | ✓ | - | - | | | | |
| | 75 | | ✓ | ✓ | - | - | | | | |
| | 76 | | ✓ | ✓ | - | - | | | | |
| | 77 | | ✓ | ✓ | - | - | | | | |
| | 78 | | | ✓ | - | - | | | | |
| | 79 | | | ✓ | - | - | | | | |
| | 80 | | | ✓ | - | - | | | | |
| | 81 | | | ✓ | - | - | | | | |
| | 82 | | | ✓ | - | - | | | | |
| | 83 | | | | ✓ | - | | | | |
| | 84 | | | | ✓ | O | | | | |
| | 85 | | | | ✓ | - | | | | |
| | 86 | | | | ✓ | - | | | | |
| | 87 | | | | ✓ | - | | | | |
| | 88 | | | | ✓ | - | | | | |
| | 89 | | | | | ✓ | | | | |
| | 90 | | | | | O | | | | |
| | 91 | | | | | O | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | Examiner | Art Unit |
| | NOAH C HAWK | 3636 |

**CPC - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| E04H 15/005, 15/60, 15/62 | 03/09/2023 | NCH |
| updated above | 11/30/2023 | NCH |

**CPC Combination Sets - Searched***

| Symbol | Date | Examiner |
|---|---|---|
| | | |

**US Classification - Searched***

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Considered and updated search for parent application 17/471658 | 03/09/2023 | NCH |
| Considered IDS filed 11/30/22 | 03/09/2023 | NCH |
| Please see attached PE2E search history | 03/09/2023 | NCH |
| Performed inventor name search in DAV | 03/09/2023 | NCH |
| Considered IDS filed 4/14/23 and 6/5/23 | 07/23/2023 | NCH |
| Considered IDS filed 11/20/23 | 11/30/2023 | NCH |
| Considered IDS filed 3/4/24 | 03/07/2024 | NCH |

| | |
|---|---|
| | |

|  ***Search Notes*** | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 501 of 551

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | **Complete if Known** | |
|---|---|---|---|---|
| | | | Application Number | 18/072,143 |
| | | | Filing Date | November 30, 2022 |
| | | | First Named Inventor | Dane Brooks Barnes |
| | | | Art Unit | 3636 |
| | | | Examiner Name | Noah Chandler Hawk |
| Sheet | 1 | of | 1 | Attorney Docket Number | **S105508 1010US.C8 (0040.5)** |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No. | Document Number<br>Number - Kind Code (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages of Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | US-4,534,089 | 08-13-1985 | Swan | |
| | 2 | US-4,832,304 | 05-23-1989 | Morgulis | |
| | 3 | US-10,190,330 | 01-29-2019 | Barnes et al. | |
| | 4 | US-11,634,924 | 04-25-2023 | Barnes *et al.* | |
| | 5 | US-11,686,120 | 06-27-2023 | Yates | |
| | 6 | US-D823,419 | 07-17-2018 | Ceccaldi | |
| | 7 | US-D829,839 | 10-02-2018 | Crimi | |
| | 8 | US-D947,411 | 03-29-2022 | Climent Bonet *et al.* | |
| | 9 | US-D948,653 | 04-12-2022 | Lah | |
| | 10 | US-D989,350 | 06-13-2023 | Barnes *et al* | |
| | 11 | US-D990,605 | 06-27-2023 | Barnes *et al* | |
| | 12 | US-D993,454 | 07-25-2023 | McKenna *et al* | |
| | 13 | US-D993,455 | 07-25-2023 | McKenna *et al* | |
| | 14 | US-2015/0108295 | 04-23-2015 | Brooks | |
| | 15 | US-2018/0245367 | 08-30-2018 | Grieshop | |
| | 16 | US-2022/0024290 | 01-27-2022 | Howard | |
| | 17 | US-2023/0096848 | 03-30-2023 | Wang | |
| | 18 | US-2023/0126867 | 04-27-2023 | Barnes *et al.* | |
| | 19 | US-2023/0151636 | 05-18-2023 | Li *et al.* | |

### OTHER DOCUMENTS

| Examiner Initials* | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | English Language Translation Attached |
|---|---|---|---|
| | 20 | Shibumi Shade, posted 10/12/2018 [online], [retrieved 01/19/2023], Retrieved from internet, https://www.facebook.com/shibumishade/ (Year: 2018) | |

| Examiner Signature | /Noah Chandler Hawk/ | Date Considered | 03/07/2024 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON MARCH 4, 2024*

WBD (US) 4885-0665-3866

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /NCH/

UNITED STATES PATENT AND TRADEMARK OFFICE



UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

| | | |
|---|---|---|
| 26158 | 7590 | 03/12/2024 |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/12/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>3/4/2024</u>.
     ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**    2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims\***

5) ☑ Claim(s) <u>21-24,26,28-30,35,38-39,41,58-61,84 and 89-91</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>21,30,58 and 89</u> is/are rejected.
8) ☑ Claim(s) <u>22-24,26,28-29,35,38-39,41,59-61,84 and 90-91</u> is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

\* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All    b) ☐ Some\*\*    c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date <u>3/4/24</u>.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.


### *Continued Examination Under 37 CFR 1.114*

2.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on

3/4/2024 has been entered.


### *Drawings*

3.      The drawings were received on 11/30/22 and 12/21/23.  These drawings are

accepted in light of the claim amendments.


### *Double Patenting*

4.      The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees. A nonstatutory double

patenting rejection is appropriate where the conflicting claims are not identical, but at

least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The filing of a terminal disclaimer by itself is not a complete reply to a nonstatutory double patenting (NSDP) rejection. A complete reply requires that the terminal disclaimer be accompanied by a reply requesting reconsideration of the prior Office action. Even where the NSDP rejection is provisional the reply must be complete. See MPEP § 804, subsection I.B.1. For a reply to a non-final Office action, see 37 CFR 1.111(a). For a reply to final Office action, see 37 CFR 1.113(c). A request for

reconsideration while not provided for in 37 CFR 1.113(c) may be filed after final for

consideration. See MPEP §§ 706.07(e) and 714.13.

The USPTO Internet website contains terminal disclaimer forms which may be

used. Please visit www.uspto.gov/patent/patents-forms. The actual filing date of the

application in which the form is filed determines what form (e.g., PTO/SB/25,

PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal

Disclaimer may be filled out completely online using web-screens. An eTerminal

Disclaimer that meets all requirements is auto-processed and approved immediately

upon submission. For more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/apply/applying-online/eterminal-disclaimer.

5.      Claims 21, 89, 30, and 58 are provisionally rejected on the ground of

nonstatutory double patenting as being unpatentable over claims 21, 21, 24, and 36,

respectively of copending Application No. 18/348882 (reference application). Although

the claims at issue are not identical, they are not patentably distinct from each other

because the claims of the copending application include additional details but anticipate

all of the limitations of the instant claims.

This is a provisional nonstatutory double patenting rejection because the

patentably indistinct claims have not in fact been patented.


### Allowable Subject Matter

6.      Claims 22-24, 26, 28-29, 35, 38-39, 41, 59-61, 84 and 90-91 are objected to as

being dependent upon a rejected base claim, but would be allowable if rewritten in

independent form including all of the limitations of the base claim and any intervening

claims.

7.      The following is an examiner's statement of reasons for allowance: the prior art

made of record has failed to suggest, either singly or in combination, a novel system for

providing shade having a frame defined by a plurality of sections with an aligning

component extending through at least a portion of the sections, each section having one

or both of a male and female end for engaging with an adjacent section in a supporting

configuration and disengaging in a transport configuration, a canopy with a plurality of

coupled sections and extending between a suspension end and a trailing end, the

suspension end having only a single fastener engaging the frame to the canopy and

securing the canopy with respect to the frame so that the suspension end is supported

by the frame, the single fastener being a loop extending at least partially through the

length of the suspension end from a left to a right end, the trailing end being supported

only and totally by the wind when providing shade to the surface, and a container

capable of housing and transporting the components of the system.

8.      The prior art made of record generally teaches multiple fasteners such as a loop

and a strap (see Kang), multiple loops (see Beatty), multiple straps (Knipschild), or a

loop and guylines (see Sotirkys); alternately a single loop is used, but does not fix a

canopy to a frame (see Jager). There does not appear to be a teaching of a single

fastener securing a canopy to a frame in the manner claimed by the applicant.

        Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

9.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480. The examiner can normally be reached M-F 9am to 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and https://www.uspto.gov/patents/docx for information about filing in DOCX format. For additional questions, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>18/072,143 | Filing Date<br>11/30/2022 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE ☐ SMALL ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| AMENDMENT | 03/13/2024 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * 19 | Minus | ** 54 | = 0 | x $100 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 2 | Minus | *** 12 | = 0 | x $480 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | SLIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SHANDA E ROSS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re: | Barnes *et al.* | Confirmation No.: | 1080 |
| Appl. No.: | 18/072,143 | Group Art Unit: | 3636 |
| Filed: | November 30, 2022 | Examiner: | Noah Chandler Hawk |
| For: | SHADING SYSTEM AND METHOD OF USE | | |

Docket No.:     S105508 1010US.C8 (0040.5)
Customer No.:     26158

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### REQUEST FOR RECONSIDERATION UNDER 37 C.F.R. § 1.111

Sir:

In response to the Office Action dated March 12, 2024:

**Pending Claims** are reflected in the listing of claims beginning on page 2 of this paper.

**Remarks/Arguments** begin on page 7 of this paper.

<u>Pending Claims</u>

1-20.    (Canceled)

21.      (Previously Presented)  A system for providing shade onto a surface, the system comprising:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame engaged with the surface;

a last section defining a right end of the frame engaged with the surface; and

one or more adjacent sections coupled into alignment and engaged between the first section and the last section, the one or more adjacent sections additionally comprising at least one aligning component affixed to one or more of the adjacent sections of the frame and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage between the first section and the last section in the supporting configuration;

a canopy extending between a first end and an second end, the first end of the canopy defining a suspension end capable of being engaged with the frame about the one or more adjacent sections of the frame, wherein the second end of the canopy defines a trailing end spaced apart from the frame in the supporting configuration such that the first end of the canopy is supportable by the frame and the trailing end of the canopy is totally supported by wind in a first configuration for providing shade to the surface; and

a loop on the suspension end of the canopy and configured for accepting a portion of the frame therethrough for engaging the canopy with the frame, the loop being the only fastener securing the canopy into position relative to the frame.

22.      (Previously Presented)  The system of claim 21, wherein the canopy is a unitary sheet of

material or comprises a plurality of sheets of material coupleable together.

23. (Previously Presented) The system of claim 22, wherein the plurality of sheets of material are selectively engageable sections.

24. (Previously Presented) The system of claim of claim 21, wherein the canopy has at least one set of parallel sides.

25. (Canceled)

26. (Previously Presented) The system of claim 21, wherein the canopy comprises one or more vent holes defined within the canopy, one or more tails extending therefrom, one or more wind socks, or a combination thereof.

27. (Canceled)

28. (Previously Presented) The system of claim 21, wherein the one or more adjacent sections of the frame comprises a plurality of longitudinally-extending sections.

29. (Canceled)

30. (Previously Presented) The system of claim 21, wherein the at least one aligning component comprises a cable extending through and affixed to the one or more adjacent sections of the frame of the frame.

31. (Canceled)

32. (Canceled)

WBD (US) 4869-8498-7565v1

33.     (Canceled)

34.     (Canceled)

35.     (Previously Presented)  The system of claim 21, wherein the frame is directly engageable with the surface.

36.     (Canceled)

37.     (Canceled)

38.     (Previously Presented)  The system of claim 21, further comprising a cord having a first end and a second end, the first end or the second end of the cord being coupleable to the frame or the canopy.

39.     (Previously Presented)  The system of claim 38, further comprising an anchor coupleable to the other of the second end or the first end of the cord and being in contact with the surface so that the frame remains engaged with the surface when the wind is applied to the canopy.

40.     (Canceled)

41.     (Previously Presented)  The system of claim 21, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.

42-57. (Canceled)

58.     (Previously Presented)  A system for providing shade onto a surface, the system

WBD (US) 4869-8498-7565v1

comprising:

a frame defined by a plurality of sections and comprising an aligning component extending through at least a portion of the sections, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration; and

a canopy defining one or more sections extending between a first end forming a suspension end of the canopy and a second end forming an opposing trailing end of the canopy, the suspension end of the canopy including only a single fastener that engages the canopy with the frame and that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and the trailing end is totally supported by wind in a first configuration for providing shade to the surface,

wherein the single fastener comprises a loop.


59.    (Previously Presented)  The system of claim 58, wherein the canopy is unitarily constructed or comprises a plurality of coupled sections.


60.    (Previously Presented)  The system of claim 58, wherein the canopy defines one or more vent holes, one or more tails extending from a side opposite the suspension end, one or more wind socks, or a combination thereof.


61.    (Previously Presented)  The system of claim 58, further comprising a container capable of housing and transporting the components of the system therein as well as acting as a counterweight that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration.


62-83.  (Canceled)

WBD (US) 4869-8498-7565v1

84.    (Previously Presented)  The system of claim 58, wherein the aligning component comprises a cable.

85-88.  (Canceled)

89.    (Previously Presented)  The system of claim 21, wherein the left end of the frame has a corkscrew shape and the right end of the frame has a corkscrew shape.

90.    (Previously Presented)  The system of claim 58, wherein the left end of the frame has a corkscrew shape and the right end of the frame has a corkscrew shape.

91.    (Previously Presented)  The system of claim 58, further comprising a container capable of housing and transporting the components of the system.

WBD (US) 4869-8498-7565v1

**REMARKS/ARGUMENTS**

Reexamination and reconsideration of this application, withdrawal of the rejections, and formal notification of the allowability of all claims as presented are earnestly solicited in light of the remarks that follow.  Claims 21-24, 26, 28-30, 35, 38-39, 41, 58-61, 84, and 89-91 remain pending.

Allowable Subject Matter

Claims 22-24, 26, 28-29, 35, 38-39, 41, 59-61, 84, and 90-91 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all the limitations of the base claim and any intervening claims. Applicant submits that these claims are now allowable in light of the terminal disclaimer being submitted herewith.

Double Patenting Rejection

Claims 21, 89, 30, and 58 are provisionally rejected on the ground of nonstatutory double patenting as allegedly being unpatentable over claims 21, 24, and 26 of copending Application No. 18/348,882. Though Applicant does not acquiesce to this rejection, an electronic terminal disclaimer is being simultaneously filed with this response. Therefore, Applicant respectfully submits that this rejection is now moot.

WBD (US) 4869-8498-7565v1

Appl. No.: 18/072,143
Response Dated: March 13, 2024
Reply to Office Action dated March 12, 2024

## CONCLUSION

It is not believed that extensions of time or fees for net addition of claims are required, beyond those that may otherwise be provided for in documents accompanying this paper. However, in the event that additional extensions of time are necessary to allow consideration of this paper, such extensions are hereby petitioned under 37 CFR § 1.136(a), and any fee required therefor (including fees for net addition of claims) is hereby authorized to be charged to Deposit Account No. 09-0528.

**Customer No. 26158**
**Womble Bond Dickinson (US) LLP**
Attn: Patent Docketing
P.O. Box 570489
Atlanta, GA 30357
Tel Raleigh Office (919) 755-2100
Fax Raleigh Office (919) 755-2150

Respectfully submitted,

/Lauren F. Anderson/

Lauren F. Anderson
Registration No. 69,344

*ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT AND TRADEMARK OFFICE ON MARCH 13, 2024.*

WBD (US) 4869-8498-7565v1

PTO/AIA/25 (04-13)
Approved for use through 05/31/2024. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A PROVISIONAL DOUBLE PATENTING REJECTION OVER A PENDING "REFERENCE" APPLICATION | Docket Number (Optional) |
|---|---|
| | S105508 1010US.C8 (0040.5) |

In re Application of: Dane Brooks Barnes et al.

Application No.: 18/072,143

Filed: November 30, 2022

For:
SHADING SYSTEM AND METHOD OF USE

The applicant, Shibumi Shade, Inc. _____ , owner of ___100___ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending **reference** Application Number 18/348,882 _____ , filed, July 7, 2023 _____ , as the term of any patent granted on said **reference** application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending **reference** application. The applicant hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the **reference** application are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the applicant does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term of any patent granted on said **reference** application, "as the term of any patent granted on said **reference** application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending **reference** application," in the event that: any such patent granted on the pending **reference** application expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

Check either box 1 or 2 below, if appropriate.

1. ☐ The undersigned is the applicant. If the applicant is an assignee, the undersigned is authorized to act on behalf of the assignee.

I hereby acknowledge that any willful false statements made are punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

2. ☑ The undersigned is an attorney or agent of record. Reg. No. 69,344 _____

| /Lauren F. Anderson/ | March 13, 2024 |
|---|---|
| Signature | Date |
| Lauren F. Anderson | |
| Typed or printed name | |
| Attorney of Record | (919) 755-8127 |
| Title | Telephone Number |

☑ Terminal disclaimer fee under 37 CFR 1.20(d) is included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

A Federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with an information collection subject to the requirements of the Paperwork Reduction Act of 1995, unless the information collection has a currently valid OMB Control Number. The OMB Control Number for this information collection is 0651-0031. Public burden for this form is estimated to average 12 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the information collection. Send comments regarding this burden estimate or any other aspect of this information collection, including suggestions for reducing this burden to the Chief Administrative Officer, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450 or email InformationCollection@uspto.gov. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **If filing this completed form by mail, send to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013). https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to: 1) law enforcement, in the event that the system of records indicates a violation or potential violation of law; 2) a Federal, state, local, or international agency, in response to its request; 3) a contractor of the USPTO having need for the information in order to perform a contract; 4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record; 5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record; 6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations; 7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals; 8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)); 9) the Office of Personnel Management (OPM) for personnel research purposes; and 9) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

# Additional Uses

Additional USPTO uses of the information in this record may include disclosure to: 1) the International Bureau of the World Intellectual Property Organization, if the record is related to an international application filed under the Patent Cooperation Treaty;  2) the public i) after publication of the application pursuant to 35 U.S.C. 122(b), ii) after issuance of a patent pursuant to 35 U.S.C. 151, iii) if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections, or an issued patent, or iv) without publication of the application or patent under the specific circumstances provided for by 37 CFR 1.14(a)(1)(v)-(vii); and/or 3) the National Archives and Records Administration, for inspection of records.



# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/072,143 | 03/13/2024 05:29:29 PM Z ET | S105508 1010US.C8 (0040.5 |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 64667116 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

# TOTAL DOCUMENTS: 4

| DOCUMENT | | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|---|
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA.pdf | | 8 | - | 148 KB |
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA-A....pdf | (1-1) | 1 | Amendment/Request for Reconsideration-After Non-Final Rejection | 112 KB |
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA-CLM.pdf | (2-6) | 5 | Claims | 84 KB |
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA-REM.pdf | (7-8) | 2 | Applicant Arguments/Remarks Made in an Amendment | 101 KB |
| S105508_1010US_C8_0040_5_Terminal_Disclaimer.pdf | | 2 | Terminal Disclaimer Filed | 308 KB |

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 522 of 551

# Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA.pdf | 4B978BF7821A492A508966224FE5A78FCA27EE3494220AD6F4DBF131220F963A7D62A70E268531B00A8E821410550AADF4855B0E18832FF63F06EFA931BD74DB |
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA-A....pdf | 9B05CFAC2EC74E9CD028FB080F30AE02A2B22337CE7F4BD24A5C6346CF5A716F6EDFB2FD54D0A2AF80503637AB2EF0939C6BF8FF3822DAB76A143718BDE5BA6E |
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA-CLM.pdf | 9791B108EE1BD8229513DBA389B7F2C039BC4FE44ED26382B0A64CE17D43AF4F0598D5899F29D31820686CAC56E12FCFFF4AFC8AB01992E214C1746B0261861D |
| S105508_1010US_C8_0040_5_Amendment_3-12-2024_OA-REM.pdf | B9AD2AAF7A0E372D7AFC3B52BFA7E989123E568FDC53F394BBED13D4BFE8863620914437689C95023147AFD386EE27FD68D9EDBE13634949DD36CCEA1C1A4BB9 |
| S105508_1010US_C8_0040_5_Terminal_Disclaimer.pdf | 51AD1DD966EEC0B82C905EEF7F8C0D4D863B62657717A3DC8062A51DB2D3FD77D51500D0461D5C900FEE3FE6D3279FA6316E48DBFC743AF0F8481BBFEAD1E6F5 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **03/13/2024 05:29:29 PM Z ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 64667116 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| **DA / 090528** | **E20243CH32276601** | **Shari Elofson** |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1814 | STATUTORY DISCLAIMER, INCLUDING TERMINAL DISCLAIMER | 170.00 | 1 | 170.00 |
| | | | **TOTAL AMOUNT:** | **$170.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C.

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 524 of 551

Page 2 of 2

371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

| Application Number<br># * 18/072,143 * | Application/Control No.<br><br>18/072,143 | Applicant(s)/Patent under Reexamination<br><br>Barnes et al. |
|---|---|---|
| | Examiner<br>HAWK, NOAH CHANDLER | Art Unit<br>3636 | |

| Document Code - DISQ | Internal Document - DO NOT MAIL |
|---|---|

| TERMINAL DISCLAIMER | ☑ APPROVED | ☐ DISAPPROVED |
|---|---|---|
| Date Filed:   **13 March 2024** | **This patent is subject to a Terminal Disclaimer** | |

**Approved/Disapproved by:**

/JEAN PROCTOR/

**Technology Center: OPLC**

**Telephone: (571)272-1040**

_____

<table>
<tr><td rowspan="2"><em>**Search Notes**</em><br><br>[barcode]</td><td colspan="1">**Application/Control No.**<br><br>18/072,143</td><td>**Applicant(s)/Patent Under Reexamination**<br><br>Barnes et al.</td></tr>
<tr><td>**Examiner**<br><br>NOAH C HAWK</td><td>**Art Unit**<br><br>3636</td></tr>
</table>

| CPC - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| E04H 15/005, 15/60, 15/62 | 03/09/2023 | NCH |
| updated above | 11/30/2023 | NCH |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
|  |  |  |

| US Classification - Searched* | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
|  |  |  |  |

\* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Considered and updated search for parent application 17/471658 | 03/09/2023 | NCH |
| Considered IDS filed 11/30/22 | 03/09/2023 | NCH |
| Please see attached PE2E search history | 03/09/2023 | NCH |
| Performed inventor name search in DAV | 03/09/2023 | NCH |
| Considered IDS filed 4/14/23 and 6/5/23 | 07/23/2023 | NCH |
| Considered IDS filed 11/20/23 | 11/30/2023 | NCH |
| Considered IDS filed 3/4/24 | 03/07/2024 | NCH |

<table>
<tr><td></td><td></td></tr>
</table>

U.S. Patent and Trademark Office

Part of Paper No.: 20240314a



| Search Notes | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| E04H | 15/005, 15/60, 15/62 | 03/14/2024 | NCH |

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 528 of 551

<table>
<tr><td rowspan="2"><strong>Issue Classification</strong><br>‖‖‖‖‖‖‖</td><td colspan="2"><strong>Application/Control No.</strong><br>18/072,143</td><td colspan="2"><strong>Applicant(s)/Patent Under Reexamination</strong><br>Barnes et al.</td></tr>
<tr><td colspan="2"><strong>Examiner</strong><br>NOAH C HAWK</td><td colspan="2"><strong>Art Unit</strong><br>3636</td></tr>
</table>

| CPC | | | | | |
| --- | --- | --- | --- | --- | --- |
| **Symbol** | | | | **Type** | **Version** |
| E04H | / | 15 | / | 003 | F | 2013-01-01 |
| E04H | / | 15 | / | 44 | I | 2013-01-01 |
| E04H | / | 15 | / | 36 | I | 2013-01-01 |
| E04H | / | 15 | / | 30 | I | 2013-01-01 |
| E04H | / | 15 | / | 32 | I | 2013-01-01 |

| CPC Combination Sets | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| **Symbol** | | | **Type** | **Set** | **Ranking** | **Version** |
| | / | | / | | | | |

| NONE | | **Total Claims Allowed:** | |
| --- | --- | --- | --- |
| (Assistant Examiner) | (Date) | 19 | |
| /Noah Chandler Hawk/<br>Primary Examiner, Art Unit 3636 | 14 March 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 13 | 1 |

U.S. Patent and Trademark Office

Part of Paper No.: 20240314a

**INTERNATIONAL CLASSIFICATION**

**CLAIMED**

| E04H | | 15 | | 00 |
|---|---|---|---|---|

**NON-CLAIMED**

| | / | | / | |
|---|---|---|---|---|

**US ORIGINAL CLASSIFICATION**

| CLASS | SUBCLASS |
|---|---|
| | |

**CROSS REFERENCES(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 19 | |
| /Noah Chandler Hawk/ Primary Examiner, Art Unit 3636 | 14 March 2024 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 13 | 1 |

U.S. Patent and Trademark Office

Part of Paper No.: 20240314a

<table>
<tr><td colspan="2" rowspan="2"><strong><em>Issue Classification</em></strong><br><br>||||||||||||||||||</td><td><strong>Application/Control No.</strong><br><br>18/072,143</td><td><strong>Applicant(s)/Patent Under Reexamination</strong><br><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br><br>3636</td></tr>
</table>

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 21 | 10 | 39 | 19 | 91 | | | | | | | | | | | | |
| 2 | 22 | 11 | 41 | | | | | | | | | | | | | | |
| 3 | 23 | 13 | 58 | | | | | | | | | | | | | | |
| 4 | 24 | 14 | 59 | | | | | | | | | | | | | | |
| 5 | 26 | 15 | 60 | | | | | | | | | | | | | | |
| 6 | 28 | 16 | 61 | | | | | | | | | | | | | | |
| 7 | 30 | 17 | 84 | | | | | | | | | | | | | | |
| 8 | 35 | 12 | 89 | | | | | | | | | | | | | | |
| 9 | 38 | 18 | 90 | | | | | | | | | | | | | | |

<table>
<tr><td>NONE<br><br>(Assistant Examiner)</td><td>(Date)</td><td colspan="2"><strong>Total Claims Allowed:</strong><br><br>19</td></tr>
<tr><td>/Noah Chandler Hawk/<br>Primary Examiner, Art Unit 3636<br><br>(Primary Examiner)</td><td>14 March 2024<br><br><br>(Date)</td><td>O.G. Print Claim(s)<br><br>13</td><td>O.G. Print Figure<br><br>1</td></tr>
</table>

U.S. Patent and Trademark Office        Part of Paper No.: 20240314a

| | Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 18/072,143 | Barnes et al. |
| | | Examiner | Art Unit |
| | | NOAH C HAWK | 3636 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | 11/30/2023 | 03/07/2024 | 03/14/2024 | | | |
| | 1 | - | - | - | - | - | - | | | |
| | 2 | - | - | - | - | - | - | | | |
| | 3 | - | - | - | - | - | - | | | |
| | 4 | - | - | - | - | - | - | | | |
| | 5 | - | - | - | - | - | - | | | |
| | 6 | - | - | - | - | - | - | | | |
| | 7 | - | - | - | - | - | - | | | |
| | 8 | - | - | - | - | - | - | | | |
| | 9 | - | - | - | - | - | - | | | |
| | 10 | - | - | - | - | - | - | | | |
| | 11 | - | - | - | - | - | - | | | |
| | 12 | - | - | - | - | - | - | | | |
| | 13 | - | - | - | - | - | - | | | |
| | 14 | - | - | - | - | - | - | | | |
| | 15 | - | - | - | - | - | - | | | |
| | 16 | - | - | - | - | - | - | | | |
| | 17 | - | - | - | - | - | - | | | |
| | 18 | - | - | - | - | - | - | | | |
| | 19 | - | - | - | - | - | - | | | |
| | 20 | - | - | - | - | - | - | | | |
| 1 | 21 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| 2 | 22 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 3 | 23 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 4 | 24 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| | 25 | ✓ | - | - | - | - | - | | | |
| 5 | 26 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| | 27 | ✓ | - | - | - | - | - | | | |
| 6 | 28 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| | 29 | ✓ | ✓ | ✓ | ✓ | - | - | | | |
| 7 | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | = | | | |
| | 31 | ✓ | - | - | - | - | - | | | |
| | 32 | ✓ | - | - | - | - | - | | | |
| | 33 | ✓ | - | - | - | - | - | | | |
| | 34 | ✓ | - | - | - | - | - | | | |
| 8 | 35 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| | 36 | ✓ | - | - | - | - | - | | | |
| | 37 | ✓ | - | - | - | - | - | | | |
| 9 | 38 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| 10 | 39 | ✓ | ✓ | ✓ | ✓ | O | = | | | |
| | 40 | ✓ | ✓ | ✓ | ✓ | - | - | | | |
| 11 | 41 | | ✓ | ✓ | ✓ | O | = | | | |
| | 42 | | ✓ | ✓ | ✓ | - | - | | | |

U.S. Patent and Trademark Office      Part of Paper No.: 20240314a



## Index of Claims

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 18/072,143 | Barnes et al. |
| | **Examiner** | **Art Unit** |
| | NOAH C HAWK | 3636 |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 03/09/2023 | 07/24/2023 | 09/27/2023 | 11/30/2023 | 03/07/2024 | 03/14/2024 | | | |
| | 43 | | ✓ | ✓ | ✓ | - | - | | | |
| | 44 | | ✓ | ✓ | ✓ | - | - | | | |
| | 45 | | ✓ | ✓ | ✓ | - | - | | | |
| | 46 | | ✓ | ✓ | - | - | - | | | |
| | 47 | | ✓ | ✓ | - | - | - | | | |
| | 48 | | ✓ | ✓ | - | - | - | | | |
| | 49 | | ✓ | ✓ | - | - | - | | | |
| | 50 | | ✓ | ✓ | - | - | - | | | |
| | 51 | | ✓ | ✓ | - | - | - | | | |
| | 52 | | ✓ | ✓ | - | - | - | | | |
| | 53 | | ✓ | ✓ | - | - | - | | | |
| | 54 | | ✓ | ✓ | ✓ | - | - | | | |
| | 55 | | ✓ | ✓ | ✓ | - | - | | | |
| | 56 | | ✓ | ✓ | ✓ | - | - | | | |
| | 57 | | ✓ | ✓ | ✓ | - | - | | | |
| 13 | 58 | | ✓ | ✓ | ✓ | ✓ | = | | | |
| 14 | 59 | | ✓ | ✓ | ✓ | O | = | | | |
| 15 | 60 | | ✓ | ✓ | ✓ | O | = | | | |
| 16 | 61 | | ✓ | ✓ | ✓ | O | = | | | |
| | 62 | | ✓ | ✓ | - | - | - | | | |
| | 63 | | ✓ | ✓ | - | - | - | | | |
| | 64 | | ✓ | ✓ | - | - | - | | | |
| | 65 | | ✓ | ✓ | - | - | - | | | |
| | 66 | | ✓ | ✓ | - | - | - | | | |
| | 67 | | ✓ | ✓ | - | - | - | | | |
| | 68 | | ✓ | ✓ | - | - | - | | | |
| | 69 | | ✓ | ✓ | - | - | - | | | |
| | 70 | | ✓ | ✓ | - | - | - | | | |
| | 71 | | ✓ | ✓ | - | - | - | | | |
| | 72 | | ✓ | ✓ | - | - | - | | | |
| | 73 | | ✓ | ✓ | - | - | - | | | |
| | 74 | | ✓ | ✓ | - | - | - | | | |
| | 75 | | ✓ | ✓ | - | - | - | | | |
| | 76 | | ✓ | ✓ | - | - | - | | | |
| | 77 | | ✓ | ✓ | - | - | - | | | |
| | 78 | | | ✓ | - | - | - | | | |
| | 79 | | | ✓ | - | - | - | | | |
| | 80 | | | ✓ | - | - | - | | | |
| | 81 | | | ✓ | - | - | - | | | |
| | 82 | | | ✓ | - | - | - | | | |
| | 83 | | | | ✓ | - | - | | | |
| 17 | 84 | | | | ✓ | O | = | | | |
| | 85 | | | | ✓ | - | - | | | |
| | 86 | | | | ✓ | - | - | | | |
| | 87 | | | | ✓ | - | - | | | |
| | 88 | | | | ✓ | - | - | | | |
| 12 | 89 | | | | | ✓ | = | | | |
| 18 | 90 | | | | | O | = | | | |
| 19 | 91 | | | | | O | = | | | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 26158 | 7590 | 03/27/2024 |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
| --- |
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3636 | |

DATE MAILED: 03/27/2024

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

TITLE OF INVENTION: SHADING SYSTEM AND METHOD OF USE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 06/27/2024 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 40% the amount of undiscounted fees, and micro entity fees are 20% the amount of undiscounted fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 534 of 551

Page 1 of 3

PTOL-85 (Rev. 11/23)

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

By mail, send to:  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to:  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26158    7590    03/27/2024
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| | |
|---|---|
| | (Typed or printed name) |
| | (Signature) |
| | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

TITLE OF INVENTION: SHADING SYSTEM AND METHOD OF USE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 06/27/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HAWK, NOAH CHANDLER | 3636 | 135-128000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❑ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. Fees submitted:  ❑ Issue Fee  ❑ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

❑ Electronic Payment via the USPTO patent electronic filing system    ❑ Enclosed check    ❑ Non-electronic payment by credit card (Attach form PTO-2038)

❑ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status**  (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

❑ Applicant asserting small entity status. See 37 CFR 1.27

❑ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 535 of 551

PTOL-85 Part B (11/23) Approved for use through 03/31/2026    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508<br>1010US.C8 (0040.5 | 1080 |

| | | | |
|---|---|---|---|
| 26158 | 7590 | 03/27/2024 | EXAMINER |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

HAWK, NOAH CHANDLER

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

DATE MAILED: 03/27/2024

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 11/23)

# OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. The United States Patent and Trademark Office (USPTO) collects the information in this record under authority of 35 U.S.C. 2. The USPTO's system of records is used to manage all applicant and owner information including name, citizenship, residence, post office address, and other information with respect to inventors and their legal representatives pertaining to the applicant's/owner's activities in connection with the invention for which a patent is sought or has been granted. The applicable Privacy Act System of Records Notice for the information collected in this form is COMMERCE/PAT-TM-7 Patent Application Files, available in the Federal Register at 78 FR 19243 (March 29, 2013).
https://www.govinfo.gov/content/pkg/FR-2013-03-29/pdf/2013-07341.pdf

Routine uses of the information in this record may include disclosure to:

1) law enforcement, in the event that the system of records indicates a violation or potential violation of law;

2) a federal, state, local, or international agency, in response to its request;

3) a contractor of the USPTO having need for the information in order to perform a contract;

4) the Department of Justice for determination of whether the Freedom of Information Act (FOIA) requires disclosure of the record;

5) a Member of Congress submitting a request involving an individual to whom the record pertains, when the individual has requested the Member's assistance with respect to the subject matter of the record;

6) a court, magistrate, or administrative tribunal, in the course of presenting evidence, including disclosures to opposing counsel in the course of settlement negotiations;

7) the Administrator, General Services Administration (GSA), or their designee, during an inspection of records conducted by GSA under authority of 44 U.S.C. 2904 and 2906, in accordance with the GSA regulations and any other relevant (i.e., GSA or Commerce) directive, where such disclosure shall not be used to make determinations about individuals;

8) another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c));

9) the Office of Personnel Management (OPM) for personnel research purposes; and

10) the Office of Management and Budget (OMB) for legislative coordination and clearance.

If you do not furnish the information requested on this form, the USPTO may not be able to process and/or examine your submission, which may result in termination of proceedings, abandonment of the application, and/or expiration of the patent.

<table>
<tr><td rowspan="2"><em>Notice of Allowability</em></td><td><strong>Application No.</strong><br>18/072,143</td><td colspan="2"><strong>Applicant(s)</strong><br>Barnes et al.</td></tr>
<tr><td><strong>Examiner</strong><br>NOAH C HAWK</td><td><strong>Art Unit</strong><br>3636</td><td><strong>AIA (FITF) Status</strong><br>Yes</td></tr>
</table>

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 3/13/24.

☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are See Continuation Sheet . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

a) ☐ All    b) ☐ Some*    c) ☐ None of the:

1. ☐ Certified copies of the priority documents have been received.
2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

* Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.

☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 538 of 551

Continuation of 3. The allowed claim(s) is/are: 21-24,26,28,30,35,38-39,41,58-61,84 and 89-91

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

1.      The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### Allowable Subject Matter

2.      Claims 21-24, 26, 28, 30, 35, 38, 39, 41, 58-61, 84, and 89-91 are allowed.

3.      The following is an examiner's statement of reasons for allowance: the prior art made of record has failed to suggest, either singly or in combination, a novel system for providing shade having a frame defined by a plurality of sections with an aligning component extending through at least a portion of the sections, each section having one or both of a male and female end for engaging with an adjacent section in a supporting configuration and disengaging in a transport configuration, a canopy with a plurality of coupled sections and extending between a suspension end and a trailing end, the suspension end having only a single fastener engaging the frame to the canopy and securing the canopy with respect to the frame so that the suspension end is supported by the frame, the single fastener being a loop extending at least partially through the length of the suspension end from a left to a right end, the trailing end being supported only and totally by the wind when providing shade to the surface, and a container capable of housing and transporting the components of the system.

4.      The prior art made of record generally teaches multiple fasteners such as a loop and a strap (see Kang), multiple loops (see Beatty), multiple straps (Knipschild), or a loop and guylines (see Sotirkys); alternately a single loop is used, but does not fix a

Case 5:24-cv-00588-FL     Document 28-11     Filed 03/23/26     Page 540 of 551

canopy to a frame (see Jager). There does not appear to be a teaching of a single fastener securing a canopy to a frame in the manner claimed by the applicant.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

## *Conclusion*

9.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to NOAH CHANDLER HAWK whose telephone number is (571)272-1480. The examiner can normally be reached M-F 9am to 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, David Dunn can be reached on 5712726670. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. Unpublished application information in Patent Center is available to registered users. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov. Visit https://www.uspto.gov/patents/apply/patent-center for more information about Patent Center and

https://www.uspto.gov/patents/docx for information about filing in DOCX format. For

additional questions, contact the Electronic Business Center (EBC) at 866-217-9197

(toll-free). If you would like assistance from a USPTO Customer Service

Representative, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

NOAH CHANDLER HAWK
Primary Examiner
Art Unit 3636


/Noah Chandler Hawk/
Primary Examiner, Art Unit 3636

# PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via the USPTO patent electronic filing system.

By mail, send to: Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

By fax, send to: (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. **Because electronic patent issuance may occur shortly after issue fee payment, any desired continuing application should preferably be filed prior to payment of this issue fee in order not to jeopardize copendency.**

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 26158 | 7590 | 03/27/2024 |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via the USPTO patent electronic filing system or by facsimile to (571) 273-2885, on the date below.

| Shari Elofson | (Typed or printed name) |
| /Shari Elofson/ | (Signature) |
| Filed March 27, 2024 | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

TITLE OF INVENTION: SHADING SYSTEM AND METHOD OF USE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1200 | $0.00 | $0.00 | $1200 | 06/27/2024 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HAWK, NOAH CHANDLER | 3636 | 135-128000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/AIA/122 or PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/AIA/47 or PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

**Womble Bond Dickinson (US) LLP**

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE
**Shibumi Shade, Inc.**

(B) RESIDENCE: (CITY and STATE OR COUNTRY)
**Raleigh, North Carolina**

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☒ Issue Fee ☐ Publication Fee (if required)

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☒ Electronic Payment via the USPTO patent electronic filing system ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. **09-0528**

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ___ /Lauren F. Anderson/ ___ Date ___ March 27, 2024 ___

Typed or printed name ___ Lauren F. Anderson ___ Registration No. ___ 69,344 ___

Case 5:24-cv-00588-FL    Document 28-11    Filed 03/23/26    Page 543 of 551

PTOL-85 Part B (11/23) Approved for use through 03/31/2026       OMB 0651-0033       U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

**UNITED STATES
PATENT AND TRADEMARK OFFICE**

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| 18/072,143 | 03/27/2024 03:32:09 PM Z ET | S105508 1010US.C8 (0040.5 |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
|---|---|---|---|
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 64859844 | FILING DATE | 11/30/2022 |
| CUSTOMER # | 26158 | FIRST NAMED INVENTOR | Dane Brooks Barnes |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | Lauren Anderson |

## Documents

## TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S105508_1010US_C8_0040_5_Issue_Fee.pdf | 1 | Issue Fee Payment (PTO-85B) | 187 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S105508_1010US_C8_0040_5_Issue_Fee.pdf | F3A0EEF473F210A96DFAB234030BBC40EB1AC49A74A5C6B8D24D6C01FCC5FC77F6917B913A046123627C8591BBF46C75C5FD0401B17FB65E63B6F6D0BB48034D |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/072,143** | **03/27/2024 03:32:09 PM Z ET** | **S105508 1010US.C8 (0040.5** |

## Title of Invention

SHADING SYSTEM AND METHOD OF USE

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1080 | FILED BY | Shari Elofson |
| PATENT CENTER # | 64859844 | AUTHORIZED BY | Lauren Anderson |
| CUSTOMER # | 26158 | FILING DATE | 11/30/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Dane Brooks Barnes |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| DA / 090528 | E20243QF32496908 | **Shari Elofson** |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1501 | UTILITY ISSUE FEE | 1200.00 | 1 | 1200.00 |
| | | | **TOTAL AMOUNT:** | **$1,200.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
 P.O. Box 1450
 Alexandria, Virginia 22313-1450
 www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 04/30/2024 | 11970876 | S105508 1010US.C8 (0040.5 | 1080 |

26158    7590    04/10/2024
WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above. The patent will issue electronically. The electronically issued patent is the official patent grant pursuant to 35 U.S.C. § 153. The patent may be accessed on or after the issue date through Patent Center at https://patentcenter.uspto.gov/. The patent will be available in both the public and the private sides of Patent Center. Further assistance in electronically accessing the patent, or about Patent Center, is available by calling the Patent Electronic Business Center at 1-888-217-9197.

The USPTO is implementing electronic patent issuance with a transition period, during which period the USPTO will mail a ceremonial paper copy of the electronic patent grant to the correspondence address of record. Additional copies of the patent (i.e., certified and presentation copies) may be ordered for a fee from the USPTO's Certified Copy Center at https://certifiedcopycenter.uspto.gov/index.html. The Certified Copy Center may be reached at (800)972-6382.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Center (https://patentcenter.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Patents Stakeholder Experience (OPSE), Stakeholder Support Division (SSD) at (571)-272-4200.

IR103 (Rev. 10/09)

INVENTOR(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional inventors):

Dane Brooks Barnes, Raleigh, NC;
Alexander Griffith Slater, Raleigh, NC;
Scott Christian Barnes, Raleigh, NC;

APPLICANT(s)  (Please see PATENT CENTER site https://patentcenter.uspto.gov for additional applicants):

Shibumi Shade, Inc., Raleigh, NC;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.



UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 18/072,143 | 11/30/2022 | Dane Brooks Barnes | S105508 1010US.C8 (0040.5 | 1080 |

| 26158 | 7590 | 04/30/2024 |
|---|---|---|

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
P.O. Box 570489
ATLANTA, GA 30357-0037

| EXAMINER |
|---|
| HAWK, NOAH CHANDLER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3636 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 04/30/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

BostonDocket@wbd-us.com
IPDocketing@wbd-us.com

PTOL-90A (Rev. 04/07)

| APPLICATION NO. | ISSUE DATE | PATENT NO. |
|---|---|---|
| 18/072,143 | 30-Apr-2024 | 11970876 |

WOMBLE BOND DICKINSON (US) LLP
ATTN: IP DOCKETING
ATLANTA, GA 30357-0037

# EGRANT NOTIFICATION

Your electronic patent grant (eGrant) is now available, which can be accessed via Patent Center at https://patentcenter.uspto.gov

The electronic patent grant is the official patent grant under 35 U.S.C. 153. For more information, please visit https://www.uspto.gov/electronicgrants