# THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

SHIBUMI SHADE, INC.,

      Plaintiff,

      v.

GARDMA LLC d/b/a MILLION SHADES
AMERICA,

      Defendant.

Civil Action No: 5:24-cv-00588

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Shibumi Shade, Inc. ("Shibumi Shade" or "Plaintiff"), by and through its undersigned counsel, files this Amended Complaint against Defendant Gardma LLC d/b/a Million Shades America ("Million Shades" or "Defendant"), and, in support thereof, allege as follows:

## THE PARTIES

1. Plaintiff Shibumi Shade is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located at 4039 Atlantic Avenue, Raleigh, NC 27604.

2. Upon information and belief, Defendant Gardma LLC d/b/a Million Shades America is a limited liability company organized and existing under the laws of the State of North Carolina with its principal office at 102 Pacoval Place, Cary, NC 27513. Defendant may be served with process by serving its registered agent, Gomin Samantha Gardiyehewa, at 102 Pacoval Place, Cary, NC 27513, or as otherwise authorized under applicable law.

1

## JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271, and for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a).

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 1 *et seq.*

5.      This Court has personal jurisdiction over Defendant, and venue is proper in this District, because Defendant has committed acts of infringement in this District by making, using, selling, offering for sale, or importing infringing goods, including the Ultimate Flying Beach Shade product ("Accused Product"), within the District, and Defendant has regular and established places of business located in the State of North Carolina.

6.      Venue as to Defendant is thus proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## FACTS

### A.      History of Shibumi Shade

7.      Plaintiff was founded in 2016 by two brothers and a longtime friend who grew up visiting Emerald Isle, North Carolina, every summer.  The founders recognized the problems with traditional beach umbrellas, which were flimsy, bulky, and difficult to assemble, and in 2015 they set out to create a new design that would be both lightweight and easy to assemble. The founders worked for more than a year out of their home to perfect their design for the ideal beach shade before formally launching the Shibumi Shade in 2016.

8.      Today, the Shibumi Shade is used and sold throughout the United States and has gained widespread recognition for its superior design and high quality, which are sold through

2

Plaintiff's website, www.shibumishade.com, through Amazon.com, and at select retail locations throughout the United States, including 77 in North Carolina.

9. As the Shibumi Shade's popularity grew, the founders set out to protect their designs and intellectual property. Plaintiff makes every attempt to protect its intellectual property rights, to protect its reputation, and to protect its customers from confusion in the marketplace. To that end, Plaintiff has obtained multiple patents to date, including U.S. Patent Nos. 11,634,924 ("'924 Patent") and U.S, Patent No. 12,607,033 ("'033 Patent").

10. Plaintiff owns all right, title, and interest in and to the '924 Patent and the '033 Patent.

11. The Shibumi Shade is easily visible and instantly recognizable when in use by beachgoers. The Shibumi Shade has become a beach staple and can be seen lined up on the beach for miles during the summer. The Shibumi Shade has even been featured in prominent newspapers and magazines, including The New York Times, The Wall Street Journal, Forbes, Inc., USA Today, Travel + Leisure, New York Magazine, Good Housekeeping, People, GQ, Garden & Gun, CNET, and on TV shows. Exemplary photographs of the Shibumi Shade and demonstrating its prolific use by consumers are below.



3





4



12.     On information and belief, Million Shades currently sells four versions of the Accused Products: (a) the "Classic" Shade with "Beach Blue Tones" Color Palette; (b) the "Cozy" Shade with "Beach Blue Tones" Color Palette; (c) the "Grande" Shade with "Beach Blue Tones" Color Palette; and (d) the "Grande" Shade with "Bold Blue and Red" Color Palette.

13.     Million Shades advertises the Accused Products as offering "A Beach Shade – Reimagined," "Uninterrupted 360º Beach Views," "Engineered for Silence in the Wind," "Smart, All-Day Sun Protection," and "Effortless Setup & Pack-Down."  Each of these is similar to the way Shibumi advertises its Shibumi Shade product.

14.     Through the release of the Accused Product, Million Shades unlawfully copied Plaintiff's innovations to unfairly compete with Plaintiff.  Million Shades has imported, manufactured, used, distributed, sold, or offered to sell the Accused Product in the United States, including within the State of North Carolina and within this District.

5

**B.     Defendant's Infringement of the '924 Patent**

15.     The '924 Patent, titled "SHADING SYSTEM AND METHOD OF USE," was duly and legally issued on April 25, 2023 to Dane Brooks Barnes, Alexander Griffith Slater, and Scott Christian Barnes. A true and accurate copy of the '924 Patent is attached as Exhibit A and incorporated by reference.  All rights and interest in the '924 Patent have been assigned to Plaintiff.

16.     The Accused Product infringes one or more claims of the '924 Patent, including at least each and every element of Claim 21 either literally or under the doctrine of equivalents, as set forth below and in the claim chart attached as Exhibit B.

17.      Claim 21 of the '924 Patent cites:

A system for providing shade onto a surface, the system comprising:

a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including a plurality of fasteners including at least one fastener that engages the canopy with the frame and at least one fastener that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface; and

a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and engageable with the surface to retain the frame in the supporting configuration;

wherein the at least one fastener that secures the canopy in position

6

relative to the frame has a higher coefficient of friction with respect to a coefficient of friction of the frame.

18. The Accused Product either literally or equivalently contains a system for providing shade onto a surface. *See* Ex. B at B-1.

19. The system of the Accused Product either literally or equivalently comprises a frame defined by a plurality of sections that include a left end, a right end, and a plurality of sections positioned between the left end and the right end and comprising a cable extending therethrough, each of the plurality of sections having one or both of a male end and a female end making the plurality of sections thereby engageable with at least one adjacent section to define the frame in a supporting configuration and thereby disengageable to define the frame in a transport configuration, wherein each of the left end and the right end has a corkscrew shape effective for engaging a surface. *See id* at B-1–B-3.

20. The system of the Accused Product either literally or equivalently comprises a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy extending between a left end and a right end, the suspension end of the canopy including a plurality of fasteners including at least one fastener that engages the canopy with the frame and at least one fastener that secures the canopy in position relative to the frame, wherein the trailing end of the canopy is spaced apart from the portion of the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind in a first configuration for providing shade to the surface. *See id.* at B-4–B-6.

21. The system of the Accused Product either literally or equivalently comprises a container capable of housing and transporting the components of the system therein as well as acting as a first anchor that is coupleable to one or both of the frame and the canopy, and

7

engageable with the surface to retain the frame in the supporting configuration. *See id.* at B-6–B-8.

22. The system of the Accused Product either literally or equivalently comprises a system wherein the at least one fastener that secures the canopy in position relative to the frame has a higher coefficient of friction with respect to a coefficient of friction of the frame. *See id.* at B-9.

23. On July 25, 2024, counsel for Plaintiff sent a letter to Defendant notifying it that the Accused Product infringed one or more claims of the '924 Patent. Plaintiff's letter requested that Defendant respond to its allegations of infringement and confirm its intention to cease selling the Accused Product by August 1, 2024. Defendant did not cease its sale and offering to sale the Accused Product, and it continues to offer the Accused Product for sale as of today.

**C. Defendant's Infringement of the '033 Patent**

24. The '033 Patent, titled "SHADING SYSTEM AND METHOD OF USE," was duly and legally issued on April 21, 2026 to Dane Brooks Barnes, Alexander Griffith Slater, and Scott Christian Barnes. A true and accurate copy of the '033 Patent is attached as Exhibit C and incorporated by reference. All rights and interest in the '033 Patent have been assigned to Plaintiff.

25. The Accused Product infringes one or more claims of the '033 Patent, including at least each and every element of Claim 18 either literally or under the doctrine of equivalents, as set forth below and in the claim chart attached as Exhibit D.

26. Claim 18 of the '033 Patent cites:

A system for providing shade onto a surface, the system consisting of:

a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including:

a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface;

one or more adjacent sections coupled into alignment between the first section and the last section, some of the one or more adjacent sections additionally comprising an alignment component extending at least partially therethrough and providing supporting tension to the alignment in the supporting configuration and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;

a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind for providing shade to the surface; and

a loop defined toward the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and the first portion of the loop forming a first securing mechanism and the second portion of the loop forming a second securing mechanism, wherein at least one of the first and second securing mechanisms engage the canopy to the frame using a frame fastener.

27.    The Accused Product either literally or equivalently is a system for providing shade onto a surface.  *See* Ex. D at D-1.

28.    The system of the Accused Product either literally or equivalently consists of a frame including a plurality of sections and being maneuverable between a transport configuration and a supporting configuration, the sections including: a first section defining a left end of the frame with a corkscrew shape and engaged with the surface; a last section defining a right end of the frame with a corkscrew shape and engaged with the surface; one or more adjacent sections coupled into alignment between the first section and the last section, some of the one or more adjacent sections additionally comprising an alignment component extending at least partially therethrough and providing supporting tension to the alignment in the supporting configuration

and allowing the one or more adjacent sections to be maneuvered between the transport configuration and the supporting configuration, the adjacent sections being configured to engage with the first section and the last section in the supporting configuration;. *See id* at D-1–D-5.

29.     The system of the Accused Product either literally or equivalently consists of a canopy extending between a suspension end and an opposing trailing end, the suspension end of the canopy being engageable with the frame about the one or more adjacent sections of the frame, wherein the trailing end of the canopy is spaced apart from the frame in the supporting configuration such that the canopy is supportable by the frame and at least partially supportable by wind for providing shade to the surface. *See id.* at D-6–D-7.

30.     The system of the Accused Product either literally or equivalently consists of a loop defined toward the suspension end of the canopy, wherein the loop defines a central portion arranged between a first portion of the loop and a second portion of the loop, the central portion of the loop being configured for accepting a portion of the frame therethrough and the first portion of the loop forming a first securing mechanism and the second portion of the loop forming a second securing mechanism, wherein at least one of the first and second securing mechanisms engage the canopy to the frame using a frame fastener. *See id.* at D-8–D-9.

31.     On April 22, 2026, the '033 Patent was issued by the United States Patent and Trademark Office.  That same day, counsel for Plaintiff sent an email to Defendant notifying it that the '033 Patent had issued and that the Accused Product infringed one or more claims of the '033 Patent.

<u>**COUNT I – INFRINGEMENT OF THE '924 PATENT**</u>

32.     Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if stated fully herein.

10

33. Plaintiff is the owner of the '924 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '924 Patent against infringers, and to collect damages for all relevant times.

34. Defendant has either alone or in concert directly infringed and continues to infringe the '924 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the Accused Product within the United States, in violation of 35 U.S.C. § 271(a).

35. Upon information and belief, Defendant has made and continues to make unlawful gains and profits from its infringement of the '924 Patent.

36. At least as early as July 25, 2024, Defendant has been on notice and had knowledge of the '924 Patent and of Plaintiff's allegations of infringement. Defendant's infringement of the '924 Patent has been willful and deliberate at least since this date.

37. Plaintiff has been damaged and irreparably harmed by Defendant's infringement of the '924 Patent for which Plaintiff is entitled to relief under 35 U.S.C. § 284. Plaintiff will continue to suffer damages and irreparable harm unless Defendant is enjoined by this Court from continuing their infringement.

## COUNT II – INFRINGEMENT OF THE '033 PATENT

38. Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs, as if stated fully herein.

39. Plaintiff is the owner of the '033 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '033 Patent against infringers, and to collect damages for all relevant times.

40. Defendant has either alone or in concert directly infringed and continues to

infringe the '033 Patent, either literally or through the doctrine of equivalents, by making, using, importing, supplying, distributing, selling and/or offering for sale the Accused Product within the United States, in violation of 35 U.S.C. § 271(a).

41.     Upon information and belief, Defendant has made and continues to make unlawful gains and profits from its infringement of the '033 Patent.

42.     At least as early as April 22, 2026, Defendant has been on notice and had knowledge of the '033 Patent and of Plaintiff's allegations of infringement.  Defendant's infringement of the '033 Patent has been willful and deliberate at least since this date.

43.     Plaintiff has been damaged and irreparably harmed by Defendant's infringement of the '033 Patent for which Plaintiff is entitled to relief under 35 U.S.C. § 284.  Plaintiff will continue to suffer damages and irreparable harm unless Defendant is enjoined by this Court from continuing their infringement.

## ATTORNEYS' FEES

44. Pursuant to 35 U.S.C. § 285, Plaintiff seeks reasonable attorneys' fees in this case.

## JURY DEMAND

45. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury of any issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

A.     Defendant be declared to have directly infringed one or more of the claims of the '924 Patent and the '033 Patent under 35 U.S.C. § 271(a);

B.     the Court issue a temporary restraining order and preliminary and permanent injunction pursuant to 35 U.S.C. § 283 against the continuing infringement of the claims of the

12

'924 Patent and the '033 Patent by Defendant, their officers, agents, employees, attorneys, representatives, and all others acting in concert therewith;

C. the Court declare that the making, using, offering to sell, and/or selling within the United States, and/or importation into the United States of the Accused Product will constitute an infringement of the '924 Patent and the '033 Patent;

D. the Court order an accounting for all monies received by or on behalf of Defendant and all damages sustained by Plaintiff as a result of Defendant's aforementioned infringements, that such monies and damages be awarded to Plaintiff, and that interest and costs be assessed against Defendant pursuant to 35 U.S.C. § 284;

E. the Court declare that Defendant's infringement was and is willful from the time it became aware of the infringing nature of their product and award treble damages for the period of such willful infringement of the '924 Patent and the '033 Patent, pursuant to 35 U.S.C. § 284; and

F. the Court award such further and other relief to Plaintiff as the Court deems just, together with its costs and disbursements in this action.

Dated: _____, 2026　　　　　　　　Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

/s/ *Preston H. Heard*
Samuel B. Hartzell
North Carolina Bar No. 49256
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: 919-755-2112
Facsimile: 919-755-6772
Sam.Hartzell@wbd-us.com

Preston H. Heard (*pro hac vice*)

13

Georgia Bar No. 476319
Christine H. Dupriest (*pro hac vice*)
Georgia Bar No. 874494
1331 Spring Street, NW, Suite 1400
Atlanta, GA 30309
Telephone: (404) 862-7527
Preston.heard@wbd-us.com
Christine.Dupriest@wbd-us.com

*Attorneys for Plaintiff Shibumi Shade, Inc.*